**GOODWIN PROCTER LLP**
Daniel M. Glosband
Gina L. Martin
53 State Street
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

Matthew L. Curro
Christopher Newcomb
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Facsimile: (212) 355-3333

*Attorneys for the Movants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES INVESTOR PROTECTION CORPORATION,** | |
| **Plaintiff,** | Case No. 12-MC-00115 (JSR) |
| **vs.** | |
| **BERNARD L. MADOFF INVESTMENT SECURITIES LLC** | |
| **Defendant.** | |
| **In re:** | Pertains to Cases: |
| **MADOFF SECURITIES** | 11-cv-08741 (JSR) |
| | 11-cv-08742 (JSR) |
| | 11-cv-08743 (JSR) |
| | 11-cv-08744 (JSR) |
| | 11-cv-08745 (JSR) |
| | 11-cv-08746 (JSR) |

**MOVANTS' REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF THEIR RESPECTIVE MOTIONS TO WITHDRAW THE REFERENCE**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Background ...........................................................................................................5

Argument ............................................................................................................5

     I.     Withdrawal of the Reference is Appropriate in These Cases ..................................7

          A.     Antecedent Debt Issue ............................................................. 8

          B.     Section 546(e) Issue ............................................................. 11

          C.     Interpretation of the Internal Revenue Code............................................. 11

     II.     Filing a Proof of Claim Does not Waive Movants' Right  to Request Withdrawal of the Reference ................................................12

     III.     Even if the Issues Raised are "Core,"  Withdrawal of the Reference is Still Warranted.................................................13

Conclusion .........................................................................................................14

LIBNY/5192271.5

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Frito Lay, Inc. v. Chateaugay Cor. (In re Chateaugay Corp.),*
 99 B.R. 206 (S.D.N.Y. 1989)................................................................................11

*In re Bell & Beckwith,*
 124 B.R. 35 (Bankr. N.D. Ohio 1990) ...............................................................9

*In re Bernard L. Madoff Investment Sec., LLC,*
 654 F.3d 229 (2d Cir. 2011).............................................................................8, 9

*In re Carrozzella & Richardson,*
 286 B.R. 480 (D. Conn. 2002) ..........................................................................10

*In re Enron Creditors Recovery Corp.,*
 651 F.3d 329 (2d Cir. 2011)...............................................................................11

*In re Oberweis Securities, Inc.,*
 135 B.R. 842 (Bankr. N. D. Ill. 1991) ...............................................................9

*Lummus Co. v. Commonwealth Oil Refining Co.,*
 297 F.2d 80, 89 (2d Cir. 1961) ...........................................................................7

*Picard v. Avellino,*
 2012 U.S. Dist. LEXIS 35260 (S.D.N.Y. 2012)................................................6

*Picard v. Blumenthal,*
 No. 11 Civ 4293 (JSR) (S.D.N.Y.) .........................................................8, 10, 11

*Picard v. Flinn Invs.*
 463 B.R. 280 (S.D.N.Y. 2011).....................................................................12, 13

*Picard v. Greiff,*
 No. 11 Civ 3775 (JSR) (S.D.N.Y.) .................................................................8, 10

*Picard v. Katz,*
 462 B.R. 447 (S.D.N.Y. 2011)..................................................................6, 10, 11

*Picard v. Katz,*
 No. 11 Civ. 3605 (JSR) (S.D.N.Y.) ....................................................................8

*SEC v. S.J. Salmon,*
 375 F. Supp 867 (S.D.N.Y. 1974).......................................................................9

3

*Stern v. Marshall*,
    131 S. Ct 2594, 180 L. Ed. 2d 475 (2011) ...............................................................6

*Zdanok v. Glidden*,
    327 F.2d 944, 955 (2d Cir. 1964) ...........................................................................7

**STATUTES**

11 U.S.C.
    § 546(e) ...............................................................................................................6, 10, 11
    § 548(c) ...........................................................................................................................6, 8

28 U.S.C.
    § 157(b)(2)(A) ...........................................................................................................5
    § 157(d) ...............................................................................................................5, 12, 13

4

Each Movant[1] respectfully submits this memorandum of law in further support of its respective Motion for Mandatory Withdrawal of the Reference pursuant to 28 U.S.C. § 157(d).

## BACKGROUND

1.      Each Movant is the subject of an adversary proceeding (collectively, the "*Avoidance Actions*") commenced by Irving H. Picard (the "*Trustee*"), Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("*BLMIS*"), to avoid and recover various alleged transfers made by BLMIS to the Movants in the six-year and two-year periods prior to the commencement of BLMIS' liquidation.  In total, the Trustee is seeking to avoid and recover in excess of $15 million from the Movants.  The Trustee has not alleged that any of the Movants were complicit or willfully blind to the massive fraud perpetrated by Bernard L. Madoff through BLMIS.

2.      On April 3, 2012, both the Trustee and the Securities Investor Protection Corporation ("*SIPC*") filed their memoranda of law in opposition to the Movants' Motions to Withdraw the Reference.[2]

## ARGUMENT

3.      In their papers, SIPC and the Trustee argue that the Avoidance Actions are "core" matters within the meaning of 28 U.S.C. § 157(b)(2)(A) and that withdrawal of the reference is

---

[1]     The "*Movants*" are (i) in respect of Case No. 11-cv-08741 (JSR), the Estate of Gilbert M. Kotzen, the Gilbert M. Kotzen 1982 Trust, Linda S. Paresky, in her capacity as personal representative of the Estate of Gilbert M. Kotzen and as Trustee for the Gilbert M. Kotzen 1982 Trust, Stepheny B. Riemer, in her capacity as personal representative of the Estate of Gilbert M. Kotzen and as Trustee for the Gilbert M. Kotzen 1982 Trust (the "*Estate Defendants*"), (ii) in respect of Case No. 11-cv-08742 (JSR), Stanley J. Bernstein, (iii) in respect of Case No. 11-cv-08743 (JSR), Frank A. Petito, d/b/a The Petito Investment Group and Frank A. Petito, individually, (iv) in respect of Case No. 11-cv-08744 (JSR), I.I. Kotzen Company, (v) in respect of Case No. 11-cv-08745 (JSR), the Gilbert M. Kotzen 1982 Trust, the Marcia Kotzen 2002 Revocable Trust, Linda S. Paresky, individually and in her capacity as Trustee for the Gilbert M. Kotzen Trust and the Marcia Kotzen 2002 Revocable Trust, and Stepheny B. Riemer, individually and in her capacity as Trustee for the Gilbert M. Kotzen 1982 Trust and the Marcia Kotzen 2002 Revocable Trust, and (vi) in respect of Case No. 11-cv-08746 (JSR), Russell J. deLucia.  In Case No. 11-cv-08743 (JSR), co-defendant Migs Woodside joined in the Motion for Mandatory Withdrawal of the Reference.

[2]     Hereinafter cited as "Trustee Memorandum at __" and "SIPC Memorandum at __", respectively.

LIBNY/5192271.5

not required since no substantial issue of non-bankruptcy law is presented.  They, however, fail

to address Movants' primary argument:  this Court, having withdrawn the reference in other

related proceedings, has already recognized that substantial issues of non-bankruptcy law are

presented by the Avoidance Actions.  Movants are simply asking the Court to do in these

proceedings what the Court has already done in others. [3]

4.     For example, in *Picard v. Avellino*, 2012 U.S. Dist. LEXIS 35260 (S.D.N.Y.

2012), this Court withdrew the reference for the purposes of deciding:

(a)     Whether the Securities Investor Protection Act (SIPA) and other securities laws alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in "good faith" under 11 U.S.C. § 548(c);

(b)     Whether the Trustee may, consistent with non-bankruptcy law, avoid transfers that BLMIS purportedly made in order to satisfy antecedent debts;

(c)     Whether in light of this Court's decision in *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011), 11 U.S.C. § 546(e) applies, limiting the Trustee's ability to avoid transfers;

(d)     Whether, after the United States Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct 2594, 180 L. Ed. 2d 475 (2011) ("***Stern***"), final resolution of claims to avoid transfers as fraudulent requires an exercise of "judicial Power," preventing the bankruptcy court from finally resolving such claims; and

(e)     Whether, if the bankruptcy court cannot finally resolve the fraudulent transfer claims in this case, it has the authority to render findings of fact and conclusions of law before final resolution.[4]

5.     Neither the Trustee nor SIPC has provided any basis as to why this Court's

previous withdrawals of the reference should not apply equally to the Movants.  As a matter of

fundamental fairness, withdrawal of the reference in the Movants' cases is required because it

---

[3]     *See, e.g., infra* ¶¶ 8, 14, 15.

[4]     By Order dated April 13, 2012, this Court has consolidated briefing on issues related to the *Stern* case, including the issues described in 4(d) and (e) above.

LIBNY/5192271.5

will ensure that all similarly situated defendants are treated equally, that all cases are administered consistently, and that all parties' rights, claims and defenses are adjudicated on a common playing field. While it is not clear whether the doctrine of collateral estoppel would preclude the Trustee from contesting the withdrawal of the reference in these cases, the logic expressed by the Second Circuit in explaining the doctrine would: "Finality in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Zdanok v. Glidden*, 327 F.2d 944, 955 (2d Cir. 1964), *quoting Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961).

## I.      Withdrawal of the Reference is Appropriate in These Cases

6.      SIPC and the Trustee attempt to take the Movants to task for adopting briefs and arguments submitted in other cases. However, such an argument cannot serve as a basis for denying the Movants' Motions to Withdraw the Reference. There is nothing inappropriate about adopting and incorporating by reference legal arguments made by other similarly-situated defendants, particularly where, as here, those arguments apply with equal force to the Movants and this Court is fully familiar with and has previously addressed such arguments. Indeed, it is consistent with Movants' position that withdrawal of the reference is appropriate because these same issues have previously been cited by the Court as grounds for withdrawal. Importantly, Movant's approach is also consistent with this Court's consolidation of certain *Stern*-related issues raised in various motions for withdrawal in a common brief.

7.      The Trustee and SIPC, however, have failed to refute the bases for mandatory withdrawal of the reference, opting instead to devote substantial portions of their briefs to a recitation of the powers afforded to SIPA trustees under SIPA and the Bankruptcy Code and to the argument that the claims asserted by the Trustee are statutorily "core" claims, both of which

are irrelevant to the mandatory withdrawal issues.  Nor have either SIPC or the Trustee presented any argument as to why these cases are different such that withdrawal of the reference, granted in other cases, is not appropriate here.  Indeed, the Trustee's argument that "mere recitation of the issues warranting withdrawal" in other cases "can hardly provide the basis for withdrawal of the reference" is unpersuasive at best.  Trustee Memorandum at 8.  The Trustee cannot dispute that, with only a few exceptions, the one-thousand-plus lawsuits filed to recover money allegedly paid by BLMIS to its customers are nearly identical (except for amount).  It, therefore, makes little sense to require Movants to re-submit arguments that have already been briefed and adopted by the Court.

> **A.**     <u>**Antecedent Debt Issue**</u>

> 8.       First, as the Movants noted in their moving papers, this case, like numerous others, implicates the question of whether the debt of BLMIS to its customers under non-bankruptcy securities law constitutes antecedent debt to such customers, such that payment discharges the debt and provides the customer who took payment in good faith with a complete defense to any fraudulent transfer claim.  *See, e.g., Picard v. Katz*, No. 11 Civ. 3605 (JSR) (S.D.N.Y.) ("***Katz***"), Memorandum of Law in Support of the Sterling Defendants' Motion to Withdraw the Reference, dated May 26, 2011, at 14-19 (*Katz* Dkt. No. 2), Transcript of Hearing dated July 1, 2011, at 33-34 (*Katz* Dkt. No. 33), Order dated July 5, 2011 (*Katz* Dkt. No.19); *Picard v. Greiff*, No. 11 Civ. 3775 (JSR) (S.D.N.Y.) ("***Greiff***"), Order dated September 16, 2011 (*Greiff* Dkt. No. 19); *Picard v. Blumenthal*, No. 11 Civ. 4293 (JSR) (S.D.N.Y.) ("***Blumenthal***"), Order dated October 14, 2011 (*Blumenthal* Dkt. No. 14).[5]

---

[5]       Documents referenced in Paragraphs 8 and 14 herein were attached to the Declarations of Daniel M. Glosband filed contemporaneously with each Motion for Withdrawal of the Reference.

9.      This Court granted partial summary judgment to the Trustee in *Katz*, stating in its "bottom line rulings" that the defendants only gave value to the extent of their investment for purposes of section 548(c).  *See Katz*, Order dated March 5, 2012 (*Katz* Dkt. No.142).  However, the Court's decision was based on the binary question presented by the Defendants and the Trustee: either value equaled the amount shown on the defendants' account statements or it equaled "net equity."  Glosband Decl. Ex. A,[6] Defendants' Reply Memorandum of Law Regarding Determination of "For Value" and Net Equity Decision, at 1-2; Glosband Decl. Ex. B, Trustee's reply to Defendants' memorandum of Law Regarding Determination of "For Value" and Net Equity Ruling, at 1.  However, neither party in *Katz* addressed the alternative argument that "value" for purposes of sections 548(c) and (d) ordinarily includes a customer's rights to damages and the Trustee's apparent position that the SIPA somehow overrides application of sections 548(c) and (d).

10.      Both the Trustee and SIPC rely, in part, on the Second Circuit Net Equity Decision, *In re Bernard L. Madoff Investment Sec., LLC*, 654 F.3d 229 (2d Cir. 2011), as refuting the *Katz* Defendants' reliance on account statements to measure value.  Trustee's Memorandum at 10, SIPC Memorandum at 15 -16.  The Second Circuit did reject the account statement methodology of determining the amount of a customer's claim for purposes of participation in the special fund of customer property.  *BLMIS*, 656 F.3d at 233, 241.  However, the measure of "value" as defined in section 548(d) (i.e., the "satisfaction…of [an] antecedent debt of the debtor…") was not addressed.

11.      The Trustee has acknowledged that customers have claims for damages in addition to their net equity claims; damage claims that are general claims that would participate

---

[6]      Filed contemporaneously herewith is the Declaration of Daniel M. Glosband ("Glosband Decl."), dated April 17, 2012, in further support of the Movants' Motions to Withdraw the Reference.

LIBNY/5192271.5

in a debtor's assets once customer claims have been paid in full.  As counsel to the Trustee stated

in oral argument before Judge Raggi on the net equity issue:

> That's what the statute is all about, is that these people who did not get
> their money out get the opportunity, through the customer fund, that
> priority. Once that priority is satisfied, then all of them are on equal
> footing and they all have a fraud claim. You're absolutely right, Your
> Honor. At the end of the day all of them look and say to us, to the Trustee,
> I have a claim here. I thought I had 30 years worth of profits. I don't have
> them now. What are you going to do about that?...At the end of the day
> our hope is that there will be a second fund, there will indeed be a general
> creditor fund, and all of these appellants here will have the opportunity
> then, but only then, to participate.

Glosband Decl. Ex. C, Second Circuit Hr'g Tr., March 3, 2011 at 54-55

12.     The existence of a damage claim for fraud or breach of contract has been

recognized in prior SIPA cases.  *See, e.g. SEC v. S.J. Salmon*, 375 F. Supp 867, 870-871

(S.D.N.Y. 1974) (denying a fraud claim as a "customer claim" but acknowledging that the claim

could be brought as a general creditor claim); *In re Oberweis Securities, Inc.*, 135 B.R. 842, 846

(Bankr. N. D. Ill. 1991); *In re Bell & Beckwith*, 124 B.R. 35 (Bankr. N.D. Ohio 1990).  However,

the position taken by SIPC and the Trustee implies that these claims cannot be reasonably

equivalent value for purposes of sections 548(c) and (d).  In opposing the *Katz* defendants'

arguments for recognizing account statement value, the Trustee's counsel said "once you have a

SIPA proceeding, these rules go by the board, and the reason is because the SIPA rules dominate

that.  They have to."  Glosband Decl. Ex. C, Hr'g Tr. at 62.  Clearly, his view is the same as to a

claim for damages.

13.     Since the *Katz* summary judgment order did not address the issue of the purported

SIPA override of sections 548(c) and (d) other than with respect to account statement values, the

Court's rationale for withdrawing the reference in respect of this antecedent debt issue remains

valid – final determination of this issue will require substantial interpretation of SIPA, a federal

non-bankruptcy law.  *See also Greiff*, Order dated Sept. 16, 2011 (*Greiff* Dkt. No. 19).  There are

conflicting decisions on this issue that will have to be considered.  *See In re Carrozzella &*

*Richardson*, 286 B.R. 480, 486-489 (D. Conn. 2002) (discussing conflicting lines of cases).

B.      **Section 546(e) Issue**

14.      Second, these cases also implicate the question of whether payments to customers

by BLMIS, a registered stockbroker and a debtor in a SIPA proceeding, are within the statutory

"safe-harbor" of section 546(e) of the Bankruptcy Code.  *See, e.g., Katz*, Memorandum of Law

in Support of the Sterling Defendants' Motion to Withdraw the Reference dated May 26, 2011,

at 18-20 (*Katz* Dkt No. 2), Transcript of Hearing dated July 1, 2011, at 33-34 (*Katz* Dkt. No. 33),

Order dated July 5, 2011 (*Katz* Dkt. No.19); *Greiff*, Order dated September 16, 2011 (*Greiff* Dkt.

No. 19); *Blumenthal*, Order dated October 14, 2011 (*Blumenthal* Dkt. No. 14).  As evidenced by

the fact that the Court previously decided that section 546(e) applied in the *Katz* case, *Picard v.*

*Katz*, 462 B.R. 447, 451-52 (S.D.N.Y. 2011), section 546(e) should likewise apply here.  As this

Court acknowledged in the *Katz* decision, "[b]y restricting a bankruptcy trustee's power to

recover payments that are otherwise avoidable under the Bankruptcy Code, the safe harbor

stands 'at the intersection of two important national legislative policies on a collision course –

the policies of bankruptcy and securities law.'"  *Katz*, 462 B.R. at 451, *quoting In re Enron*

*Creditors Recovery Corp.*, 651 F.3d 329, 334 (2d Cir. 2011).  Accordingly, because these cases

likewise implicate the applicability of section 546(e), the reference should be withdrawn.

C.      **Interpretation of the Internal Revenue Code**

15.      Third, another issue raised by the Estate Defendants is whether the Trustee can

avoid transfers from an Individual Retirement Account (IRA) that are mandatory minimum

withdrawals that the transferor was required to make in order to avoid tax penalties under

provisions of the Internal Revenue Code.  *See Blumenthal*, Defendants' Memorandum of Law in

Support of Motion for Mandatory Withdrawal of the Reference dated June 23, 2011 (*Blumenthal* Dkt. No. 2), Order dated Oct. 14, 2011 (*Blumenthal* Dkt. No. 14).  Indeed, the Court specifically noted in its order withdrawing the reference in *Blumenthal* that one of the issues to be considered was "whether provisions of the Internal Revenue Code that heavily tax undistributed portions of IRAs prevent the Trustee from avoiding IRA distributions that would otherwise be taxes." *Blumenthal*, Order dated Oct. 14, 2011 (*Blumenthal* Dkt. No. 14).

16.    The Trustee argues that this issue requires "at most, a tangential analysis of the [Internal Revenue Code]."  Trustee Memorandum at 14.  In support, the Trustee cites a number of cases for the proposition that the "mere application of federal tax law is insufficient to require mandatory withdrawal of the reference." *Id.*  But these cases are inapposite, as none implicate the fundamental clash between tax and bankruptcy policy that is implicated here. *See, e.g. Frito Lay, Inc. v. Chateaugay Cor. (In re Chateaugay Corp.)*, 99 B.R. 206, 208 (S.D.N.Y. 1989) (Declining to withdraw the reference because the only tax issues implicated were contractual rather than issues created by tax law).

17.    Again, the Trustee ignores that this Court has already rejected his argument that an analysis of the tax code is "tangential" or "superficial" so as to not require mandatory withdrawal of the reference.  In *Picard v. Flinn Invs*., LLC, 463 B.R. 280, 286 (S.D.N.Y. 2011), this Court found that the issue "requires a determination of how to integrate bankruptcy and non-bankruptcy law" and, thus, withdrawal of the reference is mandated. *Id.*

## II.    Filing a Proof of Claim Does not Waive Movants' Right to Request Withdrawal of the Reference

18.    The Trustee also argues that the filing of a proof of claim in the bankruptcy case "reinforces the conclusion that the bankruptcy court is the appropriate court for the adjudication of the actions against it."  Trustee Memorandum at 15.  This argument, however, has no merit.

The Movants have not contested the Bankruptcy Court's *in personam* or *in rem* jurisdiction. Rather, the Movants have raised a *statutory* question of the Bankruptcy Court's jurisdiction. The filing of proofs of claim by the Movants does not relieve a Court of its statutory obligation under 28 U.S.C. § 157(d). If the Trustee's arguments were adopted, section 157(d) would be rendered almost completely superfluous as anyone who filed a claim in a bankruptcy case would be deemed to waive their ability to seek withdrawal of the reference. Such a result cannot be what was intended. Rather, 28 U.S.C. § 157(d) exists to ensure that district courts hear cases that are required to be heard by Article III judges. Indeed this Court has already determined that if withdrawal is mandated by 28 U.S.C. § 157, withdrawal must be made even where defendants have submitted proofs of claim. *Picard v. Flinn Invs*. 463 B.R. at 283n.2.

### III.     Even if the Issues Raised are "Core," Withdrawal of the Reference is Still Warranted

19.     SIPC argues that because the matters raised in the Avoidance Actions are allegedly statutorily designated "core" matters, withdrawal of the reference is not warranted. As a preliminary matter, Movants dispute that all the issues raised by the Avoidance Actions are "core" matters subject to bankruptcy court jurisdiction. But even assuming all the issues raised are "core," the basis for Movants' request to withdraw the reference – a basis that has already been accepted by the Court in a number of other cases – is that the Avoidance Actions implicate the consideration of other areas of federal law such that withdrawal of the reference is *mandatory*. The relevant provision of 28 U.S.C. § 157(d) provides that

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Nowhere in that command is the requirement that the matter be non-core before the reference can be withdrawn. Thus, regardless of whether these matters are non-core, withdrawal of the

reference is still warranted based on the substantial issues of federal non-bankruptcy law that must be considered.

## <u>CONCLUSION</u>

For the reasons set forth above, Movants respectfully request that the District Court: (a) order mandatory withdrawal of the reference of these cases, each of which requires substantial and material consideration and interpretation of federal non-bankruptcy law; and (b) grant such other and further relief as may be just or necessary.

Dated: New York, New York
      April 17, 2012

Respectfully submitted,

/s/ *Daniel M. Glosband*
Daniel M. Glosband
Gina Martin
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
E-mail: dglosband@goodwinprocter.com

Matthew L. Curro
Christopher Newcomb
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Facsimile: (212) 355-3333
E-mail: cnewcomb@goodwinprocter.com

*Attorneys for the Movants*

14