**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | 12-mc-00115 (JSR) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: MADOFF SECURITIES | |

**CONSOLIDATED BRIEF ON BEHALF OF *STERN* WITHDRAWAL DEFENDANTS RESPONDING TO ISSUES RAISED BY ORDER OF THE COURT ENTERED ON APRIL 13, 2012**

SHEARMAN & STERLING LLP
Heather Lamberg Kafele
Joanna Shally
Jessica Lyn Bartlett
599 Lexington Avenue
New York, New York 10022

KUDMAN TRACHTEN ALOE LLP
Paul H. Aloe
Matthew H. Cohen
The Empire State Building
350 Fifth Avenue, Suite 4400
New York, New York 10118

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 5

ARGUMENT ...................................................................................................... 6

I.   BANKRUPTCY COURTS LACK CONSTITUTIONAL AUTHORITY TO
     FINALLY ADJUDICATE ACTIONS TO RECOVER FRAUDULENT AND
     PREFERENTIAL TRANSFERS ................................................................. 6

     A.   The Article III Problem:  The Constitution, the Bankruptcy Statutes and
          Pre-*Stern* Supreme Court Precedent ................................................. 6

     B.   The *Stern* Decision ............................................................................ 10

     C.   The Recovery Actions Brought By the Trustee May Not Be
          Constitutionally Adjudicated By the Bankruptcy Court ....................... 11

          1.   Actions to Recover Fraudulent and Preferential Transfers Are
               Indisputably Private Right Claims .............................................. 12

          2.   The Recovery Actions Will Not Be Resolved in the Claims
               Allowance Process ..................................................................... 16

               a.   Defendants Who Have Not Filed and Cannot File Claims ............ 17

               b.   Defendants Who Filed Claims That Were Summarily
                    Decided Without Reference To the Recovery Actions ................ 18

               c.   Defendants Who Filed Claims That Have Not Yet Been
                    Resolved .................................................................................. 21

II.  BANKRUPTCY COURTS LACK STATUTORY AUTHORITY TO ISSUE
     PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN
     ACTIONS TO RECOVER FRAUDULENT AND PREFERENTIAL
     TRANSFERS ........................................................................................... 22

     A.   The Statutory Framework of 28 U.S.C. § 157 Does Not Provide
          Bankruptcy Courts Any Power To Issue Proposed Findings of Fact and
          Conclusions of Law With Respect To Core Matters ............................ 23

B.      Courts Cannot Rewrite the United States Code To Allow Bankruptcy
        Courts To Issue Findings of Fact and Conclusions of Law with Respect To
        Core Matters...............................................................................................25

C.      Courts That Have Held a Bankruptcy Court May Issue Proposed Findings
        of Fact and Conclusions of Law with Respect To Core Matters Have Erred........27

III.    EVEN IF IMMEDIATE WITHDRAWAL OF THESE ADVERSARY
        PROCEEDINGS IN THEIR ENTIRETY WERE NOT MANDATORY UNDER
        *STERN*, THIS COURT SHOULD WITHDRAW THEM NOW IN THE
        EXERCISE OF ITS DISCRETION ...................................................................29

        A.      The Permissive Withdrawal Analysis Post-*Stern* ..................................30

        B.      Cause Exists For An Article III Court To Determine The Trustee's Claims.........32

                1.      These Adversary Proceedings Involve Private Rights and
                        Therefore An Article I Court May Not Adjudicate Them or Render
                        Proposed Findings of Fact and Conclusions of Law .................................32

                2.      An Analysis of the Prudential Factors Favors Permissive
                        Withdrawal..............................................................................................32

                        a.      Considerations of Judicial Efficiency, Delay and Litigation
                                Expense All Favor Retention of These Adversary
                                Proceedings By An Article III Court. ............................................32

                        b.      Preservation of Defendants' Right to Jury Trial Favors
                                Retention By An Article III Court ................................................37

                        c.      The Other Applicable *Orion* Factors Favor Permissive
                                Withdrawal..................................................................................37

CONCLUSION...................................................................................................39

# TABLE OF AUTHORITIES

## CASES

*Adelphia Recovery Trust v. FLG Grp., Inc.*, No. 11 Civ. 6847(PAC), 2012
WL 264180 (S.D.N.Y. Jan. 30, 2012) ............................................................14, 20, 27, 31

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, Nos. 03 MDL
1529(LMM), *et al.*, 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006).........................31, 38, 39

*In re Am. Hous. Found.*, No. 09-20232-RLJ-11, 2012 WL 443967 (N.D. Tex. Feb. 10,
2012) ............................................................................................................................15

*In re Ambac Fin. Grp.*, 457 B.R. 299 (Bankr. S.D.N.Y. 2011) ........................................15

*In re Ames Dep't Stores, Inc.*, 582 F.3d 422 (2d Cir. 2009) ...........................................23

*Aozora Bank Ltd. v. SIPC (In re Bernard L. Madoff Inv. Sec., Ltd.)*, Nos. 11 Civ.
5683, *et al.*, 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012) .......................................17

*Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320 (2006) .....................25

*Benjamin v. Diamond* (In re Mobile Steel Co.), 563 F.2d 692 (5th Cir. 1977) ............22

*In re Bernard L. Madoff Inv. Sec., LLC*, 654 F.3d 229 (2d. Cir. 2011), *petition for
cert. filed*, 80 BNA U.S.L.W. 3483 (U.S. Feb. 3, 2012) (No. 11-968).......................18, 19

*In re Canopy Fin., Inc.*, 464 B.R. 770 (N.D. Ill. 2011) ...................................................14

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ................................................3, 22, 26

*CFTC v. Schor*, 478 U.S. 833 (1986)....................................................................................7

*Crowell v. Benson*, 285 U.S. 22 (1932) .............................................................................2

*Cullen v. United States*, 194 F.3d 401 (2d Cir. 1999)....................................................33

*In re Davis*, No. 07-05181, 2011 WL 5429095 (W.D. Tenn. Oct. 5, 2011)..................14

*In re DBSI, Inc.*, Nos. 10-54648 (PJW), *et al.*, 2012 WL 1242305 (Bankr. D. Del.
Apr. 12, 2012)...............................................................................................................15

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457
(S.D.N.Y. 2011) ....................................................................................... *passim*

*Dev. Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, No. 11 civ. 6337 (CM), 2011 WL 6780600 (S.D.N.Y. Dec. 23, 2011) .......................................................2, 13, 14

*In re Direct Response Media, Inc.*, Adv. No. 10-50855(KG), 2012 WL 112503 (Bankr. D. Del. Jan. 12, 2012) ..................................................................................................15

*Everett v. MCI, Inc. (In re WorldCom)*, Adv. No. 07 Civ. 9590(DC), 2008 WL 2441062 (S.D.N.Y. June 18, 2008)...............................................................................................31

*Freytag v. Comm'r, Internal Revenue*, 501 U.S. 868 (1991)...........................................................7

*Gecker v. Flynn* (In re Emerald Casino, Inc.), 459 B.R. 298 (Bankr. N.D. Ill. 2011).................27

*Germain v. Conn. Nat'l Bank*, 988 F.2d 1323 (2d Cir. 1993) ......................................................37

*Granfinanciera, S.A. v. Nordburg*, 492 U.S. 33 (1989)......................................................... *passim*

*In re Heller Ehrman LLP*, 464 B.R. 438 (N.D. Cal. 2011)...........................................................14

*In re Levine*, No. 11 Civ. 9101, 2012 WL 310944 (S.D.N.Y. Feb. 1, 2012)...............................11

*Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210 (2d Cir. 2008).......23

*McHale v. Citibank, N.A.*, No. 09 Civ. 6064(SAS), 2009 WL 2599749 (S.D.N.Y. Aug. 24, 2009) ...................................................................................................................33

*Mishkin v. Ageloff*, 220 B.R. 784 (S.D.N.Y. 1998) ...............................................................31, 35

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1855)............................2, 7

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) ........................... *passim*

*Nw. Airlines, Inc. v. City of L.A. (In re Nw. Airlines Corp.)*, 384 B.R. 51 (S.D.N.Y. 2008).........31

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993)............................................................................................ *passim*

*Ortiz v. Aurora Healthcare, Inc. (In re Ortiz)*, 665 F.3d 906 (7th Cir. 2011) ..............................25

*Pacor, Inc. v Higgins*, 743 F.2d 984 (1984), *overruled on other grounds by Things Remembered Inc. v. Petrarca*, 516 U.S. 124 (1995)..............................................26

*Picard v. Avellino*, Nos. 11 Civ. 3882(JSR), *et al.*, 2012 WL 826602 (S.D.N.Y. Feb. 29, 2012) ........................................................................................................................35, 38

*Picard v. Estate of Madoff*, 464 B.R. 578 (S.D.N.Y. 2011) ........................................................35

*Picard v. Flinn Invs., LLC*, 463 B.R. 280 (S.D.N.Y. 2011)....................................................35, 38

*Picard v. HSBC Bank PLC*, 450 B.R. 406 (S.D.N.Y. 2011) ................................................30, 35

*Picard v. HSBC Bank, PLC*, 454 B.R. 25 (S.D.N.Y. 2011) ........................................................35

*Picard v. Katz*, No. 11 Civ. 3605(JSR), 2012 WL 691551 (S.D.N.Y. Mar. 5, 2012) .................36

*Picard v. Katz*, No. 11 Civ. 3605(JSR) (S.D.N.Y.  Feb. 23, 2012), ECF No. 139 .......................36

*Picard v. Katz*, 466 B.R. 208 (S.D.N.Y. 2012)..........................................................................35

*Picard v. Katz*, No. 11 Civ. 3605 (JSR), 2011 WL 5873806 (S.D.N.Y. Nov. 23, 2011) ........35, 37

*Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011), *motion to certify appeal denied*, 466
      B.R. 208 (S.D.N.Y. 2012)..........................................................................21, 35, 36, 38

*Picard v. Kohn*, No. 11 Civ. 1181(JSR), 2012 WL 566298 (S.D.N.Y. Feb. 22, 2012)...............35

*In re Refco Inc.*, 461 B.R. 181 (Bankr. S.D.N.Y. 2011) ............................................................27

*Retired Partners of Coudert Bros. Trust v. Baker & Mackenzie LLP* (In re Coudert
      Bros.), App. No. 11-2785 (CM), 2011 WL 5593147 (S.D.N.Y. Sept. 23,
      2011) ...........................................................................................................11, 14, 28, 32

*In re Safety Harbor Resort & Spa*, 456 B.R. 703 (Bankr. M.D. Fla. 2011) ................................15

*In re Saltire Indus., Inc.*, Nos. 07 Civ. 3622(AKH), 06 Civ. 4451(AKH), 2007 WL
      1815450 (S.D.N.Y. June 22, 2007).........................................................................35

*Schoenthal v. Irving Trust Co.*, 287 U.S. 50 (1932) .........................................................12, 13, 18

*In re Se. Materials, Inc.*, Nos. 11-6033, *et al.*, 2012 WL 1034322 (Bankr. M.D.N.C.
      Mar. 27, 2012)....................................................................................................14

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115(JSR),
      2012 WL 1505349 (S.D.N.Y. Apr. 30, 2012)......................................................24, 36

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC* (In re Bernard L. Madoff
      Sec.), No. 12 MC 115 (JSR) (S.D.N.Y. Apr. 19, 2012), Dkt. No. 22..............................34

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)................................................................25

*Stern v. Marshall*, 131 S. Ct. 2594 (2011) ........................................................................... *passim*

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) .............................................7

*United Orient Bank v. Green (In re Green)*, 200 B.R. 296 (S.D.N.Y. 1996) ...............................35

*United States v. Noland*, 517 U.S. 535 (1996) ...........................................................................22

*Walker, Truesdell, Roth & Assocs. v. Blackstone Grp., L.P. (In re Extended Stay, Inc.)*,
    466 B.R. 188 (S.D.N.Y. 2011) .......................................................................................36

*Weisfelner v. Blavatnik* (In re Lyondell Chem. Co.), Nos. 11 Civ. 8251(DCL),
    11 Civ. 8445, 2012 WL 1038749 (S.D.N.Y. Mar. 29, 2012) ................................... *passim*

## STATUTES

11 U.S.C. § 544 ............................................................................................................................13

11 U.S.C. § 548 ......................................................................................................................12, 13

11 U.S.C. § 550 ............................................................................................................................13

15 U.S.C. § 78fff ..........................................................................................................................21

15 U.S.C. § 78fff-2(c)(3) .............................................................................................................21

28 U.S.C. § 157 .....................................................................................................23, 26, 28, 29

28 U.S.C. § 157(b) ............................................................................................................... *passim*

28 U.S.C. § 157(c) ...........................................................................................3, 10, 23, 25

28 U.S.C. § 157(d) .........................................................................................2, 3, 29, 30

28 U.S.C. § 157(e) .......................................................................................................................37

28 U.S.C. § 158 ...............................................................................................9, 23, 24, 26

28 U.S.C. § 1334(a) .............................................................................................................9, 10

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ....................................................1

Bankruptcy Amendments and Federal Judgeship Act of 1984 ..........................................9, 10, 14

Bankruptcy Act of 1978, § 241 .....................................................................................................8

## RULES

Fed. R. Bankr. P. 9033 ..................................................................................................24, 33

Fed. R. Civ. P. 12 ................................................................................................................1

## MISCELLANEOUS

1 *Works of James Wilson* (J. Andrews ed. 1896) ..........................................................7

The defendants in the above-captioned case (the "Defendants") respectfully submit this consolidated brief to address three issues identified by this Court in its Order dated April 13, 2012, arising from various motions made to withdraw the reference of adversary proceedings brought by Irving H. Picard, the trustee (the "Trustee") appointed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa, *et seq.*, for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("Madoff Securities"), substantively consolidated with the estate of Bernard L. Madoff ("Madoff"), to recover allegedly fraudulent and preferential transfers (the "Recovery Actions").[1]

## PRELIMINARY STATEMENT

The United States Supreme Court held last June in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), that Congress had improperly vested judicial power in non-Article III judges by permitting bankruptcy courts to enter final judgments on common law counterclaims brought by the estate against litigants who filed claims against the estate.  It held so even though that precise type of action (counterclaims by the estate against persons filing claims against the estate) is included in 28 U.S.C. § 157(b) as a core proceeding that is subject to final adjudication by the bankruptcy court.  The Supreme Court explained that while Congress can create public rights, and remove those from the purview of Article III judges, it may not "'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law,'" or "matters 'of private right, that is, of the liability of one individual to another under the law as

---

[1]      The consolidated brief is submitted or is deemed submitted on behalf of all Defendants who are parties to the Court's April 13, 2012 Order.  *See* Order, Appendix A, *In re Madoff Sec.*, No. 12 MC 0115, (S.D.N.Y. Apr. 13, 2012), Dkt No. 4 (the "*Stern* Order").  Not all Defendants are similarly situated and therefore they join only in those arguments applicable to them.  As provided in paragraph 12 of the *Stern* Order, nothing in this consolidated brief waives, limits, or impairs any arguments, issues, or defenses that have been raised or could be raised by any Defendant in a motion to dismiss under Fed. R. Civ. P. 12, including, without limitation, the Defendants' right to contest personal jurisdiction.

defined.'"  *Stern*, 131 S. Ct. at 2612 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855), and *Crowell v. Benson*, 285 U.S. 22, 50 (1932)).

In light of the *Stern* decision, and other independent bases to be addressed separately, hundreds of motions were filed in this Court seeking to withdraw the reference of the Recovery Actions to the Bankruptcy Court.  On April 13, 2012, this Court entered the *Stern* Order withdrawing the reference of the Recovery Actions for the limited purpose of deciding the following three questions:

>   (a)   whether the *Stern* Decision prevents the Bankruptcy Court from entering a final order or judgment resolving claims by the Trustee to avoid or recover initial or subsequent transfers as fraudulent transfers, fraudulent conveyances and/or preferences;
>
>   (b)   if the Bankruptcy Court cannot finally resolve the claims by the Trustee to avoid or recover initial or subsequent transfers as fraudulent transfers, fraudulent conveyances and/or preferences, whether the Bankruptcy Court has the authority to render proposed findings of fact and proposed conclusions of law; and
>
>   (c)   whether the Court should permissively withdraw the reference of the [Recovery Actions] based on the *Stern* Decision for cause shown pursuant to 28 U.S.C. § 157(d).

*Stern* Order, 2012 WL 1276386, at *2.

The answer to the first question is *yes*.  As the Supreme Court stated in *Granfinanciera, S.A. v. Nordburg*, 492 U.S. 33, 56-57 (1989), an action to recover fraudulent or preferential transfers is "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789" and is a "private right."  *Stern*, 131 S. Ct. at 2609 (internal quotation marks and citation omitted); *see also Dev. Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, No. 11 civ. 6337 (CM), 2011 WL 6780600, at *2-3 (S.D.N.Y. Dec. 23, 2011).  Accordingly, the Recovery Actions are ones that adjudicate "private" rights, not public rights, and while sections 157(b)(2)(F) and (H) purport to permit the Bankruptcy Court to enter final judgment in the Recovery Actions,

"Article III of the Constitution does not." *Stern*, 131 S. Ct. at 2608. The Bankruptcy Court has no constitutional authority to finally determine the Recovery Actions.

The answer to the second question is *no*. A court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction. A bankruptcy court's power to adjudicate is purely statutory. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995) ("[J]urisdiction of the bankruptcy courts . . . is grounded in, and limited by, statute."). Sections 157(b) and (c)(1) of title 28 provide *only two categories* of claims over which bankruptcy courts have the authority to preside: "core" matters and "[n]on-core" matters. A bankruptcy court can *only* make proposed findings of fact and conclusions of law on non-core matters. The Recovery Actions are defined by the statute as core, and therefore the bankruptcy court cannot issue proposed findings of fact and conclusions of law.

The answer to the third question is *yes*. Even if this Court determines that *Stern* does not mandate withdrawal of the Recovery Actions, this Court should exercise its discretion to do so. *Stern* has essentially changed the initial factor considered in a permissive withdrawal analysis from that of whether a claim is core or non-core to whether it may be adjudicated by the bankruptcy court. The subsequent factors to be considered, as described in *Orion Pictures Corp. v. Showtime Networks, Inc.* (In re Orion Pictures Corp.), 4 F.3d 1095 (2d Cir. 1993), however, remain unchanged by *Stern*. All of those factors strongly support discretionary withdrawal here, where among other things, the Recovery Actions (a) cannot be finally adjudicated by the Bankruptcy Court, (b) contain many sub-issues which themselves require mandatory withdrawal under 28 U.S.C. § 157(d), and (c) are at nascent stages of development, where in the vast majority of cases issue has not been joined and no discovery has commenced in the Bankruptcy Court.

Under these circumstances, judicial efficiency – of primary import in the *Orion* analysis – would unquestionably be served by withdrawal, given the following considerations. *First*, because the Court has already withdrawn the reference of important issues in the Recovery Actions, efficiency argues in favor of withdrawing the entire matter. Moreover, this Court has already devoted significant time and resources adjudicating claims brought by the Trustee and is intimately familiar with the facts and circumstances surrounding the Recovery Actions. This contrasts directly with the fact that the Recovery Actions have barely progressed past their infancy in the Bankruptcy Court. *Second*, even if the Court were to find that the Bankruptcy Court has authority to propose findings of fact and conclusions of law, this Court would still have to review *de novo* any findings and conclusions that are objected to – a fact that provides strong incentive to withdraw these actions now, in order to avoid an inherently duplicative exercise. *Third,* many Defendants have lost a substantial portion of their net worth. For them, defending these adversary proceedings first in the Bankruptcy Court and again in the District Court will put a severe drain on their remaining assets and expose them to additional concomitant loss.

The remaining *Orion* factors – uniformity, right to a jury trial, and prevention of forum shopping – all counsel in favor of withdrawal as well. The Trustee's claims, if successful, would only serve to augment the debtors' estate and thus will not require coordinated adjudication before the Bankruptcy Court. Moreover, issues of securities law dominate the Recovery Actions, calling for their uniform interpretation by an Article III court. Further, an overwhelming majority of Defendants maintain their right to a jury trial (as likely does the Trustee) and will likely not consent to such trial being conducted in the Bankruptcy Court, which in turn cannot constitutionally hold such trials if the Recovery Actions are subject to *de novo* review by this

Court.  Finally, Defendants cannot be accused of forum shopping.  Withdrawal will not place them in a jurisdiction with more favorable law, as both the Bankruptcy Court and the District Court are bound to follow the law of the Second Circuit, nor will withdrawal afford them a more convenient location in which to litigate, as both courts are located in the same geographical area.

## BACKGROUND

This Court is fully familiar with the events leading up to the appointment of the Trustee, the Trustee's filing of some 1,000 adversary proceedings, and with related issues that have already been the subject of significant litigation before this Court.  Those facts will not be reiterated here.

All of the Recovery Actions are private suits seeking recovery of funds under the avoidance and recovery sections of chapter 5 of title 11 of the United States Code (*i.e.*, the Bankruptcy Code).  Hundreds of Defendants have each moved to withdraw the reference on a number of grounds in addition to *Stern,* and most Defendants have not engaged in motion practice or discovery in the Bankruptcy Court.  Although not significant for purposes of applying *Stern,* there are multiple categories of Defendants in the Recovery Actions.  Some Defendants are alleged by the Trustee to be "initial transferees" who were customers of Madoff Securities.  Other Defendants are claimed by the Trustee to be "subsequent transferees" who received transfers, directly or indirectly, from initial transferees.  Most Defendants have not filed claims in the SIPA proceeding.  For those Defendants who have filed claims, most have been disallowed, and some remain unresolved.  The amounts at issue vary widely amongst the Defendants, with the Trustee seeking as little as $250,000 from some Defendants and as much as $100 million or more from others.  What all Defendants have in common, however, is that each has asked this Court to withdraw the reference in its respective Recovery Action based upon the Supreme Court's *Stern* decision.

5

<u>**ARGUMENT**</u>

**I.      BANKRUPTCY COURTS LACK CONSTITUTIONAL AUTHORITY TO FINALLY ADJUDICATE ACTIONS TO RECOVER FRAUDULENT AND PREFERENTIAL TRANSFERS**

After *Stern,* the threshold question as to whether a bankruptcy court has constitutional authority to decide a claim brought by the estate is whether the claim to be adjudicated involves a "public" or a "private" right, or otherwise would necessarily be resolved in the claims allowance process.  If the matter involves private rights, and would not necessarily be resolved as part of the claims determination process, Congress cannot vest final adjudicative power over such matters in the bankruptcy court consistent with Article III.  History and Supreme Court precedent confirm the Recovery Actions involve private rights and cannot be adjudicated by the Bankruptcy Court.

**A.      The Article III Problem:  The Constitution, the Bankruptcy Statutes and Pre-*Stern* Supreme Court Precedent**

Article III, section 1 of the United States Constitution provides:  "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."  The same provision further provides that the judges of the Article III courts "shall hold their Offices during good Behavior" and "receive for their Services[] a Compensation[] [that] shall not be diminished during their tenure."  Vesting the judicial power of the United States in Article III courts with judges appointed with life tenure and with irreducible compensation serves the dual purpose of protecting separation of powers and individual liberties; *i.e.*, it ensures that the rights of citizens are adjudicated by independent arbiters who are not beholden to the authority of either the legislative or executive branches.  *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982) (stating that Article III is "an inseparable element of the constitutional system of checks and balances" that acts as a

"guarantee of judicial impartiality"); *Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011) (stating that Article III protects individual liberty by ensuring that "each judicial decision would be rendered, not with an eye toward currying favor with Congress or the Executive, but rather with the '[c]lear heads . . . and honest hearts' deemed 'essential to good judges'") (quoting 1 *Works of James Wilson* 363 (J. Andrews ed. 1896)).

The Supreme Court has repeatedly ruled that "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decision making if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities outside Article III." *Stern*, 131 S. Ct. at 2609; *see also N. Pipeline*, 458 U.S. at 57-58; *Freytag v. Comm'r, Internal Revenue Serv.*, 501 U.S. 868, 878 (1991); *CFTC v. Schor*, 478 U.S. 833, 850-51 (1986); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 600-01 (1985). Accordingly, the Court has "long recognized that, in general, Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" *Stern*, 131 S. Ct. at 2609 (quoting *Murray's Lessee*, 59 U.S. at 284). The Supreme Court has also consistently ruled that when a suit is made of "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts. *See N. Pipeline*, 458 U.S. at 90.

Bankruptcy courts are not Article III courts and bankruptcy judges are not Article III judges. Yet, beginning in 1978, Congress twice attempted to vest bankruptcy courts with broad authority not only to oversee liquidations and reorganizations, but also to finally adjudicate causes of action that are "the stuff of the traditional actions at common law." *N. Pipeline*, 458 U.S. at 90. These attempts have twice failed. In both *Northern Pipeline*, 458 U.S. 50 (1982),

and most recently in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court found that Congress's broad grant of authority to the bankruptcy courts was unconstitutional.

In 1978, Congress enacted a comprehensive revision of the bankruptcy laws by creating new non-Article III bankruptcy courts "as adjuncts to the district court" and granting the new courts jurisdiction over all "civil proceedings arising under title 11 or arising in or related to cases under title 11." Bankruptcy Act of 1978, § 241 (the "1978 Act"). The scope of the 1978 Act was expansive enough to include within the bankruptcy courts' jurisdiction causes of action owned by the debtor at the time of the petition for bankruptcy, including those based on state law. In *Northern Pipeline*, the Court found that Congress had overstepped its bounds by giving non-Article III bankruptcy judges the power to issue final orders on state law claims that existed independent of and antecedent to the filing of a debtor's bankruptcy petition. 458 U.S. at 54, 84. The Court found this broad grant of authority unconstitutional because it "ha[d] impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and ha[d] vested those attributes in a non-Article III adjunct." *Id.* at 87 (citation omitted). The fact that the state law claim at issue in *Northern Pipeline* had the potential to enhance the size of the estate was not considered by the Supreme Court to be a sufficient basis for empowering the bankruptcy court with authority to decide the matter. *See id.* at 71-72.

In striking down the broad grant of authority to bankruptcy judges contained in the 1978 Act, the Supreme Court recognized that there were certain limited rights that non-Article III courts could properly adjudicate. Specifically, the Supreme Court found that Congress could allocate to non-Article III courts final adjudicatory authority over public rights, or rights that do not define the liability between one individual and another and rights that are not otherwise traditionally cognizable in the courts of law and equity. *Id.* at 69-70. Although the Supreme

Court did not fully define the scope of "public rights" (because it was not necessary to do so), it observed that the doctrine "draws upon the principle of separation of powers" in recognition that certain "prerogatives [are] reserved to the political Branches of Government." *Id.* at 67-68.

Thus, the Supreme Court held that the doctrine could extend only to matters arising between the "'Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments,'" and matters "that historically could have been determined exclusively by those departments." *Id.* (citation omitted).  In other words, if the executive or legislative branches accorded rights to individuals based on matters exclusively within their respective domains, then those branches could also identify non-judicial, non-Article III methods for adjudicating those rights.  *See id.* With respect to the case before it, the *Northern Pipeline* Court concluded that the public rights doctrine did not encompass adjudication of a state-created action to recover contract damages to augment the estate.  *See id.* at 71-72.  As to that issue, the Supreme Court's holding was clear; the claim was "'one of private right, that is, of the liability of one individual to another under the law as defined'" and could not be finally adjudicated by the bankruptcy court.  *Id.* (citation omitted).

Following *Northern Pipeline,* Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act"), which created a bifurcated system of bankruptcy adjudication.  The bankruptcy courts were vested with substantial power to finally adjudicate "core" matters arising under or arising in a title 11 case, subject to deferential appellate review.  28 U.S.C. §§ 157(b)(1), 158, 1334(a).  "Core" proceedings were defined to include, *inter alia*, matters concerning the administration of the estate, the allowance or disallowance of claims against the estate, counterclaims by the estate against persons filing

claims against the estate, and proceedings to determine, avoid or recover preferences and fraudulent conveyances.  *See* 28 U.S.C. §§ 157(b)(2)(A)-(P).  As to "non-core" matters otherwise "related to" a case under title 11, bankruptcy courts were granted limited authority to issue proposed findings of fact and conclusions of law subject to *de novo* review by an Article III court.  *See* 28 U.S.C. §§ 157(c)(1), 1334(a).

### B.    The *Stern* Decision

More than twenty-five years after passage of the 1984 Act, the Supreme Court was again faced with an Article III challenge to a bankruptcy court's resolution of a debtor's suit.  In *Stern*, the challenged claim was a common law counterclaim brought against an individual who had sued the estate in bankruptcy court.  *See Stern*, 131 S. Ct. at 2601-02.  The claim fit squarely within the definition of a core proceeding under section 157(b)(2)(C) – a counterclaim by the estate against persons filing claims against the estate.  The *Stern* Court concluded that while "§ 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on [the] counterclaim, Article III of the Constitution does not."  *Id.* at 2608.

In reaching its conclusion, the Supreme Court determined that the statutory "core" designation was not determinative of the Constitutional question, which could only be resolved by analyzing whether the counterclaim fit any of the "varied formulations of the public rights exception."  *Id.* at 2614-15.  The Supreme Court found that none of those formulations applied. *See id.*  The counterclaim "was not a matter that [could] be pursued only by grace of the other branches," nor one that "'historically could have been determined exclusively by' those branches."  *Id.* at 2614 (citation omitted).  It did "not flow from a federal regulatory scheme," nor was it "'completely dependent upon' adjudication of a claim created by federal law."  *Id.* at 2614.  It was simply a common law claim that was in no way dependent upon the will of

Congress for its existence.  *Id.*  As such, it constituted a "private right" that could not be finally adjudicated by the bankruptcy court.  *Id.* at 2614-15.

The lesson of *Stern* is simple: a bankruptcy court's authority to finally adjudicate a claim is not determined solely by reference to the list of core proceedings in section 157(b)(2).  *See id.* at 2608; *see also Retired Partners of Coudert Bros. Trust v. Baker & Mackenzie LLP* (In re Coudert Bros.), App. No. 11-2785 (CM), 2011 WL 5593147, at *7 (S.D.N.Y. Sept. 23, 2011); *In re Levine*, No. 11 Civ. 9101, 2012 WL 310944, at *2 (S.D.N.Y. Feb. 1, 2012); *Weisfelner v. Blavatnik* (In re Lyondell Chem. Co.), Nos 11 Civ. 8251, 11 Civ. 8445, 2012 WL 1038749, at *4, 6-7 (S.D.N.Y. Mar. 29, 2012).  Rather, a court must also analyze "whether the claim to be adjudicated involves a 'public' or 'private' right."  *In re Coudert Brothers LLP*, 2011 WL 5593147, at *7 (citing *Stern*, 131 S. Ct. at 2594, and *N. Pipeline*, 458 U.S. at 50).  If the latter, the bankruptcy court cannot constitutionally exercise final adjudicative authority consistent with Article III.  *See id.*  As shown below, all of the Recovery Actions involve only "private rights," and accordingly, only an Article III court, not a bankruptcy court, can adjudicate them.

### C.  The Recovery Actions Brought by the Trustee May Not Be Constitutionally Adjudicated by the Bankruptcy Court

The Trustee's claims raise traditional common law causes of action seeking the return of purportedly fraudulent and preferential transfers, with the sole purpose of augmenting the bankruptcy estate.  Although the Recovery Actions are asserted under the Bankruptcy Code, they are traditional private law causes of action, "tried by the courts at Westminster in 1789." *N. Pipeline*, 458 U.S. at 90.  As provided in *Stern*,

> [T]he responsibility for deciding [such] suits rests with Article III judges in Article III courts.  The Constitution assigns that job—resolution of "the mundane as well as the glamorous, matters of common law and statute as well as constitutional law, issues of fact as well as issues of law" to the Judiciary.

*Stern*, 131 S. Ct. at 2609.   The Recovery Actions therefore require final adjudication by the District Court.

          1.      <u>Actions to Recover Fraudulent and Preferential Transfers Are Indisputably Private Right Claims</u>

      The Supreme Court declared long ago in *Granfinanciera S.A. v. Nordberg*, that fraudulent and preferential transfer claims "'constitute no part of the proceedings in bankruptcy but concern controversies arising out of it.'"  492 U.S. at 56 (citation omitted).   As the Court previously stated in *Northern Pipeline*, they are "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," 458 U.S. at 90; and, as such, they are "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res."  *Granfinanciera*, 492 U.S. at 56.   Having so decided, the Supreme Court concluded that the recovery action brought by the trustee was "more accurately characterized as a private rather than a public right."  *Id.* at 55.

      In *Stern*, the Supreme Court adopted its prior *Granfinanciera* analysis and holding, which controls the first question posed by this Court.   Fraudulent avoidance claims cannot be anything other than claims in respect of "private" rights:

> Although the issue admits of some debate, a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems to us more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions.  In *Northern Pipeline Construction Co.* . . . the plurality . . . emphasized that state-law causes of action for breach of contract or warranty are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings.  The plurality further said that "matters from their nature subject to 'a suit at common law or in equity or admiralty'" lie at the "protected core" of Article III judicial power. . . . There can be little doubt that fraudulent conveyance actions by bankruptcy trustees-suits which, we said in *Schoenthal v. Irving Trust Co.* . . . "constitute no part of the proceedings in bankruptcy but concern controversies arising out of it" - are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than

they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.  They therefore appear matters of private rather than public right.

*Granfinanciera*, 492 U.S. at 56 (citations omitted).[2]

Simply put, as *Stern* recognizes, *Granfinanciera* ends the inquiry with respect to the private nature of fraudulent conveyance claims brought pursuant to sections 544, 548 or 550 of the Bankruptcy Code.  *See In re Lyondell Chem. Co.*, 2012 WL 1038749, at *6 ("Under both *Stern* and *Granfinanciera*, then, it is axiomatic that a fraudulent conveyance claim against a person who has not submitted a claim against a bankruptcy estate . . . is a matter of private right.").  *Granfinanciera* does the same with respect to preference actions.  That is because like fraudulent conveyance suits, preferences were traditionally heard at law in 18th-century England, usually in the guise of actions for trover or money had and received.  492 U.S. at 43; *see also Schoenthal v. Irving Trust Co.*, 287 U.S. 50, 94 (1932) ("In England, long prior to the enactment of our first Judiciary Act, common-law actions of trover and money had and received were resorted to for the recovery of preferential payments by bankrupts.").  Indeed, the Supreme Court acknowledged in *Granfinanciera* that prior to passage of the Bankruptcy Act of 1978, "'[s]uits to recover preferences constitute[d] no part of the proceedings in bankruptcy'" but, like fraudulent conveyance actions, "were deemed separate, plenary suits to which the Seventh Amendment applied."  *Id.* at 49-50 (citation omitted).  For that reason, the *Granfinanciera* Court did not hesitate to conclude: "There is no dispute that actions to recover preferential *or* fraudulent

---

[2]      In *Stern*, the Court adopted and extended to the Article III context, the analysis of the "public right" doctrine that *Granfinanciera* developed in the Seventh Amendment context. *Stern*, 131 S. Ct. at 2614.  That is not surprising, given the Supreme Court's express reliance on its Article III jurisprudence in addressing the public/private rights issue in *Granfinanciera*.  492 U.S. at 53-61; *see Dev. Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, No. 11 civ. 6337(CM), 2011 WL 6780600, at *2 (S.D.N.Y. Dec. 23, 2011) ("*Granfinanciera* effectively eviscerates [the] suggestion that there might be some difference between the scope of public rights for Article III purposes and for Seventh Amendment purposes . . . .").

transfers were often brought at law in late 18th-century England."  492 U.S. at 43 (emphasis added).

Once it is clear (as demonstrated above) that the 1984 Act did not "'creat[e] a new cause of action, and remedies therefor, unknown to the common law'" *id.* at 60 (citation omitted), it is axiomatic that Congress cannot eliminate a party's right to adjudication by an Article III court merely by relabeling a cause of action to which it attaches and placing exclusive jurisdiction over it in a specialized court.  *See id.* at 52 (noting that Congress cannot simply codify a legal right and "conjure away the Seventh Amendment by mandating that traditional legal claims be . . . taken to an administrative tribunal").  Accordingly, the Bankruptcy Court may not adjudicate the Recovery Actions.

Many, if not most, district courts that have considered the issue have concluded that bankruptcy courts may not finally adjudicate actions that seek to avoid and recover fraudulent conveyances pursuant to section 544, 548 or 550 of the Bankruptcy Code, because, as suits traditionally heard in the English common law courts in the 18th century, they are private claims. *See, e.g.*, *In re Lyondell Chem. Co.*, 2012 WL 1038749, at *6; *Adelphia Recovery Trust v. FLP Grp., Inc.*, No. 11 Civ. 6847(PAC), 2012 WL 264180, at *3-5 (S.D.N.Y. Jan. 30, 2012); *Dev. Specialists, Inv. v. Orrick, Herrington & Sutcliffe, LLP*, 2011 WL 6780600, at *2-3; *In re Coudert Brothers LLP*, 2011 WL 5593147, at *8-9; *In re Heller Ehrman LLP*, 464 B.R. 438, 354 (N.D. Cal. 2011); *In re Canopy Fin., Inc.*, 464 B.R. 770, 773 (N.D. Ill. 2011).  Several other courts have found the same to be true with respect to actions seeking to recover preferential transfers.  *See, e.g.*, *In re Davis*, No. 07-05181, 2011 WL 5429095, at *12 (W.D. Tenn. Oct. 5, 2011); *In re Se. Materials, Inc.*, Nos. 11-6033, *et al.*, 2012 WL 1034322, at *8-9 (Bankr.

M.D.N.C. Mar. 27, 2012); *In re Am. Hous. Found.*, No. 09-20232-RLJ-11, 2012 WL 443967, at *8 (N.D. Tex. Feb. 10, 2012).

Admittedly, a number of courts have disagreed, ruling that the bankruptcy courts do have the power to enter final judgments in fraudulent conveyance and preference actions.[3]   The principal rationale for so holding is that fraudulent conveyance and preference actions fit within one of the varied formulations of the public rights exception discussed in *Stern*; *i.e.,* they "flow from a federal statutory scheme," or are "completely dependent upon adjudication of a claim provided by federal law," or the "asserted authority to decide them is limited to a particularized area of law."   Those arguments run directly contrary to the clear language of *Stern,* which specifically concludes that the debtor's "counterclaim – *like the fraudulent conveyance claim at issue in Granfinanciera* – does not fall within any of the varied formulations of the public rights exceptions in this Court's cases."   131 S. Ct. at 2614 (emphasis added).

Other courts have held that the *Stern* decision must be read narrowly and applied only to the precise type of claim addressed in *Stern*, *i.e.*, state law counterclaims that are not resolved in the process of ruling on a creditor's claim.   *See, e.g.*, *In re Ambac Fin. Grp.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011); *In re Direct Response Media, Inc.*, Adv. No. 10-50855(KG), 2012 WL 112503, at *9-10 (Bankr. D. Del. Jan. 12, 2012).   That narrow reading, however, ignores the important admonition made by the *Stern* Court:

> What is plain here is that this case involves the most prototypical exercise of judicial power; the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action

---

[3] *See, e.g.*, *In re DBSI, Inc.*, Nos. 10-54648(PJW), *et al.*, 2012 WL 1242305, at *3 (Bankr. D. Del. Apr. 12, 2012; *In re Direct Response Media, Inc.*, Adv. No. 10-50855(KG), 2012 WL 112503, at *9-10 (Bankr. D. Del. Jan. 12, 2012); *In re Safety Harbor Resort & Spa*, 456 B.R. 703, 717-18 (Bankr. M.D. Fla. 2011).

> neither derives from nor depends upon any agency regulatory regime.  If such an
> exercise of judicial power may nonetheless be taken from the Article III Judiciary
> simply by deeming it part of some amorphous "public right," then Article III
> would be transformed from the guardian of individual liberty and separation of
> powers we have long recognized into mere wishful thinking.

131 S. Ct. at 2615.  So too, here.  The exercise of judicial power over the common law derived

Recovery Actions may not be taken from the Article III judiciary.  As stated in *Stern*, the

"'experts' in the federal system at resolving common law [claims] such as [the Recovery

Actions] are the Article III courts, and it is with those courts that [the Recovery Actions] must

stay."  131 S. Ct. at 2615.

This Court should follow the majority of district courts that have considered the issue and

concluded that the bankruptcy courts do not have the power to enter final judgments in

fraudulent conveyance and preference actions.

2.      The Recovery Actions Will Not Be Resolved in the Claims Allowance
        Process

The *Stern* Court identified one instance where a bankruptcy court might constitutionally

make final determinations with respect to private rights, *i.e.*, when those rights are necessarily

fully disposed of in the claims allowance process.  The *Stern* Court said:

> *Granfinanciera's* distinction between actions that seek "to augment the
> bankruptcy estate" and those that seek "a pro rata share of the bankruptcy res,"
> reaffirms that Congress may not bypass Article III simply because a proceeding
> may have *some* bearing on a bankruptcy case; the question is whether the action at
> issue stems from the bankruptcy itself or would necessarily be resolved in the
> claims allowance process.

131 S. Ct. at 2614 (citation omitted).  In so ruling, the *Stern* Court noted that the filing of a claim

itself would not be determinative of the bankruptcy court's authority to finally adjudicate an

action asserted by the estate against the party filing the claim:

> [I]t is hard to see why Pierce's decision to file a claim should make any difference
> with respect to the characterization of Vickie's counterclaim.  "'[P]roperty
> interests are created and defined by state law,' and '[u]nless some federal interest

16

requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'"

*Id.* at 2616 (citation omitted).

Thus, what matters here is not whether claims were filed by certain Defendants, but whether resolution of the Recovery Actions would necessarily be resolved by the claims allowance process. As described below, many of the Recovery Actions before the Court were brought by the Trustee against Defendants who never filed a claim. As such, there can be no argument that those Recovery Actions will "necessarily be resolved in the claims allowance process." *Id.* at 2618. Even as to those Defendants who did file claims, the Recovery Actions are sufficiently divorced from the claims allowance process to require adjudication by an Article III court.

### a.   *Defendants Who Have Not Filed and Cannot File Claims*

Many Defendants have not filed claims in the SIPA liquidation proceeding. Even for those that did, a large number of their claims were rejected because they are not, and have never been, customers of Madoff Securities (the "Non-Customer Defendants"). *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp. (In re Bernard L. Madoff Inv. Sec., Ltd.)*, Nos. 11 Civ. 5683, *et al.*, 2012 WL 28468, at *9 (S.D.N.Y. Jan. 4, 2012) (finding that investors in feeder funds do not qualify as customers of Madoff Securities under SIPA). Recovery Actions have been brought against the Non-Customer Defendants simply because they are allegedly recipients of transfers initially made by Madoff Securities to a customer, who subsequently passed on that transfer (or some part of it) to a Non-Customer Defendant.[4] Similarly situated are Defendants who were

_____

[4] These "subsequent transferees" have only a remote connection to the estate and no connection to the claims allowance process; *i.e.*, they allegedly are the recipients of transfers made from a non-debtor transferor to a non-debtor transferee, often in connection with a securities contract or other business relationship.

customers of Madoff Securities (with accounts closed prior to December 11, 2008 or with accounts open as of that date) who did not file claims in the SIPA liquidation proceeding, (the "Non-Claimant Defendants").

Clearly, Recovery Actions brought against the Non-Customer Defendants and the Non-Claimant Defendants have no connection to the allowance and disallowance of claims and serve only as a method for the Trustee to augment the estate. That by itself is not sufficient to establish a basis for final adjudication of a private right by the bankruptcy court. *Granfinanciera*, 492 U.S. at 55-56; *Schoenthal*, 287 U.S. at 94-95. Accordingly, Recovery Actions brought against the Non-Customer Defendants and the Non-Claimant Defendants must be finally adjudicated by an Article III court.

### b.   *Defendants Who Filed Claims That Were Summarily Decided Without Reference To the Recovery Actions*

Many Defendants were customers of Madoff Securities and filed claims in the SIPA liquidation proceeding. Their claims, however, have already been summarily and finally decided through a process completely divorced from the Recovery Actions (the "Claimant Defendants").

In 2009, the Trustee determined that only customers that had deposited more than they had withdrawn would be entitled to partake in the ratable distribution of Madoff Securities customer property. As part of his determining whether any customer had net equity, the Trustee calculated the amount of a customer's claim by "crediting the amount of cash deposited by the customer into his or her [Madoff Securities] account, less any amounts withdrawn from it." *In re Bernard L. Madoff Inv. Sec., LLC*, 654 F.3d 229, 233 (2d. Cir. 2011), *petition for cert. filed*, 80 BNA U.S.L.W. 3483 (U.S. Feb. 3, 2012) (No. 11-968). All withdrawals, whether fraudulent, preferential, or not, were subtracted from the investors' claims. When the Trustee identified those who withdrew more than they had deposited, and disallowed their claims, he did so

18

irrespective of whether they received purported fraudulent or preferential transfers.  Similarly, those with positive net equity could participate in the distributions irrespective of whether they innocently, fraudulently or preferentially withdrew any monies from their Madoff Securities accounts.  *See id.* at 233.  This methodology was upheld by the United States Court of Appeals for the Second Circuit.  *Id.* at 229.  Accordingly, resolution of the Recovery Actions against the Claimant Defendants will have no bearing on the claims allowance process that has been definitively resolved already.

Under the reasoning of *Stern v. Marshall*, the fact that some Defendants have filed claims should not have any bearing on the question of whether the Bankruptcy Court may finally determine the Recovery Actions.  The Trustee's method of calculating and allowing claims (which is already complete) ensured that there would be no overlap with the Recovery Actions (which have hardly commenced).  *See Stern*, 131 S. Ct. at 2620 (stating that a bankruptcy lacks authority to enter final judgment on a claim "that is not resolved in the process of ruling on a creditor's proof of claim").  Moreover, the legal and factual determinations that will be required for the Trustee to avoid and recover any of the transfers at issue here, *e.g.*, whether the transferee gave value and whether it acted in good or bad faith, will be unique to the avoidance and recovery proceedings; they certainly played no role in the determination of any claimant's net equity.  The Claimant Defendants, then, are in the same position as the Non-Customer and Non-Claimant Defendants; the only connection the Recovery Actions have to the liquidation is that they have the potential to augment the estate.  That is not a proper basis for concluding that the Recovery Actions involve public rights.  *See Granfinanciera*, 492 U.S. at 56.

Moreover, the fact that the Claimant Defendants filed claims against the SIPA estate – before the Supreme Court decided *Stern* – cannot possibly mean that they knowingly consented

to a non-Article III court's final adjudication of fraudulent transfer or preference claims against

them.  *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472

(S.D.N.Y. 2011) ("*Stern* provided the [Defendants] with a legal basis to contest the bankruptcy

court's adjudicative power that they did not have before last summer.  For that reason, the

[Defendants] should not be found to have consented to final adjudication in the Bankruptcy

Court."); *Adelphia Recovery Trust v. FLP Grp., Inc.*, 2012 WL 264180, at *5 ("[T]he Court will

not read Defendants [sic] pre-*Stern* conduct as an implied consent to final adjudication by the

bankruptcy court because any such consent was not knowingly made.").  *Stern* itself recognizes

that filing a claim prior to the claim-filing deadline does not necessarily constitute consent to a

bankruptcy court's final adjudicatory authority of claims against the claimant because the

claimant has no choice but to file a claim if it wishes to recover from the estate.  *Stern*, 131 S. Ct.

at 2614 (citing *Granfinanciera*, 492 U.S. at 55 n.14) ("Pierce did not truly consent to resolution

of Vickie's claim in the bankruptcy court proceedings.  He had nowhere else to go if he wished

to recover from Vickie's estate."); *see also Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. at

471-72 ("relinquishment of rights to an Article III decision maker" must be "knowing and

voluntary").  Because the Claimant Defendants had no choice but to file claims in order to be

eligible to recover from the SIPC insurance fund and to be eligible to obtain customer property –

including recovering their claims for lost principal – their filings were not knowing and

voluntary consents to the Bankruptcy Court's final adjudication of future fraudulent transfer

claims.

       Accordingly, Recovery Actions brought against the Claimant Defendants must be finally

adjudicated by an Article III court. [5]

> ### c.   Defendants Who Filed Claims That Have Not Yet Been Resolved

Finally, there are Defendants who filed claims as to which the Trustee has either filed objections, or sought disallowance, under section 502(d) or sought equitable subordination pursuant to section 510(c).   As to the former, this Court has already determined that the objections cannot be maintained in a SIPA Trusteeship.   *Picard v. Katz*, 462 B.R. 447, 456 (S.D.N.Y. 2011) (finding that SIPA overrides section 502(d) of the Bankruptcy Code and "provides that securities customers who have received avoidable transfers may still seek to pursue those transfers as creditors of the SIPA estate"), *motion to certify appeal denied*, 466 B.R. 208 (S.D.N.Y. 2012); 15 U.S.C. § 78fff-2(c)(3) (providing property which is fraudulent or preferentially transferred "shall be deemed to have been the property of the debtor, and, if such transfer was made to a customer for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding"); *see also* 15 U.S.C. § 78fff (providing that chapters 1, 3, and 5 of the Bankruptcy Code will apply in a SIPA trusteeship "[t]o the extent consistent with the provisions" of SIPA).   Because a customer's receipt of avoidable transfers does not provide any basis to disallow a customer claim, the determination of customer claims will not resolve the Trustee's claims to avoid and recover fraudulent or preferential transfers, "necessarily" or otherwise.   *Stern*, 131 S. Ct. at 2617.

As to equitable subordination, there is no reason to believe that the determination of whether any customer claim should be equitably subordinated will "necessarily resolve" the

---

[5]   Further, it would be highly inefficient to withdraw the reference for only those Defendants that did not file claims but not for Defendants that did file claims when the issues presented in their cases are otherwise the same.

Trustee's fraudulent and preferential transfer claims against any defendant.  Further, equitable subordination, is a "judge-made doctrine [that] predates Congress's revision of the Code in 1978" and is not reliant upon the will or act of Congress.  *See United States v. Noland*, 517 U.S. 535, 538 (1996).  Historically, a court, without an express legislative grant, could subordinate the claims of one claimant to another strictly on the basis that one claimant was found to have engaged in a course of conduct that "would be fraudulent or otherwise inequitable." *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 698-99 (5th Cir. 1977).  Thus, by subordinating a claim of a creditor who has acted inequitably, a court is not exercising a power, or adjudicating a right, exclusively provided by a federal regulatory scheme.  *Cf. Stern*, 131 S. Ct. at 2614-15.  Indeed, equitable subordination is based on neither the Bankruptcy Code nor SIPA and is not dependent on any uniquely legislative or executive regulatory regimes for its use in the courts.

In sum, because the Recovery Actions are quintessential actions at common law that involve private rights seeking to augment the bankruptcy estate and will not be resolved in the claims allowance process, they can be finally adjudicated only by an Article III court.

## II.   BANKRUPTCY COURTS LACK STATUTORY AUTHORITY TO ISSUE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ACTIONS TO RECOVER FRAUDULENT AND PREFERENTIAL TRANSFERS

As discussed above, *Stern* confirms that the Bankruptcy Court has no authority to issue final orders with respect to the Recovery Actions, which are core matters implicating private rights.  The sole remaining question with respect to mandatory withdrawal, therefore, is whether the Bankruptcy Court has the authority to render proposed findings of fact and conclusions of law with respect to the Recovery Actions.  The answer is no.

It is axiomatic that a court cannot act without an express statutory grant of constitutionally valid judicial authority.  This is true of bankruptcy courts as well as Article III courts.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995) ("The jurisdiction of the

22

bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."). The language of 28 U.S.C. § 157 could not be more clear: in a core proceeding, a bankruptcy court has the authority to enter "orders and judgments, subject to review under section 158 of [title 28]." There is no authority under the statute to propose findings of fact or conclusions of law or to enter anything other than final orders and judgments.

### A.   The Statutory Framework of 28 U.S.C. § 157 Does Not Provide Bankruptcy Courts Any Power To Issue Proposed Findings of Fact and Conclusions of Law with Respect To Core Matters

When interpreting 28 U.S.C. § 157, the starting point must be the plain language of the statute. *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009) ("'Statutory interpretation always begins with the plain language of the statute.'") (citation omitted). The Second Circuit has insisted that courts "must interpret a statute as it is, not as it might be, since 'courts must presume that a legislature says in a statute what it means and means in a statute what it says.'" *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216 (2d Cir. 2008) (citation omitted).

The statute here sets forth a clear and comprehensive framework: all matters that can be adjudicated by bankruptcy courts are designated either "core" or "non-core" matters. 28 U.S.C. § 157(b)(3). With respect to "core" matters, Congress granted bankruptcy courts the authority to issue final orders. 28 U.S.C. § 157(b)(1). For "non-core" matters, Congress granted bankruptcy courts the authority to submit proposed findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1). The statutory scheme is entirely binary. Congress did *not* grant bankruptcy courts the authority to enter final orders on non-core matters. By the same token, Congress did *not* grant bankruptcy courts the ability to submit findings of fact and conclusions of law on core

matters.[6]  The Supreme Court said it succinctly in *Stern*, there are only "[t]wo options.  The statute does not suggest that any other distinctions need be made."  131 S. Ct. at 2605.

The implication of this statutory scheme after *Stern* is clear: by effectively reversing Congress's grant of statutory authority with respect to "core" matters implicating "private rights," *Stern eliminated the only statutory basis upon which a bankruptcy court could adjudicate or otherwise entertain a core matter implicating a private right*.  There is simply no alternative statutory basis pursuant to which Congress has granted bankruptcy courts any power to entertain matters that are both "core" and "private."  Moreover, where, as here, most Defendants are entitled to a jury trial and the parties do not consent to trial in the bankruptcy court, the bankruptcy court cannot issue proposed findings.  *See infra* Point III.B.2.b.  Accordingly, unless and until Congress acts in response to *Stern* (as it did in response to *Northern Pipeline*), only a district court may adjudicate a core bankruptcy matter implicating a private right.  There is no statutory authority for a bankruptcy court to issue proposed findings of facts or conclusions of law on core matters.[7]  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2012 WL 1505349, at *5 (S.D.N.Y. Apr. 30, 2012)

---

[6]      The appellate scheme is similarly binary.  Final orders issued in core proceedings are subject to review under 28 U.S.C. § 158.  Proposed findings and conclusions, however, are subject to review pursuant to Rule 9033(a) of the Federal Rules of Bankruptcy Procedure. Importantly, Rule 9033(a) limits the review to "non-core proceedings."  Indeed, the title of the Rule makes this perfectly clear: "Review of Proposed Findings of Facts and Conclusion of Law in Non-Core Proceedings."  There is no provision in Rule 9033(a) for district court review of proposed findings of facts and conclusions of law in core proceedings, and there is no provision in title 28 for district court review of final orders of the bankruptcy court in non-core proceedings.

[7]      The *Stern* Court itself recognized the need to interpret the statute strictly when it stated that "the statute simply does not provide for a proceeding that is simultaneously core and yet only related to the bankruptcy case."  131 S. Ct. at 2605.  Substitute the legally equivalent concept "and yet only subject to proposed findings of fact and conclusions of law," for "and yet only related to the bankruptcy case" and that statement directly covers this case.  *See id.*, at 2615.

("Indeed, to deviate from what Congress has clearly and constitutionally decreed is a power the judiciary does not possess.").

One appellate court has endorsed this reading of the statute's plain language.  In *Ortiz v. Aurora Healthcare, Inc. (In re Ortiz)*, 665 F.3d 906, 915 (7th Cir. 2011), the Seventh Circuit considered whether a bankruptcy judge's conclusions with respect to a core matter could be treated, post-*Stern*, as proposed findings of fact and conclusions of law for purposes of establishing appellate jurisdiction.  The *Ortiz* Court summarily rejected that possibility:

> For the bankruptcy judge's orders to function as proposed findings of fact or conclusions of law under 28 U.S.C. § 157(c)(1), we would have to hold that the debtors' complaints were "not a core proceeding" but are "otherwise related to a case under title 11."  As we just concluded, the debtors' claims qualify as core proceedings and therefore do not fit under § 157(c)(1).

*Id.* (citation omitted).  This is the only possible reading of the governing statute that comports with, and is not contrary to, its plain language.

**B.      Courts Cannot Rewrite the United States Code To Allow Bankruptcy Courts To Issue Findings of Fact and Conclusions of Law with Respect To Core Matters**

Well-established constitutional principles prohibit courts from rewriting statutes when faced with constitutional deficiencies and clear statutory intent.  As the Supreme Court held in *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996), courts are not "free to rewrite the statutory scheme in order to approximate what [they] think Congress might have wanted had it known that [a particular provision] was beyond its authority," even when their motivation to do so is to salvage an otherwise unconstitutional scheme.  *See also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) ("[M]indful that our constitutional mandate and institutional competence are limited, we restrain ourselves from rewriting state law to conform it to constitutional requirements, even as we strive to salvage it.") (brackets and internal quotation marks omitted).  Even if the Court were free to rewrite the statute based on its perception of

Congress's motives (and there is no basis for the Trustee to ask this Court to do so), there is no reason to believe that Congress would favor a "report and recommendation" scheme with respect to core claims.

Congress crafted 28 U.S.C. §§ 157 and 158 to satisfy several important objectives. One such objective was to grant bankruptcy courts the power to hear both core and non-core matters. Another was efficiency.[8]  Requiring that findings and recommendations be first made by the bankruptcy court on matters which that court lacks constitutional authority to adjudicate, only to have the entire decision reviewed anew by a competent district court, would expand the universe of dual proceedings beyond what Congress envisioned, increase the cost and duration of private litigation, and place significant demands on scarce judicial resources.  Furthermore, where cases are tried by a bankruptcy court but factual findings are subject to *de novo* review by a district court that had no opportunity to observe witness demeanor or otherwise directly observe the fact finding process, significant evidentiary principles are compromised.  To focus *only* on the fact that Congress intended bankruptcy courts to adjudicate core matters ignores the other equally valid policy objectives that were evident in the pre-*Stern* statutory scheme.  It is not the role or place of the judiciary to decide how Congress would respond to *Stern*.

Importantly, the *Stern* majority expressly considered whether it had the power to rewrite the statute and concluded that it did not.  *Stern*, 131 S. Ct. at 2605.  Drawing an important distinction between the need to interpret the statute and the need to "'rewrit[e]' the statute," the

---

[8]     The Supreme Court, citing the Third Circuit's decision in *Pacor, Inc. v Higgins*, 743 F.2d 984 (3d Cir. 1984), *overruled on other grounds by Things Remembered Inc. v. Petrarca*, 516 U.S. 124 (1995), has expressly recognized that judicial efficiency is at the heart of the statutory scheme establishing the jurisdictional framework for the bankruptcy courts.  *Celotex Corp.*, 514 U.S. at 308 ("'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'") (citation omitted).

Supreme Court expressly ruled that rewriting title 28 was something that even the Supreme Court "may not do."  *Id*.  That conclusion should be dispositive of this issue.

### C.    Courts That Have Held a Bankruptcy Court May Issue Proposed Findings of Fact and Conclusions of Law with Respect To Core Matters Have Erred

A handful of courts have resisted the conclusion that *Stern* has dispossessed bankruptcy courts of the power to adjudicate core matters addressing private rights.  Such courts argue that if the bankruptcy courts' power to issue final orders has been eliminated, then a *new* power to recommend proposed findings of fact and conclusions of law must now be created by the judiciary.  *See Adelphia Recovery Trust v. FLG Grp., Inc.*, No. 11 Civ. 6847(PAC), 2012 WL 264180, at *6 (S.D.N.Y. Jan. 30, 2012) (noting that bankruptcy courts may issue proposed findings of fact and conclusions of law in a fraudulent transfer action even though Congress failed to "provide bankruptcy courts with explicit power" to do so); *Weisfelner v. Blavatnik* (In re Lyondell Chem. Co.), Nos. 11 Civ. 8251 (DLC), 11 Civ. 8445, 2012 WL 1038749, at *10 (S.D.N.Y. Mar. 29, 2012) (finding that a bankruptcy court can propose findings of fact and conclusions of law in a private "core" matter despite the fact that Congress did not provide for the mechanism in the statute).  In a similar vein, some courts argue that the Supreme Court itself has already effectuated the needed change to title 28 of the U.S. Code.  *See, e.g., In re Refco Inc.*, 461 B.R. 181, 192 (Bankr. S.D.N.Y. 2011) (holding that "*Stern* 'removed' the offending counterclaim from core jurisdiction" and converted the issue into a non-core matter); *Gecker v. Flynn* (In re Emerald Casino, Inc.), 459 B.R. 298, 300 n.1 (Bankr. N.D. Ill. 2011) ("[The] Supreme Court . . . directed a more reasonable remedy for the constitutional violation it found in *Stern* . . . .").

In defending the conclusion that title 28 of the U.S. Code has been, or should be, rewritten by the courts in order to mitigate the jurisdictional implications of *Stern*, courts have

found little on which to hang their hats.  Several courts rely almost exclusively on dicta suggesting that the *Stern* majority viewed its holding as "narrow," and on a prediction by the majority that the constitutional infirmity of section 157 of title 28 would not "meaningfully change[] the divisions of labor in the current statute."  *See, e.g.*, *Retired Partners of Coudert Bros. Trust v. Baker & Mackenzie LLP* (In re Coudert Bros. LLP), No. 11-2785(CM), 2011 WL 5593147, at *14 (S.D.N.Y. Sept. 23, 2011) (bankruptcy court judgment deemed to constitute proposed conclusions of law and recommendation because "*Stern* suggests that the usual division of labor should not be much upset").  But interpreting mere dicta to be acts of judicial legislation stretches the majority's words beyond their true meaning.  The incidental musings relied upon by courts simply do not support the conclusion that the Supreme Court has, *sub silentio*, radically amended section 157 of title 28 of the U.S. Code and created a new jurisdictional system empowering bankruptcy courts to adjudicate core matters by issuing proposed findings of fact and conclusions of law.  If the Supreme Court truly intended to reverse Congressional intent and rewrite 28 U.S.C. § 157, it surely would have explicitly said so.  Instead, the Supreme Court said that was something "it may not do."  *Stern*, 131 S. Ct. at 2605.

That courts have felt compelled to adopt these strained positions is perhaps a result of their desire to leave undisturbed the existing division of labor between district courts and bankruptcy courts.  But the "results oriented" nature of such arguments is both readily apparent and unconvincing.  The *Stern* Court cautioned against any temptation to allow pragmatic concerns regarding what might be "efficient, convenient, and useful" to dominate, indicating that it "goes without saying" that practical preferences cannot be allowed to trump constitutional rules.  *Id.* at 2619.  In any event, there really are no pragmatic concerns here; the only consequence flowing from *Stern* is that district courts will retain original jurisdiction over private

causes of action in core matters.  This is not a dilemma; it is the very result anticipated by the Constitution and insisted upon by *Stern*.[9]

Pending further legislative action, 28 U.S.C. § 157 provides no effective grant of statutory power pursuant to which a bankruptcy court can propose findings of fact and conclusions with respect to core matters addressing private rights.

III. **EVEN IF IMMEDIATE WITHDRAWAL OF THESE ADVERSARY PROCEEDINGS IN THEIR ENTIRETY WERE NOT MANDATORY UNDER *STERN*, THIS COURT SHOULD WITHDRAW THEM NOW IN THE EXERCISE OF ITS DISCRETION**

An Article III court must keep the Recovery Actions for cause under 28 U.S.C. § 157(d) in the wake of *Stern*, no matter how this Court determines the issues addressed above.  Put simply, the question is not whether an Article III court *should* decide the Trustee's claims – under the Constitution, an Article III court must do so.  Permitting a bankruptcy court to hear a case that it cannot decide is not economical or efficient, particularly when so many key issues are already subject to mandatory withdrawal of the reference.  Rather, the question is *when* will an Article III court be drawn into these adversary proceedings.  The parties and the judiciary should not be compelled to misspend time and other resources in skirmishes before the bankruptcy court which, as *Stern* confirms, are only precursors to a *de novo* adjudication by an Article III court. Even assuming, *arguendo*, that *Stern* does not require immediate withdrawal of the Recovery Actions in their entirety, this Court should nonetheless retain them now in the exercise of its discretion.

---

[9]    Standing orders of general application fare no better than individual rulings under these legal principles.  Orders such as the Amended Standing Order suffer from the same defects as individual orders that seek to grant bankruptcy courts new powers of adjudication where the existing statutory framework provides them with none.  *See In re Standing Order of Reference re: Title 11*, No. 12 MC 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.), Dkt. No. 1 (the "Amended Standing Order").  Simply put, the court lacks the power to grant new powers of adjudication that have not been expressly granted by statute.

### A.    The Permissive Withdrawal Analysis Post-*Stern*

It is hornbook law that under 28 U.S.C. § 157(d):

> [A] judge of the District Court, in his or her discretion, may *sua sponte* [or at a party's request] withdraw the reference in a given case, for any of a wide variety of reasons, such as that it is inextricably intertwined with a non-bankruptcy case before the district judge, or that it threatens to interfere with the District Court's rulings in a related matter, or that judicial efficiency can better be achieved by removing the case to the District Court, or any other "cause shown."

*Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011) (citation omitted).  This Court is fully familiar with the governing law, and we address here only the nuances that *Stern* has brought to the issue.

Before *Stern*, the prevailing test for "cause" was set forth in *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993), under which a district court's decision permissively to keep a matter from the bankruptcy court began with the statutory "core/non-core" distinction, *id.* at 1101, and continued with the "weighing" of prudential factors such as the effective use of judicial and party resources, uniformity in bankruptcy administration, and the like.  *Id.*  *Stern*, however, renders irrelevant (or at least weakens) the core/non-core statutory distinction that *Orion* understandably makes the first stage in its analysis.  Indeed, the Supreme Court declared in *Stern* that the bankruptcy court was *without* power in that case to address a specific claim – a counterclaim by the debtor-in-possession – which under section 157(b)(2) was *expressly* defined as "core," thus rendering the statutory classification from which the *Orion* test proceeds less relevant.

Accordingly, Judge McMahon has already recognized in *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457 (S.D.N.Y. 2011), that after *Stern* the familiar *Orion* sequence should give way to a threshold determination, untethered to the statutory "core/non-core" divide, *see id.* at 464, as to whether the bankruptcy court may constitutionally

30

adjudicate the matter at issue fully, may only "hear and recommend" subject to an Article III court's *de novo* consideration, or may not even do the latter. (*See* discussion *supra*.)[10]  *See Dev. Specialists*, 462 B.R. at 466-67; *In re Lyondell Chem. Co.*, 2012 WL 1038749, at *5-6; *Adelphia Recovery Trust*, 2012 WL 264180, at *3.

Only then, *after* that threshold determination, do the prudential factors in *Orion* rise again to inform the withdrawal inquiry – essentially, whether the matter should be brought for determination to the Article III court *ab initio*, even in those instances where the bankruptcy court may have some power, albeit only to "hear and recommend."  *See Orion*, 4 F.3d at 1101 (stating that where matters are subject to *de novo* review by the district court this "could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court").[11]  Of those factors, "'efficiency and uniformity'" are the overriding considerations.  *Nw. Airlines, Inc. v. City of L.A. (In re Nw. Airlines Corp.)*, 384 B.R. 51, 59 (S.D.N.Y. 2008) (citation omitted); *see also Mishkin v. Ageloff*, 220 B.R. 784, 799-801 (S.D.N.Y. 1998).  For purposes of the Recovery Actions, the prudential factors favor permissive withdrawal.

---

[10]   The Court's consideration of the prudential factors in *Orion* is required only if it determines that the Bankruptcy Court retains some residual power after *Stern* either to "hear and recommend" or to make a final determination.

[11]   As explained in Point II.C., *supra*, the Amended Standing Order is not to the contrary, as it explicitly limits the Bankruptcy Court's power to "hear and recommend" to those matters not "*otherwise ordered by the district court.*"  *Id.* at 1 (emphasis added).  Courts have routinely taken matters out of the hands of the bankruptcy court for "cause" (*i.e.*, permissively) even in the face of standing orders of reference.  *See, e.g., Everett v. MCI, Inc. (In re WorldCom)*, Adv. No. 07 Civ. 9590(DC), 2008 WL 2441062 (S.D.N.Y. June 18, 2008); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, Nos. 03 MDL 1529(LMM), *et al.*, 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006).

**B.      Cause Exists For An Article III Court To Determine The Trustee's Claims**

      1.      <u>These Adversary Proceedings Involve Private Rights and Therefore An Article I Court May Not Adjudicate Them or Render Proposed Findings of Fact and Conclusions of Law</u>

As shown above, these adversary proceedings implicate private rights that the bankruptcy court cannot finally adjudicate.  *See In re Coudert Bros.*, 2011 WL 5593147, at *7.  Thus, the relevant inquiry becomes *when* should an Article III court withdraw these adversary proceedings, and the prudential factors articulated in *Orion* weigh in favor of this Court retaining these proceedings at this juncture.

      2.      <u>An Analysis of the Prudential Factors Favors Permissive Withdrawal</u>

Even assuming, *arguendo*, that the bankruptcy court had the authority to "report and recommend," the *Orion* prudential factors – judicial efficiency and economy, delay, uniformity, right to a jury trial and the prevention of forum shopping – all, where relevant, support retention by an Article III court of the Recovery Actions in their entirety.  *See Orion*, 4 F.3d at 1101.

      *a.      Considerations of Judicial Efficiency, Delay and Litigation Expense All Favor Retention of These Adversary Proceedings By An Article III Court*

Where, as here, inefficiency, delay and extraordinary litigation expenses are looming, it is particularly warranted for an Article III court to retain and finally adjudicate the Trustee's claims.  As succinctly put by Judge McMahon in *Development Specialists*, "[i]t would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated."  462 B.R. at 472.  Plus, the traditional factors of "how far the litigation has progressed," and the "bankruptcy court's [possible] familiarity with the litigation," or that court's "swift[ness in the] resolution of the issues," all point in favor of this Court's adjudicating

the Trustee's claims in the Recovery Actions. *McHale v. Citibank, N.A.*, No. 09 Civ. 6064(SAS), 2009 WL 2599749, at *5 (S.D.N.Y. Aug. 24, 2009).

Even were the Court to find that the bankruptcy court has the power to propose findings of facts and conclusions of law, an Article III court would still need to review any such findings and conclusions that are objected to *de novo* – an inherently duplicative exercise. As Judge McMahon recently observed in *Development Specialists, Inc.*, "[i]f [the bankruptcy court] does not have [the power to finally adjudicate these matters], there will be no advantage to allowing the matter to be heard in Bankruptcy Court, because this Court will eventually need to review the Article I Court's determinations *de novo* review." 462 B.R. at 467.

Thus, *this* Court can be swift and economical in resolving these adversary proceedings. The delay and costs associated with a return to the bankruptcy court would be particularly unfair to many Defendants who are some of Madoff's greatest victims. The litigation costs of duplicative proceedings may well dwarf the claims asserted against some of these Defendants by the well-funded Trustee, thus raising the prospect of coercive settlements. This is especially true because Rule 9033 of the Federal Rules of Bankruptcy Procedure, which sets forth the standard for *de novo* review in non-core proceedings, provides that a District Judge need not rely on the bankruptcy court's findings of fact, but may receive additional evidence. Although, to be sure, *de novo* review does not always necessitate a *de novo* trial, the Court of Appeals reminds us, in the context of reviews of Magistrate Judge's proposed findings but with reasoning equally relevant here, that courts should test credibility determinations in such circumstances by "having the witness testify before the judge." *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999). Many issues in the Recovery Actions – not least the belief or disbelief in a good faith defense to

liability – may be materially informed by the testimony of live witnesses and, in all likelihood, *de novo* review would require this Court to hear live testimony anew – *i.e.*, "*de novo*."

Given the uncertainty over whether the bankruptcy court can even issue proposed findings of fact and conclusions of law, prudence also favors having a court with clear authority hear the Trustee's claims. Were the Second Circuit or the Supreme Court to rule that bankruptcy courts lack the authority to adjudicate private rights, the litigants in the Recovery Actions might be faced with the prospect of having to litigate these issues anew. Such an exercise would prove even more duplicative and costly than *de novo* review. Fundamental fairness to many Defendants, who are already victims, compels withdrawal of the reference in order to preclude any extra layer of costly litigation.

Moreover, many Defendants have asked this Court to address other issues that they believe compel mandatory withdrawal and are dispositive of the Trustee's claims, or at least of their scope and extent – *e.g.*, the application of the value and the "good faith" defenses to subsequent transferees, the application of section 546(e) to customer account activity, the time limitations relevant to transfers that are part of securities transactions or the extraterritorial application of SIPA where the subsequent transferees (and often even the subsequent transferors) were located abroad. Indeed, this Court has already withdrawn the reference with respect to four key issues, besides the *Stern* issue, that are implicated by the Trustee's claims.[12] Withdrawing

---

[12] These issues are as follows: (1) whether section 546(e) of the Bankruptcy Code limits the Trustee's ability to avoid transfers made by Madoff Securities; (2) whether provisions of the Internal Revenue Code that heavily tax undistributed portions of IRAs prevent the Trustee from avoiding IRA distributions that would otherwise be taxed; (3) whether the Trustee may, consistent with non-bankruptcy law, avoid transfers that Madoff Securities purportedly made in order to satisfy antecedent debts; and (4) whether the Trustee has standing to pursue common law claims and, if so, whether the Securities Litigation Uniform Standards Act preempts the Trustee's common law claims. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC* (In re Bernard L. Madoff Sec.), No. 12 MC 115 (JSR) (S.D.N.Y. Apr. 19, 2012), Dkt. No. 22.

the reference as to some of the Trustee's claims and not others could well force Defendants to litigate in both the bankruptcy court and this Court, possibly even simultaneously, and possibly covering the same factual territory at least twice.  This would be wasteful of both judicial and party resources.  *See In re Saltire Indus., Inc.*, Nos. 07 Civ. 3622(AKH), 06 Civ. 4451(AKH), 2007 WL 1815450, at *2 (S.D.N.Y. June 22, 2007) (noting that such duplicative litigation would cause delay and deplete the resources of both the bankruptcy estate and the plaintiffs).  The Defendants and the Trustee would need to duplicate their work to establish a record in both courts.  *See United Orient Bank v. Green* (*In re Green)*, 200 B.R. 296, 299 (S.D.N.Y. 1996).  And the risk of conflicting decisions (in the same adversary proceeding) in those circumstances is ever-present.  *See Mishkin*, 220 B.R. at 800 (noting that the critical question is "efficiency and uniformity").

This Court has already devoted significant time to adjudicating claims by the Trustee and is therefore familiar with many of the key facts and legal principles underlying the Recovery Actions.  This is not a circumstance where the District Court is being asked to keep matters that have been long before the bankruptcy court or to substitute itself for a venue that has developed comparatively more experience with the relevant issues.  Over the last year, this Court has issued more than a dozen decisions concerning claims brought by the Trustee.  *See*, *e.g.*, *Picard v. Kohn*, No. 11 Civ. 1181(JSR), 2012 WL 566298 (S.D.N.Y. Feb. 22, 2012); *Picard v. Katz*, 466 B.R. 208 (S.D.N.Y. 2012); *Picard v. Avellino*, Nos. 11 Civ. 3882(JSR), *et al.*, 2012 WL 826602 (S.D.N.Y. Feb. 29, 2012); *Picard v. Estate of Madoff*, 464 B.R. 578 (S.D.N.Y. 2011); *Picard v. Flinn Invs., LLC*, 463 B.R. 280 (S.D.N.Y. 2011); *Picard v. HSBC Bank, PLC*, 454 B.R. 25 (S.D.N.Y. 2011); *Picard v. HSBC Bank PLC*, 450 B.R. 406; *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011); *Picard v. Katz*, No. 11 Civ. 3605 (JSR), 2011 WL 5873806 (S.D.N.Y. Nov. 23,

2011); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2012 WL 1505349 (S.D.N.Y. Apr. 30, 2012).   Defendants in 760 adversary proceedings (approximately 67% of the approximately 1,140 adversary proceedings filed in the Madoff Securities liquidation proceedings) have moved for the District Court to consider issues raised by the Trustee's claims in place of the bankruptcy court.   Moreover, in *Picard v. Katz* – the largest avoidance claim by the Trustee to come close to trial – this Court addressed myriad issues that are likely common to most or all of the Recovery Actions, which were raised in motions to dismiss, summary judgment motions and motions to strike expert testimony and reports.   *See Picard v. Katz*, No. 11 Civ. 3605(JSR), 2012 WL 691551 (S.D.N.Y. Mar. 5, 2012); Hr'g Tr. at 34, *l*. 22, *Picard v. Katz*, No. 11 Civ. 3605(JSR) (S.D.N.Y. Feb. 23, 2012), Dkt. No. 139; *Katz*, 462 B.R. 447.   On that basis alone, any suggestion that this Court's retention of these adversary proceedings would do a disservice to accumulated knowledge at the bankruptcy court – a sound concern in other, more typical bankruptcy instances – would be groundless in *this* case.[13]

Finally, many of the Recovery Actions involving the Defendants are in their early stages, with little or no discovery having taken place, and so withdrawal will not result in repetition or duplication of efforts.

---

[13]   *Walker, Truesdell, Roth & Assocs. v. Blackstone Grp., L.P. (In re Extended Stay, Inc.)*, 466 B.R. 188 (S.D.N.Y. 2011), is inapposite, because here, unlike there, the Bankruptcy Court has overseen minimal or no pre-trial discovery or motion practice related to the claims at issue. *See id*. at 205.   Nor are the Recovery Actions akin to *In re Lyondell Chem. Co.*, where Judge Cote referred to the "extensive experience the bankruptcy court [had] acquired in this matter" while she "was only made aware of these proceedings [recently], and ha[d] not performed any work on the outstanding motions, presided over any pretrial proceedings, or overseen any discovery or motion practice."   2012 WL 1038749, at *9.

**b.** ***Preservation of Defendants' Right to Jury Trial Favors Retention By An Article III Court***

An overwhelming majority of the Defendants maintain that they have a Seventh Amendment right to a jury trial, and are likely unwilling to waive that right. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989) (jury trial required where the action is not integral to the restructuring of the debtor-creditor relations). Furthermore, many Defendants have indicated that they intend to file counterclaims against the Trustee, which will also require trial by jury. In order for the Bankruptcy Court to conduct jury trials in "core" proceedings, the Defendants must expressly consent, which many (likely most) will not do, *and* the bankruptcy court must be "specially designated to exercise such jurisdiction" by the District Court. 28 U.S.C. § 157(e). And, with regard to issues that are not statutorily or constitutionally "core," the Seventh Amendment's Reexamination Clause prohibits the bankruptcy court from holding jury trials in matters subject to this Court's *de novo* review. *See Orion*, 4 F.3d at 1101.[14] This too favors retention of the claims in this Court.

**c.** ***The Other Applicable Orion Factors Favor Permissive Withdrawal***[15]

The Trustee's claims, to the extent successful, would only augment the debtor's estate, and therefore do not need to be coordinated with (and are independent of) other bankruptcy matters – indeed, as noted above, the Supreme Court held in *Stern* that the bankruptcy court was

---

[14] Even in those cases where claims have been filed, there exists a right to jury trial that the Bankruptcy Court cannot fully vindicate. *See Picard v. Katz*, 2011 WL 5873806, at *2. The Trustee also has a right to a jury trial under certain circumstances. *See Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1328 (2d Cir. 1993).

[15] The brief is not intended to address arguments raised by Defendants that have filed separate motions to withdraw the reference on grounds unrelated to the *Stern* decision, and those Defendants reserve their rights to argue in favor of discretionary withdrawal in those respective proceedings.

divested of power for precisely that reason.   There is thus no issue of "uniformity of administration" if an Article III court retains these adversary proceedings.  *See Dev. Specialists*, 462 B.R. at 473 (even a successful resolution of the Trustee's claims would only "have the effect of augmenting the bankruptcy estate; it [would] have no impact that would require uniform, coordinated adjudication before the Bankruptcy Court").

Furthermore, the Trustee's claims have triggered securities law issues that fall within the province of an Article III court.  Indeed, this Court has recognized that a SIPA liquidation lies at the intersection of securities laws and bankruptcy, thus raising unique legal and factual issues distinct from the conventional matters that bankruptcy courts normally address.  *See Avellino*, 2012 WL 826602, at *2; *Flinn Invs., LLC*, 463 B.R. at 285.  This Court concluded in *Katz* that the inquiry notice typically at issue in ordinary bankruptcies "has much less applicability . . . in a context of a SIPA trusteeship, where bankruptcy law is informed by federal securities law." *Katz*, 462 B.R. at 455.  The "good faith" defense that this Court at least once already has found applicable in a case indistinguishable for present purposes from those at issue here, turns on standards that are informed by the securities laws, with which an Article III Court, not a bankruptcy court, is necessarily more familiar.  *See id.* at 455-56.  *This* Court, not a bankruptcy court, should adjudicate these actions if "uniformity" in the application of the securities laws is to be promoted under *Orion.*

Finally, after hundreds of motions to withdraw and many opinions issued by the District Court shaping the progress of this SIPA liquidation, any concern about forum shopping cannot be regarded as material.  As the Court recognized in *In re Adelphia*, "the usual objectives of 'forum shopping' – finding a  jurisdiction with more favorable law, and geographical convenience – do not apply both the bankruptcy court and district court being bound to follow

38

Second Circuit law, and both courts being located in downtown Manhattan." *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, Nos. 03 MDL 1529(LMM), *et al.*, 2006 WL 337667, at *5 (S.D.N.Y. Feb. 10, 2006).  The law here is, in all material respects, what this Court and the Second Circuit have said is the law.  *See id.*  Defendants simply wish to be before this Court only once.

## CONCLUSION

For the reasons stated above, the Defendants respectfully submit their arguments to answer the three questions posed by the Court in the *Stern* Order.

Dated: May 3, 2012
        New York, New York

                                        **SHEARMAN & STERLING LLP**


                                        By: /s/ Joanna Shally_____
                                              Joanna Shally
                                              Heather Lamberg Kafele
                                              Jessica Lyn Bartlett

                                        599 Lexington Avenue
                                        New York, New York 10022


                                        **KUDMAN TRACHTEN ALOE LLP**


                                        By: _____
                                              Paul H. Aloe
                                              Matthew H. Cohen

                                        The Empire State Building
                                        350 Fifth Avenue, Suite 4400
                                        New York, New York 10118

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**

By: /s/ William P. Weintraub_____
    William P. Weintraub
    Eamonn O'Hagan
    Gregory W. Fox
    Kizzy L. Jarashow

7 Times Square
New York, New York 10036-6516

**GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP**

By: /s/ Douglas L. Furth_____
    Douglas L. Furth

437 Madison Avenue
New York, New York 10022

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By: /s/ David Parker_____

David Parker
Matthew J. Gold
551 Fifth Avenue
New York, New York 10176

**LEWIS & MCKENNA**

By: /s/ Paul Z. Lewis_____
    Paul Z. Lewis
    Gregory S. Goett

521 Fifth Avenue
New York, New York  10175

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

By: /s/ Susan L. Saltzstein
    Susan L. Saltzstein
    Marco E. Schnabl
    Jeremy A. Berman

Four Times Square
New York, New York 10036-6522

**SULLIVAN & WORCESTER LLP**

By: /s/ Jonathan G. Kortmansky
    Jonathan G. Kortmansky
    Franklin B. Velie

1290 Avenue of the Americas
New York, New York  10104

Of counsel:

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Thomas J. Moloney
Lawrence B. Friedman
Lewis J. Liman
Jeffrey A. Rosenthal
Carmine D. Boccuzzi, Jr.
Breon S. Peace
Members of the Firm
One Liberty Plaza
New York, New York 10006

**HOGAN LOVELLS US LLP**

Marc Gottridge
Andrew M. Behrman
875 Third Avenue
New York, New York  10022

**KING & SPALDING**

Arthur J. Steinberg
Heath Rosenblat
1185 Avenue of the Americas

New York, New York  10036-4003

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

Philip Bentley
Elise S. Frejka
1177 Avenue of the Americas
New York, New York 10036

**LAWRENCE VELVEL**

Lawrence Velvel
Massachusetts School Of Law
500 Federal Street
Andover, Massachusetts 01810

**OKIN, HOLLANDER & DELUCA, L.L.P.**

Paul S. Hollander
James D. DeLuca
Gregory S. Kinoian
One Parker Plaza, 12th Floor
400 Kelby Street
Fort Lee, New Jersey  07024

**PRYOR CASHMAN LLP**

Richard Levy, Jr.
David C. Rose
7 Times Square
New York, New York  10036-6569

**RATTET PASTERNAK, LLP**

James B. Glucksman
550 Mamaroneck Avenue
Harrison, New York  10528

**REED SMITH LLP**

James C. McCarroll
Jordan W. Siev
John L. Scott, Jr.
599 Lexington Avenue
New York, New York 10022

**SILLS CUMMIS & GROSS P.C.**

Andrew H. Sherman
One Riverfront Plaza
Newark, New Jersey  07102

**STEPTOE & JOHNSON LLP**

Celina Munoz
Seong H. Kim
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067