**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff,

                v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

---

In re:

MADOFF SECURITIES

---

12-mc-00115 (JSR)

---

**CORRECTED CONSOLIDATED REPLY BRIEF ON BEHALF OF *STERN*
WITHDRAWAL DEFENDANTS RESPONDING TO ISSUES RAISED BY ORDER OF
THE COURT ENTERED ON APRIL 13, 2012**

SHEARMAN & STERLING LLP
Heather Lamberg Kafele
Joanna Shally
Jessica Lyn Bartlett
599 Lexington Avenue
New York, New York 10022

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP
William P. Weintraub
Eamonn O'Hagan
Gregory W. Fox
Kizzy L. Jarashow
7 Times Square
New York, New York 10036-6516

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Susan L. Saltzstein
Marco E. Schnabl
Jeremy A. Berman
Four Times Square
New York, New York 10036-6522

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... iii

ARGUMENT ................................................................................................................... 1

I.   THE BANKRUPTCY COURT LACKS CONSTITUTIONAL AUTHORITY TO
     FINALLY ADJUDICATE THE RECOVERY ACTIONS ................................................ 1

     A.   *Stern* Cannot Be Read To Render Meaningless The Distinction
          Between Private And Public Rights Which Lies "At The Heart" Of
          That Opinion ..................................................................................................... 2

     B.   Avoiding A Meaningful Change In The Law Does Not Justify An
          Unconstitutional Grant Of Adjudicatory Authority To Bankruptcy
          Courts ............................................................................................................... 3

     C.   *Stern* Is Not Limited To State Law Avoidance Claims ............................... 4

     D.   Avoidance Actions In SIPA Liquidations Do Not Constitute "Public
          Rights" ............................................................................................................. 5

II.  RECOVERY ACTIONS EVEN AGAINST CLAIMANT DEFENDANTS MUST
     BE FINALLY ADJUDICATED BY AN ARTICLE III COURT .................................... 6

     A.   Avoidance Actions Will Not "Necessarily Be Resolved In The Claims
          Allowance Process" ......................................................................................... 7

     B.   The Trustee Cannot Rely On Section 502(d) Of The Bankruptcy Code .... 8

     C.   Claimant Defendants Have Not Knowingly And Voluntarily
          Consented To Final Adjudication Of Avoidance Actions By An
          Article I Court ............................................................................................... 11

III. THE BANKRUPTCY COURT MAY NOT "REPORT AND RECOMMEND" ............. 12

IV.  THE TRUSTEE OFFERS NOTHING TO REFUTE THE EXISTENCE OF
     "CAUSE" FOR PERMISSIVE WITHDRAWAL OF THE REFERENCE ...................... 15

     A.   Judicial Efficiency, Expediency And Economy Favor Withdrawal ......... 15

     B.   All The Other *Orion* Factors Favor Retaining The Reference ................. 17

          1.   The Core/Non-Core Distinction is Now of No Relevance ............ 17

          2.   The Defendants are Entitled to Jury Trials .................................. 18

3.      Withdrawing the Reference Will Not Adversely Affect
        Uniformity of Bankruptcy Administration, and Will Promote
        Uniform Application of Securities Laws Which are Integrally
        Related to the Trustee's Claims ....................................................19

4.      Forum Shopping is Not Implicated Here, at Least on
        Defendants' Part............................................................................19

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

## CASES

Page

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529(LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)....................................................19

*Adelphia Recovery Trust v. FLP Grp., Inc.*, No. 11 Civ. 6847 PAC, 2012 WL 264180 (S.D.N.Y. Jan. 30, 2012)........................................................................7, 11, 15

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987)....................................................14

*CFTC v. Schor*, 478 U.S. 833 (1986)..............................................................................6

*Complete Mgmt., Inc. v. Arthur Andersen, LLP* (In re Complete Mgmt., Inc.), Nos. 02 Civ. 1736(NRB), No. 01-03459, 2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002)............17

*Cullen v. United States*, 194 F.3d 401 (2d Cir. 1999)..................................................15

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457 (S.D.N.Y. 2011)..................................................................................7, 11, 17, 19

*Dev. Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, No. 11 Civ. 6337 CM, 2011 WL 6780600 (S.D.N.Y. Dec. 23, 2011)..............................................4, 19

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 130 S. Ct. 3138 (2010)....................13

*Gower v. Farmers Home Admin.* (In re Davis), 899 F.2d 1136 (11th Cir. 1990)...........................3

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) ........................................ *passim*

*Gucci ex rel. Armstrong v. Gucci*, No. 96 Civ. 8216 (JSR), 1997 WL 122838 (S.D.N.Y. Mar. 17, 1997) ......................................................................15

*Hunnicutt Co. v. TJX Cos.* (In re Ames Dep't Stores, Inc.), 190 B.R. 157 (S.D.N.Y. 1995)............................................................................15

*INS v. Chadha*, 462 U.S. 929 (1983) ..............................................................................2

*Katchen v. Landy*, 382 U.S. 323 (1966)....................................................................9, 10

*Kenai Corp. v. Nat'l Union Fire Ins. Co.* (In re Kenai Corp.), 136 B.R. 59 (S.D.N.Y. 1992)......15

*Kirschner v. Agoglia,* No. 11 Civ. 8250(JSR), 2012 WL 1622496 (S.D.N.Y. May 9, 2012) ("*Refco*") ........................................................................ *passim*

*Langenkamp v. Culp*, 498 U.S. 42 (1990)...............................................................................9, 10

*Lain v. Erickson* (In re Erickson Ret. Communities, LLC), No. WDQ-11-3736, 2012 WL
    1999493 (D. Md. May 31, 2012) ...........................................................................17, 18

*Lewis v. City of Chicago*, 130 S. Ct. 2191 (2010) ......................................................................9

*M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*, No. 08-CV-1982, 2008 WL 2596322
    (S.D.N.Y. June 26, 2008).....................................................................................18

*McFarland v. Leyh* (In re Tex. Gen. Petroleum Corp.), 52 F.3d 1330 (5th Cir. 1995) ..................4

*Mishkin v. Ageloff*, 220 B.R. 784 (S.D.N.Y. 1998) ...................................................................15

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) ................. *passim*

*Nw. Airlines, Inc. v. City of L.A.* (In re Nw. Airlines Corp.), 384 B.R. 51 (S.D.N.Y. 2008)........15

*Orion Pictures Corp. v. Showtime Networks, Inc.* (In re Orion Pictures Corp.), 4 F.3d
    1095 (2d Cir. 1993)...............................................................................17, 18, 20

*Pfizer Inc. v. Law Offices of Peter G. Angelos* (In re Quigley Co.), 676 F.3d 45 (2d Cir.
    2012) ....................................................................................................................3

*Picard v. Banco Bilbao Vizcaya Argentaria*, No. 11-cv-7100 (JSR), Dkt. No. 13 ........................5

*Picard v. Conn. Gen. Life Ins. Co.*, 11 Civ. 7174 (JSR) (S.D.N.Y. May 29, 2012), ECF
    No. 15..................................................................................................................18

*Picard v. HSBC Bank PLC*, 454 B.R. 25 (S.D.N.Y. 2011) ...........................................................16

*Picard v. Katz*, No. 11 Civ 3605(JSR), 2012 WL 691551 (S.D.N.Y. Mar. 5, 2012) ..................16

*Picard v. Katz*, No. 11 Civ. 3605(JSR) (S.D.N.Y. Feb. 23, 2012), ECF No. 139 ........................16

*Picard v. Katz*, 466 B.R. 208 (S.D.N.Y. 2012)...........................................................................16

*Picard v. Katz*, 825 F. Supp. 2d 484 (S.D.N.Y. 2011)...........................................................16, 18

*Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011) *motion to certify appeal denied*,
    466 B.R. 208 (S.D.N.Y. 2012)...............................................................................8, 19

*Picard v. Kohn*, No. 11 Civ. 1181(JSR), 2012 WL 566298 (S.D.N.Y. Feb. 22, 2012)................16

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2012 WL 1505349 (S.D.N.Y. Apr. 30, 2012) .................................................................................................16

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (S.D.N.Y. Mar. 15, 2012), ECF No. 4735 ......................................................................................................17

*Schindler v. Floyd* (In re Rodriguez), 95 F.3d 54, 1996 WL 460144 (5th Cir. 1996) ...................4

*Schneider v. Riddick* (In re Formica Corp.), 305 B.R. 147 (S.D.N.Y. 2004) ...............................15

*In re Stansbury Poplar Place, Inc.*, 13 F.3d 122 (4th Cir. 1993) ..................................................18

*Stern v. Marshall*, 131 S. Ct. 2594 (2011) ............................................................................ *passim*

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) ................................................6

*United States v. Booker*, 543 U.S. 220 (2005) ..............................................................................13

*Walker, Truesdell, Roth & Assocs. v. Blackstone Grp., L.P.* (In re Extended Stay, Inc.), 466 B.R. 188 (S.D.N.Y. 2011) .................................................................................15

## STATUTES AND RULES

11 U.S.C. § 501 ................................................................................................................................9

11 U.S.C. § 502(a) ...........................................................................................................................9

11 U.S.C. § 502(d) ................................................................................................................8, 9, 10

11 U.S.C. § 546(e) .........................................................................................................................10

11 U.S.C. § 548 ................................................................................................................................4

11 U.S.C. § 548(a)(1)(A) ...............................................................................................................10

15 U.S.C. § 78fff-2(a)(2) .................................................................................................................9

15 U.S.C. § 78fff(a) .......................................................................................................................10

15 U.S.C. § 78fff-2(c)(1) ...............................................................................................................10

28 U.S.C. § 157 ..........................................................................................................................3, 14

28 U.S.C. § 157(c) .........................................................................................................................13

28 U.S.C. § 157(d) .........................................................................................................................13

28 U.S.C. § 158 ........................................................................................................14

28 U.S.C. § 1334(a) ................................................................................................13

28 U.S.C. § 1334(b) ...............................................................................................13

Fed. R. Bank. P. 9033(a) ........................................................................................14

Fed. R. Civ. P. 12 .....................................................................................................1

### LEGISLATIVE HISTORY

H.R. Rep. No. 97-807 ...............................................................................................12

S. Rep. 98-55 ............................................................................................................12

130 Cong. Rec. S8897 (1984) .................................................................................13

The Defendants respectfully submit this consolidated reply brief in response to the opposition briefs filed by SIPC and the Trustee relating to issues raised in the *Stern* Order.[1]

## ARGUMENT

### I.   THE BANKRUPTCY COURT LACKS CONSTITUTIONAL AUTHORITY TO FINALLY ADJUDICATE THE RECOVERY ACTIONS

This Court concluded in *Kirschner v. Agoglia,* No. 11 Civ. 8250(JSR), 2012 WL 1622496 (S.D.N.Y. May 9, 2012) ("*Refco*"), that avoidance actions like the Recovery Actions here are private rights claims and cannot be finally adjudicated by the bankruptcy court in the wake of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70, 90 (1982), *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56-57 (1989), and *Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011), which collectively establish that fraudulent conveyance and preference actions must be resolved in Article III courts, unless the parties otherwise consent.

The first of this Supreme Court trilogy held that "traditional actions at common law" lie at the "protected core" of Article III judicial power.  *Northern Pipeline*, 458 U.S. at 90.  The second held that fraudulent conveyance claims are "quintessentially suits at common law . . . to augment the bankruptcy estate," and that preference actions are "indistinguishable" from fraudulent conveyance suits.  *Granfinanciera*, 492 U.S. at 48, 55-56.  *Stern* held outright that *Granfinanciera* stood for the proposition that "Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court."  131 S. Ct. at 2614 n. 11.

---

[1] Unless provided otherwise, all capitalized terms in this Reply Memorandum shall have the same definition as provided in Defendants' Opening Consolidated Brief dated May 3, 2012. ("Op. Br.").  Citations to the Trustees' and SIPC's opposition briefs shall be to "Tr. Opp." and "SIPC Opp." respectively.  As provided in paragraph 12 of the *Stern* Order, nothing herein waives, limits, or impairs any arguments, issues, or defenses that have been raised or could be raised by any Defendant in a Fed. R. Civ. P. 12 motion to dismiss, including, without limitation, the Defendants' right to contest personal jurisdiction.

In *Refco*, this Court read the Supreme Court trilogy precisely for those propositions.  Yet the Trustee and SIPC (together, "Respondents") persist in arguing that "[n]othing in *Stern*, *Northern Pipeline . . . or Granfinanciera . . .* provides a basis to preclude the bankruptcy court from entering a final judgment in the Trustee's avoidance actions."  (Tr. Opp. at 6.)  They are manifestly wrong.

### A.      *Stern* Cannot Be Read To Render Meaningless The Distinction Between Private And Public Rights Which Lies "At The Heart" Of That Opinion

The Trustee predictably focuses on *dictum* in *Stern* to the effect that the question there presented was "narrow" and the decision did not meaningfully change "the division of labor" between bankruptcy and district courts, (Tr. Opp. at 6-8), a focus this Court already rejected as a basis to "overcome the logic" of *Stern*.  *Refco*, 2012 WL 1622496, at *4 ("[C]autionary dicta and past practice do not overcome the logic of the Supreme Court's holding in *Stern*.").  Thus, most Article III courts in this Circuit ruling on the issue facing this Court in *Refco* – *i.e.*, what court may resolve fraudulent conveyance claims – and numerous others elsewhere, have reached the same conclusion.  *Id.* at *4 n. 3 (collecting cases).[2]  Several other courts have found the same with respect to preferential transfer actions.  (*See* Op. Br. at 14-15.)

In the same vein, the Trustee argues unpersuasively that *Stern* was "careful to limit the scope of its decision" to avoid the confusion caused when *Northern Pipeline* struck down the entire Bankruptcy Reform Act of 1978 (the "1978 Act").  (Tr. Opp. at 8-10.)  But that confusion stemmed from the structure of the 1978 Act.  In *Northern Pipeline,* the provision of the 1978 Act that granted the bankruptcy court jurisdiction over the contract dispute was inextricably linked

---

[2]  Despite the *dictum* the Trustee relies on, *Stern* dismissed as irrelevant arguments about efficiency or convenience as a basis to save the statute "'if it is contrary to the Constitution.'"  131 S. Ct. at 2619 (quoting *INS v. Chadha*, 462 U.S. 919, 944 (1983)).  Indeed, *Stern* observed that the significance of the changes flowing from its holding was not pertinent to the analysis.  *Id.* at 2620.

with the remaining jurisdictional provisions, leaving the Court with no option but to strike down the entire statute.  By contrast, in *Stern*, the Supreme Court could hold the "isolated" provision at issue in the case unconstitutional.  Nothing in *Stern* remotely suggests that the Court was passing on the constitutionality of the remaining provisions of section 157.  As presciently noted in *Granfinanciera*: "however helpful it might be for us to adjudge every pertinent statutory and constitutional issue presented by the 1978 Act and the 1984 Amendments, we cannot properly reach out and decide matters not before us."  492 U.S. at 64 n.19.[3]

### B.   Avoiding A Meaningful Change In The Law Does Not Justify An Unconstitutional Grant Of Adjudicatory Authority To Bankruptcy Courts

Unsurprisingly, as noted, *Stern* itself rejects the strained notion that unconstitutionality may be tolerated in the interest of preventing a "meaningful change in the law."  *See supra* n.2.  But that is precisely what the Trustee argues with no discernable support.  In *Refco*, this Court rejected the argument, noting that its factual premise – *i.e.*, that permitting bankruptcy courts to resolve fraudulent transfer claims was a "historical" division of labor – was simply unsupportable.  2012 WL 1622496, at *4.  In fact, after the 1898 Act and for nearly a century before the passage of the 1978 Act, it was the province of district courts to decide common law actions, including both fraudulent conveyance and preference actions.  Change came only upon passage of the 1978 Act when bankruptcy courts were authorized to finally determine avoidance actions, as this Court recognized in *Refco*.  *Id.* at *4 (the "historical  practice has existed, at most, for only a few decades").[4]  There is therefore nothing to the argument that *Stern* should be

---

[3] *Pfizer Inc. v. Law Offices of Peter G. Angelos* (In re Quigley Co.), 676 F.3d 45, 52 (2d Cir. 2012), concluded *Stern* had no application to the case and explicitly refused to define its "precise contours," and it thus offers no help to the Trustee.

[4] That grant of authority came under attack immediately after the Supreme Court's 1989 decision in *Granfinanciera*.  *See Gower v. Farmers Home Admin.* (In re Davis), 899 F.2d 1136, 1140 n.9 (11th Cir. 1990) (assumption that bankruptcy courts can resolve "core" matters "is open to

ignored because to follow its constitutional mandate would effect "too much" of a legal change in the Trustee's view.

### C.   *Stern* Is Not Limited To State Law Avoidance Claims

The Respondents argue that *Stern* does not reach the Recovery Actions because they are not state-law based claims but "bankruptcy causes of action . . . . inextricably tied to the Bankruptcy Code," (Tr. Opp. at 5), or "claim[s] derived from, or created by, federal bankruptcy law, like a preference claim, [that] qualifies [them] as a public right on that basis alone."  (SIPC Opp. at 8.)  *Stern* and *Granfinanciera* render the Respondents' arguments frivolous.  Indeed, when Judge McMahon was faced with an identical argument in *Development Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, No. 11 Civ. 6637 CM, 2011 WL 6780600 (S.D.N.Y. Dec. 23, 2011), she concluded it was mere "sophistry."  *Id.* at *3.  *See also Granfinanciera*, 492 U.S. at 48, 50 (fraudulent conveyance claims under 11 U.S.C. § 548 adjudicate private rights; preference claims are "indistinguishable from" fraudulent conveyance claims and both "were deemed separate, plenary suits" requiring jury trial in the 18th century law courts).

The Court should conclude as "unequivocally" as it did in *Refco*, that fraudulent conveyance and preference claims brought against defendants that did not file claims against the estate are "private rights" claims that must be finally decided by an Article III court.[5]  Moreover,

---

serious question"); *McFarland v. Leyh* (In re Tex. Gen. Petroleum Corp.), 52 F.3d 1330, 1336-37 (5th Cir. 1995) (holding that bankruptcy courts did *not* have authority to finally adjudicate a fraudulent conveyance action after *Granfinanciera*.)   *See also Schindler v. Floyd* (In re Rodriguez), 95 F.3d 54, 1996 WL 460144, at *3 (5th Cir. 1996).  The historical vintage of the unconstitutional practice the Trustee invites this Court to uphold is greatly exaggerated.

[5] In an attempt to evade *Refco*, the Trustee argues it only applies to avoidance claims brought under the New York Debtor Creditor Law ("NY DCL").  This distinction makes no difference. *Stern* is tethered to the private/public rights distinction, *Refco*, 2012 WL 1622496, at *3, not to the legal source of the right.  *Granfinanciera* makes clear that fraudulent conveyance actions brought pursuant to 11 U.S.C. § 548 are private rights claims too.  In any event, the Trustee seeks to recover billions of dollars from Defendants pursuant to the NY DCL.

as explained in Point II, *infra,* the particular circumstances of this case mandate that an Article III Court determine even those avoidance actions brought against entities that filed claims.

### D.    Avoidance Actions In SIPA Liquidations Do Not Constitute "Public Rights"

Respondents argue that the bankruptcy court is vouchsafed authority to enter final judgment on the Recovery Actions because this is a proceeding under SIPA, a "specialized statutory scheme," which somehow triggers the public rights exception.  (Tr. Opp. at 24.) Respondents' argument is a red herring already disposed of by the Supreme Court.  *Stern* held that the public rights exception is limited to "cases in which *the claim at issue* derives from a federal *regulatory* scheme, or in which resolution of the claim *by an expert Government agency* is deemed essential to a limited regulatory objective within the agency's authority."  131 S. Ct. at 2598, 2613 (emphasis added).  Neither circumstance is remotely present here.

First, the claims at issue here, despite implicating securities law, are straightforward avoidance actions which are linked to the Madoff Securities liquidation only by their having the potential to augment the estate.  Respondents acknowledged as much when, in briefs filed in opposition to withdrawal motions, they refer to the avoidance actions as "traditional bankruptcy actions."[6]  That is no basis for triggering the public rights exception.  *See Granfinanciera*, 492 U.S. at 56.  Moreover, neither the Trustee nor SIPC deigns to explain how SIPA is a "federal regulatory scheme," instead contending that SIPA is a "specialized *statutory* scheme" (Tr. Opp. at 24, 27, 30.)  But, so is the Bankruptcy Code – its special purpose being the restructuring of debtor-creditor relations.  Yet, the Supreme Court has been consistently unwilling to regard the restructuring of debtor-creditor relations as a public right.  *See Stern*, 131 S.Ct. at 2614 n.7.

Second, Respondents may certainly not suggest that bankruptcy judges have a particular

---

[6] *See, e.g.*, *Picard v. Banco Bilbao Vizcaya Argentaria*, No. 11-cv-7100 (JSR), Dkt. No. 13, at 4.

expertise essential to advancing the limited objectives of SIPA and therefore must be allowed to adjudicate the Recovery Actions. *Northern Pipeline* rejected precisely the same argument couched there in the view that Congress designed the bankruptcy courts with a "limited objective" to "ma[k]e only specialized, narrowly confined factual determinations regarding a particularized area of law" or engage in "specialized factfinding." 458 U.S. at 80-81, 84-85, 101.[7] This Court should follow *Stern* and conclude that the Recovery Actions "involve[] the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." *Stern*, 131 S. Ct. at 2615.

## II. RECOVERY ACTIONS EVEN AGAINST CLAIMANT DEFENDANTS MUST BE FINALLY ADJUDICATED BY AN ARTICLE III COURT[8]

*Refco* recognized that the filing of a proof of claim in an ordinary bankruptcy case does not necessarily "make a difference" when determining whether a non-Article III court may enter a final order adjudicating an avoidance action. *Refco*, 2012 WL 1622496, at *4. The same is true in this SIPA liquidation, where customers (the "Claimant Defendants") submitted net equity claims to a SIPC trustee without "knowingly and voluntarily" consenting to the Bankruptcy Court's final adjudicatory authority. Thus, the submission of a SIPA claim is itself insufficient to deprive Claimant Defendants of their constitutional right to have an Article III court

---

[7] *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568 (1985), and *CFTC v. Schor,* 478 U.S. 833 (1986), are distinguishable because the claimed rights to relief were created by Congress under genuine public regulatory schemes and were adjudicated by non-judicial bodies with expertise in a "particularized area of the law" – the CFTC in *Schor* and a specialized arbitral body in *Thomas.*

[8] Nearly 50% of some 1,100 Defendants did not submit claims in the Madoff Securities liquidation. Indeed, hundreds of the non-customer Defendants, such as subsequent transferees, cannot submit claims. (*See* Op. Br. at 17-18.) These defendants have not waived their right to have an Article III court hear their actions. Respondents do not suggest to the contrary; indeed they implicitly concede there has been no waiver. (Tr. Opp. at 12.)

adjudicate private rights claims against them.[9]

### A.    Avoidance Actions Will Not "Necessarily Be Resolved In The Claims Allowance Process"

The Trustee claims *Stern* to hold that "when a creditor files a claim, the resolution of that claim necessarily occurs 'as part of the process of allowing or disallowing claims,' and the Trustee's ensuing action becomes 'integral to the restructuring of the debtor-creditor relationship.'" (Tr. Opp. at 12.)  This vastly misconstrues *Stern*, which held instead that the test of adjudicatory authority rests on "whether *the action at issue stems* from the bankruptcy itself or would *necessarily* be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618 (emphasis added).[10]  Thus, for the bankruptcy court to have adjudicatory authority, here, the Trustee's avoidance actions would have to be "'completely dependent upon' adjudication of" the Claimant Defendants' claims against Madoff Securities.  *Id.* at 2598  (citation omitted).  This is simply not the case here, where the Recovery Actions are unconnected to what Claimant Defendants might claim against Madoff Securities.

The Trustee appears to agree; he invites this Court to apply a conveniently novel test, one which asks whether the claims process and the avoidance action are "inextricably intertwined" and whether the "same methodolog[ies]" are used for determining the allowed amount of a claim and avoidance action liability.  (*See* Tr. Opp. at 13, 17-18.)  This is but a reformulation of an argument the Supreme Court rejected in *Stern*, *i.e.*, that the court should "bypass Article III

---

[9] Moreover, the Supreme Court found that Pierce Marshall had not consented to bankruptcy court adjudication of Vicki Marshall's counterclaim even though he had filed a claim. *Stern*, 131 S. Ct. at 2616-18.

[10] Following *Stern*, Judges McMahon and Crotty ruled that a bankruptcy court lacked final adjudicatory authority despite the fact that at least one of the several defendants had filed a proof of claim. *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 471-72 (S.D.N.Y. 2011); *Adelphia Recovery Trust v. FLP Grp., Inc.*, No. 11 Civ. 6847 PAC, 2012 WL 264180, at *4 (S.D.N.Y. Jan. 30, 2012).

simply because a proceeding may have *some* bearing on a bankruptcy case." *Stern*, 131 S. Ct. at 2618 (emphasis added).  The degree to which the claims allowance process and the Trustee's avoidance actions have common attributes or overlapping "methodologies" is irrelevant.  What dictates the result that the bankruptcy court lacks adjudicatory power is that the claims adjudication process is independent of the resolution of the Trustee's claims against Claimant Defendants.

Each Claimant Defendant's net equity claim turns on a calculation approved by the Second Circuit that is unaffected by, and independent of, the outcome of any Recovery Action.[11] No net equity claim will change as a result of the outcome of any Recovery Action, regardless of whether more work is done to "complete" the claims adjudication process (*i.e.*, resolution of appeals and bankruptcy court approval of the Trustee's claim determinations).  (*See* Tr. Opp. at 16-17.)  All of that is separate and independent of the resolution of the Recovery Actions.  There is simply no final adjudicatory authority here on any basis remotely sanctioned in *Stern*.

### B.     The Trustee Cannot Rely On Section 502(d) Of The Bankruptcy Code

Respondents are likewise wrong in arguing that Supreme Court cases interpreting section 502(d) and its predecessor statute in the context of non-SIPA bankruptcy cases dictate that the avoidance actions must be resolved as part of the claims allowance process.  In *Picard v. Katz*, 462 B.R. 447, 456 (S.D.N.Y. 2011)*,* this Court correctly ruled that section 502(d) does not apply in a SIPA case because, *inter alia*, nothing in SIPA or the Bankruptcy Code provides that section 502(d) should apply to net equity claims.  Section 502(d) only applies to disallow claims brought

---

[11] That the Trustee may have used the same Net Investment Method calculation he used in the claims allowance process to calculate the extent of potential affirmative defenses in the avoidance actions does not render the process of resolving claims in any way dependent on the result of the Recovery Actions; likewise, the net equity claim process has no bearing on any of the elements of the Trustee's case-in-chief in the Recovery Actions.

under section 502(a), which are "claim[s] or interest[s], proof of which is filed under section 501 [of title 11]." 11 U.S.C. § 502(a), (d).  Claimant Defendants' net equity claims, however, were submitted to the Trustee pursuant to 15 U.S.C. § 78fff-2(a)(2),[12] not section 501 of the Bankruptcy Code.  By its own terms section 502(d) has no effect on net equity claims, even if it were applicable to SIPA cases (which it is not).

It is, of course, for Congress not the courts to do as Respondents urge this Court – *i.e.*, to apply section 502(d) in a SIPA case <u>and</u> expand it to permit disallowance of SIPA net equity claims – to which that section does *not* apply.  But Congress, which could have made 502(d) applicable to SIPA net equity claims, did not do so.  *Lewis v. City of Chicago*, 130 S. Ct. 2191, 2200 (2010).  As even Respondents recognize, when importing Bankruptcy Code concepts into SIPA liquidations, Congress knows how to use the "'legal fiction'" to prevent unwanted results of "'a technical reading of . . . the [Bankruptcy] Code.'"  (Tr. Opp. at 20; SIPC Opp. at 15 (citation omitted).)

Respondents' reliance on *Katchen v. Landy* and *Langenkamp v. Culp* is misplaced.  Those were not SIPA cases; they were title 11 cases in which a bankruptcy trustee brought preference actions against defendants that had filed proofs of claim.  In *Katchen*, the Supreme Court held that a bankruptcy referee could exercise summary jurisdiction over the preference action because it was necessary to determine the amount of the preference liability in order to ascertain the allowed amount of the defendant's proof of claim against the estate.  382 U.S. 323, 334 (1966).  In *Langenkamp*, the Supreme Court ruled that a preference defendant who had filed

---

[12] 15 U.S.C. § 78fff-2(a)(2) provides that "[a] customer shall file with the trustee a written statement of claim but need not file a formal proof of claim," and the Bankruptcy Court order for submission of net equity claims refers to 15 U.S.C. § 78fff-2(a)(2) specifically.  *See* Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief, at 3, Case No. 08-01789, entered December 23, 2008, Dkt. No. 12.

a proof of claim was not entitled to a jury trial under the Seventh Amendment because the resolution of the preference action was "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*." 498 U.S. 42, 44 (1990). None of this extends to a SIPA case because, as noted, the ascertainment of net equity claims is wholly independent of any avoidance liability.[13] *Katchen* and *Langenkamp* simply do not control here.[14]

Finally, Respondents argue that many customers whose net equity claims were denied will have their claims reclassified as general unsecured claims at a later date and that section 502(d) will apply to them at that time. (Tr. Opp. at 22; SIPC Opp. at 17.) These alleged future general creditor claims, however, which are subordinated to net equity claims and SIPC's claims, are speculative. Any distributions on general creditor claims against Madoff Securities will not occur until after (i) distribution of customer property is completed, (ii) net equity claims are paid in full, and (iii) SIPC's subrogation claim and claims for moneys advanced are satisfied. *See* 15 U.S.C. §§ 78fff(a), 78fff-2(c)(1). The possible future general creditor claims are not relevant to the calculation of customers' net equity claims and play no part in determining whether the avoidance actions will "necessarily" be determined in the context of the allowance or disallowance of the customers' net equity claims. Likewise, there is no need to determine the

---

[13] The Trustee argues that the Second Circuit's Net Equity Decision is potentially subject to reversal by the Supreme Court. (*See* Tr. Opp. at 17.) But even if a different methodology is used to calculate net equity claims, ordinary bankruptcy cases involving preferences continue to be different than SIPA cases in that in the latter there still exists no connection between the dollar amount of a claimant's net equity claim and an avoidance recovery by the Trustee.

[14] Moreover, *Katchen* and *Langenkamp* are cases involving preferences. As a result of this Court's prior rulings on section 546(e) with respect to customers against which there are no allegations of bad faith, however, there are no pending preference actions. The only extant avoidance action is for intentional fraud under Bankruptcy Code section 548(a)(1)(A), whose recoveries, under the Trustee's Net Investment Method will *not* be added to the customer's net equity claim because such recoveries would not be on account of "principal." Consequently, for that reason too, SIPA cases are entirely different from ordinary bankruptcy cases insofar as section 502(d) is concerned.

amount of a customer's future general unsecured claim to determine such customer's net equity claim. The two claims are of different priority and are wholly independent. Section 502(d) simply provides no basis to deny Claimant Defendants an Article III decision maker.

### C. Claimant Defendants Have Not Knowingly Voluntarily Consented Final Adjudication Of Avoidance Actions By An Article I Court

Respondents ignore the absence of any *voluntary* consent by Claimant Defendants to Bankruptcy Court adjudication. (*See* Op. Br. at 19-20.) To receive up to $500,000 in SIPC advances, or to share in the fund of customer property, Claimant Defendants had no choice but to submit a SIPA claim. Claimant Defendants had "nowhere else to go" to salvage, in some cases, even their retirement nest eggs. *Cf. Stern*, 131 S. Ct. at 2614 (citing *Granfinanciera*, 492 U.S. at 59 n.14).[15] That slim choice to avail oneself of a statutory right should not be made at the price of relinquishing constitutionally protected rights.

Moreover, Claimant Defendants were required to file SIPA claims by July 2, 2009, *before Stern* had been decided and before the Claimant Defendants had been targeted in avoidance actions. As of that filing deadline, the state of the law on which Claimant Defendants could reasonably rely was that avoidance claims were statutorily core and could be finally adjudicated in the bankruptcy court without regard to whether a claim was "filed." When submitting their SIPA claims, therefore, the Claimant Defendants could not have known that by doing so they could be relinquishing the right to an Article III decision maker. Under those circumstances, no "'knowing and voluntary relinquishment of rights to an Article III decision maker'" by the Claimant Defendants could have existed. *Akin Gump*, 462 B.R. at 471-72; *see also Adelphia Recovery Trust*, 2012 WL 264180, at *5.

---

[15] The Supreme Court held in *Stern* that "the notion of 'consent' does not apply in bankruptcy proceedings as it might in other contexts" because creditors have no choice but to file proofs of claim if they want to pursue the claims at all. 131 S. Ct. at 2615 n.8.

## III.    THE BANKRUPTCY COURT MAY NOT "REPORT AND RECOMMEND"

We are mindful of this Court's holding in *Refco*, that the aftermath of *Stern* created "one of the rare exceptions" where the plain meaning rule could be ignored in favor of giving effect to the Court's inference that Congress intended to vest "report and recommendation" power in the Bankruptcy Court in "core" cases where it lacks power to render a final judgment.  2012 WL 1622496, at *4-5; (Tr. Opp. at 31-33; SIPC Opp. at 18-22.)   We respectfully demur.   No legislative material of which we are aware supports such a conclusion, and Respondents offer none.   To the contrary, Congress considered and rejected bankruptcy judges serving as magistrates, who would issue reports and recommendations, subject to full *de novo* review.

After *Northern Pipeline*, Congress enacted two mechanisms in an attempt to ensure that bankruptcy court adjudications were constitutional.  First, it enhanced the role of Article III courts in adjudicating claims, arising in or related to bankruptcy cases.  *See* S. Rep. 98-55 (1983) (amendments to "give[] the district court greater control over the handling of all bankruptcy cases and proceedings").  Second, it allowed adjudication of private rights in bankruptcy court by consent.  *See id.* at 34 (to give "new authority to the parties in Marathon-type litigation to choose the forum in which their cases would be heard").

It was not mere inadvertence that led Congress to eschew permitting bankruptcy courts to issue findings of fact and conclusions of law on "core" matters that adjudicated private rights.  A prior Senate bill had expressly allowed the district courts to "designate any bankruptcy judge" to act as a special master or magistrate, *see id.*, a provision excluded from the final bill on legislative concerns that *de novo* review of bankruptcy court adjudication could possibly be unconstitutional and is certainly inefficient.   *See* H.R. Rep. No. 97-807, at 15-16 (1982) (concerned that "true de novo review" would "result in an unacceptable delay in bankruptcy proceedings, duplication of effort in judicial resources, and additional cost to litigants"); *Id.* at 16

(*Northern Pipeline* plurality indicated that "de novo review . . . was not in and of itself constitutionality [sic] adequate"); 130 Cong. Rec. S8897 (1984) (according to *Northern Pipeline*, bankruptcy judges "could not constitutionally exercise *any* adjudicatory power on state claims as an adjunct or magistrate to the district court") (emphasis added).  In fact, the Senate expressed reservation that the system of adjudication put into place by the Emergency Rule, although upheld by the courts, was not constitutionally adequate.  *See id.* ("Emergency Rules themselves do not comply with the plurality opinion in *Marathon*").

In short, to the extent we can glean the congressional intent which this Court sought to uphold in *Refco*, it was that the more efficient, and more assuredly constitutional mechanism to determine private rights claims is withdrawal of the reference with direct consideration and determination by the district court.  Thus, Congress enacted sections 1334 (a) and (b), vesting the Article III district courts with jurisdiction to adjudicate cases arising in, under, or related to title 11, as well as the withdrawal mechanism in section 157(d), which even allows for the District Court to act thereunder *sua sponte*.[16]  We do not suggest, of course, that Congress could have considered then the precise aftermath of *Stern*.  Rather, we suggest that the "plain meaning," which this Court in *Refco* recognized as the governing rule of statutory construction, may not be set aside in light of what evidence of congressional intent on the subject is indeed available.  *See also United States v. Booker*, 543 U.S. 220, 247 (2005) (courts are not permitted to "'circumvent the intent of the legislature'" (citation omitted)); *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3161-62 (2010) ("editorial freedom" rests only with Congress,

---

[16] We recognize Congress created a discrete subset of actions that would be subject to bankruptcy court report and recommendation (section 157(c)), but submit that Congress clearly indicated its reluctance to subjecting "core" bankruptcy matters to such an inefficient scheme. Further, such adjudication of "non-core" causes of action are subject to both the withdrawal and the abstention mechanisms to allow the parties access to the proper adjudicative authority, whether that is an Article III or State court.  *See* 28 U.S.C. §§ 157(d), 1334(c)(2).

not courts); *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (when part of a statute is declared unconstitutional, "it is the duty of the court" to sever the provision that is unconstitutional and preserve the remainder of the act "so far as it is valid").

It is respectfully submitted that the "amendment" of section 157 that the Respondents invite this Court to endorse again by permitting bankruptcy courts to report and recommend here, as adjuncts to the district court, does not comport with *Stern* or with the legislative history outlined above.  *Stern*, 131 S. Ct. at 2619 (bankruptcy courts cannot be "deemed a mere 'adjunct' of the district court").   Moreover, to allow a bankruptcy court to issue a report and recommendation in a core matter would effectively amend not only Section 157, but also the appellate scheme under Section 158 (which permits appeals only of final orders issued in core proceedings) and Rule 9033(a) of the Federal Rules of Bankruptcy Procedure (which limits review of proposed findings of facts and conclusions of law to non-core proceedings).  This Court, we respectfully submit, would stray widely from its prescribed authority if it effectively also rewrote section 158 of title 28, thereby creating an entirely new form of appellate adjudication not now present in the statutory scheme.  *See Stern,* 131 S. Ct. at 2605 (holding that rewriting title 28 was something even the Supreme Court "may not do").  The result is that in the wake of *Stern,* no statutory authority exists for bankruptcy courts to hear and recommend in respect to core claims they have no power to adjudicate, as are the Recovery Actions.  That is a role reserved to Article III courts, even in the face of any "implicit" powers that may exist in this Court to request a report and recommendation from a bankruptcy court with respect to "core" matters it cannot adjudicate – a power this Court should refrain from exercising if it clashes with the indicia of Congressional intent to the contrary as outlined above.

## IV.    THE TRUSTEE OFFERS NOTHING TO REFUTE THE EXISTENCE OF "CAUSE" FOR PERMISSIVE WITHDRAWAL OF THE REFERENCE

### A.    Judicial Efficiency, Expediency And Economy Favor Withdrawal

This Court should resolve the Recovery Actions in the first instance to avoid inefficient duplication in the guise of *de novo* review, as "'efficiency and uniformity'" are the overriding considerations in determining whether withdrawal is appropriate. *Nw. Airlines, Inc. v. City of L.A.* (In re Nw. Airlines Corp.), 384 B.R. 51, 59 (S.D.N.Y. 2008) (quoting *Mishkin v. Ageloff*, 220 B.R. 784, 799-801 (S.D.N.Y. 1998)).   In those cases where the Trustee has challenged the transferee's *bona fides,* this Court could be required (absent resolution on summary judgment) to hear live testimony to test credibility by "having the witness testify before the judge." *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999).   Given the uncertainty about whether a bankruptcy court can issue a report and recommendation, *see* Point III, *supra*, prudence also favors having a court with clear authority hear the Recovery Actions.

The Trustee and SIPC manage only to rely on distinguishable cases, including this Court's decision in *Refco*, in which bankruptcy courts had particularized knowledge about the adversary proceedings in question, that made it unsurprising for the reference to remain with (or be returned to) the bankruptcy court. *See Refco*, 2012 WL 1622496, at *6 (bankruptcy court "intimately familiar" and would save district court and parties "an immense amount of time").[17]

---

[17] *See also, e.g. Refco*, 2012 WL 1622496, at *6; *Adelphia Recovery Trust*, 2012 WL 264180, at *7 (bankruptcy court seven-year involvement); *Walker, Truesdell, Roth & Assocs. v. Blackstone Grp., L.P.* (In re Extended Stay, Inc.), 466 B.R. 188, 206 (S.D.N.Y. 2011) (bankruptcy court "already familiar with the extensive record in th[e] case"); *Schneider v. Riddick* (In re Formica Corp.), 305 B.R. 147, 150-51 (S.D.N.Y. 2004) (same); *Gucci ex rel. Armstrong v. Gucci*, No. 96 Civ. 8216 (JSR), 1997 WL 122838, at *1 (S.D.N.Y. Mar. 17, 1997) (same); *Hunnicutt Co. v. TJX Cos.* (In re Ames Dep't Stores, Inc.), 190 B.R. 157, 164 (S.D.N.Y. 1995) (same); *Kenai Corp. v. Nat'l Union Fire Ins. Co.* (In re Kenai Corp.), 136 B.R. 59, 61-62 (S.D.N.Y. 1992) (bankruptcy court had ruled on a motion for summary judgment and was more familiar with the underlying facts).

This is not the case here, as the bulk of the Recovery Actions are in their initial stages, a fact neither the Trustee nor SIPC disputes.[18]  (*See* Op. Br. 36 n.13.)

It is insufficient to tout the Bankruptcy Court's unspecified experience with the Madoff cases, as the Trustee and SIPC do, without identifying any *particular* sphere or item of expertise that places the Bankruptcy Court at a comparative advantage.  This Court, by contrast, has brought one of the most significant Recovery Actions, the *Katz* case, almost to trial, past summary judgment and motions to strike, has already set the outlines of the governing law in several critical rulings,[19] and will no doubt become even more familiar with the Recovery Actions in the several common briefings involving areas of (non-bankruptcy) law (good faith, extraterritoriality, ERISA, SLUSA) that this Court has already recognized are beyond the Bankruptcy Court's sphere of expertise.[20]  By comparison, the claimed involvement of the Bankruptcy Court is relatively inconsequential and is wholly irrelevant in respect of the Recovery Actions which it cannot resolve.  The Trustee and SIPC are asking a district court familiar with matters to return the reference to a bankruptcy judge unfamiliar with them, precisely the obverse of the cases on which the Trustee and SIPC principally rely and not what

---

[18] Even the Trustee's observation that out of the 1,000 plus lawsuits that he has brought, "dozens of these cases are in discovery [and] 176 cases involve motion practice." (Tr. Opp. at 35) confirms that few actions have involved any discovery and well over 80% have not even implicated motion practice, and among those that have implicated motion practice, surely the most significant motions have been resolved in *this* Court.

[19] *See Picard v. Katz*, No. 11 Civ. 3605(JSR), 2012 WL 691551 (S.D.N.Y. Mar. 5, 2012); Hr'g Tr. 34:22, *Picard v. Katz*, No. 11 Civ. 3605(JSR) (S.D.N.Y. Feb. 23, 2012), ECF No. 139; *Picard v. Kohn*, No. 11 Civ. 1181(JSR), 2012 WL 566298 (S.D.N.Y. Feb. 22, 2012); *Picard v. Katz*, 466 B.R. 208 (S.D.N.Y. 2012); *Picard v. HSBC Bank PLC*, 454 B.R. 25 (S.D.N.Y. 2011); *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011), *motion to certify appeal denied*, 466 B.R. 208 (S.D.N.Y. 2012); *Picard v. Katz*, 825 F. Supp. 2d 484 (S.D.N.Y. 2011); *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2012 WL 1505349 (S.D.N.Y. Apr. 30, 2012).

[20] This Court has marched ahead of the Bankruptcy Court in putting in place procedural devices to consolidate and streamline the resolution of the matters before it.

*Orion* counsels.

Finally, the duplicate courts for which the Trustee and SIPC advocate are wasteful for all concerned but poignantly unfair for smaller Defendants whom the Trustee is suing for what little is left of their wherewithal.  They are now again being victimized by the ever-well-financed Trustee's invitation to engage in duplicative rounds of litigation;[21] coercive settlements may well follow before any Article III court has had a chance to hear these matters.

> **B.**     **All The Other *Orion* Factors Favor Retaining The Reference**
>
> 1.     The Core/Non-Core Distinction is Now of No Relevance

The Trustee persists in the now-dated argument that withdrawal is inappropriate because his claims are "core."  *Stern* instructs, however, that this is irrelevant to whether the claim may be finally resolved by a bankruptcy court.  *See* (Op. Br. at 30-31);  *Akin Gump*, 462 B.R. at 467.

To be sure, even after *Stern*, the concerns in *Orion* continue to bear on withdrawal for cause.  *See Orion Pictures Corp. v. Showtime Networks, Inc.* (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993).  But post-*Stern* efficiency and uniformity no longer hinge on terms such as "core" or "non-core."  *See Lain v. Erickson* (In re Erickson Ret. Communities, LLC), No. WDQ-11-3736, 2012 WL 1999493, at *3 (D. Md. May 31, 2012) ("As almost all of the claims in the complaint must be adjudicated by the District Court, this factor favors withdrawing the reference.").  And, even before *Stern*, the core/non-core inquiry was not determinative.  *See Complete Mgmt., Inc. v. Arthur Andersen, LLP* (In re Complete Mgmt., Inc.), Nos. 02 Civ. 1736(NRB) 01-03459, 2002 WL 31163878, at *2 (S.D.N.Y. Sept. 27, 2002) ("[E]ven where a claim has been determined to be core to the bankruptcy proceedings, consideration of [the other

---

[21] *See* Order Approving Applications for Allowance of Compensation for Services Rendered and Reimbursement of Expenses, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y. Mar. 15, 2012), Dkt. No. 4735 (granting applications to approve over $50 million in fees for the Trustee's professionals for a four month period).

*Orion*] factors may make withdrawal of the reference appropriate . . . .").

2.    The Defendants are Entitled to Jury Trials

The vast majority of Defendants (including more than 90% of almost 1,100 Defendants) are not willing, at this time, to waive their right to a jury trial in favor of a trial before the Bankruptcy Court – a trial that will not take place before the Bankruptcy Court.[22]  (*See* Op. Br. at 37.)  The Trustee merely suggests that this Court can withdraw the reference on the eve of trial, as if withdrawal *then*, after months or years spent by another court on the cases, were more efficient than withdrawal *now*.  *See M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*, No. 08-CV-1982, 2008 WL 2596322, at *3 (S.D.N.Y. June 26, 2008).  In any event, Defendants are not arguing that their rights to jury trials alone mandate withdrawal but that this is simply an additional efficiency factor that favors withdrawal.  *See Lain*, 2012 WL 1999493, at *4 (noting, regarding a defendant's right to a jury trial, that "[m]aintaining the reference would more likely 'be a futile detour, requiring substantial duplication of judicial effort.'" (quoting *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993))).[23]

---

[22] The Trustee contends that those Defendants who submitted or filed claims waived their rights to a jury trial.  (Tr. Opp. 39 n.157.)  With respect to customers required to submit net equity claims, such Defendants should not be deemed to have waived their jury trial rights for the same reason they should not be deemed to have waived their rights to be heard by an Article III judge. *See* Point II.C., *supra*.  Moreover, as to those Defendants who filed proofs of claim, that would constitute consent only to the resolution of their claim, not to resolution of the Recovery Actions. *See Picard v. Katz*, 825 F. Supp. 2d at 486 (finding that the Trustee did not waive his right to jury trial with respect to fraudulent transfer claims and noting that "[w]aiver occurs only where 'the dispute [is] part of the claims-allowance process or affect[s] the hierarchical reordering of creditors' claims.'" (citation omitted).  This is particularly clear with respect to those Defendants whose claims have been rejected or disallowed for any reason because the resolution of those did not implicate the Recovery Actions.  *See Granfinanciera*, 492 U.S. at 58-59.

[23] We are mindful of this Court's recent observations in *Picard v. Connecticut General Life Insurance Co.* that the right to a jury trial cannot be the basis for an "automatic" withdrawal for cause.  *See* Order at 3-4 n.1, *Picard v. Conn. Gen. Life Ins. Co.*, 11 Civ. 7174 (JSR) (S.D.N.Y. May 29, 2012), ECF No. 15.  But, as described above, this is really different than that case where the right to a jury trial was the primary asserted basis for granting permissive withdrawal.  Here

18

3.   Withdrawing the Reference Will Not Adversely Affect Uniformity of Bankruptcy Administration, and Will Promote Uniform Application of Securities Laws Which are Integrally Related to the Trustee's Claims

This Court has already withdrawn the reference to determine over half a dozen distinct legal questions that bear on these very proceedings,[24] and it thus makes little sense to say that only the Bankruptcy Court should hear them for the sake of "uniformity."[25]   Moreover, while touting the labels "fraudulent transfer" and "preference" as if these are the keys to the Bankruptcy Court, the Trustee ignores that this Court has found the Recovery Actions implicate the securities laws.  *See* (Op. Br. at 38); *Katz*, 462 B.R. at 455-56 (S.D.N.Y. 2011).  Surely, an Article III court does not need "guidance" from an Article I court in the application of securities laws.  And as previously noted, (*see* Op. Br. at 11), the Recovery Actions seek only to augment the estate.  There is, on that ground alone, no "efficiency" in having such claims resolved by the Bankruptcy Court.  *See Akin Gump*, 462 B.R. at 472-73.

4.   Forum Shopping is Not Implicated Here, at Least on Defendants' Part

All courts in this Circuit must apply Second Circuit law.  (*See* Op. Br. 38-39 (citing *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529(LMM), 2006 WL 337667, at *5 (S.D.N.Y. Feb. 10, 2006)).)  If novel legal principles are at issue, these surely are

---

Defendants contend that the fact that a district court would have to preside over any jury trial on the Recovery Actions makes withdrawing the reference more efficient, not that it is the sole or "automatic" basis for a for-cause withdrawal.

[24] *E.g.*,Order, *In re Madoff Sec.*, No. 12 MC 00115 (JSR) (S.D.N.Y. May 31, 2012), ECF No. 154; Order, *In re Madoff Sec.*, No. 12 MC 00115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 119; Order, *In re Madoff Sec.*, No. 12 MC 00115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 97; Order, *In re Madoff Sec.*, No. 12 MC 00115 (JSR) (S.D.N.Y. Apr. 19, 2012), ECF No. 22; Order, *In re Madoff Sec.*, No. 12 MC 00115 (JSR) (S.D.N.Y. Apr. 13, 2012), ECF No. 4.

[25]   It is simply incorrect that uniformity in the application of bankruptcy laws requires that an Article I court pass on avoidance actions before an Article III court may address them.  *See Orrick, Herrington & Sutcliffe, LLP*, 2011 WL 6780600, at *4 (withdrawing the reference with respect to fraudulent transfer and other claims).

located at the intersection of SIPA with other securities laws, with SLUSA, with extraterritoriality, with ERISA, and with the other non-bankruptcy federal legal principles this Court has already seen fit to address.  Indeed, the Trustee and SIPC are themselves engaged in forum shopping here, given their unreasonable demand that the Bankruptcy Court resolve these claims over the elemental dictates of *Orion* and similar governing law.

## CONCLUSION

For all the foregoing reasons, the Defendants respectfully request that this Court accept their arguments in response to the questions posed by the Court in the *Stern* Order and withdraw the reference of the Recovery Actions to the Bankruptcy Court.

Dated:   June 11, 2012
         New York, New York

                                        **SHEARMAN & STERLING LLP**


                                        By: /s/ Joanna Shally_____
                                             Joanna Shally
                                             Heather Lamberg Kafele
                                             Jessica Lyn Bartlett

                                        599 Lexington Avenue
                                        New York, New York 10022


                                        **FRIEDMAN KAPLAN SEILER &
                                        ADELMAN LLP**


                                        By: /s/ William P. Weintraub_____
                                             William P. Weintraub
                                             Eamonn O'Hagan
                                             Gregory W. Fox
                                             Kizzy L. Jarashow

                                        7 Times Square
                                        New York, New York 10036-6516

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**


By: /s/ Susan L. Saltzstein_____
    Susan L. Saltzstein
    Marco E. Schnabl
    Jeremy A. Berman

Four Times Square
New York, New York 10036-6522

*Of Counsel*:

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Thomas J. Moloney
Lawrence B. Friedman
Lewis J. Liman
Jeffrey A. Rosenthal
Carmine D. Boccuzzi, Jr.
Breon S. Peace
Members of the Firm
One Liberty Plaza
New York, New York 10006

**GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP**
Douglas L. Furth
437 Madison Avenue
New York, New York 10022

**HOGAN LOVELLS US LLP**
Marc Gottridge
Andrew M. Behrman
875 Third Avenue
New York, New York 10022

**KING & SPALDING**
Arthur J. Steinberg
Heath Rosenblat
1185 Avenue of the Americas
New York, New York 10036-4003

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**
David Parker
Matthew J. Gold
551 Fifth Avenue
New York, New York 10176

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Philip Bentley
Elise S. Frejka
1177 Avenue of the Americas
New York, New York 10036

**KUDMAN TRACHTEN ALOE LLP**
Paul H. Aloe
Matthew H. Cohen
The Empire State Building
350 Fifth Avenue, Suite 4400
New York, New York 10118

**LAWRENCE VELVEL**
Lawrence Velvel
Massachusetts School Of Law
500 Federal Street
Andover, Massachusetts 01810

**LEWIS & MCKENNA**
Paul Z. Lewis
Gregory S. Goett
521 Fifth Avenue
New York, New York 10175

**OKIN, HOLLANDER & DELUCA, L.L.P.**
Paul S. Hollander
James D. DeLuca
Gregory S. Kinoian
One Parker Plaza, 12th Floor
400 Kelby Street
Fort Lee, New Jersey 07024

**PRYOR CASHMAN LLP**
Richard Levy, Jr.
David C. Rose
7 Times Square
New York, New York 10036-6569

**RATTET PASTERNAK, LLP**
James B. Glucksman
550 Mamaroneck Avenue
Harrison, New York 10528

**REED SMITH LLP**
James C. McCarroll
Jordan W. Siev
John L. Scott, Jr.
599 Lexington Avenue
New York, New York 10022

**SILLS CUMMIS & GROSS P.C.**
Andrew H. Sherman
One Riverfront Plaza
Newark, New Jersey 07102

**STEPTOE & JOHNSON LLP**
Celina Munoz
Seong H. Kim
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067

**SULLIVAN & WORCESTER LLP**
Jonathan G. Kortmansky
Franklin B. Velie
1290 Avenue of the Americas
New York, New York 10104