```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
SECURITIES INVESTOR PROTECTION        :
CORPORATION,                          :
            Plaintiff,                :
                                      :
                                      :    12 Misc. 115 (JSR)
            -v-                       :
                                      :
                                      :    MEMORANDUM ORDER
BERNARD L. MADOFF INVESTMENT          :
SECURITIES LLC,                       :
            Defendant.                :
------------------------------------- x
In re:                                :
                                      :
MADOFF SECURITIES                     :
------------------------------------- x
                                      :
PERTAINS TO THE FOLLOWING CASES:      :
                                      :
Picard v. Franitza, 11 Civ. 4505;     :
Picard v. Maccabee, 11 Civ. 4937;     :
Picard v. American Securities, 11     :
Civ. 8018.                            :
------------------------------------- x
JED S. RAKOFF, U.S.D.J.
```



Each of the defendants in the above captioned cases seeks mandatory withdrawal of the reference to the bankruptcy court of the underlying adversarial proceeding brought against each of them respectively by plaintiff Irving H. Picard, the trustee for the Estate of Bernard L. Madoff Investment Securities ("Madoff Securities") appointed pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa et seq. Because these motions raise identical questions of law, albeit in different combinations, the Court issues this one Memorandum Order to decide which aspects of the underlying proceedings will be withdrawn, and which not. In large part, the Court relies on the reasoning set forth in its opinions in Picard v. Flinn Inv., LLC, 463 B.R. 280 (S.D.N.Y. 2011) and Picard v. Avellino, 2012

WL 826602 (S.D.N.Y. Feb. 29, 2012), both of which withdrew the reference in still other adversarial proceedings in the underlying bankruptcy of Madoff Securities.

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), the district court may refer actions within its bankruptcy jurisdiction to the bankruptcy judges of the district. The Southern District of New York has a standing order that provides for automatic reference.

Notwithstanding the automatic reference, the district court may, on its own motion or that of a party, withdraw the reference, in whole or in part, in appropriate circumstances. Withdrawal is mandatory "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Notwithstanding the plain language of this section, however, the Second Circuit has ruled that mandatory "[w]ithdrawal under 28 U.S.C. § 157(d) is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the bankruptcy court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990).

2

The defendants in these cases identify many issues that they believe require "substantial and material consideration" of non-bankruptcy federal laws regulating organizations or activities affecting interstate commerce, including important unresolved issues under SIPA itself, a statute that has both bankruptcy and non-bankruptcy aspects and purposes. See In re Bernard L. Madoff Investment Securities, 654 F.3d 229, 235 (2d Cir. 2011) ("SIPA serves dual purposes: to protect investors, and to protect the securities market as a whole."); Picard v. HSBC Bank PLC, 450 B.R. 406, 410 (S.D.N.Y. 2011). The Court considers defendants' contentions in turn. The Court notes, however, that it has made arrangements for consolidated merits briefing in these and other adversarial proceedings of many of the issues discussed below. Nothing in this Memorandum Order alters any current or future order providing for consolidated briefing of common legal issues.

First, Maccabee and American Securities argue that the Court must withdraw the reference to consider whether SIPA and other securities laws alter the standard that the Trustee must meet in order to show that a defendant did not receive transfers in "good faith" under 11 U.S.C. § 548(c). The Court examined this issue in Avellino, and found that it merited withdrawal. 2012 WL 826602, at *1-*2. Accordingly, for the reasons stated in Avellino, the Court withdraws these cases in order to resolve this issue.[1]

---

[1] With respect to American Securities, the Securities Investor Protection Corporation ("SIPC") argues that the fact that the Trustee seeks to recover subsequent transfers under § 550(a) rather than to avoid fraudulent

3

Second, each of the defendants argues that § 546(e) of the Bankruptcy Code prevents the Trustee from avoiding transfers as fraudulent except under § 548(a)(1)(A) of that Code. For substantially the reasons stated in Flinn and Avellino, the Court withdraws the reference in each case in order to address this issue.

Third, each of the defendants argues that the Trustee cannot avoid transfers that, under applicable securities laws, satisfied antecedent debts, providing value under 11 U.S.C. § 548(c). The Court considered this issue at length in Flinn and concluded that it merited withdrawal of the reference. For the same reasons, the Court withdraws the reference in each case in order to address this issue.[2]

---

transfers under § 548 renders § 548(c) inapplicable. The Court rejects this argument. Section 550(a) permits recovery of a subsequent transfer only "to the extent that a transfer is avoided under" § 548 or some other avoidance statute. Thus, if § 548(c) provides a defense against avoidance of the initial transfer, it also provides a defense against recovery of the subsequent transfer. Moreover, § 550(b) also provides a good faith defense for subsequent transferees. Given that the securities laws, as noted in Avellino, may require a different interpretation of good faith, the Court also withdraws the reference to the extent necessary to determine what "good faith" means under § 550(b).

[2] Franitza argues that the Trustee's method for calculating profits disregards the applicable statutes of limitation. As the Court's previous opinions indicate, calculating defendants' profits requires the Court to determine what "value" defendants provided and to resolve how the relevant statutes of limitation apply to that determination of "value." Cf. SIPC v. Madoff Securities, 2012 WL 1505349, at *11 (S.D.N.Y. Apr. 30, 2012). Thus, the Court will consider Franitza's arguments concerning the Trustee's calculation of profits insofar as doing so is necessary to assess the defendants' invocation of 11 U.S.C. § 548(c).
    Furthermore, for the reasons stated above in footnote one, the Court rejects any suggestion that the fact that a claim proceeds under § 550(a) renders § 548(c) inapplicable and further withdraws the reference to the extent necessary to determine what constitutes "value" under the defense provided by § 550(b).

4

Fourth, each of the defendants argues that the Supreme Court's decision in <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011), prevents the bankruptcy court from finally resolving fraudulent transfer actions because resolution of such actions requires an exercise of the "judicial Power" reserved for Article III courts. The Court has already withdrawn the reference to consider this issue for the reasons stated in <u>Flinn</u> and <u>Avellino</u>. <u>See</u> Order dated April 13, 2012. The Court has also consolidated briefing of the issues raised by <u>Stern v. Marshall</u> in all of the pending adversarial proceedings that have raised those issues in a motion to withdraw the reference. <u>See</u> <u>id.</u>

Next, Franitza claims that provisions of the Internal Revenue Code ("IRC"), 26 U.S.C. § 1 <u>et seq.</u>, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 <u>et seq.</u>, that mandate withdrawals from customers' Madoff Securities accounts necessarily prevent the Trustee from avoiding the required withdrawals as fraudulent. The Court considered an almost identical issue in <u>Flinn</u>, and its reasons for withdrawing the reference in that case apply equally here. Accordingly, the Court withdraws the reference to consider this issue.

Franitza also raises two issues that the Court has previously determined do not require withdrawal of the reference to the Bankruptcy Court: (1) whether SIPA empowers the Trustee to avoid fraudulent transfers in disregard of the securities customers' legitimate expectations that the brokerage statements they received from Madoff Securities reflected real transactions; and (2) whether

5

SIPA requires the Trustee to apply a constant dollar approach -- which would take inflation into account -- when calculating what he can recover as fictitious profits. For the reasons stated in Flinn, the Court again declines to withdraw the reference to consider these two issues.

Turning to new issues, Franitza and Maccabee argue that the Securities Litigation Uniform Standards Act ("SLUSA") preempts the Trustee's claims against them. SLUSA requires the dismissal of a "covered class action" that is (1) based on state law and (2) either alleges "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security" or alleges that "the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b). A "covered class action" is defined as a lawsuit in which (1) "damages are sought on behalf of more than 50 persons or prospective class members," or (2) "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties." 15 U.S.C. § 77p(f)(2)(A). SLUSA does, however, provide that, in counting class members, "a corporation, investment company, pension plan, partnership, or other entity, shall be treated as one person or prospective class member . . . if the entity is not established for the purpose of participating in the action." 15 U.S.C. § 77p(f)(2)(C).

While the Court has previously withdrawn the reference to consider whether SLUSA bars the Trustee from pursuing common law

claims, the Court declines to withdraw the reference to consider how SLUSA applies to the Trustee's claims under the Bankruptcy Code. Here, the issue presented does not require "substantial and material consideration" of SLUSA for two reasons. First, in contrast to the common law claims at issue in previous cases, the Trustee's claims in this case arise under the Bankruptcy Code. Even those of the Trustee's claims that invoke the New York Debtor and Creditor Law proceed under § 544(b) of the Bankruptcy Code, which permits the Trustee to avoid transfers under "applicable law." 11 U.S.C. § 544(b). Thus, the Trustee's claims are not "based upon the statutory or common law of any State," 15 U.S.C. § 77p(b), and SLUSA clearly does not preempt those claims. Second, whereas the Trustee purported to bring common law claims on behalf of Madoff Securities' customers, see Picard v. HSBC Bank PLC, 450 B.R. 406, 410 (S.D.N.Y. 2011), he brings his avoidance claims (notwithstanding his rhetoric), on behalf of Madoff Securities' estate, an entity established for administering Madoff Securities' remaining assets, rather than for bringing avoidance actions, see id. at 413 (finding that the Trustee would "clearly" be a single entity if "suing on behalf of the Madoff Securities estate, for the estate would then be considered an entity and the Trustee's Action would not be a covered class action"). Accordingly, SLUSA does not apply for the independent reason that the Trustee counts as a single claimant and thus does not bring a "covered class action." Because the issue raised by Franitza and Maccabee requires only simple application

of SLUSA, rather than substantial and material consideration, the Court declines to withdraw the reference to consider it.

Next, the Maccabee defendants argue that the Court must withdraw the reference to determine whether they received transfers of "customer property" under SIPA. SIPA empowers the Trustee to invoke the avoidance provisions of the Bankruptcy Code in order to recover "any property transferred by the debtor which, except for such transfer, would have been customer property." 15 U.S.C. § 78fff-2(c)(3). Customer property includes "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." Id. § 78lll(4). While discovery may raise an issue requiring "substantial and material consideration" of SIPA, and thus meriting withdrawal of the reference, on the current record, this issue requires only simple application. Specifically, the Trustee has alleged that the Maccabee defendants received transfers of "money stolen from Madoff's other clients," i.e., of "cash" that Madoff Securities "received" from its customers for their securities accounts. Complaint in Picard v. Maccabee dated December 10, 2010 ¶ 65. Thus, without further factual development, the Maccabee defendants have little basis for disputing that the Trustee may pursue claims against them under § 78fff-2(c)(3). Since simple application of SIPA resolves this issue, the Court declines, at least on the current record, to withdraw the reference.

Finally, American Securities argues that the Court must withdraw the reference because the Bankruptcy Court lacks "subject matter jurisdiction" over SIPA proceedings. Congress, constrained only by the Constitution, has the authority to determine the jurisdiction of lower federal courts, including the Bankruptcy Court. See U.S. Const. art. III, § 1 ("The judicial power of the United States, shall be vested . . . in such inferior Courts as the Congress may from time to time ordain and establish."); 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."). Thus, American Securities' argument raises the following two questions. First, has Congress enacted a statute that gives the Bankruptcy Court jurisdiction over SIPA proceedings? Second, if Congress has enacted such a statute, does that statute comply with the requirements imposed by the Constitution?

The answer to the first question is undoubtedly yes. Section 78eee(b)(4) of Title 15 provides:

> Upon the issuance of a protective decree and appointment of a trustee, or a trustee and counsel, under this section, the court shall forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under Title 11. The latter court shall thereupon have all of the jurisdiction, powers, and duties conferred by this chapter upon the court to which application for the issuance of the protective decree was made.

As noted above, the Southern District of New York has a standing order referring cases under Title 11 to the Bankruptcy Court. Thus, Congress

9

has given the Bankruptcy Court "jurisdiction" over SIPA cases. While American Securities argues that SIPA proceedings do not arise under Title 11, and thus do not fall within the scope of matters this District can refer under § 157(a), it does not explain why Congress cannot enact a separate provision, such as § 78eee(b)(4), that independently permits the reference or "removal" of SIPA proceedings to the Bankruptcy Court. Thus, the Court finds that Congress has enacted a statute, specifically § 78eee(b)(4), that gives the Bankruptcy Court jurisdiction over SIPA proceedings.

Turning to the second question, Stern v. Marshall governs whether and to what extent the Constitution restricts Congress's ability to empower the Bankruptcy Court to hear SIPA proceedings such as these. See 131 S. Ct. at 2620. As noted above, the Court has already withdrawn the reference in these and numerous other cases to consider whether and how Stern limits the types of claims that Congress can, under the Constitution, empower the Bankruptcy Court to hear and decide. Accordingly, while the Court rejects any challenge to the Bankruptcy Court's statutory jurisdiction to hear these cases, it has, as noted above, withdrawn the reference to consider constitutional limitations of the Bankruptcy Court's authority.

For the foregoing reasons, the Court withdraws the reference of these cases to the bankruptcy court for the limited purposes of deciding: (i) whether SIPA and other securities laws alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in "good faith" under 11 U.S.C. § 548(c); (ii)

whether the Trustee may, consistent with non-bankruptcy law, avoid transfers that Madoff Securities purportedly made in order to satisfy antecedent debts; (iii) whether 11 U.S.C. § 546(e) applies to these cases, limiting the Trustee's ability to avoid transfers; (iv) whether provisions of the IRC and ERISA that mandated withdrawals from customers' Madoff Securities accounts prevent the Trustee from avoiding the required withdrawals as fraudulent; (v) whether, after the United States Supreme Court's recent decision in <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011), final resolution of claims to avoid transfers as fraudulent requires an exercise of "judicial Power," preventing the bankruptcy court from finally resolving such claims; and (vi) whether, if the bankruptcy court cannot finally resolve the fraudulent transfer claims in this case, it has the authority to render findings of fact and conclusions of law before final resolution. In all other respects, the motions to withdraw are denied.

The parties to any case that presents withdrawn issues which are not subject to consolidated briefing should convene a conference call no later than June 4, 2012 to schedule further proceedings. The Clerk of the Court is hereby ordered to close document number 1 on the docket of each case.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       June 5, 2012

11