**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>         Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>         Defendants. | 12 Misc. 00115 (JSR) |
| In re MADOFF SECURITIES | |
| PERTAINS TO THE FOLLOWING CASES: | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br>         Plaintiff, <br><br> v. <br><br> ROBERT ROMAN, <br><br>         Defendant. | 12 Civ. 2318 (JSR) |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 4

I.      THE DEFENDANT'S MOTION TO WITHDRAW THE AVOIDANCE
        ACTION CANNOT MEET THE REQUIREMENTS FOR MANDATORY
        WITHDRAWAL ............................................................................................................. 4

        A.      Section 157(d) Has Been Narrowly Construed in the Second Circuit ................... 5

        B.      It is Undisputed that The Trustee Has Article III Standing ................................. 7

                1.      There is No Conflict between SIPA and Bankruptcy Law to Merit
                        Withdrawal ............................................................................................... 7

                2.      Funds Transferred to BLMIS Constitute Customer Property .................... 9

        CONCLUSION ................................................................................................................ 11

## <u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Adelphia Recovery Trust v. FLP Group, Inc.*, No. 11 Civ. 06847 (PAC) (S.D.N.Y. Jan. 30, 2012) ................................................................................................................ 6

*Carter Day Indust., Inc. v. EPA (In re Combustion Equip. Assoc.)*, 67 B.R. 709 (S.D.N.Y. 1986) 5

*City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) .............................................. 5, 7

*Enron Corp. v. J.P. Morgan Sec.* (*In re Enron Corp.*), 388 B.R. 131 (S.D.N.Y. 2008) ............... 5

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 343 B.R. 63 (S.D.N.Y. 2006) ............................................................................................................... 5

*Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 185 B.R. 680 (S.D.N.Y. 1995) 5

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011) ....................................... 2, 3

*In re Johns-Manville Corp.*, 63 B.R. 600 (S.D.N.Y. 1986) ........................................................ 6

*In re Ramirez Rodriguez*, 209 B.R. 424 (Bankr. S.D. Tex. 1997) .............................................. 9

*Ivey v. Swofford (In re Whitley)*, 463 B.R. 775 (Bankr. M.D.N.C. 2012) .................................. 9

*Jobin v. Lalan (In re M&L Bus. Mach. Co., Inc.)*, 160 B.R. 851 (Bankr. D. Col. 1993) .............. 9

*Jobin v. Youth Benefits Unlimited, Inc. (In re M&L Bus. Mach. Co., Inc.)*, 59 F.3d 1078 (10th Cir. 1995) .............................................................................................................. 9

*Rosenman Family, LLC v. Picard*, 395 F. App'x. 766 (2d Cir. 2010) ...................................... 9, 10

*Rosenman Family, LLC v. Picard*, 401 B.R. 629 (Bankr. S.D.N.Y. 2009) ................................ 8

*Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) ...................................................................... 10

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) ........................................................... 3

*Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 163 B.R. 841 (Bankr. D. Col. 1994) ...... 9

*Shugrue v. Airline Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (2d Cir. 1990). ................................................................................................................ 5

**Statutes**

11 U.S.C. § 741(4) ...................................................................................................... 7, 8

## TABLE OF AUTHORITIES
### (Continued)

Page

15 U.S.C. § 78aaa ................................................................................................ 1

15 U.S.C. § 78fff(b) ............................................................................................ 2

15 U.S.C. § 78fff-1 ............................................................................................. 3

15 U.S.C. § 78fff-2(c)(3) .................................................................................... 3

15 U.S.C. § 78*lll*(4) .......................................................................................... 7

28 U.S.C. § 157(a). ............................................................................................. 5

28 U.S.C. § 157(d) .............................................................................................. 5

**Other Authorities**

Amended Standing Order of Reference, *In the Matter of Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) .......................................................... 6

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the "Debtors"), by and through his undersigned counsel, hereby submits this memorandum of law in opposition to the Amended Motion to Withdraw Bankruptcy Reference (the "Motion") and accompanying Memorandum of Law ("Mem. of Law") filed in the following action: *Picard v. Robert Roman*, Adv. Pro. No. 10-04292 (Bankr. S.D.N.Y.) (BRL), No. 12 Civ. 02318 (JSR) (S.D.N.Y.) (ECF No. 4) (the "Roman Action").[2]

## PRELIMINARY STATEMENT

Through this Motion, defendant Robert Roman (the "Defendant")—like the assembly line of defendants that came before him—is opportunistically seeking to jump through the "escape hatch" out of the bankruptcy court seemingly created by this Court's prior rulings.  Not surprisingly, and consistent with the approach in the spate of recent motions, the Defendant is desperately seeking to bypass the bankruptcy court and withdraw an avoidance action involving quintessentially "core" bankruptcy causes of action that Congress intended the bankruptcy courts to hear and determine in the first instance.

The Defendant argues that withdrawal of the reference is necessary because the bankruptcy court ostensibly cannot analyze and apply basic provisions of the Bankruptcy Code such as the definition of "property of the estate" or "customer property" in the context of a SIPA

---

[1] The Securities Investor Protection Act ("SIPA") is found at 15 U.S.C. §§ 78aaa *et seq*. For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] A copy of the complaint filed by the Trustee against the Defendant is annexed to the Declaration of Oren J. Warshavsky, Esq. ("Warshavsky Decl.") as Exhibit 1.

liquidation proceeding.  However, this argument is contrary to the express language of SIPA and would require this Court to create and apply a standard to this SIPA proceeding that simply does not exist.  The plain language of SIPA is informed by bankruptcy law and expressly incorporates the Bankruptcy Code and related bankruptcy jurisprudence.[3]

Moreover, Second Circuit precedent and the recent Amended Standing Order of Reference provide a clear directive in favor of maintaining the reference to bankruptcy courts in core matters.  Indeed, this District's judges have implemented this mechanism to ensure that bankruptcy courts hear and determine core matters in the first instance.  The Trustee respectfully requests that this Court adhere to that directive and close the door on the glut of copycat motions seeking to avoid the bankruptcy court at all costs—starting with the instant Motion. Accordingly, the Motion should be denied.

## BACKGROUND

### A.    Commencement of the SIPA Liquidation

Having adjudicated various Madoff liquidation matters, this Court's familiarity with the background of this matter is presumed.

### B.    SIPA Authorizes the Trustee to Pursue Avoidance Actions

SIPA § 78fff(b) grants the Trustee authority to conduct a SIPA liquidation proceeding "in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11."  SIPA § 78fff(b); *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011) (the "*Second Circuit Net Equity Decision*") ("Pursuant to

---

[3] For example, SIPA § 78fff-1(b) expressly incorporates the Bankruptcy Code and specifies that a SIPA proceeding is to "be conducted in accordance with, and as though it were being conducted under" the Bankruptcy Code and governed by relevant provisions of title 11. Moreover, SIPA § 78eee(b)(4) specifically requires that "[u]pon the issuance of a protective decree and appointment of a trustee … the court *shall* forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under title 11."

SIPA, Mr. Picard has the general powers of a bankruptcy trustee, as well as additional duties, specified by the Act, related to recovering and distributing customer property.") (citing SIPA § 78fff-1.  SIPA § 78fff-2(c)(3) expressly incorporates the Bankruptcy Code and authorizes a SIPA Trustee to recover any fraudulent transfers, including those to customers.  SIPA § 78fff-2(c)(3); *Second Circuit Net Equity Decision*, 654 F.3d at 241 n.10 ("SIPA and the Code intersect to . . . grant a SIPA trustee the power to avoid fraudulent transfers for the benefit of customers.") (quoting *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 136 (Bankr. S.D.N.Y. 2010).

**C.      The Defendant's Customer Claims**

On or about January 28, 2009, Defendant filed a customer claim with respect to Account No. 1R0148, which the Trustee has designated as Claim No. 001181.  In addition, on or about June 15, 2009, and June 16, 2009, Defendant filed additional customer claims with the Trustee, which the Trustee has designated as Claim No. 100143 and Claim No. 100167, respectively (collectively, referred to as the "Customer Claims"). On or about June 29, 2010, the Trustee issued a Notice of Trustee's Determination to Defendant (the "Determination"), denying the Customer Claims.   On or about July 14, 2010, the Defendant filed an objection to the Determination with the bankruptcy court.

**D.      The Trustee's Avoidance Action Against The Defendant**

The Trustee's complaint in the avoidance action against the Defendant alleges various avoidance causes of action, all "core" matters arising under the Bankruptcy Code or the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001) ("DCL")).  *See* Warshavsky Decl. at Exhibit 1.  Specifically, the Trustee seeks to avoid certain transfers as (i) actual fraudulent transfers under Bankruptcy Code sections 544,

548(a)(1)(A), 550(a), and 551 and the DCL and (ii) constructive fraudulent transfers under

Bankruptcy Code sections 544, 548(a)(1)(B), 550(a), and 551 and the DCL.

## ARGUMENT

I.   **THE DEFENDANT'S MOTION TO WITHDRAW THE AVOIDANCE ACTION
     CANNOT MEET THE REQUIREMENTS FOR MANDATORY WITHDRAWAL[4]**

The Defendant contends that this Court must withdraw the reference pursuant to section

157(d), but does not and cannot demonstrate any of the exceptional circumstances required for

mandatory withdrawal.  Rather, this avoidance action requires nothing more than adjudication of

avoidance actions under the Bankruptcy Code to recover customer property.

---

[4] The Trustee has not addressed the Defendant's antecedent debt, Bankruptcy Code section 546(e), and *Stern v. Marshall* arguments pursuant to the various orders by which the Court has consolidated briefing on (i) whether the Trustee may, consistent with non-bankruptcy law, avoid transfers that BLMIS purportedly made in order to satisfy antecedent debts (*see* Order dated May 16, 2012, No. 12 MC 0115 (S.D.N.Y. May 15, 2012) (ECF No. 107); (ii) whether 11 U.S.C. § 546(e) limits the Trustee's ability to avoid transfers made by BLMIS (*see* Order dated April 15, 2012, No. 12 MC 0115 (S.D.N.Y. May 16, 2012) (ECF No.119); and (iii) whether the *Stern v. Marshall* decision "prevents the Bankruptcy Court from entering a final order or judgment resolving claims by the Trustee to avoid or recover . . . fraudulent conveyances" and if so, "whether the Bankruptcy Court has the authority to render proposed findings of fact and proposed conclusions of law," and "whether the Court should permissively withdraw based on the *Stern* Decision for cause" (*see* Order, *In re: Madoff Sec.,* No. 12-MC-00115 (JSR) (S.D.N.Y. April 13, 2012) (ECF No. 4)). Accordingly, during a telephonic conference held with the Court on June 26, 2012, the parties agreed the sole issue to be briefed herein was whether the Trustee lacks Article III standing to pursue the avoidance action against the Defendant, as set forth in Section D of the Mem. of Law. The Trustee reserves all rights related to the Defendant's arguments in connection with antecedent debt, Bankruptcy Code section 546(e), and *Stern v. Marshall*, which will be addressed in the context of the consolidated briefing ordered by the Court.

In addition, the parties also agreed that the "interest" issue, as raised in Section E of the Mem. of Law, will be addressed in the context of the consolidated briefing ordered with respect to the antecedent debt issue, notwithstanding the fact that the Court has not previously withdrawn the reference to address the "interest" issue. *See, e.g.,* Consolidated Memorandum of Law in Support of Motion to Dismiss Regarding Antecedent Debt Issues, *In re Madoff Sec.,* No. 12 MC 0115 (JSR) (S.D.N.Y. June 25, 2012) (ECF No. 199) (the "Antecedent Debt Brief"). The Trustee reserves his right to respond to the "interest" issue within the consolidated briefing, including whether the issue was appropriately raised in the Antecedent Debt Brief.

### A.  <u>Section 157(d) Has Been Narrowly Construed in the Second Circuit</u>

The scope of bankruptcy jurisdiction over all matters affecting a debtor and its property is broadly construed.  *Shugrue v. Airline Pilots Ass'n, Int'l* (*In re Ionosphere Clubs, Inc.*), 922 F.2d 984, 994 (2d Cir. 1990).  All cases and proceedings arising under, arising in, or related to a bankruptcy case, including SIPA liquidations, are automatically referred to the bankruptcy court.  *See* 28 U.S.C. § 157(a).  For the bankruptcy court to proceed efficiently and within the bounds of its broad grant of jurisdiction, the reference to the bankruptcy court may be withdrawn only in limited circumstances, as provided in section 157(d) of title 28.  *In re Ionosphere Clubs, Inc.*, 922 F.2d. at 993.  The Second Circuit has consistently held that section 157(d) must be "construed narrowly," *see, e.g., id.* at 995, and is not to be used as an "escape hatch through which most bankruptcy matters [could] be removed to a district court."  *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 343 B.R. 63, 66 (S.D.N.Y. 2006) (quoting *Carter Day Indust., Inc. v. EPA (In re Combustion Equip. Assoc.)*, 67 B.R. 709, 711 (S.D.N.Y. 1986)) (internal quotation omitted).  A narrow reading of the mandatory withdrawal provisions is necessary so as not to "eviscerate much of the work of the bankruptcy courts."  *Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 185 B.R. 680, 683 (S.D.N.Y. 1995).

Mandatory withdrawal "is not available merely because non-Bankruptcy Code federal statutes will be considered in the bankruptcy court proceeding."  *In re Ionosphere Clubs, Inc.*, 922 F.2d at 995.  Rather, as the Second Circuit has held, mandatory withdrawal "is reserved for cases where *substantial and material consideration* of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *Id.* at 995 (emphasis added).  "Substantial and material consideration" requires a bankruptcy judge to "engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991); *Enron Corp. v. J.P. Morgan Sec. (In*

*re Enron Corp.*), 388 B.R. 131, 136 (S.D.N.Y. 2008). Indeed, the "substantial and material consideration" standard excludes from mandatory withdrawal those cases that involve only the routine application of non-title 11 federal statutes to a particular set of facts. *See In re Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y. 1986).

The Defendant cannot meet the standard for withdrawal of the reference to resolve the Trustee's claims because no material interpretation of SIPA or any other federal non-bankruptcy laws is required to resolve the remaining issue at hand—whether the Trustee lacks Article III standing—nor is there any potential conflict between the Bankruptcy Code and SIPA with respect to such an issue. On its face, SIPA mandates removal to the bankruptcy court in the first instance. SIPA is routinely interpreted by bankruptcy courts, as it was originally derived from a bankruptcy statute and specifically incorporates the Bankruptcy Code. The Defendant's allegation that the Roman Action cannot be adjudicated by the bankruptcy court because it may implicate issues under SIPA is simply wrong and this Court "has previously explained that not every issue arising under SIPA mandates withdrawal; instead, only issues requiring *substantial and material* interpretation of SIPA require withdrawal." Order, *Picard v. Fiterman Inv. Fund et al.,* 12 MC 0115 (JSR) (S.D.N.Y. June 7, 2012) at 2 (ECF No. 164) (emphasis added).[5]

---

[5] Moreover, based on the clear mandate set forth in the recently entered Amended Standing Order of Reference, the bankruptcy court has the authority to adjudicate this avoidance action. The order specifically provides that for any proceeding referred to the bankruptcy court and "determined to be a core matter, the bankruptcy judge *shall* . . . hear the proceeding and submit proposed findings of fact and conclusions of law to the district court." Amended Standing Order of Reference, *In the Matter of Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (emphasis added). In light of this directive, a Court in this District recognized that this "explicit authority to issue proposed findings and conclusions in connection with core matters" dictated maintaining the reference to the bankruptcy court. *See* Opinion & Order, *Adelphia Recovery Trust v. FLP Group, Inc*., No. 11 Civ. 06847 (PAC) (S.D.N.Y. Jan. 30, 2012) at 10.

**B.**     **It is Undisputed that The Trustee Has Article III Standing**

The Defendant's argument that the reference must be withdrawn to determine whether the Trustee has Article III standing is premised on the Defendant's erroneous position that the funds that the Trustee is seeking to recover were never BLMIS's property and that, therefore, the Trustee cannot satisfy the injury in fact requirement of Article III standing.[6]   The Defendant's argument should be rejected because the Defendant fails to satisfy the standard for mandatory withdrawal and because, on the merits, the Defendant is wholly incorrect.

**1.**     **There is No Conflict between SIPA and Bankruptcy Law to Merit Withdrawal**

As set forth earlier, mandatory withdrawal of the reference is reserved for those issues which require a bankruptcy court "to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *Exxon Corp.*, 932 F.2d at 1026. Here, the Defendant alleges that the Trustee lacks standing because there was allegedly no injury in fact, as the funds were purportedly never property belonging to BLMIS.  However, this issue does not require any "significant interpretation" of non-bankruptcy federal law.  Rather, it entails a simple analysis of section 541 of the Bankruptcy Code to determine whether the funds in question were "property of the estate"[7] or in the alternative, SIPA § 78*lll*(4) to determine whether the definition of the term "customer property" applies to the funds at issue.  *See* 11 U.S.C. § 541; 15 U.S.C. § 78*lll*(4).  Neither determination requires significant analysis of non-

---

[6] Article III standing is satisfied when the litigant has "(i) a concrete and particularized 'injury in fact,' (ii) that can be fairly traced to the defendants' conduct, and (iii) that can be redressed by a favorable decision." *Bogart v. Israel Aerospace Indus. Ltd.*, No. 09 Civ. 4783(LAP), 2010 WL 517582, at *3-4 (S.D.N.Y. Feb. 5, 2010).

[7] The Trustee does not address whether the funds at issue come within the Bankruptcy Code's definition of "property of the estate" because this does not entail *any* consideration of non-bankruptcy federal law and thus, does not implicate mandatory withdrawal.

bankruptcy federal law, especially when the issue has already been determined by the Second Circuit in this liquidation proceeding.

SIPA § 78 *lll* (4) defines customer property, in relevant part, as:

> cash and securities … at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, **including property unlawfully converted**. The term "customer property" includes - *** (D) any other property of the debtor which, upon compliance with applicable laws, rules, and regulations, would have been set aside or held for the benefit of customers…

15 U.S.C. § 78 *lll* (4) (emphasis added).[8] Accordingly, customer property "includes all property that was or should have been set aside for customers" and includes "bank accounts containing customer funds." *Rosenman Family, LLC v. Picard*, 401 B.R. 629, 636 (Bankr. S.D.N.Y. 2009), *aff'd.* 420 B.R. 108 (S.D.N.Y. 2009). *Cf.* 6 COLLIER ON BANKRUPTCY ¶ 741.05[1] at 741–14 (15th ed. rev.1997) (defining "customer property" under section 741(4) of Bankruptcy Code and stating "the Bankruptcy Code's definition of customer property closely parallels that of SIPA"). Clearly, there is no "conflict" or "dispute" between the SIPA and Bankruptcy Code's respective definitions of "customer property," that would warrant mandatory withdrawal as much as Defendant may insist otherwise. *See* Mem. of Law at 5 citing *HSBC Bank PLC,* 450 B.R. 406,

---

[8] Similarly, under section 741(4) under the Bankruptcy Code, customer property is defined as:

> cash, security, or other property, and proceeds of such cash, security, or property, received, acquired, or held by or for the account of the debtor, from or for the securities account of a customer-- (A) including--  (i) **property that was unlawfully converted** from and that is the lawful property of the estate; *** (iv) other property of the debtor that any applicable law, rule, or regulation requires to be set aside or held for the benefit of a customer . . .

11 U.S.C. § 741(4) (emphasis added).

413 (S.D.N.Y. 2011) (deeming a conflict between SIPA and bankruptcy law as "something that itself warrants withdrawal of the bankruptcy reference.").

### 2.    Funds Transferred to BLMIS Constitute Customer Property

While mandatory withdrawal is not decided on the merits of the substantial issues put forth before the Court, this Court has already ruled that the Trustee has standing to bring avoidance actions to recover customer property, defeating Defendant's entire argument.  *See In re Madoff Sec. LLC,* 2012 WL 1505349 at 10 (S.D.N.Y. April 30, 2012) (stating "the Trustee may . . . avoid those fraudulent transfers of customer property for distribution in accordance with SIPA's priorities.") (citing SIPA § 78fff–2(c)(3)).   Moreover, it is well settled that funds transferred to a fraudulent scheme constitute property of the estate under the Bankruptcy Code and customer property under SIPA.  *See e.g. Rosenman Family, LLC v. Picard*, 395 F. App'x. 766, 769 (2d Cir. 2010); *Rosenman Family*, 401 B.R. at 635 (ruling that funds deposited by an investor to BLMIS's bank account at JP Morgan Chase constituted customer property); *Jobin v. Lalan (In re M&L Bus. Mach. Co., Inc.)*, 160 B.R. 851, 857 (Bankr. D. Col. 1993) ("There is no argument but that the investors gave their money to the Debtor voluntarily. Thus, at the time of each investment, the Debtor had at least the legal right to possession… All that § 548 requires is the transfer of an 'interest' by the Debtor.").  *See also Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 163 B.R. 841, 850 (Bankr. D. Col. 1994); *In re Ramirez Rodriguez*, 209 B.R. 424, 432 (Bankr. S.D. Tex. 1997); *Jobin v. Youth Benefits Unlimited, Inc. (In re M&L Bus. Mach. Co., Inc.)*, 59 F.3d 1078, 1081 (10th Cir. 1995); *Ivey v. Swofford (In re Whitley)*, 463 B.R. 775, 780 (Bankr. M.D.N.C. 2012).

Indeed, the Defendant's argument that BLMIS never acquired title to the funds because they were stolen has already been made, and rejected, in this SIPA proceeding.  In *Rosenman Family*, 395 Fed. Appx. at 769, the Appellant claimed that it was "neither a customer or general

creditor because . . . the debtor never acquired title to the $10 million it wired" and"[b]ecause the money never became the debtor's property, Appellant argue[d] . . . it cannot form part of the bankruptcy estate; rather . . . the money was stolen or embezzled."  However, the Second Circuit stated:

> [N]one of the facts alleged in Appellant's complaint support such a conclusion, or any other conclusion that would exclude this money from the debtor's property under either New York or bankruptcy law.  The $10 million was voluntarily transferred by the Appellant, was never diverted by the debtor… and remained with the debtor. Accordingly, we need not consider whether New York or bankruptcy law applies.  Under either, given the allegations in the complaint, the $10 million is part of the debtor's estate.

*Id.* at 769.   In rendering its decision, the Second Circuit affirmed both the District and bankruptcy court's rulings that funds transferred by an investor to BLMIS's bank account at JP Morgan Chase constituted customer property and property of the estate.  As the Honorable Burton R. Lifland stated, the:

> attempt to compare the circumstances surrounding the allegations in the Complaint to a thief who breaks into an individual's home and steals money is completely unfounded. Unlike the victim of a theft, Plaintiff voluntarily entrusted funds with BMIS for a purpose; namely, to purchase securities through BMIS.

*Rosenman*, 401 B.R. at 635, n. 10.[9]

Since the funds at issue are BLMIS's property, the Trustee's claims are properly brought on behalf of BLMIS's estate and the Trustee has Article III standing. *See e.g.*, *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) (finding the receiver had standing to pursue fraudulent conveyance actions against defendants when the corporations over which the receiver had been appointed were instrumentalities of the individual operating the corporations as Ponzi schemes).

---

[9] Defendant admits that he entrusted funds to BLMIS. *See* Mem. of Law at 17.

Therefore, the Court should deny the Defendant's Motion seeking to determine whether the Trustee has Article III standing to pursue fraudulent transfer claims which involve BLMIS's property.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests the court deny the Motions.

Date:   New York, New York
       July 10, 2012

/s/ Oren J. Warshavsky
_____
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Anat Maytal
Email: amaytal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*