UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>                   Plaintiff,<br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>                   Defendant. | 12-MC-00115 (JSR) |
| In re:<br><br>MADOFF SECURITIES | Relates to consolidated proceedings on "Good Faith" Standard under 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) |

## CONSOLIDATED SUPPLEMENTAL GOOD FAITH STANDARD BRIEFING ON BEHALF OF SERVICE PROVIDERS PURSUANT TO THE ORDER OF THE COURT DATED JUNE 23, 2012

# **TABLE OF CONTENTS**

STATEMENT OF THE CASE ................................................................................................... 1

THE ILLUSTRATIVE COMPLAINTS ..................................................................................... 3

CONCLUSION ............................................................................................................................ 6

The defendants identified in Exhibit A (the "Service Providers") respectfully submit this supplemental brief, pursuant to the Good Faith Order,[1] in support of their motion to dismiss the avoidance and recovery claims asserted by the Trustee against them.[2]

## STATEMENT OF THE CASE

The Service Providers are banks, investment advisors, custodians, and other entities and individuals that provided banking, advisory, administrative and custodial services to international investment funds that invested directly or indirectly with Bernard L. Madoff Investment Securities ("BLMIS"), or the direct or indirect corporate parents of such service providers. The complaints in *Picard v. Kohn*, Adv. Pro. No. 10-5411 (BRL) (the "Kohn Complaint"), *Picard v. HSBC Bank PLC*, Adv. Pro. No. 09-1364 (BRL) (the "HSBC Complaint") and *Picard v. Maxam Absolute Return Fund, L.P.*, Adv. Pro. No. 10-05342 (BRL) (the "Unredacted Maxam Complaint") are illustrative, although the arguments outlined here apply to all recovery actions against the Service Providers.

As was shown in the Consolidated Brief on Behalf of Subsequent Transferee Defendants Responding to the Good Faith Standard Issues Raised by Order of the Court Dated June 23, 2012, the Trustee must plead (and later prove) that subsequent transferee defendants were willfully blind to Madoff's fraud to recover from them pursuant to § 550(b)(1) of the Bankruptcy

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Consolidated Brief on Behalf of Subsequent Transferee Defendants Responding to the Good Faith Standard Issues Raised by Order of the Court Dated Jun 23, 2012. *See* Consolidated Brief on Behalf of Subsequent Transferee Defendants Responding to the Good Faith Standard Issues Raised by Order of the Court Dated June 23, 2012, *In re Madoff Sec.*, No. 12 MC 0115 (S.D.N.Y. July 2012), Dkt. No. 242.

[2] Nothing herein waives or resolves any issue that was or could have been raised by any party except for the Good Faith Standard Issues identified in the June 23 Order. All such other issues, including, without limitation, personal jurisdiction, are expressly reserved.

Code.  In turn, to show entitlement to relief, including the defendants' willful blindness, the Trustee's complaints "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factually unsupported conclusions add nothing to plausibility as they "are not entitled to the assumption of truth" and must be disregarded.  *Iqbal*, 556 U.S. at 679.  "[W]here several different theories might explain the same conduct, a complaint must provide a factual basis for the *specific* theory on which its legal claims rely."  *Picard v. Kohn*, 2012 WL 566298, at *6 (S.D.N.Y. Feb. 22, 2012)(emphasis added), citing *Twombly,* 550 U.S. at 557.  If the factual allegations are "not only compatible with, but indeed [are] more likely explained by" lawful behavior, the Trustee has not met his burden, and the complaint must be dismissed.  *Iqbal*, 556 U.S. at 680.  Thus, the dispositive question addressed here is whether there are "well-pleaded, nonconclusory factual allegation[s]" that "plausibly suggest" that the Service Providers were willfully blind.  *Id.* at 680.

The answer is that there are none.  Indeed, the non-conclusory allegations in the complaints seeking recovery from the Service Providers show nothing more than ordinary commercial activity by the defendants, and do not come close to offering a plausible case of willful blindness, much less actual (subjective) bad faith.  Accordingly, these complaints against them must be dismissed.

## THE ILLUSTRATIVE COMPLAINTS

In the Kohn Complaint, the Trustee asserts recovery claims against alleged subsequent transferees UniCredit Bank Austria AG ("Bank Austria" or "BA"), its ultimate corporate parent UniCredit S.p.A. ("UniCredit"), and Pioneer Global Asset Management S.p.A. ("PGAM"), a subsidiary of UniCredit.  The bulk of allegations of misconduct  are entirely conclusory.  For

2

example, the Kohn Complaint alleges that Bank Austria and others "conspired to market Primeo Fund as a diversified 'fund of funds' while concealing the fact that Madoff and BLMIS would act as both investment manager and de facto custodian." (Kohn Compl. ¶ 341). The Complaint alleges no facts, however, to support the conclusion that Bank Austria was part of any such conspiracy or offer any specifics as to such supposed "concealment" (or facts showing that, if true, this was in any way improper). It is also said, with no factual support, that certain insurance companies established by UniCredit were used "as a mechanism to transfer stolen Customer Property …to a jurisdiction remote from the impending ... collapse" of BLMIS and that the companies "triggered a criminal investigation [whose details and/or outcome are not offered] in Liechtenstein" (*Id.* at ¶¶ 498-506). In a different context, this Court determined that these allegations against UniCredit are entirely conclusory and not entitled to a presumption of truth. *Kohn*, 2012 WL 566298, at *6.

Stripped of these conclusory allegations, the Kohn Complaint alleges the following:

- Bank Austria owned 25% of Bank Medici, helped Bank Medici obtain a banking license, and provided it with banking infrastructure and facilities. (Kohn Compl. ¶¶ 26-27.)

- Bank Austria created and owned the majority of shares of BA Worldwide Fund Management ("BAWFM"), which provided investment advisory services to Primeo Fund. (*Id.* at ¶¶ 356-358.)

- Bank Austria received an assignment of the Primeo trademark. (*Id.* at ¶¶ 339-340.)

- Certain Bank Austria representatives met with Madoff in New York from time to time. (*Id.* at ¶¶ 134-35, 138-39, 354-55, 434-35.)

- Bank Austria caused accounts to be opened at BLMIS, caused proceeds to be sent and received from BLMIS accounts, and received profits and fees from BLMIS. (*Id.* at ¶¶ 22, 132-40, 399.)

- Bank Austria created, marketed, and distributed the Primeo, Herald, Herald Lux, Alpha Prime and Senator Funds. (*Id.* at ¶¶ 344, 354, 400, 411, 429, 432.)

- UniCredit acquired Bank Austria, Bank Medici, and BAWFM (*id.* at ¶ 464.)

3

- UniCredit added Primeo Fund to its selection of invested products. (*Id.* at ¶ 466.)

- UniCredit established certain insurance companies in Liechtenstein. (*Id.* at ¶ 498.)

- PGAM offered its clients investments in funds that subsequently invested with BLMIS. (*Id.* at ¶ 461.)

This, the Trustee concludes, supposedly shows a lack of good faith on the part of Bank Austria, UniCredit and PGAM, as if any or all of the foregoing shows that these defendants (subjectively) knew that BLMIS was engaged in a Ponzi scheme. The "more likely explanation[]" of all these facts (indeed, the only plausible explanation on these pleadings) is that the three entities were engaging in lawful business transactions in exchange for fees or to otherwise generate revenue. *Iqbal*, 556 U.S. at 681. Lack of good faith, let alone (subjective) knowledge of Madoff's Ponzi scheme, cannot plausibly be inferred from allegations that say no more than that defendants did business that related to BLMIS and thereby were compensated.

The HSBC Complaint names Bank Austria and UniCredit as subsequent transferee defendants, as well as Pioneer Alternative Investment Management Ltd. ("Pioneer"), an indirect subsidiary of UniCredit. The HSBC Complaint suffers from the same pleading vices as the Kohn Complaint. Setting aside improper "group pleading" about supposed "red flags" (HSBC Compl. ¶¶ 144-226) [3], the HSBC Complaint alleges only the following:

- Bank Austria helped to create, control and market foreign investment funds that invested with BLMIS. (HSBC Compl. ¶¶ 7, 16, 57, 60, 61, 230-236, 538, 552.)

---

[3] For the reasons set forth in the Supplemental Memorandum of Law in Support of Motion to Dismiss on Behalf of Those Customers and Others Against Whom the Trustee Has Pled No Individualized Allegations of "Willful Blindness" filed simultaneously with this brief, the "red flag" allegations are insufficient to show subjective bad faith or willful blindness. To the extent red flags are rejected as a basis to show absence of good faith or willful blindness, similar allegations should likewise be rejected as against the Service Providers.

4

- Bank Austria received fee payments in exchange for providing marketing, managing, and distribution of the foreign funds, as well as transfers consisting of "distributions." (*Id.* at ¶ 71.)

- Bank Austria founded and owns 25% of Bank Medici. (*Id.* at ¶ 70.)

- Pioneer was an investment advisor to Primeo Fund. (*Id.* at ¶ 76.)

These allegations likewise establish nothing more than that Bank Austria and Pioneer engaged in lawful business transactions in exchange for fees. *Iqbal*, 556 U.S. at 681.[4] With respect to UniCredit, even that is not established.

Similarly deficient allegations are in the Unredacted Maxam Complaint against MAXAM Capital Management, LLC ("Maxam Capital") and MAXAM Capital GP, LLC ("Maxam GP"). Stripped of "red flag" and other conclusory allegations, the Unredacted Maxam Complaint alleges the following:

- Maxam Capital managed a domestic fund, the Defendant Maxam Absolute Return Fund, L.P., and a foreign fund for foreign investors, Defendant Maxam Absolute Return Fund, Ltd. Maxam Capital was authorized through an Investment Management Agreement, dated July 1, 2006, by ('Maxam GP'), to manage the affairs of the funds. (Unredacted Maxam Compl. ¶ 5.)

- Maxam Capital executed an Investment Advisory Agreement ('Advisory Agreement') and an Investment Policy Statement ('Policy Statement'), dated June 29, 2007 and July 1, 2007, respectively, setting forth its duties and obligations as adviser to the investment funds. Under the Advisory Agreement, Maxam Capital agreed to

---

[4] Section 550(b)(1) of the Bankruptcy Code provides that the Trustee cannot recover from a subsequent transferee that takes in good faith, for value and without knowledge of the voidability of the transfer. 11 U.S.C. § 550(b)(1). Just as it is the Trustee's burden to plead lack of good faith (including knowledge of the voidability) on the part of the Service Providers, it is also his burden to plead that they did not take "for value." (*See* Consolidated Brief on Behalf of Subsequent Transferee Defendants Responding to the Good Faith Standard Issues Raised by Order of the Court Dated June 23, 2012, Section III.) The Trustee's allegations that the Service Providers did not take for value are entirely conclusory and therefore must be disregarded. (*See, e.g.,* HSBC Compl. ¶ 15 (management companies and service providers of the Medici Funds (which include Bank Austria and Pioneer) "provided no services at all" and "recei[ved] fees for doing nothing")). This is totally formulaic, and no better than if the Trustee simply intoned, with no supporting facts, that "the defendants provided no value."

5

> provide investment advisory and supervisory services with respect to the planning, evaluating and monitoring of its clients' assets, consistent with the investment objectives of its clients.  (Unredacted Maxam Compl. ¶ 6.)
>
> - The Maxam Defendants collected in excess of $5.8 million in fees.  (Unredacted Maxam Compl. ¶ 14.)

Nothing can plausibly be inferred from this other than Maxam Capital or Maxam GP endeavoring to provide routine investment management and/or day-to-day management or administration services to Maxam Absolute Return Fund, L.P. and Maxam Absolute Return Fund, Limited, in exchange for fees.  This supports neither an inference of subjective bad faith, nor willful blindness.

## **CONCLUSION**

For the foregoing reasons, the Service Providers respectfully request that the Court enter an order dismissing with prejudice all avoidance and recovery claims against them.

Dated:   New York, New York                       SULLIVAN & WORCESTER LLP
         August 10, 2012

                                           By: /s/ Franklin B. Velie
                                               Franklin B. Velie
                                                 (fvelie@sandw.com)
                                               Jonathan G. Kortmansky
                                                 (jkortmansky@sandw.com)
                                               Mitchell C. Stein
                                                 (mstein@sandw.com)
                                          1633 Broadway
                                          New York, New York  10019
                                          (212) 660-3000

                                          *Attorneys for Defendant*
                                          *UniCredit Bank Austria AG*

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/Marco E. Schnabl
    Marco E. Schnabl
      (Marco.Schnabl@Skadden.com)
    Susan L. Saltzstein
      (Susan.Saltzstein@Skadden.com)
    Stephanie R. Feld
      (Stephanie.Feld@Skadden.com)
    Jason C. Putter
      (Jason.Putter@Skadden.com)
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Defendants UniCredit S.P.A. and Pioneer Alternative Investment Management Ltd.*

KOBRE & KIM LLP

By:/s/ Carrie A. Tendler
    Carrie A. Tendler
      (carrie.tendler@kobrekim.com)
    Jonathan D. Cogan
      (jonathan.cogan@kobrekim.com)
    Michael S. Kim
      (michael.kim@kobrekim.com)
800 Third Avenue
New York, New York 10022
(212) 488 1200

*Attorneys for Defendants MAXAM Capital Management, LLC, MAXAM Capital GP, LLC, Sandra L. Manzke, and Suzanne Hammond*

**EXHIBIT A**

|   | Defendant(s) | Case Name | Case Number |
|---|---|---|---|
| 1 | UniCredit Bank Austria AG | *Picard v. HSBC Bank, et al.* | Adv. Pro. No. 09-1364 (BRL) Case No. 12-cv-2262 (JSR) |
| 2 | UniCredit Bank Austria AG | *Picard v. Kohn, et al.* | Adv. Pro. No. 10-5411 (BRL) Case No. 12-cv-2261 (JSR) |
| 3 | UniCredit S.p.A. and Pioneer Alternative Investment Management Ltd. | *Picard v. HSBC Bank, et al.* | Adv. Pro. No. 09-1364 (BRL) Case No. 12-cv-2239 (JSR) |
| 4 | UniCredit S.p.A. and Pioneer Global Asset Management S.p.A. | *Picard v. Kohn, et al.* | Adv. Pro. No. 10-5411 (BRL) Case No. 12-cv-2240 (JSR) |
| 5 | Aurelia Fund Management Ltd., Aurelia Asset Management Partners, Laurent Mathysen-Gerst, Wladimir Stepczynski, Jean-Marc Wenger, Pascal Cattaneo, and Olivier Ador | *Picard v. Alpha Prime Fund Limited, et al.* | Adv. Pro. No. 09-1364 (BRL) Case No. 12-cv-3401 (JSR) |
| 6 | Alberto Benbassat, Stephane Benbassat, Dr. Alain B. Lévy, solely in his capacity as Executor of the Estate of Mario Benbassat, Roberto Nespolo, David Smith, Equus Asset Management Limited, Equus Asset Management Partners, L.P., Genevalor, Benbassat & Cie, Cape Investment Advisors Limited, Hermes Asset Management Limited, Thema Asset Management (Bermuda) Limited, Thema Asset Management Limited | *Picard v. Alpha Prime Fund Limited, et al.* | Adv. Pro. No. 09-1364 (BRL) Case No. 12-cv-3401 (JSR) |
| 7 | Franco Mugnai | *Picard v. Kohn, et al.* | Adv. Pro. No. 10-5411 (BRL) Case No. 12-cv-2660 (JSR) |
| 8 | MAXAM Capital Management, LLC and MAXAM Capital GP, LLC, Sandra L. Manzke; Suzanne Hammond | *Picard v. MAXAM Absolute Return Fund, L.P., et al.* | Adv. Pro. No. 10-5342 (BRL) Case No. 11-cv-7428 (JSR) |
| 9 | Vista Management Co. | *Picard v. Richard Glantz, et al.* | Adv. Pro. No. 10-5394 (BRL) Case No. 12-cv-2778 (JSR) |