**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff,<br><br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | 12 Misc. 115 (JSR) |
| In re:<br><br>MADOFF SECURITIES | |

**SUPPLEMENTAL BRIEF OF NET LOSER INVESTMENT FUNDS IN SUPPORT OF
THEIR MOTION TO DISMISS THE TRUSTEE'S CLAIMS UNDER 11 U.S.C.
§§ 548(a)(1)(A) and 510(c)**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..............................................................................................1

OVERVIEW OF THE RELEVANT ASPECTS OF THE COMPLAINTS ............................2

ARGUMENT ..........................................................................................................................4

    I.    THE COMPLAINTS SHOW THAT MOVANTS TOOK PRECAUTIONS TO GUARD AGAINST THE BLMIS FRAUD AND, THUS, WERE NOT WILLFULLY BLIND. ..............................................................................................4

    II.    THE COMPLAINTS SHOW THAT MOVANTS WERE NET LOSERS, WHO WOULD NOT WILLFULLY BLIND THEMSELVES TO SUFFER HUGE LOSSES; A CONTRARY INFERENCE IS NOT JUST "IMPLAUSIBLE" BUT IS IN FACT ABSURD. ......................................................6

    III.    THE MOVANTS DID NOT CONTROL DECISIONS TO REDEEM FROM BLMIS...................................................................................................................6

    IV.    THE TRUSTEE'S EQUITABLE SUBORDINATION CLAIMS FAIL AS A MATTER OF LAW. .............................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Ashcroft v. Iqbal,
 556 U.S. 662 (2009) ................................................................................................ 4, 6

Bell Atl. Corp. v. Twombly,
 550 U.S. 554 (2007) ................................................................................................ 4, 6

Brass v. Am. Film Technologies, Inc.,
 987 F.2d 142 (2d Cir. 1993) ....................................................................................... 7

Chambers v. Time Warner, Inc.,
 282 F.3d 147 (2d Cir. 2002) ....................................................................................... 7

Global Tech. Appliances, Inc. v. SEB, S.A.,
 131 S.Ct. 2060 (2011) ................................................................................................ 4

In re Bayou Group LLC,
 396 B.R. 810 (Bankr. S.D.N.Y. 2008), rev'd on other grounds, 439 B.R. 284
 (S.D.N.Y. 2010) .......................................................................................................... 7

In re Hydrogen, L.L.C.,
 431 B.R. 337 (Bankr. S.D.N.Y. 2010) ........................................................................ 8

In re New Times Sec. Servs.,
 371 F.3d 68 (2d Cir. 2004) ......................................................................................... 5

Kalisch v. Maple Trade Fin. Corp. (In re Kalisch),
 413 B.R. 115 (Bankr. S.D.N.Y. 2008), aff'd, 2009 WL 2900247 (S.D.N.Y.
 Sept. 9, 2009) .............................................................................................................. 8

Levine v. AtriCure, Inc.,
 594 F. Supp. 2d 471 (S.D.N.Y. 2009) ........................................................................ 4

Patel v. Contemporary Classics of Beverly Hills,
 259 F.3d 123 (2d Cir. 2001) ....................................................................................... 4

SEC v. Lum's Inc.,
 365 F. Supp. 1046 (S.D.N.Y. 1973) ........................................................................... 5

United States v. Space Hunters, Inc.,
 429 F.3d 416 (2d Cir. 2005) ....................................................................................... 4

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

**STATUTES**

11 U.S.C. § 510(c) .................................................................................................................... 4, 8

11 U.S.C. § 548(a)(1)(A), (ii) ......................................................................................................... 8

11 U.S.C. §§ 548(a)(1)(A) and 510(c) ................................................................................. *Passim*

11 U.S.C. § 548(c) ..................................................................................................................... 1, 5

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure 12(b)(6) and 12(c) ................................................................. 1, 4

Securities Exchange Act of 1934, § 20(a) ...................................................................................... 5

Pursuant to the Good Faith Consolidated Briefing Order[1], defendants Alpha Prime Fund Limited ("Alpha Prime"), Senator Fund SPC ("Senator"), Herald Fund SPC ("Herald"), and Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (together, "Kingate") (collectively, the "Movants"), by their undersigned counsel, respectfully submit this supplemental brief seeking dismissal, pursuant to Federal Rules of Civil Procedure 12(b)(6) and/or 12(c) of the Trustee's claims for actual fraud and equitable subordination under 11 U.S.C. §§ 548(a)(1)(A) and 510(c).

## PRELIMINARY STATEMENT

In these SIPA cases, Initial Transferees, like Movants, are protected from avoidance under the Section 548(c) affirmative defense to actual fraud where the pleadings demonstrate a lack of willful blindness.  The Trustee's factual allegations in various complaints, including, for example, those pledged in the "HSBC Complaint"[2] and the "Kingate Complaint," standing alone and taken as true, establish that Movants: (1) did not have a subjective belief of a high probability that BLMIS was making a transfer for fraudulent purposes; and/or (2) did not deliberately act to avoid learning of any fraudulent purpose.

The absence of willful blindness is evidenced in at least three independent ways.  First, the Trustee's allegations that each of the Movants hired professionals to interact with BLMIS on their behalf—conduct that goes well beyond negating willful blindness—is more

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the BLMIS Customers' Consolidated Brief Responding to the Good Faith Issues Raised by Order of the Court Entered on June 25, 2012, dated July 20, 2012 (the "Good Faith Brief" or "Good Faith Brf.") which brief is fully incorporated herein.

[2] Alpha Prime, Senator and Herald are defendants in underlying Bankruptcy Court Adversary Proceeding No. 09-1364 (BRL).  References to the "HSBC Complaint" are to the Amended Complaint filed on December 5, 2010.  Kingate is a defendant in underlying Bankruptcy Court Adversary Proceeding No. 09-1161 (BRL). References to the "Kingate Complaint" are to the Third Amended Complaint filed on June 8, 2011.

than sufficient to establish Movants' good faith, particularly because Movants had no independent legal obligation to monitor BLMIS's activities. (See infra at Section I.) Second, each of the Movants invested considerably more money with BLMIS than it withdrew; it is simply implausible that, as rational economic actors, these entities would have continued to invest—and to have left on the table—billions of dollars with BLMIS if they even suspected that Madoff was running a Ponzi scheme, much less if they (subjectively) knew he was doing so. (See infra at Section II.) Finally, Movants' shareholders—and not Movants themselves—decided when and why to redeem their investments. In short, Movants did what they were required to do: they permitted their investors to redeem pursuant to their contracts, which, in some cases, permitted the investors to request the redemption directly from the investment professionals. Movants satisfied their investors' requests because they had to, not because they had willfully blinded themselves to Madoff's fraud, and there is simply no allegation that plausibly suggests the contrary. (See infra at Section III.)

## OVERVIEW OF THE RELEVANT ASPECTS OF THE COMPLAINTS

The applicable complaints establish as a matter of law that Movants acted in good faith.

First, the Trustee acknowledges that Movants all hired investment professionals — like HSBC, FIM, Citi Hedge, and Bank Bermuda — to manage their investments and withdrawals and to maintain custody of shareholder funds or administer the funds day-to-day. (See HSBC Compl. ¶¶ 8, 98, 101, 137, 138, 161, 283, 292; id. at ¶ 243 (alleging that "the Feeder Fund Defendants relied on HSBC to act as their custodian, administrator, manager, and promoter"); id. at ¶ 281 ("the HSBC Custodian Defendants committed to undertaking significant responsibilities … including maintaining segregated accounts,

2

overseeing the administration of the payment and redemption of funds; and otherwise transferring, exchanging, or delivering securities"); id. at ¶¶ 290, 291 ("HSBC Administrator Defendants were responsible for the day-to-day administration of the funds, which entailed, among other things, issuing and redeeming fund shares, and maintaining books and records of those funds"); see also, Kingate Complaint at ¶¶ 123, 140-141, 149 (alleging that FIM, Citi Hedge and Bank Bermuda had roles as consultants, administrators and custodians respectively)).

Second, the Trustee acknowledges that Movants *are all **net losers**.* (See HSBC Complaint at ¶ 335, Ex. B. (alleging that Herald invested $1,740,022,942 with BLMIS and redeemed $578,033,847, making Herald a net loser of approximately $1.1 billion); id. at ¶ 334, Ex. B. (alleging that Alpha Prime invested $400,091,000 and redeemed $85,824,714, making Alpha Prime a net loser of approximately $314 million.); id. at ¶ 336, Ex. B. (alleging that Senator invested $257,249,980 with BLMIS and redeemed $95,392,688, making Senator a net loser of approximately $161,857,292); Kingate Complaint at ¶¶ 8, 10, Ex. B (alleging that the two Kingate funds collectively invested $1,726,100,000 and redeemed $975,541,729, making Kingate a net loser of approximately $750 million)).[3]

---

[3] Moreover, the only allegations alleged with respect to any of the individual Movants are the generic "red flag" allegations that, as explained in the Supplemental Memorandum of Law in Support of Motion to Dismiss on Behalf of Those Customers and Others Against Whom the Trustee Has Pled No Individualized Allegations of "Willful Blindness," submitted today in Case No. 12 Misc. 115 (JSR) (the "Red Flags Brief"), are insufficient to show any willful blindness on the part of the Movants. The Movants join in, and incorporate fully, the arguments made in the Red Flags Brief, which arguments provide additional, independent bases to dismiss the Trustee's claims under Sections 510(c) and 548(a)(1)(A).

**ARGUMENT**

Motions to dismiss under Rule 12(b)(6) and Rule 12(c) are determined under the same standards. See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Even where the burden is on a defendant, a plaintiff can "plead itself out of court by unintentionally alleging facts (taken as true) that establish an affirmative defense." Levine v. AtriCure, Inc., 594 F. Supp. 2d 471, 474 (S.D.N.Y. 2009). Thus, where, as here, the facts setting forth an affirmative defense "appear on the face of the challenged pleading," the Court should dismiss the claims negated by that affirmative defense as a matter of law. United States v. Space Hunters, Inc., 429 F.3d 416, 426 (2d Cir. 2005).

**I.   THE COMPLAINTS SHOW THAT MOVANTS TOOK PRECAUTIONS TO GUARD AGAINST THE BLMIS FRAUD AND, THUS, WERE NOT WILLFULLY BLIND.**

As noted in the Good Faith Brief, Movants need only demonstrate either that they did not: (i) harbor a subjective belief of a high probability that BLMIS was making a transfer for a fraudulent purpose; or (ii) take deliberate action to avoid confirming that fraudulent purpose. (See Good Faith Brief at 20 (citing Global Tech Appliances, Inc. v. SEB, S.A., 131 S. Ct. 2060, 2070 (2011)). The Trustee's allegations that Movants hired professionals to monitor transactions and administer the funds, in and of themselves, confirm that Section 548(c) protects Movants from the Trustee's attempt to recover against them as a matter of law.

By way of comparison, in the context of federal securities violations, the "good faith" defense to Section 20(a) liability under the Securities Exchange Act of 1934 imposes a higher burden than that imposed under Section 548(c) because "control persons" – unlike Movants – have a duty to monitor and supervise the conduct of others.[4]  See SEC v. Lum's Inc., 365 F. Supp. 1046, 1064-1065 (S.D.N.Y. 1973).  Indeed, courts in this Circuit have found that control persons act in good faith as a matter of law where they have "maintained and enforced a reasonable and proper system of supervision and internal control."  See id. (finding that defendant had acted in good faith because it maintained a compliance department "staffed by several competent and experienced attorneys . . . [and] the firm was insistent that the entire sales and distribution organization be kept apprised of the securities acts and the means of compliance therewith.").  Because the Trustee's complaints are replete with allegations that Movants took specific steps to try to detect or prevent fraud—e.g., by hiring custodians or fund administrators to monitor transactions with BLMIS and to administer the funds invested at BLMIS—Movants could satisfy even the more demanding standard of good faith under Section 20(a).  Id.  A fortiori, such conduct easily meets the lower good faith standard imposed by Section 548(c); consequently, the Trustee's actual fraud claims under Section 548(a)(1)(A) must be dismissed on this ground alone.

---

[4]  It is well established that brokerage customers like Movants have no duty to monitor or supervise their broker.  See, e.g., In re New Times Sec. Servs., 371 F.3d 68, 87 (2d Cir. 2004).

## II. THE COMPLAINTS SHOW THAT MOVANTS WERE NET LOSERS, WHO WOULD NOT WILLFULLY BLIND THEMSELVES TO SUFFER HUGE LOSSES; A CONTRARY INFERENCE IS NOT JUST "IMPLAUSIBLE" BUT IS IN FACT ABSURD.

It is economically irrational and therefore implausible, indeed preposterous, to suggest that Movants partial redemptions "were subjectively motivated by . . . knowledge of, belief in, or participation in a fraud." (See Good Faith Brief at 32.) As noted, the relevant complaints allege that each of the Movants was a "net loser"—some in amounts in excess of $1 billion.  (See supra at 2-3).  It is simply not plausible that a party who subjectively believes that fraud is afoot would not only leave those funds in the fraudsters' hands, but (as alleged by the Trustee) would continue to make additional contributions, including throughout the preference period.  See Iqbal, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). For this reason alone, the Trustee's claims predicated on an absence of good faith or fraud under Section 548(a)(1)(A) must be dismissed because they are not "plausible on [their] face."  Id. at 678 ("Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'") (quoting Twombly, 550 U.S. at 557).

## III. MOVANTS DID NOT CONTROL DECISIONS TO REDEEM FROM BLMIS.

Movants' shareholders determined why, whether, and when to make their own redemption requests from Movants.  Redemptions from BLMIS, in turn, were taken to satisfy Movants' obligations to their shareholders.  The BLMIS redemptions at issue here, accordingly, were instigated at the behest of the investors and shareholders in Movants, not by Movants themselves.  Indeed, Movants' Private Placement Memoranda ("PPM"),

6

which may be considered in this motion to dismiss, explicitly states that Movants had no role in initiating the redemption of principal from BLMIS.  See, e.g., Alpha Prime PPM at 42.[5]  For example, Alpha Prime investors requested redemptions directly from HSBC Securities Services (Luxembourg) S.A. ("HSSL").  Alpha Prime only signed the pro forma redemption request prepared by HSSL and distributed the funds to investors once HSBC released them.  Thus, as the HSBC Complaint admits, Alpha Prime redeemed its investment in BLMIS only because its shareholders requested those redemptions.  (HSBC Compl. ¶ 281 ("HSBC Custodian Defendants," not Movants, took responsibility for "overseeing the administration of the payment and redemption of fund….").)  This alone establishes that Movants acted in good faith as a matter of law—even if an inquiry notice standard applied (which it does not).  See In re Bayou Group LLC, 396 B.R. 810, 856-57 (Bankr. S.D.N.Y. 2008), rev'd on other grounds, 439 B.R. 284 (S.D.N.Y. 2010).

Based on allegations in the Trustee's complaints against Movants, there is no plausible basis for concluding that Movants withdrew funds from BLMIS after willfully blinding themselves to Madoff's fraud.  The Trustee's actual fraud claims against Movants, accordingly, should be dismissed for this independent reason as well.

## IV.   THE TRUSTEE'S EQUITABLE SUBORDINATION CLAIMS FAIL AS A MATTER OF LAW.

Finally, claims for equitable subordination, on which the Trustee bears the burden of proving inequitable conduct, necessarily fail as a matter of law in the face of Movants'

---

[5] This Court may consider documents extrinsic to the complaint when the plaintiff had actual notice of the document and relied upon it to frame the complaint.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (stating that, on a motion to dismiss, a court may consider, inter alia, documents incorporated in the complaint by reference, and "'documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit,'" as long as plaintiffs relied on the terms and effect of the document in drafting the complaint) (citing Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993)).  A copy of the Alpha Prime PPM, dated August 2007, is annexed to the Declaration of Todd E. Duffy, dated August 10, 2012, at Exhibit A.

7

absence of bad faith.  "Equitable subordination is an extraordinary remedy that is to be used sparingly."  <u>Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)</u>, 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008), <u>aff'd</u>, 2009 WL 2900247 (S.D.N.Y. Sept. 9, 2009).  Pursuant to 11 U.S.C. § 510, courts may equitably subordinate a claim where (1) the claimant engaged in inequitable conduct, and (2) the inequitable conduct caused injury to other creditors or gave the claimant an unfair advantage.  <u>See, e.g.</u>, <u>In re Hydrogen, L.L.C.</u>, 431 B.R. 337, 360 (Bankr. S.D.N.Y. 2010).  "In cases of non-insider equitable subordination such as this, the proponent of subordination has the burden of proving, among other things, that the claimant engaged in egregious, improper or wrongful conduct that damages creditors."  <u>In re Kalisch</u>, 413 B.R. at 133.

In the absence of any well-pleaded facts that plausibly demonstrate Movants' absence of good faith, the pleadings necessarily fall well short of the even more demanding requirements to establish the equitable subordination claims asserted against Movants.  Consequently, the Trustee's 11 U.S.C. § 510(c) claims should be dismissed.

## **CONCLUSION**

Movants respectfully request that this Court enter an order: (i) dismissing the Trustee's actual fraud claims brought under 11 U.S.C. § 548(a)(1)(A), (ii) dismissing the Trustee's equitable subordination claims brought under 11 U.S.C. § 510(c), and (iii) granting any other and further relief as this Court deems just and proper.

Dated:     August 10, 2012
           New York, New York

| | |
|---|---|
| **ANDERSON KILL & OLICK, P.C.** | **KIRKLAND & ELLIS LLP** |
| By: __/s/ Todd E. Duffy__<br>    Todd E. Duffy<br>    Dennis J. Nolan<br>    Beth D. Simon | By: __/s/ Joseph Serino, Jr.__<br>    Jay P. Lefkowitz, P.C.<br>    Joseph Serino, Jr.<br>    David S. Flugman |
| 1251 Avenue of the Americas<br>New York, New York 10020<br>Tel: (212) 278-1000 | 601 Lexington Avenue<br>New York, New York 10022<br>Tel:  (212) 446-4800 |
| *Attorneys for Alpha Prime Fund Ltd. and Senator Fund S.p.A.* | *Attorneys for Herald Fund SPC* |

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: /s/ Robert S. Loigman
     Susheel Kirpalani
     Robert S. Loigman

51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel:  (212) 849-7000

*Counsel to Joint Liquidators of Kingate Global Fund Ltd. and Kingate Euro Fund Ltd.*

9