**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff-Applicant,<br><br>　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | No. 12-mc-00115 (JSR) |
| In re:<br><br>MADOFF SECURITIES | (Relates to consolidated proceedings on Standing and SLUSA issues) |

**MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION REGARDING**
**STANDING AND SLUSA ISSUES IDENTIFIED IN**
**THE COURT'S ORDER OF MAY 15, 2012**

SECURITIES INVESTOR PROTECTION CORPORATION
805 15th Street, N.W.
Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
CHRISTOPHER H. LAROSA
Senior Associate General Counsel- Litigation

## TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE ISSUES ................................................................................................1

SUMMARY OF THE ARGUMENT .........................................................................................2

BACKGROUND ........................................................................................................................3

ARGUMENT ..............................................................................................................................4

      I.     The Trustee has standing as the bailee of "customer property".............................4

           A.  The Trustee is a bailee ...................................................................................4

           B.  Neither Caplin nor Wagoner affects the Trustee's standing as bailee ..............5

      II.    The Trustee has standing as the enforcer of SIPC's subrogation rights .................7

      III.   The Trustee has standing as the assignee of customers ...........................................8

      IV.   Neither collateral estoppel nor the law of the case bar the Trustee's actions .........9

      V.    SLUSA does not bar the Trustee's common law claims .......................................12

           A.  The Trustee's actions are not "covered class actions".....................................13

           B.  The Trustee has not alleged securities fraud...................................................16

CONCLUSION.........................................................................................................................17

## TABLE OF AUTHORITIES

**CASES:**                                                                         **PAGE**

*In re American Housing Foundation,*
  2011 WL 4625349 (Bankr. N.D. Tex. Sept. 30, 2011)....................................................6-7

*Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372 (S.D.N.Y. 2010) .............................12, 16

*Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791 (6th Cir. 1995)................................................7, 8

*In re Banco Santander Secs. - Optimal Litig.*, 732 F.Supp.2d 1305 (S.D. Fla. 2010),
  *aff'd sub nom.*, *Inversiones Mar Octava Limitada v. Banco Santander S.A.*,
  439 Fed. App'x. 840 (11th Cir. 2011) ................................................................................16

*Bank of New York v. Amoco Oil Co.*, 35 F.3d 643 (2d Cir. 1994)......................................................5

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985) .........................................6, 7

*Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87 (2d Cir. 2005) ...................10-11

*Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416 (1972)....................1, 5-7

*In re CBI Holding Co.*, 529 F.3d 432 (2d Cir. 2008), *cert. den.*, 129 S. Ct. 1998 (2009) ...............9

*Environmental Defense v. U.S. EPA*, 369 F.3d 193 (2d Cir. 2004)................................................11

*In re Grossinger's Assocs.*, 184 B.R. 429 (Bankr. S.D.N.Y. 1995) ...............................................10

*Hartford Fire Ins. Co. v. Empresa Ecuatoriana de Aviacion,*
  945 F. Supp. 51 (S.D.N.Y. 1996), *aff'd*, 122 F.3d 1056 (2d Cir. 1997) .............................4

*Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86 (2d Cir. 1997).........................................11

*Johnson v. Cadillac Motor Car Co.*, 261 F. 878 (2d Cir. 1919)....................................................10

*LaSala v. Bank of Cypress Public Co. Limited*, 510 F.Supp.2d 246 (S.D.N.Y. 2007)............14, 15

*LaSala v. Bordier Et Cie*, 519 F.3d 121 (3d Cir. 2008),
  *cert. dismissed*, 555 U.S. 1028 (2008) ........................................................................14, 15

*LaSala v. Lloyds TSB Bank, PLC*, 514 F.Supp.2d 447 (S.D.N.Y. 2007)................................14, 15

*LaSala v. UBS, AG*, 510 F.Supp.2d 213 (S.D.N.Y. 2007)........................................................14, 15

*Lee v. Marsh & McLennan Companies*, 2007 WL 704033 (S.D.N.Y. Mar. 7, 2007)............14, 15

## TABLE OF AUTHORITIES
### (cont.)

**CASES:**                                                                    **PAGE**

*Liona Corp., Inc. v. PCH Associates (In re PCH Associates)*,
    949 F.2d 585 (2d Cir. 1991)........................................................................10

*McKenny v. McGraw (In re Bell & Beckwith)*, 937 F.2d 1104 (6th Cir. 1991)..............................8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ...................................12

*In re Mickelson*, 205 B.R. 190 (D.N.D. 1996)..................................................................5

*In re Montagne*, 2010 WL 271347 (Bankr. D. Vt. Jan. 22, 2010)...............................................10

*In re Nettel Corp.*, 2007 WL 2119029 (Bankr. D.D.C. July 20, 2007) .........................................10

*Orshan v. Anker*, 550 F.Supp. 538 (E.D.N.Y. 1982) .......................................................10

*Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082 (2d Cir. 1997) .............................................6

*Pension Committee of the University of Montreal Pension Plan v.*
    *Banc of America Secs., LLC*, 750 F.Supp.2d 450 (S.D.N.Y. 2010) ....................................16

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134 (1968),
    *overruled on other grounds by*, *Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984).....................................................................................6

*Picard v. HSBC PLC*, 450 B.R. 406 (S.D.N.Y. 2011).......................................................10

*Picard v. HSBC PLC*, 454 B.R. 25 (S.D.N.Y. 2011)....................................................9-10

*Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011) .............................................9

*Picard v. Kohn*, __ F.Supp.2d __, 2012 WL 566298 (S.D.N.Y. Feb. 22, 2012).............................10

*Pinter v. Dahl*, 486 U.S. 622 (1988) .....................................................................6

*Redington v. Touche Ross & Co.*, 592 F.2d 617 (2d Cir. 1978) ........................................2, 4, 12

*RGH Liquidating Trust v. Deloitte & Touche LLP*, 955 N.E.2d 329 (N.Y. 2011).......................15

*Romano v. Kazacos*, 609 F.3d 512 (2d Cir. 2010).........................................................13

*Ross v. Bolton*, 904 F.2d 819 (2d Cir. 1990)..............................................................6

iii

## TABLE OF AUTHORITIES
### (cont.)

**CASES:**                                                                                          **PAGE**

*Seaboard Sand & Gravel Corp. v. Moran Towing Corp.*, 154 F.2d 399 (2d Cir. 1946)................4

*SEC v. Albert & Maguire Secs. Co., Inc.*, 560 F.2d 569 (3d Cir. 1977)....................................7, 9

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) ......................... 1, 2, 5-7

*SIPC v. Vigman*, 803 F.2d 1513 (9th Cir. 1986)..............................................................................7

*Smith v. Arthur Andersen LLP,* 421 F.3d 989 (9th Cir. 2005)......................................................14

*Terranova v. State*, 445 N.Y.S.2d 965 (N.Y. Ct. Cl. 1982).............................................................4

*United States v. Perea*, 986 F.2d 633 (2d Cir. 1993)................................................................6, 16

*U.S. v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir. 1993).......................................................11

*U.S. v. Stauffer*, 464 U.S. 165, (1984) .........................................................................................11

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
    341 F.Supp.2d 258 (S.D.N.Y. 2004)..............................................................................16

# TABLE OF AUTHORITIES
### (cont.)

**STATUTES AND RULES**:                                                    **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78fff(b) ............................................................................................8, 9
78fff-1(a) ...........................................................................................14
78fff-1(b) ...........................................................................................14
78fff-2(b) ......................................................................................3, 8, 9
78fff-2(c)(1) ........................................................................................8
78fff-3(a) ............................................................................................7

United States Bankruptcy Code, 11 U.S.C. §

362(a) ...............................................................................................8
541(a) ...............................................................................................8
542 ..................................................................................................8
704 .................................................................................................14

Securities Litigation Uniform Standards Act, 15 U.S.C. §

77p(f)(2) .............................................................................................1
77p(f)(2)(A)(i)(I) ..............................................................................13, 15
77p(f)(2)(C) ...................................................................................13, 14
78bb(f)(5) ...........................................................................................1
78bb(f)(5)(B)(i)(I) ............................................................................13, 15
78bb(f)(5)(D) ..................................................................................13, 14

Securities and Exchange Commission Rule, 17 C.F.R. §240.

15c3-3 ...........................................................................................2, 4, 5
15c3-3(a) ...........................................................................................5
15c3-3(b) .........................................................................................4-5
15c3-3(c) .........................................................................................4-5
15c3-3(d) .........................................................................................4-5
15c3-3(e) ...........................................................................................5
15c3-3(e)(1) ........................................................................................5
15c3-3a ..............................................................................................5

**LEGISLATIVE MATERIALS**:

S. Rep. No. 105-182 (1998) ...............................................................13

## TABLE OF AUTHORITIES
### (cont.)

**TREATISES:**                                                                    **PAGE**

8 C.J.S. *Bailments* § 14 (2005) ...................................................................................4

8 C.J.S. *Bailments* § 156 (2005) ...........................................................................6, 16

Richard A. Lord, 19 *Williston on Contracts* § 53:6 (4th ed. 2012) ..................................................5

18A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper
    *Fed. Prac. & Proc.* § 4433 (2d ed. 2002) ................................................................. 11-12

Pursuant to this Court's Order of May 15, 2012, the Securities Investor Protection Corporation ("SIPC") submits this memorandum of law addressing standing and preemption under the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(f)(2) and 78bb(f)(5), as asserted bases for dismissal of the common law claims brought by Irving H. Picard ("Trustee"), as trustee for the consolidated liquidation under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa et seq., of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and of Bernard L. Madoff ("Madoff"), against the defendants ("Defendants") affected by the Court's Order.

## STATEMENT OF THE ISSUES

The instant motions present the following issues:

(1) Whether the Trustee has standing to bring common law claims as the bailee of "customer property" and is not barred from doing so by Caplin v. Marine Midland Grace Trust Co. of New York, 406 U.S. 416 (1972), and Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991), or by the doctrine of in pari delicto.

(2) Whether the Trustee has standing to bring his common law claims as the enforcer of SIPC's subrogation rights where a purpose of a SIPA proceeding is to enforce rights of subrogation as provided in SIPA, SIPC has subrogation rights based upon its advances of funds for customers, and SIPC has assigned to the Trustee enforcement of its rights.

(3) Whether SLUSA is inapplicable here because these cases do not qualify as "covered class actions" within the meaning of the statute and because the Trustee does not allege, and his suits do not depend upon allegations of, securities fraud, as required by the statute.

## SUMMARY OF THE ARGUMENT

The Trustee has standing to bring his common law claims as the bailee of customer property and the enforcer of SIPC's statutory and common law rights as subrogee of customers holding claims satisfied with advances from SIPC.  Standing in the former capacity has been conclusively recognized in this Circuit since 1978, when the Second Circuit decided <u>Redington v. Touche Ross & Co.</u>, 592 F.2d 617 (2d Cir.).   Although <u>Redington</u> was subsequently overturned on other grounds, the Second Circuit's holding regarding standing was left undisturbed and remains controlling law today.

Moreover, <u>Redington</u> was correctly decided.  The relationship between a customer and a securities broker-dealer, coupled with Securities and Exchange Commission ("SEC") Rule 15c3-3, create a bailment relationship implied in law between customer and broker.  When the broker is placed in liquidation under SIPA, the SIPA trustee succeeds to the broker's rights as bailee, including the right to sue third parties for relief stemming from the misappropriation and misuse of bailed property.  Under applicable law, that right is not subject to the defense of <u>in pari delicto</u> and is not limited by the Court's decision in <u>Wagoner</u>.

The Trustee also has standing as the enforcer of SIPC's subrogation rights, which arise both under SIPA and under the common law.  Assertion of those rights against third parties is authorized by SIPA, and perfectly consistent with SIPA's scheme for the allocation and distribution of customer property.  In this regard, any recovery by SIPC, as subrogee, constitutes customer property, and therefore must be turned over to the SIPA trustee under operative provisions of SIPA and the Bankruptcy Code.  Where, as here, SIPC has assigned its subrogation rights to the Trustee, the matter is even simpler as there is no need for such a turn over, and any recovery by the Trustee automatically augments the fund of customer property.

Finally, the Trustee has standing as the assignee of customers.  Under both Section 78fff-2(b) of SIPA and general bankruptcy law, the Trustee has the power to take claims assignments from customers and to sue third parties as assignee.  Nothing in SIPA limits that power.

SLUSA has no impact on the Trustee's common law claims.  Congress enacted SLUSA to prevent class-action plaintiffs from bringing state-law securities claims in order to avoid the stringent pleading requirements applicable to claims brought under the federal securities laws. The statute applies only to "covered class actions" – those brought "on behalf of" 50 or more persons – and only to claims necessarily based upon securities fraud.  "Covered class actions" do not include those, like the instant action, brought by an entity (including a bankruptcy trustee) not established for the primary purpose of bringing litigation, and also do not include actions lacking questions of law or fact common to the putative class members.  Further, SLUSA is not applicable here because the Trustee has not alleged securities fraud and his claims do not depend upon such allegations.  As a result, SLUSA's primary purpose – to preclude the use of state law to avoid federal pleading requirements in securities class actions – is not implicated, and application of the statute to the claims at issue would be both unnecessary and inappropriate.

## BACKGROUND

SIPC adopts, and incorporates herein by reference, the statement of facts in the Trustee's memorandum.  Briefly, through the actions at issue, the Trustee asserts against the Defendants a variety of common law claims seeking, inter alia, the recovery of "customer property," or a substitute therefor, along with compensation for damages sustained as a consequence of the Defendants' misuse of that property.

## ARGUMENT

### I.    The Trustee has standing as the bailee of "customer property"

#### A.  The Trustee is a bailee

For the reasons discussed in detail in the briefs filed by SIPC in the Trustee's other actions in which this Court addressed the question whether the Trustee has standing to bring common law claims – a question now pending before the Second Circuit in those actions – the Trustee is the bailee of "customer property," as defined in SIPA, and, as such, has standing to bring the common law claims that he asserts here.  SIPC adopts and incorporates by reference here the arguments made in those briefs.  (See Picard v. JPMorgan Chase & Co., Case No. 11-5044-bk (2d Cir.) (ECF Nos. 79, 130); Picard v. UBS Fund Services (Luxembourg) SA, Case No. 11-5051-bk (2d Cir. ) (ECF Nos. 72, 138); Picard v. HSBC Bank PLC, Case No. 11-5175-bk (ECF Nos. 75, 165); Picard v. HSBC Bank PLC, Case No. 11-5207-bk (2d Cir.) (ECF Nos. 81, 135)).

In brief summary, the Second Circuit's decision in Redington, in which that court recognized that a SIPA trustee is the bailee of the failed firm's "customer property," remains controlling law.  Moreover, Redington was correctly decided.  SEC Rule 15c3-3 creates a bailment implied-in-law with respect to the cash and securities received, acquired, or held by a securities broker-dealer for its customers.  See, e.g., 8 C.J.S. Bailments § 14 (2005) (bailment implied-in-law exists when a person holds property "under such circumstances that the law imposes…the obligation to keep it safely…"); Seaboard Sand & Gravel Corp. v. Moran Towing Corp., 154 F.2d 399, 402 (2d Cir. 1946); Hartford Fire Ins. Co. v. Empresa Ecuatoriana de Aviacion, 945 F. Supp. 51, 56 (S.D.N.Y. 1996), aff'd, 122 F.3d 1056 (2d Cir. 1997); Terranova v. State, 445 N.Y.S.2d 965, 969 (N.Y. Ct. Cl. 1982).  See also 17 C.F.R. §§ 240.15c3-3(b)-(d)

(securities broker-dealer must obtain and maintain physical possession or "control" of all "fully-paid" and "excess margin" securities held for customers); 17 C.F.R. §§ 240.15c3-3(e)(1) and 240.15c3-3a (broker-dealer must maintain on deposit in a "special reserve" account for the exclusive benefit of customers an amount equal to the firm's net cash obligations to customers, as determined by a weekly calculation).

As Rule 15c3-3 authorizes and requires a broker-dealer to take possession of cash or securities tendered by a customer as part of an account relationship, the broker-dealer's intent with respect to the tendered property is irrelevant to the lawfulness of the broker-dealer's possession of that property, and therefore cannot defeat the formation of a bailment relationship. See 17 C.F.R. §§ 240.15c3-3(a)-(e).  Further, as cash is fungible, the commingling of cash owed to different customers in a single "special reserve" account maintained for their benefit does nothing to disturb the bailment relationship that exists between customer and broker.  See, e.g., Bank of New York v. Amoco Oil Co., 35 F.3d 643, 655 (2d Cir. 1994); Richard A. Lord, 19 Williston on Contracts § 53:6 (4th ed. 2012).  Likewise, SIPA's requirement that customer property be distributed to customers ratably, in proportion to their respective "net equities," has no effect on bailment in this context.  Cf., In re Mickelson, 205 B.R. 190, 193-94 (D.N.D. 1996) (Congress intended Bankruptcy Code sections providing for ratable distribution of customer grain commingled in grain storage facilities to apply only "to bailor/bailee relationships").

### B.  Neither Caplin nor Wagoner affects the Trustee's standing as bailee

Neither the Supreme Court's decision in Caplin, nor the Second Circuit's decision in Wagoner, has any effect on the Trustee's standing as bailee to pursue his common law claims against the Defendants.  Caplin, which provides that a bankruptcy trustee lacks standing to sue third parties on behalf of creditors of the bankruptcy estate, is inapplicable because the Trustee

sues here to vindicate his possessory rights as bailee, rights which the Trustee acquired as BLMIS's successor.  See, e.g., United States v. Perea, 986 F.2d 633, 640 (2d Cir. 1993); 8 C.J.S. Bailments § 156 (2005).

Wagoner is based on the common law doctrine of in pari delicto and provides that, where the insiders of a corporate debtor participated with third parties in defrauding the corporation, a bankruptcy trustee for the debtor lacks standing to sue those third parties on causes of action held by the debtor.  See 944 F.2d at 119-20.  Both the Supreme Court and the Second Circuit, however, refuse to countenance the application of the in pari delicto doctrine where, as here, that application would frustrate the goals and purposes of a federal statutory and regulatory scheme, particularly the federal securities law goal of protecting public securities customers.  See Pinter v. Dahl, 486 U.S. 622, 632-33 (1988); Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310-19 (1985); Perma Life Mufflers, Inc. v. Int'l Parts Corp., 392 U.S. 134, 138-40 (1968), overruled on other grounds by Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984); Peltz v. SHB Commodities, Inc., 115 F.3d 1082, 1089-1090 (2d Cir. 1997); Ross v. Bolton, 904 F.2d 819, 825 (2d Cir. 1990).  Moreover, the focus of the Bateman Eichler exception is the impact that application of in pari delicto would have on the goals of federal law, not on the source of the plaintiff's cause of action, and the exception therefore must apply to both federal and state law claims that have the prohibited effect.  See  Perma Life Mufflers, Inc. v. Int'l Parts Corp., 392 U.S. 134, 138-40 (1984) (finding that Congress did not intend to allow defendants to assert in pari delicto as a defense to antitrust claims because of the importance of deterring antitrust violations); In re American Housing Foundation, 2011 WL 4625349, at * 32 (Bankr. N.D. Tex. Sept. 30, 2011) (allowing the defendant "to assert an in pari delicto defense to potentially defeat the Trustee's section 548 claim also dilutes the purpose and force of the

6

statute").  Finally, apart from <u>Bateman Eichler</u>, <u>in pari delicto</u> is not a defense available under the common law to a suit brought by a bailee, for the reasons that SIPC explained in detail in its briefs filed in earlier proceedings before this Court.

In light of the foregoing, the Court need not address the contention by Stephanie Mack and Deborah Madoff that the insider exception to the <u>in pari delicto</u> doctrine does not apply to them because they were merely the innocent spouses of BLMIS insiders, not insiders themselves. For the reasons stated, <u>in pari delicto</u>, either as developed under state common law or under <u>Wagoner</u>, has no application to the Trustee's common law claims and therefore may not be invoked by Ms. Mack or Ms. Madoff as a defense to those claims.  In any event SIPC concurs in the Trustee's explanation of why Ms. Mack and Ms. Madoff would constitute insiders even if they could avail themselves of <u>in pari delicto</u>.

**II.      <u>The Trustee has standing as the enforcer of SIPC's subrogation rights</u>**

Beyond his standing as the bailee of customer property, the Trustee has standing to bring his common law claims as the enforcer of SIPC's subrogation rights.  SIPA provides expressly that "to the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers…"  SIPA § 78fff-3(a).  Consistent with the language, the three Circuits that have considered the scope of this provision have all concluded that SIPC is subrogated to customer rights not only against the fund of customer property, but also against third parties.  <u>See</u> <u>Appleton v. First Nat'l Bank of Ohio</u>, 62 F.3d 791, 799-800 (6th Cir. 1995); <u>SIPC v. Vigman</u>, 803 F.2d 1513, 1516 (9th Cir. 1986); <u>SEC v. Albert & Maguire Secs. Co.</u>, 560 F.2d 569, 574 (3d Cir. 1977) ("[U]pon payment to a customer, SIPC becomes subrogated to the customer's rights against third parties").

Further, as recognized in McKenny v. McGraw (In re Bell & Beckwith), 937 F.2d 1104, 1108  (6th Cir. 1991), SIPA both allows and requires SIPC to share with customers in the allocation and distribution of customer property, but only to the extent of its advances for customers whose claims have been fully satisfied.  Such participation by SIPC is completely consistent with SIPA's scheme for the allocation of customer property.  That property is part of the debtor's bankruptcy estate under the operative provisions of SIPA and the Bankruptcy Code (11 U.S.C.).  See SIPA § 78fff(b); 11 U.S.C. § 541(a).   Accordingly, SIPC is barred by the automatic stay from bringing an action to recover such property and, even in the absence of the stay, would be obliged to turn any recovery of such property over to the SIPA trustee under the Bankruptcy Code.  See 11 U.S.C. §§ 362(a), 542.  Thus, under applicable law, SIPC, as subrogee, would not be able to recover except as prescribed under SIPA.   Where, as here, SIPC has assigned its subrogation rights to the Trustee, the issue cannot even arise, as any customer property recovered by the Trustee through the exercise of SIPC's subrogation rights will automatically be included in the Fund of Customer Property available for distribution to all customers.  See SIPA § 78fff-2(c)(1); and Appleton, 62 F.3d at 800.

In 1978, Congress made clear  its intent that SIPC have the power to pursue common law actions against third parties, when it amended SIPA's subrogation provision to emphasize that the subrogation rights conferred upon SIPC are "in addition to all other rights it may have at law or in equity."  See Appleton, 62 F.3d at 799.  That addition confirms without doubt that SIPC enjoys common law subrogation rights against third parties under applicable state law.  Id.

### III.    The Trustee has standing as the assignee of customers

The Trustee also has standing as the assignee of customers.  Section 78fff-2(b) authorizes a SIPA trustee to condition the satisfaction of customer claims upon the execution of

"appropriate assignments."  <u>See</u> SIPA § 78fff-2(b).  Nothing in the language of that section, or the purpose underlying it, limits the standing of a SIPA trustee who receives an assignment pursuant to this provision from bring suit against third parties as assignee.  On the contrary, such suits serve SIPA's goal of maximizing the recovery of customers and other creditors and in ensuring equal treatment for each similarly situated customer and creditor class.  As the Third Circuit explained in <u>Albert & Maguire</u>:

> The [Securities Investor Protection] Act authorizes the trustee to receive affidavits and assignments from customers in such form as he determines.  Nothing in the statutory language restricts the form or purpose of the assignments to use against the debtor.  Proper application of the statute requires that this provision be construed liberally in order to provide adequate reimbursement for customers.  If the trustee recovers on customers' claims against third parties, the single and separate fund [now customer fund] is augmented and additional money becomes available to satisfy claims of all customers.

<u>Albert & Maguire</u>, 560 F.2d at 573.

In the same vein, under ordinary bankruptcy law, which applies in a SIPA liquidation, a trustee may sue third parties as the assignee of estate creditors.  <u>See</u> <u>In re CBI Holding Co.</u>, 529 F.3d 432, 457-59 (2d Cir. 2008), <u>cert</u>. <u>den</u>., __ U. S. __, 129 S. Ct. 1998 (2009); <u>SEC v. Albert & Maguire Secs. Co.</u>, 560 F.2d 569, 573 (3d Cir. 1977); SIPA §§ 78fff(b), 78fff-2(b).  Nothing in SIPA limits a SIPA trustee's power to exercise his general bankruptcy power to take such assignments and to sue third parties as assignee.

### IV.    <u>Neither collateral estoppel nor the law of the case bar the Trustee's actions</u>

The Defendants also mistakenly suggest that the Court should invoke collateral estoppel and the law of the case doctrine to preclude litigation of the Trustee's standing in these proceedings, on the ground that the Court previously decided those issues against the Trustee in <u>Picard v. JPMorgan Chase & Co.</u>, 460 B.R. 84 (S.D.N.Y. 2011); <u>Picard v. HSBC Bank PLC</u>, 454

B.R. 25 (S.D.N.Y. 2011); <u>Picard v. HSBC Bank PLC</u>, 450 B.R. 406 (S.D.N.Y. 2011); and <u>Picard v. Kohn</u>, ___ F.Supp.2d ___, 2012 WL 566298 (S.D.N.Y. Feb. 22, 2012).

The law of the case doctrine applies only when the same issue between the same parties is presented to the same court in the same litigation.  <u>See</u>, <u>e.g.</u>, <u>Liona Corp. v. PCH Associates (In re PCH Associates)</u>, 949 F.2d 585, 592 (2d Cir. 1991); <u>Johnson v. Cadillac Motor Car Co.</u>, 261 F. 878, 883 (2d Cir. 1919); <u>In re Grossinger's Assocs.</u>, 184 B.R. 429, 434 (Bankr. S.D.N.Y. 1995); <u>Orshan v. Anker</u>, 550 F.Supp. 538, 540 (E.D.N.Y. 1982); <u>In re Nettel Corp.</u>, 2007 WL 2119029, at * 1 (Bankr. D.D.C. July 20, 2007).  The doctrine has no application in distinct litigations between different parties.  <u>See</u>, <u>e.g.</u>, <u>Nettel</u>, 2007 WL 2119029 at * 1.  Moreover, even where applicable, the doctrine is merely a discretionary rule of practice, and does not limit a court's power to reconsider an issue previously decided.  <u>See</u> <u>PCH Associates</u>, 949 F.2d at 592; <u>Grossinger's Assocs.</u>, 184 B.R. at 434.

The Defendants in the instant cases were not parties to the litigations in which the Court previously addressed the Trustee's standing, and those litigations, while also adversary proceedings brought in connection with the BLMIS liquidation, were distinct from the present litigations.  <u>See</u> <u>Nettel</u>, 2007 WL 2119029 at * 1 ("The law of the case doctrine does not apply to this proceeding because the proceeding is not the same adversary proceeding as was involved [earlier]…and involves different parties").  <u>But</u> <u>see</u>, <u>e.g.</u>, <u>In re Montagne</u>, 2010 WL 271347, at * 6 (Bankr. D. Vt. Jan. 22, 2010) (law of the case doctrine applies across adversary proceedings arising out of the same bankruptcy case).  Indeed, if these litigations were not different from those in which the Court addressed standing, the Defendants would have no basis for invoking collateral estoppel, which applies only across distinct cases.  <u>See</u>, <u>e.g.</u>, <u>Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.</u>, 409 F.3d 87, 91 (2d Cir. 2005) (collateral estoppel is permissible if

"the identical issue was raised in a <u>previous proceeding</u>…") (emphasis added)).  In light of the differences between the parties and cases in the present and prior litigations, the law of the case doctrine is not relevant here.

Collateral estoppel is permissible as to an issue only if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in that earlier proceeding; (3) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in that proceeding; and (4) resolution of the issue in the prior proceeding was necessary to support a valid and final judgment on the merits.  <u>See</u> <u>Bear Stearns</u>, 409 F.3d at 91; <u>Interoceanica Corp. v. Sound Pilots, Inc.</u>, 107 F.3d 86, 91 (2d Cir. 1997).  The doctrine does not apply to "unmixed," <u>i.e.</u>, pure, questions of law in some instances.  <u>See</u> <u>U.S. v. Stauffer</u>, 464 U.S. 165, 171-72 (1984); <u>Environmental Defense v. U.S. EPA</u>, 369 F.3d 193, 203 (2d Cir. 2004); <u>U.S. v. Alcan Aluminum Corp.</u>, 990 F.2d 711, 719 (2d Cir. 1993).  Further, satisfaction of the criteria necessary to invoke collateral estoppel is not always sufficient to warrant application of the doctrine.  <u>Bear Stearns</u>, 409 F.3d at 91.  A court must also satisfy itself that application of collateral estoppel would be fair, and, accordingly, is granted broad discretion is deciding whether to apply the doctrine in a given case.  <u>Id.</u> at 91-92.

While an appeal of the prior decision serving as the basis for collateral estoppel does not preclude invocation of the doctrine, the pendency of such an appeal counsels strongly against application of the doctrine until the appeal has been resolved.  As one noted commentator explained in discussing the related doctrine of res judicata:

> Substantial difficulties result from the rule that a final trial-court judgment operates as res judicata while an appeal is pending.  The major problem is that a second judgment based upon the preclusive effects of the first judgment should not stand if the first judgment is reversed.  In some cases, litigants and the courts have collaborated so ineptly that the second judgment has become

> conclusive even though it rested solely on a judgment that was later reversed.  This result should always be avoided…Although the ultimate appellate disposition of the first action may establish a new basis for preclusion that will dispose of all aspects of the second action, further proceedings will often prove necessary. These further proceedings in the second action may require duplication of earlier proceedings or be distorted by the delay. Efforts to reduce these costs by shaping the course of the second action may prove costly and ineffective.
>
> These difficulties suggest that ordinarily it is better to avoid the res judicata question by…staying trial and perhaps pretrial proceedings pending resolution of the appeal in the first action.

18 A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. § 4433 (2d ed. 2002).

These problems are particularly acute in these cases, where the issues before the Court are pure questions of law, where appeal of the Court's prior standing decisions is pending in the Second Circuit, and where those decisions challenged the status and continuing vitality of the Second Circuit's standing decision in Redington, a precedent dating from 1978.  If the Court applies collateral estoppel here, and if its earlier decisions are reversed, the Court will have to vacate its disposition of these cases.  To avoid that outcome, the Court should decline to apply collateral estoppel during the pendency of the appeals of its prior decisions and, if it elects to address the Trustee's standing at all during that period, should do so on the merits.

**V.** **SLUSA does not bar the Trustee's common law claims**

Congress enacted SLUSA as part of the Private Securities Litigation Reform Act of 1995 in order to prevent securities class action plaintiffs from suing under state law so as to circumvent the stringent pleading requirements imposed on claims brought under the federal securities laws.  See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 82 (2006); Anwar v. Fairfield Greenwich Ltd., 728 F.Supp.2d 372, 398 (S.D.N.Y. 2010).  Under

SLUSA, claims that: (1) are brought by a private party in a "covered class action;" (2) are based upon state or local law; (3) allege the misrepresentation or omission of a material fact "in connection with" the purchase or sale of (4) a "covered security," are preempted by SLUSA and subject to dismissal.  See, e.g., Romano v. Kazacos, 609 F.3d 512, 517-18 (2d Cir. 2010).  For the reasons discussed below, the instant cases do not constitute "covered class actions" and do not allege fraud "in connection with" the purchase or sale of a "covered security."

     **A.  The Trustee's actions are not "covered class actions"**

SLUSA defines a "covered class action" to include a single lawsuit in which "damages are sought on behalf of more than 50 persons or prospective class members…" and in which "questions of law or fact common to those persons…predominate."  See 15 U.S.C. §§ 77p(f)(2)(A)(i)(I); 78bb(f)(5)(B)(i)(I).  SLUSA further provides that, in counting putative class members, an entity "shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action."  See 15 U.S.C. §§ 77p(f)(2)(C); 78bb(f)(5)(D).  As this language indicates, unless an entity, including a trusteeship, is established for the purpose of bringing the claims in question, the Court cannot "look through" that entity to those who might benefit from its action, and instead must treat the entity as a single person in counting putative class members for purposes of the "covered class action" provisions. Id.

As the legislative history to SLUSA makes clear, Congress enacted this "entity exception," inter alia, to ensure that a trustee, among others, would be able to sue third parties to recover property of the estate.  See, e.g., S. Rep. No. 105-182, at 8 (1998).  In accord with the plain language of the entity exception, the lower courts in this jurisdiction, and courts elsewhere, have long held that the "primary purpose" for which an entity was created controls how it is

treated.  If that "primary purpose" was to bring the claims in question, then the courts apply a "look through" rule and consider the number of entity beneficiaries in counting the number of putative class members for purposes of the "covered class action" provisions.  See, e.g., LaSala v. Lloyds TSB Bank, PLC, 514 F.Supp.2d 447, 470-71 (S.D.N.Y. 2007) ("TSB Bank"); LaSala v. UBS AG, 510 F.Supp.2d 213, 236-37 (S.D.N.Y. 2007); LaSala v. Bank of Cypress Public Co. Limited, 510 F.Supp.2d 246, 269-70 (S.D.N.Y. 2007) ("Cypress"); Lee v. Marsh & McLennan Companies, 2007 WL 704033, at * 4 (S.D.N.Y. Mar. 7, 2007) ("Lee").  See also LaSala v. Bordier Et Cie, 519 F.3d 121, 132-33 (3d Cir. 2008), cert. dismissed, 555 U.S. 1028 (2008); Smith v. Arthur Andersen LLP, 421 F.3d 989, 1007-08 (9th Cir. 2005).  In contrast, however, where the entity was not primarily created for the purpose of pursuing the challenged litigation, the "look through" rule is not applied, the entity is treated as a single person, and the number of ultimate beneficiaries is of no import.

The Trustee here was not appointed for the primary purpose of bringing and prosecuting his claims in this proceeding.  Instead, as a matter of law, he has a host of duties associated with the administration of the BLMIS estate, including, inter alia, administering all aspects of the claims process in the BLMIS liquidation, serving as bailee of customer property of the debtor, marshaling and distributing such property and other property of the debtor's estate, and investigating the failure of BLMIS.  See SIPA §78fff-1(a) and (b); 11 U.S.C. § 704.  Specifically, he generally has the same powers and duties as a Chapter 7 trustee, with modifications specified in SIPA.  See SIPA §78fff-1(a) and (b).  Accordingly, under the plain language of SLUSA, and the case law in this jurisdiction and elsewhere, the Trustee is a single person for purposes of counting putative class members and no "look-through" provision should be applied in making that computation.  See 15 U.S.C. §§ 77p(f)(2)(C); 78bb(f)(5)(D); TSB

14

Bank, 514 F.Supp.2d at 470-71; UBS, AG, 510 F.Supp.2d at 236-37; Cypress, 510 F.Supp.2d at 269-70; Lee, 2007 WL 704033, at * 4; RGH Liquidating Trust v. Deloitte & Touche LLP, 955 N.E.2d 329 (2011).  See also Bordier, 519 F.3d at 132-33.  The number of customers and/or other estate creditors who may benefit from a recovery by the Trustee thus is not pertinent here, and the Trustee's claims in this proceeding therefore cannot form part of a "covered class action."  Lee, 2007 WL 704033, at * 4.

The related limitation on the scope of the term "covered class action" noted above – the requirement that questions of law or fact common to putative class members predominate – is also relevant here.  As the plain language of this limitation suggests, where suit is brought by a trustee or other trust or estate representative, questions of law or fact must be common to more than 50 of the trust or estate beneficiaries in order to satisfy the numerical requirement imposed in the definition of the term.  See Bordier, 519 F.3d at 133 ("The definition [of 'covered class action'] is two-pronged: to be a covered class action, (1) the claim must be brought 'on behalf of 50 or more persons,' and (2) questions of law or fact common to '*those persons*' must predominate" (emphasis in original)).

In this case, the only facts in dispute concern the knowledge and actions of the Defendants, including whether those parties knew or should have known about the fraud at BLMIS, what actions they took, if any, that assisted the fraud.  These are not questions of fact that relate to the affected BLMIS customers.  As a result, under SLUSA's plain language, even if the customers somehow constitute putative class members, the number of those customers is irrelevant, and, again, the Trustee's claims in this proceeding cannot qualify as a "covered class action."  See 15 U.S.C. §§ 77p(f)(2)(A)(i)(I); 78bb(f)(5)(B)(i)(I); Bordier, 519 F.3d at 132-33.

Further, contrary to the Defendants' assertions, the Trustee is not asserting the claims of customers.  On the contrary, he is seeking to vindicate his possessory interest as the bailee of customer property, a unitary interest asserted here by a single person, not asserting claims held by te customer/bailors.  See, e.g., United States v. Perea, 986 F.2d 633, 640 (2d Cir. 1993) ("Perea").  See also 8 C.J.S. Bailments § 156.  As a consequence, the number of those customer/bailors has no impact on the applicability of the entity exception, which unequivocally removes the Trustee's actions here from the reach of SLUSA.

**B.  The Trustee has not alleged securities fraud**

Finally, SLUSA does not apply here because the Trustee has not alleged fraud "in connection with" the purchase or sale of a "covered security" within the meaning of SLUSA.  As the lower courts have routinely found, SLUSA preempts only those claims for which allegations of "material misstatements or omissions" with respect to a "covered security" are necessary. See, e.g., Anwar, 728 F.Supp.2d at 399 n.7; Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F.Supp.2d 258, 266-70 (S.D.N.Y. 2004).  Moreover, the alleged misstatements or omissions must be the focus of the plaintiff's claim in order to trigger preemption.  See, e.g., Pension Committee of the University of Montreal Pension Plan v. Banc of America Secs., LLC, 750 F.Supp.2d 450, 453-56 (S.D.N.Y. 2010) (investment in hedge fund shares does not trigger SLUSA preemption, even when the funds themselves invest in covered securities); In re Banco Santander Secs. - Optimal Litig., 732 F.Supp.2d 1305, 1317-18, 1341 (S.D. Fla. 2010) (finding no SLUSA preemption where Madoff's fraud was not "the crux of this litigation"), aff'd sub nom., Inversiones Mar Octava Limitada v. Banco Santander S.A., 439 Fed. Appx. 840 (11th Cir. 2011).

16

The Trustee has made no allegations of material misstatements or omissions in connection with the purchase or sales of covered securities, and need not do so in order to sustain his claims.   Further, the crux of his claims does not concern any such misstatements or omissions.  Instead, the focus of the Trustee's claims lies several steps removed from Madoff's securities fraud, and there is therefore no doubt that the Trustee's claims fall outside the scope of SLUSA.

## **CONCLUSION**

For the aforementioned reasons, the Defendants' motions to dismiss should be denied.

DATED:  September 14, 2012

Respectfully submitted,

JOSEPHINE WANG
General Counsel

/s/ Kevin H. Bell
KEVIN H. BELL
Senior Associate General Counsel for
 Dispute Resolution

CHRISTOPHER H. LAROSA
Senior Associate General Counsel – Litigation

SECURITIES INVESTOR PROTECTION
 CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
Facsimile: (202) 371-6728
E-mail:     jwang@sipc.org
                 kbell@sipc.org
                 clarosa@sipc.org