**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

                 Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                 Defendant.

12 MC 115 (JSR)

In re:

       MADOFF SECURITIES

 

**SUPPLEMENTAL MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**ADDRESSING THE GOOD FAITH ISSUES**

 

SECURITIES INVESTOR PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, D.C. 20005
Telephone:  (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
NATHANAEL S. KELLEY
Staff Attorney

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...........................................................................................................................3

I.     THE DEFENDANTS BEAR THE BURDEN OF DEMONSTRATING THAT
THEY TOOK THE FRAUDULENT CONVEYANCES IN GOOD FAITH .........3

II.    CLAIMS FOR FRAUDULENT CONVEYANCES, ESTABLISHED BY
MADOFF'S FRAUD, DO NOT REQUIRE THE TRANSFEREES'
CULPABIITY ...............................................................................................................5

     A.    The Nature of Madoff's Ponzi Scheme Made Each Withdrawal a
Fraudulent Conveyance .............................................................................5

     B.    The Defendants' Right to Withdrawals and Restitution
Does Not Create Good Faith....................................................................6

     C.    The Trustee Need Not Show Fraudulent Intent
on Behalf of the Defendants .....................................................................7

III.    THE DEFENDANTS' INDIVIDUAL BRIEFS DO NOT STATE A CASE
FOR DISMISSAL OF THE TRUSTEE'S COMPLAINTS ..................................8

     A.    The Hedge Fund Investors Brief [Docket No. 276]...................................8

     B.    The Service Providers Brief [Docket No. 283].........................................11

     C.    The Movants Brief [Docket No. 284] .......................................................12

     D.    The Leverage Providers Brief [Docket No 287].......................................14

     E.    The Net Losers Brief [Docket No. 291].....................................................16

     F.    The Good Faith Defendants Brief [Docket No. 292].................................17

CONCLUSION.......................................................................................................................19

# **TABLE OF AUTHORITIES**

**CASES:**                                                                                          **PAGE**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................4

*In re Bayou Group, LLC,* 439 B.R. 284 (S.D.N.Y. 2010) ...............................................4, 7, 14, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................4

*Chorost v. Grand Rapids Factory Showrooms,* 77 F. Supp. 276 (D.N.J. 1948)
    *aff'd*, 172 F. 2d 327 (3d Cir 1949) ...................................................................................16

*In re Cohen*, 199 B.R. 709 (B.A.P. 9th Cir. 1996) ........................................................................7

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd*., 551 F. Supp. 2d 210 (S.D.N.Y. 2008)...........15

*Gowan v. The Patriot Group, LLC (In re Dreier),* 452 B.R. 391
    (Bankr. S.D.N.Y. 2011) ........................................................................................4, 6, 11, 18

*Gowan v. Westford Asset Mgmt LLC (In re Dreier),* 462 B.R. 474
    (S.D.N.Y. Bankr. 2011) ........................................................................................ 13, 14-15

*In re Hooker Investments, Inc.,* 155 B.R. 332 (Bankr. S.D.N.Y. 1993) .........................................4

*Jobin v. Resolution Trust Corp*., 160 B.R. 161 (D. Colo. 1993) .................................................. 7-8

*Jobin v. Ripley (In re M & L Bus. Mach. Co., Inc.)* 198 B.R. 800 (D. Colo. 1996) .................6, 16

*Lumbard v. Maglia, Inc*., 621 F. Supp. 1529 (S.D.N.Y. 1985) ....................................................10

*Lustig v. Weisz and Associates, Inc. (In re Unified Commercial Capital Inc.),*
    260 B.R. 343 (Bankr. W.D.N.Y. 2001), *aff'd sub nom., In re Unified Commercial*
    *Capital*, 2002 WL 32500567 (W.D.N.Y. June 21, 2002)................................................17

*Meridian Horizon Fund, LP v. KPMG (Cayman),* 2012 WL 2754933
    (2d Cir. July 10, 2012) ........................................................................................8

*Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.,* 747 F. Supp. 2d 406,
    413 (S.D.N.Y. 2010), *aff'd sub nom., Meridian Horizon Fund, LP v. KPMG (Cayman),*
    2012 WL 2754933 (2d Cir. July 10, 2012).....................................................................15

*MLSMK Inv. Co. v. JP Morgan Chase & Co.,* 737 F. Supp. 2d 137 (S.D.N.Y. 2010),
    *aff'd in part,* 431 Fed. App'x 17 (2d Cir. 2011) and
    *aff'd,* 651 F.3d 268 (2d Cir. 2011) ..................................................................................15

## TABLE OF AUTHORITIES

**CASES:**                                                                                              **PAGE**

*In re Nordic Vill, Inc.*, 915 F.2d 1049 (6th Cir. 1990),
    *rev'd sub nom. on other grounds*, *United States v. Nordic Vill Inc.*,
    503 U.S. 30 (1992)............................................................................................4

*Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011)................................................2, 4, 5, 6, 11, 13, 15

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243
    (Bankr. S.D.N.Y. 2010), *leave to appeal den.*, 2011 WL 3897970 (S.D.N.Y. 2011) .........4

*Richardson v. FDIC (In re M. Blackburn Mitchell Inc.)*,
    164 B.R. 117 (Bankr. N.D. Cal. 1994) ...............................................................7

*Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61 (S.D.N.Y. 2010),
    *aff'd,* 2012 WL 2096399 (2d Cir. June 12, 2012) .............................................8

*S.E.C. v. Forte*, 2012 WL 1719145 (E.D. Pa. May 16, 2012) .......................................7

*S.E.C. v. Lum's Inc.,* 365 F. Supp. 1046 (S.D.N.Y. 1973)......................................12, 13

*Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406 (2d Cir. 2008) ...............................8

**STATUTES AND RULES:**

Securities Exchange Act of 1934, as amended, 15 U.S.C. §

78t(a)........................................................................................................10

United States Bankruptcy Code, as amended, 11 U.S.C. §

548(a)(1) ..................................................................................................1, 5
548(a)(1)(A)..........................................................................................7, 11, 15
548(c) ...............................................................................................1, 2, 4, 6, 19
550(a)(2) ..................................................................................................1, 5
550(b)..............................................................................................1, 2, 4, 19
550(b)(1) ..................................................................................................7

Pursuant to this Court's order of June 23, 2012, the Securities Investor Protection Corporation ("SIPC") submits this supplemental memorandum of law addressing whether securities laws and the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ('SIPA"),[1] alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in "good faith" under either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b).   This consolidated memorandum is filed in opposition to the Supplemental Good Faith Standard Briefs filed by certain subgroups of Good Faith Standard Defendants, self-identified as "Hedge Fund Investors" [Docket No. 276], "Service Providers" [Docket No. 283], "Movants" [Docket No. 284], "Leverage Providers" [Docket No. 287], "Net Losers" [Docket No. 291], and the "Good Faith Defendants" [Docket No. 292] (collectively, the "Defendants").[2]   This matter arises in the context of the combined proceedings of Bernard L. Madoff ("Madoff") under Chapter 7 of the Bankruptcy Code and of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under SIPA.

## PRELIMINARY STATEMENT

As argued in its Opening Good Faith Standard Brief ("Opening Brief"),[3] SIPC respectfully submits that SIPA fully incorporates actions to avoid and recover fraudulent transfers under Sections 548(a)(1) and 550(a)(2) of the Bankruptcy Code, including the bankruptcy law's standard for the good faith affirmative defense under Sections 548(c) and

---

[1] For convenience, references to provisions of SIPA shall omit "15 U.S.C."  Unless otherwise noted, capitalized terms have the meaning given to them in the Court's June 23, 2012 Order [Docket No. 197].

[2] While referring to the Defendants by their self-identified terms to ease the confusion of addressing six separate briefs, SIPC does not attest to the accuracy of such identifiers.

[3] SIPC incorporates herein the arguments made in its Opening Good Faith Standard Brief [Docket No. 320].

550(b).  An objective good faith standard applies to claims brought in a SIPA case pursuant to Sections 548(c) and 550(b), and neither SIPA nor the securities laws modify this standard. Accordingly, the Defendants did not act in good faith if they failed to conduct a diligent investigation after becoming aware of facts which would have placed a reasonable investor upon inquiry notice that transfers they received might be fraudulent.

The Defendants' Supplemental Good Faith Standard Briefs largely rehash the arguments raised in the Initial Transferee Good Faith Standard Brief and the Subsequent Transferee Good Faith Standard Brief.  For the reasons presented in SIPC's and the Trustee's Initial Good Faith Standard Briefs, the Trustee has sufficiently pled claims under the Bankruptcy Code for avoidance and recovery of fraudulent conveyances against the Initial Transferee Defendants and the Subsequent Transferee Defendants, respectively.  In order to shield themselves from these claims, it is incumbent upon the Defendants to show, *inter alia*, that they received their transfers from BLMIS in good faith.  This showing remains the Defendants' burden regardless of the standard used for good faith; the Trustee need not plead a lack of good faith by the Defendants or otherwise show that the Defendants were culpable in receiving the transfers.

The Trustee instead must show that BLMIS, as the transferor, conveyed funds to the Defendants with the actual intent to hinder, defraud, or delay its present and future creditors. Because the principal of the firm, Madoff, indisputedly ran a Ponzi scheme, monies transferred to the Defendants by BLMIS consisted of stolen customer funds and therefore, fraudulently-transferred "customer property."  *Picard v. Katz*, 462 B.R. 447, 453 (S.D.N.Y. 2011).  The Defendants' focus on their investment in BLMIS and their right to withdraw funds addresses the value they provide to BLMIS when they withdraw, not their good faith in doing so.  While the Trustee does not need to show more, his complaints nevertheless adequately demonstrate that the

Defendants knew of facts which would have placed a reasonable investor upon inquiry notice that the transfers they received might be fraudulent yet failed to act in good faith and conduct reasonable investigations prior to accepting the funds. Accordingly, this Court should deny the Defendants' motions to dismiss and give the Trustee the opportunity to assess the Defendants' good faith defenses through discovery, after such defenses have been properly asserted.

This memorandum will first address arguments common to the Defendants' Supplemental Good Faith Standard Briefs before addressing each Brief in turn.

## ARGUMENT

The Defendants all have built their arguments on the same faulty reasoning used in the Initial Transferee Good Faith Standard Brief and the Subsequent Transferee Good Faith Standard Brief. To the extent that the Supplemental Good Faith Standard Briefs take the position that good faith is measured according to a subjective standard, these arguments must fail for the reasons specified in SIPC's Opening Brief. They additionally should be rejected for the reasons stated below.

## I. THE DEFENDANTS BEAR THE BURDEN OF DEMONSTRATING THAT THEY TOOK THE FRAUDULENT CONVEYANCES IN GOOD FAITH

Nearly all of the Defendants move to dismiss the complaints on the grounds that they fail to demonstrate that the Defendants acted in willful blindness. Not only do these arguments use the incorrect willful blindness standard, they incorrectly assume that the Trustee has to meet such a standard at all.

The case law and the statutes are clear as to the Trustee's burden for avoiding and recovering fraudulent transfers, and nothing in SIPA or the securities laws shifts that burden. As this Court has noted, the Trustee's allegations state a claim for avoidance and recovery of a fraudulent conveyance:

> Since it is undisputed that Madoff's Ponzi scheme began more than two years before the filing of the bankruptcy petition and continued to almost the very day of filing, it is patent that all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors, *i.e.,* those left holding the bag when the scheme was uncovered.

*Katz*, 462 B.R. at 453. At this stage, the Trustee has met his burden. The burden now shifts to the Initial Transferee Defendants and Subsequent Transferee Defendants to avoid rescission or recovery of the transfer by satisfying the terms of the affirmative defenses established through Bankruptcy Code Sections 548(c) or 550(b), respectively. *See, e.g.*, *In re Bayou Group, LLC*, 439 B.R. 284, 308 (S.D.N.Y. 2010) ("*Bayou Group*"); *In re Hooker Investments, Inc.*, 155 B.R. 332, 337 (Bankr. S.D.N.Y. 1993). The Defendants must establish their good faith as an *affirmative defense* that "may be raised and proved by the transferee at trial." *Gowan v. The Patriot Grp., LLC (In re Dreier)*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("*Patriot*") (*quoting Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010), *leave to appeal den.*, 2011 WL 3897970 (S.D.N.Y. 2011)); *In re Nordic Vill., Inc.*, 915 F.2d 1049, 1055–56 (6th Cir. 1990) ("The language of the statute clearly places the burden of showing value, good faith, and lack of knowledge, on the [subsequent] transferee as a defense."), *rev'd sub nom. on other grounds, United States v. Nordic Vill. Inc.*, 503 U.S. 30 (1992).

The Defendants' attempt to shoehorn language from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), into this discussion has no place where the Trustee has sufficiently pleaded that BLMIS fraudulently conveyed withdrawals. Where the Trustee has pleaded his claims, he does not need to state facts which plausibly suggest that the Defendants acted without good faith. In short, "[w]hether the Defendants took the transfers in good faith is a factual question that may not be determined on the face of the Complaint." *Patriot*, 452 B.R. at 426 ("At the motion to dismiss stage, the Trustee need not plead lack of good faith as an element of the claim itself").

Thus, the Trustee's allegations of "red flags" survive a motion to dismiss, even under a willful blindness standard. The reason is clear in the purpose of the Bankruptcy Code and SIPA. In codifying Sections 548(a)(1) and 550(a)(2), Congress allows the estate to recover fraudulently conveyed property. Indeed, the Trustee would not be performing his job as Trustee of the estate if he did not seek the return of the fraudulently transferred funds at stake. While desiring to have property returned to the estate, Congress nevertheless codified an affirmative defense in order to protect innocent investors from this operation of law. The good faith standard is a shield to be raised by the defendants, not a sword to be wielded by the Trustee in pursuit of malfeasants.

## II.    CLAIMS FOR FRAUDULENT CONVEYANCES, ESTABLISHED BY MADOFF'S FRAUD, DO NOT REQUIRE THE TRANSFEREES' CULPABILITY

Throughout the Defendants' arguments, whether explicit or not, run common themes: the operation of Madoff's Ponzi scheme should not give rise to a claim for fraudulent conveyance; even if it does, Madoff's fraud gives the Defendants a right to restitution and to withdraw in presumptive good faith; the Defendants must virtually be participants in the fraud in order for the Trustee to avoid and recover transfers; and the Trustee's red flag allegations are insufficient to show virtual participation in the Madoff fraud. Each of these arguments misperceives the law and the Trustee's allegations.

### A.    The Nature of Madoff's Ponzi Scheme Made Each Withdrawal a Fraudulent Conveyance

While the Defendants complain that the nature of Madoff's Ponzi scheme should not affect the application of fraudulent conveyance law and that the Ponzi scheme presumption should not apply, this Court has already determined in a related case that the Ponzi scheme presumption is not necessary to establish the fraudulent nature of Madoff's transfers. *Picard v. Katz*, 462 B.R. 447, 453, n.5 (S.D.N.Y. 2011) ("On the facts of this case as alleged in the Amended Complaint (which for purposes of this motion must be taken as true), there is therefore

no need to invoke any 'Ponzi scheme presumption.'"").  Even if the Ponzi scheme presumption were necessary, it is plainly applicable to fraudulent conveyances in a liquidation.  *See Patriot*, 452 B.R. at 424 ("Courts have uniformly recognized a presumption of actual intent to defraud on the part of the transferor in the context of a Ponzi scheme."). The Ponzi scheme presumption does not convert a preference to a fraudulent conveyance, as the nature of a Ponzi scheme takes it far beyond merely preferring one creditor over another with limited funds.  Instead, it takes funds belonging to the latest investor and gives them to an earlier investor; Investor B's deposit goes to Investor A, and Investor C's deposit goes to Investor B, and so on.  Each transfer hinders, delays, or defrauds the latest investor to invest with BLMIS.  *Cf. Katz*, 462 B.R. at 453 ("[I]t is patent that all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors, *i.e.*, those left holding the bag when the scheme was uncovered.").

**B**.    **The Defendants' Right to Withdrawals and Restitution Does Not Create Good Faith**

Next, the Defendants argue that they have the right to redeem their investment and that thus their good faith should be presumed—especially in light of Madoff's fraud.  As explained in SIPC's Opening Brief, the Defendants have taken the value prong of their affirmative defense and used it to satisfy the good faith prong.  While their withdrawals of principal may provide value to BLMIS by reducing the amount of principal that they are entitled to, the withdrawals do not *per se* establish the Defendants' "good faith"—an awareness of how their knowing withdrawals  in the context of a Ponzi scheme affect the rights of other investors.  *Cf., Jobin v. Ripley (In re M & L Bus. Mach. Co.)*, 198 B.R. 800, 810, n.4 (D. Colo. 1996)  ("[A] defrauded investor in a Ponzi scheme gives 'value' to the debtor in the form of a dollar-for-dollar reduction in the investor's restitution claim against the Ponzi scheme.")  Under Section 548(c), the Initial

Transferee Defendants must show that they took for value *and* in good faith.  Under Section 550(b)(1), the Subsequent Transferee Defendants must show that they took for value, in good faith, and without knowledge.  Indeed, while the Defendants may have a claim for the return of principal, "the equities disfavor Investors who knew or should have known they were withdrawing funds from a Ponzi scheme."  *S.E.C. v. Forte*, 2012 WL 1719145, at *5 (E.D. Pa. May 16, 2012).  How then can the Defendants argue that withdrawing money from a suspected Ponzi scheme favors their claim to good faith?

### C.   <u>The Trustee Need Not Show Fraudulent Intent on Behalf of the Defendants</u>

Furthermore, Madoff's fraud is more than sufficient to establish a claim for fraudulent conveyance without having to find fraud on the part of the Defendants as well.  The "fraudulent intent" of a fraudulent conveyance must come from the transferor, not the transferee.  *Bayou Group*, 439 B.R. at 304 ("Actual fraudulent conveyance claims under Section 548(a)(1)(A) turn on the intent of the debtor in making the transfer; the state of mind of the transferee is irrelevant").  Even under a willful blindness standard, willful blindness to fraud does not equate to participation in fraud.  Indeed, equating willful blindness with conduct tantamount to fraud would fundamentally alter the nature of fraudulent conveyance claims.   In a fraudulent conveyance action, the transferee does not need to be culpable in the fraud in order for the trustee to avoid and recover the transfer.  *See In re Cohen*, 199 B.R. 709, 716–17 (B.A.P. 9th Cir. 1996) ("The focus in the inquiry into actual intent is on the state of mind of the debtor.  Neither malice nor insolvency [is] required. Culpability on the part of the dealer transferees is not essential."); *Richardson v. FDIC (In re M. Blackburn Mitchell Inc.)*, 164 B.R. 117, 123 (Bankr. N.D. Cal. 1994) ("Moreover, the Code makes knowledge or culpability on the part of the *initial* transferee irrelevant to whether the transferee will be liable for returning transferred property to the estate. The trustee may recover property from an innocent initial transferee."); *Jobin v. Resolution Trust*

*Corp.*, 160 B.R. 161, 169 (D. Colo. 1993) (stating that a transferee of a Ponzi scheme distribution "may or may not have been aware of the scheme, but its culpability is irrelevant to the Trustee's fraudulent conveyance claims").

Similarly, even under a willful blindness standard, lack of good faith does not require conduct tantamount to participation in the fraud and mere allegations of red flags suffice.  In this context, the cases relied upon by the Defendants which reject the use of "red flags" are inapposite.  In the Defendants' cases, the plaintiffs attempted to use the red flags to prove culpability.  *Cf. Meridian Horizon Fund, LP v. KPMG (Cayman)*, 2012 WL 2754933 (2d Cir. July 10, 2012) (finding "red flags" insufficient to establish securities fraud scienter); *Saltz v. First Frontier, LP*, 782 F.Supp.2d 61, 72 (S.D.N.Y. 2010) (rejecting the use of red flags to establish securities fraud), *aff'd*, 2012 WL 2096399 (2d Cir. June 12, 2012).  But here, the Trustee does not need to allege that the Defendants committed securities fraud.  His use of "red flags" allegations is entirely appropriate, especially when considering the storm warnings in their totality.  *Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 427 (2d Cir. 2008) ("'Storm warnings' need not detail every aspect of the alleged fraudulent scheme . . . .  Rather, a totality-of-the-circumstances analysis applies.").

### III.    THE DEFENDANTS' INDIVIDUAL BRIEFS DO NOT STATE A CASE FOR DISMISSAL OF THE TRUSTEE'S COMPLAINTS

Although for the reasons stated above, alone, this Court should reject the Defendants' arguments and deny the Defendants' motions to dismiss, this memorandum next addresses each of Defendants' briefs in turn.

### A.    The Hedge Fund Investors Brief [Docket No. 276]

The Hedge Fund Investors Defendants purport to represent Defendants who invested in and later redeemed shares of hedge funds and other entities that used BLMIS to provide certain

services.  In arguing for a subjective willful-blindness standard for good faith, they make three arguments.

First, they argue that as investors in hedge funds, they had no duty to investigate the conduct of the service provider, BLMIS, to those hedge funds.  (Hedge Fund Investors Br. at 4.) They emphasize that the securities laws shift the burden of monitoring the conduct of service providers to the SEC and the directors and officers of the fund.  This argument, however, confuses a duty to monitor with a duty to investigate suspicions of fraudulent conduct.  The objective standard of good faith found in the Bankruptcy Code would not require the Hedge Fund Investors to monitor the conduct of every service provider, the same as it does not require a creditor to monitor the activities of every one of its debtors.  Yet if the Hedge Fund Investors become aware of storm warnings of fraudulent conveyances from BLMIS, as they in fact did, then they cannot accept such transfers in good faith.  Notably, as explained in SIPC's Opening Brief, the burden of this obligation is tempered significantly by the fact that subsequent transferees will be much less likely to discover red flags.  (Opening Br. at 24–25.)  The separation between the Hedge Fund Investors and BLMIS, however, does not insulate them from the fact that they discovered red flags and did nothing about it.

Second, the Hedge Fund Investors argue that they should not be held to a higher standard than the good faith defense for control person liability or the actual knowledge requirement for aiding and abetting a breach of fiduciary duty.  (Hedge Fund Investor Br. at 5–7.)  This argument, however, again makes a misleading comparison.  Claims for both control person liability and aiding and abetting a breach of fiduciary duty are fundamentally different claims from the avoidance and recovery of fraudulent conveyances, and thus they naturally impose a different standard.

13

Control person liability and aiding and abetting seek to place the culpability of a wrongdoer on third parties.  *See* 15 U.S.C. § 78t(a) (2012) ("Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder *shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . .*") (emphasis added); *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1536 (S.D.N.Y. 1985) (on a claim for aiding and abetting a fraud, recognizing "a fundamental principle of tort law: those who aid and abet or conspire in tortious conduct are *jointly and severally liable with other participants* in the tortious conduct" (emphasis added)).  Courts impose this far-reaching culpability only if the defendants acted with something more than negligence or with actual knowledge.  In a fraudulent conveyance action, on the other hand, a trustee merely seeks the return of customer property which has been fraudulently transferred from the estate; the transferee, unlike the control person or aider and abettor, is not deemed culpable.  (*See supra* Section II.C.)

To make the point clear, if the Hedge Fund Investors were in a position to control Madoff yet failed to do so, or were found to have aided and abetted Madoff, they could similarly be held liable and responsible for the billions of dollars of damages he caused.  *See, e.g.*, *Lumbard*, 621 F. Supp. at 1537 ("They may be found liable to the full extent of that fraud . . . .")  Instead, the law only asks that they return the withdrawn customer property, which, indisputably, was stolen from other customers.  It should come as no surprise, then, that a finding of control person liability or aiding and abetting requires something akin to actual knowledge before significant liability is imposed while the good faith defense to fraudulent conveyances uses an objective standard.

Third, the Hedge Fund Investors argue that the Trustee has misused Section 548(a)(1)(A) in attempting to recover fraudulent transfers made by BLMIS.  (Hedge Fund Investors Br. at 7–8.)  The Hedge Fund Investors, like the Defendants in the Opening Good Faith Standard Briefs, seek to confuse the issues of preferences and fraudulent conveyances.  For the reasons explained in SIPC's Opening Brief and above, and as recognized repeatedly by this Court, these arguments must fail.  (*See supra* Section II.A.; Opening Br. at 25–28.).  Madoff's operation of a Ponzi scheme dictates that conveyances to third parties are made with actual intent to hinder, delay, or defraud creditors.  *Katz*, 462 B.R. at 453.

### B.      The Service Providers Brief [Docket No. 283]

The subgroup of Defendants self-identified as Service Providers purport to represent "banks, investment advisors, custodians, and other entities and individuals that provided banking, advisory, administrative and custodial services to international investment funds that invested directly or indirectly with [BLMIS], or the direct or indirect corporate parents of such service providers."  (Service Providers Br. at 1.)  They argue that the Trustee has not adequately pleaded a case that the Service Providers were willfully blind in receiving transfers and thus that the Trustee's complaints against them must be dismissed.  Good faith is an affirmative defense, and a failure to plead lack of good faith in a fraudulent conveyance action is not grounds for dismissal.  *Patriot*, 452 B.R. at 426.  The Trustee does not need to show that the Service Providers willfully blinded themselves; he does not even need to plead that they lacked an objective standard of good faith.  (*See supra* Section I; Opening Br. at 32.)  The Court should deny the Service Provider's motion.

C.    **The Movants Brief [Docket No. 284]**

The subgroup of Defendants self-identified as the Movants include Initial Transferee Defendants Alpha Prime Fund Limited, Senator Fund SPC, Herald Fund SPC, Kingate Global Fund, Ltd., and Kingate Euro Fund, Ltd.  The Movants argue that the Trustee's complaints against them demonstrate in three ways that they lacked willful blindness, thereby satisfying their affirmative defense and requiring dismissal of the complaints.  Setting aside the Movants' invocation of the incorrect willful blindness standard, these arguments do not establish the Movants' objective good faith or lack of willful blindness on the face of the complaints and thus do not mandate dismissal.

First, the Movants argue that they cannot willfully blind themselves when the complaints allege that they "hired investment professionals . . . to manage their investments and withdrawals and to maintain custody of shareholder funds or administer the funds day-to-day."  (Movants Br. at 2.)  At most, however, the professionals hired by the Movants administered and managed the Movants' accounts.  This activity does not rise to the level required to show that the Movants took action to guard themselves against fraudulent conveyances in good faith.  In contrast, in *S.E.C. v. Lum's Inc.*, 365 F. Supp. 1046 (S.D.N.Y. 1973), the case cited by the Movants, the court declined to impose control person liability on the defendant where the defendant had established numerous safeguards against the very type of malfeasance at issue.  *Id.* at 1064.  The court concluded that "it is difficult to determine what other supervisory procedures could have been implemented to prevent the isolated, ambiguous 'leak' which did occur."  *Id.* at 1065.  The Movants' routine hiring of various service professionals in no way establishes that they tried to

protect themselves from receiving fraudulent conveyances; at the very least the argument requires further factual development as to purposes for which the professionals were hired.[4]

Second, the Movants argue that, as alleged net losers, it would be absurd to suggest they would leave their funds with a suspected fraudulent scheme.  As recognized by this Court and others, this argument does not support dismissal.  *See Gowan v. Westford Asset Mgmt LLC (In re Dreier),* 462 B.R. 474, 493 (S.D.N.Y. Bankr. 2011) ("*Westford*"); *Picard v. Katz*, 462 B.R. 447, 454–55 (S.D.N.Y. 2011).  The Movants' losses could merely show bad timing.  With a single withdrawal, today's net loser can become tomorrow's net winner.  The fact that the Movants did not withdraw their principal plus profits does not necessarily indicate that the Movants were completely unaware of the fraud; it could as easily show that the Movants simply did not withdraw in time in hopes of milking more profit out of a suspicious but highly profitable (on paper) investment.[5]

Third, the Movants argue that because they redeemed investments from BLMIS at the direction of their own investors and shareholders, they must have taken from BLMIS in good faith.  (Movants Br. at 6–7.)  As explained in SIPC's Opening Brief, finding good faith based upon an alternative subjective justification for redemption has been discredited by this Court in

---

[4] The Movants incorrectly assert that hiring supervisory professionals establishes lack of willful blindness "as a matter of law."  (Movants Br. at 5.)  In *Lum's*, the court reached its conclusion that the defendant would not be subject to control person liability only after hearing and judging all evidence at a bench trial.  *Lum's*, 365 F. Supp. at 1050.  Even so, the court called the issue "close."  *Id.* at 1065.

[5] In this sense, an objective good faith standard which encourages reasonable investigations of suspicious transfers works to protect the individual investors as well.  If the Movants merely suspect fraudulent activity at BLMIS, the risk of actual fraudulent activity must be balanced against the profits shown on their statements.  Actual discovery of the fraud, however, not only would have greatly benefited the securities market as a whole, it would have saved the Movants from "continu[ing] to make additional contributions."  (Movants Br. at 6.)

light of the objective standard of good faith.  (*See* Opening Br. at 34, citing *Bayou Group,* 439 B.R. at 317.)  The Movants' compulsion to redeem has no bearing on whether, when they did redeem, they were aware of storm warnings of suspicious activity yet failed to conduct a reasonable investigation, and thus whether they should return the fraudulently-conveyed funds.

For these reasons, the Movants' motion to dismiss should be denied, even when judging the Movants' conduct by a willful blindness standard.  In any event, the Trustee should have the opportunity to conduct discovery in order to rebut the Movants' good faith claims.  Furthermore, for the same reasons, the Movants' motion to dismiss the Trustee's claims for equitable subordination should be denied.

**D**.    **The Leverage Providers Brief [Docket No. 287]**

The Leverage Providers represent a subset of Defendants who "(i) entered into total return swaps or structured notes that gave counterparties or customers exposure to investment funds that directly or indirectly invested in BLMIS . . . and/or (ii) extended credit to investment funds through conventional loans, accepting as collateral the funds' investment advisory accounts held at BLMIS."  (Leverage Providers Br. at 1.)  After incorrectly invoking the willful blindness standard, the Leverage Providers make several arguments as to why the Trustee's complaints demonstrate that they lacked willful blindness.  As explained above, the Trustee need not plead the Leverage Providers' lack of good faith, and he should have the opportunity to take discovery in order to rebut the Leverage Providers' assertions of good faith.

Like other Defendants, the Leverage Providers argue that they would not have risked their money by participating in a Ponzi scheme.  (Leverage Providers Br. at 4–6.)  As with other Defendants, however, the profits to be realized in the BLMIS investment scheme incentivized the Leverage Providers to continue their involvement, despite suspicions of fraud.  *Cf. Westford*,

18

462 B.R. at 493; *Katz*, 462 B.R. at 454–55.  The Leverage Providers, however, attempt to negate the implications of this motive by citing to cases which hold that receipt of fees is insufficient to show that a defendant was an active partner in a Ponzi scheme, *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143 (S.D.N.Y. 2010), *aff'd in part*, 431 Fed. App'x 17 (2d Cir. 2011), *and aff'd*, 651 F.3d 268 (2d Cir. 2011), or to establish scienter to commit fraud, *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 227 (S.D.N.Y. 2008).  They similarly argue that their failure to receive requested information about BLMIS does not show lack of good faith, citing a decision which held that an auditor's failure to verify BLMIS trades with third parties cannot demonstrate fraudulent intent.  *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010), *aff'd sub nom.*, *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 2012 WL 2754933 (2d Cir. July 10, 2012).

The Trustee, however, does not need to establish the Leverage Providers' intent to commit fraud, whichever standard this Court uses for good faith.  *See Bayou Group*, 439 B.R. at 304 ("Actual fraudulent conveyance claims under Section 548(a)(1)(A) turn on the intent of the debtor in making the transfer; the state of mind of the transferee is irrelevant").  Whether or not the Trustee's allegations establish fraudulent intent, they certainly evidence the Leverage Providers' lack of good faith and motive to remain ignorant.

Accordingly, the Trustee has sufficiently pleaded claims for fraudulent conveyance against the Leverage Providers.  While the Leverage Providers raise the affirmative defense of good faith, merely doing so does not warrant dismissal.  The Court should deny the Leverage Providers' motion to dismiss.

E.   **The Net Losers Brief [Docket No. 291]**

The Net Losers represent a subgroup of Initial Transferee Defendants and Subsequent Transferee Defendants who allegedly withdrew less than their principal investment.  The Net Losers make three general arguments in support of their motion to dismiss; all miss the mark.

First, the Net Losers argue that the Trustee's fraudulent conveyance claims cannot modify BLMIS's "restitution" obligations to the Net Losers.  The Net Losers point out that Madoff defrauded them as well as other creditors, and that they thus have a "restitution" claim against BLMIS.  (Net Losers Br. at 3–4.)  They further argue that this claim is not defeated by any alleged negligence on their part in investing with BLMIS in the first place.  (*Id.* at 4–5.)  SIPC does not dispute, however, that the reduction of their net equity claim provides the value prong of the affirmative defense to a fraudulent conveyance claim.  *See  Jobin v. Ripley (In re M & L Bus. Mach. Co., Inc.)*, 198 B.R. 800, 810, n.4 (D. Colo. 1996).  The existence of the claim, however, does not evidence the Net Losers' good faith in taking withdrawals from BLMIS.  (*See supra* Section II.B.)  They need to prove value (reduction of a net equity claim) *and* good faith.  *See Chorost v. Grand Rapids Factory Showrooms, Inc.*, 77 F. Supp. 276, 280 (D.N.J. 1948) ("The fraudulent intent of the transferor having been established by competent evidence, the transferee must prove not only that he paid a valuable consideration but also that he acted in good faith without knowledge of the fraud."), *aff'd*, 172 F.2d 327 (3d Cir. 1949).

The Net Losers' next argument tries to do so, arguing that a defendant, upon suspicion of fraud, has a right to withdraw its investment, and that it thus does not do so in bad faith.  As explained above and in SIPC's Opening Brief, this conclusion conflates the elements of their affirmative defense: their right to withdraw is tantamount to value, not good faith.  (*See supra*

Section II.B.; Opening Br. at 23–24.)  Good faith may not require self-sacrifice (Net Losers Br. at 6), but it also does not allow a defendant to accept and retain funds fraudulently transferred from other clients when the transferee suspects fraudulent activity.

Similarly, the Net Losers next argue that the fact that Madoff ran a Ponzi scheme should not affect the fraudulent conveyance law.  Again, as explained above, the Ponzi scheme presumption is not necessary to this case.  Even if it were, the Ponzi scheme presumption appropriately designates withdrawals from a Ponzi scheme as fraudulent conveyances.  (*See supra* Section II.A.)  The Net Losers' contention that they withdrew their own money is naïve; Madoff transferred their initial investment to another client long before they sought to withdraw it.  The citation to *Lustig v. Weisz and Associates, Inc. (In re Unified Commercial Capital Inc.)*, 260 B.R. 343 (Bankr. W.D.N.Y. 2001), *aff'd sub nom., In re Unified Commercial Capital*, 2002 WL 32500567 (W.D.N.Y. June 21, 2002), likewise does not aid the Net Losers; that case deals only with the value prong of the Defendants' affirmative defense, explicitly reserving the issue of good faith as a question of fact.  *Id.* at 349 ("[T]he parties agreed that the Motion could not be granted in all respects because there were material issues of fact as to whether Associates and Weisz had at all times acted in good faith in connection with the transactions.").

For these reasons, the Net Losers' motions to dismiss should be denied, and the Trustee should have the opportunity to conduct discovery in order to rebut the Net Losers' good faith claims.

### F.	**The Good Faith Defendants Brief [Docket No. 292]**

Finally, the Good Faith Defendants purport to represent Initial Transferee Defendants and Subsequent Transferee Defendants against whom the Trustee did not asert specific allegations beyond knowledge of red flags.  (Good Faith Defendants Br. at 1.)  They argue that the Trustee

must plead that the Good Faith Defendants were willfully blind in receiving transfers.  Believing the Trustee to have failed to do so, the Good Faith Defendants thus argue that the Trustee's complaints against them must be dismissed.  As explained above and in SIPC's Opening Brief, the Trustee does not need to show that the Good Faith Defendants willfully blinded themselves; he does not even need to plead that they lacked an objective standard of good faith.  (*See supra* Section I; Opening Br. at 32.)  Good faith is an affirmative defense, and a failure to plead lack of good faith in a fraudulent conveyance action is not grounds for dismissal.  *Patriot*, 452 B.R. at 426.  The Good Faith Defendants rely on cases which hold that knowledge of red flags does not establish scienter, yet the Trustee need not plead or prove that the Good Faith Defendants intended to commit fraud.  (*See supra* Section II.C.)  Furthermore, as explained above, the Good Faith Defendants are not presumed to be acting in good faith simply because they attempted to withdraw their own funds.  (*See supra* Section II.B.)  For these reasons, the Good Faith Defendants' motion to dismiss should be denied, and the Trustee given the opportunity to respond to the Good Faith Defendants' good faith affirmative defense.

## CONCLUSION

For all of the reasons stated herein and in SIPC's Opening Brief, this Court should deny the Defendants' motions to dismiss and should adopt an objective standard of good faith for Sections 548(c) and 550(b), holding (1) that an investor does not act in good faith by failing to conduct a diligent investigation after becoming aware of facts which would have placed a reasonable investor upon inquiry notice that transfers received might be fraudulent; and (2) that the good faith defense is an affirmative defense which the Trustee need not address in his Complaints.

Dated: September 14, 2012
Washington, D.C.

Respectfully submitted,

JOSEPHINE WANG
General Counsel

  /s/Kevin H. Bell_____
KEVIN H. BELL
Senior Associate General Counsel for Dispute
Resolution

NATHANAEL S. KELLEY
Staff Attorney

SECURITIES INVESTOR
  PROTECTION CORPORATION
805 15th Street, N.W.
Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: nkelley@sipc.org