**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff,

    v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

In re:

MADOFF SECURITIES

12 MC. 115 (JSR)


**BLMIS CUSTOMERS' CONSOLIDATED REPLY BRIEF RESPONDING**
**TO THE GOOD FAITH ISSUES RAISED BY ORDER OF THE COURT**
**ENTERED ON JUNE 25, 2012**


ANDERSON KILL & OLICK, P.C.

Todd E. Duffy, Esq.
Dennis J. Nolan, Esq.
Beth D. Simon, Esq.
1251 Avenue of the Americas
New York, NY  10020
Tel:    (212) 278-1000
Fax:    (212) 278-1733

*Attorneys for Defendants Alpha Prime*
*Fund Ltd. And Senator Fund S.p.A*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................ 2

I.    In Assessing Good Faith, A Customer's Knowledge Should Be Measured By
      A Willful Blindness Standard ......................................................................... 2

      A.    "Good Faith" Is A Subjective Standard, Not An Objective One ................... 2

      B.    Customers Have No Duty To Investigate Their Broker-Dealer ..................... 4

      C.    Creditors Owe No General "Duty Of Diligent Inquiry" To Other
            Creditors Under The Securities Laws Or Otherwise ........................................ 7

      D.    The Trustee's And SIPC's Policy Arguments Are Ill-Founded ..................... 10

II.   Knowledge Is Not The Only Factor Relevant To "Good Faith." ............................... 11

III.  The Decisions Upon Which The Trustee And SIPC Rely Represent An
      Improper Departure From Historical Principles ................................................. 14

IV.   The Trustee's Own Pleadings Suffice To Show "Good Faith," And The
      Trustee's Claims Should Be Dismissed ......................................................... 15

      CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

*Arizona v. California*,
    460 U.S. 605 (1983).................................................................................................7

*Bentley v. Young*,
    210 F. 202 (Bankr. S.D.N.Y. 1914) ....................................................................15

*Boston Trading Group Inc. v. Burnazos*,
    835 F.2d 1504 (1st Cir. 1988)................................................................................9

*Brittingham v. Board of Adjustment of Rehoboth Beach*,
    No. Civ.A. 03A-08-002, 2005 WL 1653979 (Del. Super. Ct. April 26, 2005) ........3

*Carson v. Byers*,
    25 N.W. 826 (Io. 1885)..........................................................................................9

*Cent. Iowa Power Cooperative v. Consumers Energy Cooperative*,
    No. CE 50485, 2006 WL 6200677 (Iowa Dist. June 7, 2006)...............................3

*Chase, Merritt & Blanchard v. Walters*,
    28 Iowa 460 (1870)..............................................................................................13

*Chorost v. Grand Rapids Factory Showrooms, Inc.*,
    77 F. Supp. 276 (D. N.J. 1948)...........................................................................15

*Christianson v. Colt Industries Operating Corp.*,
    486 U.S. 800 (1988)...............................................................................................7

*Clarendon Nat. Ins. Co. v Lan*,
    152 F Supp. 2d 506 (S.D.N.Y. 2001)....................................................................7

*Crigger v. Fahnestock & Co.*,
    443 F.3d 230 (2d Cir. 2006)...................................................................................7

*Davis v. Schwartz*,
    155 U.S. 631 (1895)...............................................................................................9

*Dean v. Davis*,
    242 U.S. 438 (1917).............................................................................................14

*Dudley v. Danforth*,
    61 N.Y. 626 (1874)..............................................................................................13

*Edward Hines Western Pine Co. v. First National Bank*,
    61 F.2d 503 (7th Cir. 1932) ................................................................................15

*Eisenberg v. Flaten (In re Allied Development Corp.)*,
    435 F.2d 372 (7th Cir. 1970) ..............................................................................15

*Elm Haven Construction Ltd. Partnership v. Neri Construction LLC,*
    376 F.3d 96 (2d Cir. 2004)........................................................................................3

*English v. Brown,*
    229 F. 34 (3d Cir. 1916)....................................................................................9, 12

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976)...............................................................................................11

*Farmers' Bank of Concordia v. Worthington,*
    46 S.W. 745 (Mo. 1898).........................................................................................4

*Foster v. Hall,*
    29 Mass. 89 (1831) .................................................................................................4

*Gilmer v. Woodson,*
    332 F.2d 541 (4th Cir. 1964) ......................................................................4, 12, 14

*Gowan v. The Patriot Grp., LLC (In re Dreier LLP),*
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...............................................................3, 9

*Harris v. Flynn,*
    171 N.E. 730 (Mass. 1930) ...................................................................................13

*Hersh v. Levinson Brothers, Inc.,*
    174 A. 736 (N.J. 1934).........................................................................................12

*Hertzmark v. Lynch,*
    54 F.2d 38 (1st Cir. 1931).....................................................................................15

*In re Bernard L. Madoff Investment Securities. LLC,*
    654 F.3d 229 (2d Cir. 2011)..................................................................................10

*In re Lakes States Commodities, Inc.,*
    253 B.R. 866 (Bankr. N.D. Ill. 2000) ..................................................................17

*In re New Times Sec. Servs.,*
    371 F.3d 68 (2d Cir.2004).................................................................................4, 5, 6

*In re Sharp Int'l Corp.,*
    403 F.3d 43 (2d Cir. 2005).....................................................................................9

*In re Tremont Securities Law, State Law & Insurance Litigation,*
    703 F. Supp. 2d 362 (S.D.N.Y. 2010)..................................................................18

*In re Walt Disney Co. Derivative Litigation,*
    906 A.2d 27 (Del. 2006) .........................................................................................3

iv

*Ins. Co. of N. Am. v. Whitlock*,
    216 A.D. 78 (N.Y. App. Div. 1st Dept. 1926) ..........................................................8

*Jackson v. Citizens' Bank & Trust Co.*,
    44 So. 516 (Fla. 1907)................................................................................9, 12, 14

*Lenz v. Associated Inns & Rest. Co. of America*,
    833 F. Supp. 362 (S.D.N.Y. 1993) ...........................................................................7

*Long v. Dixon*,
    93 A.2d 758 (Md. 1953) ..........................................................................................13

*Lumpkin v. Foley*,
    204 F. 372 (5th Cir. 1913) ......................................................................................15

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
    11-3311-cv, 2012 WL 2759433 (2d Cir. July 10, 2012) .........................................17

*Newman v. Family Management Corp.*,
    748 F. Supp. 2d 299 (S.D.N.Y. 2010).....................................................................18

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)......................................................................................16

*Phillip v. Fairfield University*,
    118 F.3d 131 (2d Cir. 1997)......................................................................................3

*Picard v. Avellino*,
    469 B.R. 408  (S.D.N.Y. 2012)........................................................................1, 6, 19

*Picard v. Greiff*,
    12 MC 115, 2012 WL 1505349 (S.D.N.Y. Apr. 30, 2012) ................................2, 16

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011).................................................................... *passim*

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010).......................................................................18

*SEC v. Cohmad Sec. Corp.*,
    No. 09 Civ 5680 (LLS), 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) .....................18

*SEC v. Milan Cap. Grp., Inc.*,
    No. 00 civ 108 (DLC), 2000 WL 1682761 (S.D.N.Y. Nov. 9, 2000) ......................8

*SEC v. Plantinum Inv. Corp.*,
    No 02 Civ. 6093 (JSR), 2006 WL 2707319 (S.D.N.Y. Sept. 20, 2006)...................8

*Shauer v. Alterton*,
  151 U.S. 607 (1894)........................................................................................15

*Sly v. Bell*,
  108 N.W. 227 (Io. 1906)...................................................................................13

*Smith v. Whitman*,
  189 A.2d 15 (N.J. 1963).....................................................................................9

*Stephenson v. Citco Group Ltd.*,
  700 F. Supp. 2d 599 (S.D.N.Y. 2010)..............................................................18

*U.S. v. Holland*,
  394 F. App'x 766 (2d Cir. 2010) ........................................................................8

*Ultamar Energy v. Chase Manhattan Bank*,
  191 A.D.2d 86 (N.Y. App. Div. 1st Dept. 1993) ...............................................9

*United States v. Berman*,
  21 F.3d 753 (7th Cir. 1994) ...............................................................................8

*United States v. Marino*,
  654 F.3d 310 (2d Cir. 2011)..............................................................................17

*USM Corp. v. SPS Technologies, Inc.*,
  694 F.2d 505 (7th Cir. 1982) ...........................................................................10

*Van Iderstine v. National Discount Co.*,
  227 U.S. 575 (1913)..........................................................................................14

*Walbrun v. Babbitt*,
  83 U.S. 577 (1872)............................................................................................15

*Warth v. Seldin*,
  422 U.S. 490 (1975)............................................................................................8

*Wight v. BankAmerica Corporation*,
  219 F.3d 79 (2d Cir. 2000)..................................................................................8

*Wirtz v. Jensen* (*In re Rasmussen's Estate*),
  298 N.W. 172 (Wis. 1941)..................................................................................4

*York Cnty. Bank v. Carter*,
  38 Pa. 446, (Pa. 1861) ........................................................................................9

STATUTES

15 U.S.C. §§ 78fff-1(a), 78fff(b) .............................................................................11

vi

11 U.S.C. 548 ............................................................................................ *passim*

N.Y.U.C.C. § 8-503 ...................................................................................6

15 U.S.C. §§ 78aaa ...................................................................................1

**FEDERAL RULES AND REGULATIONS**

43 Fed. Reg. 47,495 ..................................................................................5

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-10...............................................................................5

17 C.F.R. § 240.15c3-2 .............................................................................17

17 C.F.R. § 240.15c3-3(l) .....................................................................8, 17

General Rules and Regulations, Securities Exchange Act of 1934,
    43 Fed. Reg. 47,495, 47,496 (1978) ....................................................6

1 Garrard Glenn, *Fraudulent Conveyances and Preferences* § 304 (1940) ....................................3

*Additional Reforms to the Securities Investor Protection Act: Hearing Before the
    Subcommittee on Capital Markets, Insurance, & Government Sponsored Enterprises
    of the Committee on Financial Services.*,
    111th Cong. 98 (2009) ......................................................................11

Edward A. Weiss, *Connecticut Fraudulent Conveyance Law,*
    11 U. Bridgeport L. Rev. 489 (1991)......................................................4

James F. Minor, Note, *Right of Fraudulent Vendee to Share with Attacking Creditors in
    Proceeds of Property as to Debt Unconnected with Fraud*,
    15 Va. L. Rev. 657 (1910) ...................................................................4

Note, *Good Faith and Fraudulent Conveyances,*
    97 Harv. L. Rev. 495 (1983) ................................................................4

nydocs1-995287.1

The BLMIS Customers respectfully submit this consolidated reply memorandum of law to address the "good faith" defense under Section 548(c) of the Bankruptcy Code, 11 U.S.C. § 548(c) ("Section 548(c)"), in the context of a proceeding under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA").

## PRELIMINARY STATEMENT

As this Court held in *Katz* and *Avellino*, a customer's knowledge is measured by a "willful blindness" standard in a SIPA case.  The Trustee and SIPC ask this Court to change its prior holding, but they merely present the same arguments that failed in those cases, identifying no clear error and citing no intervening change in the law.  Instead, in answering "no" to the question of "whether SIPA and other securities laws alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in 'good faith,'" the Trustee and SIPC reject without basis this Court's holding in *Avellino* that "the securities laws do in fact alter the applicable standard."  469 B.R. 408, 412 (S.D.N.Y. 2012).  In avoidance cases against *customers* of a broker-dealer, SIPA and the securities laws are highly relevant to "good faith," because they define the customers' rights and obligations at the time the relevant transactions occurred.

The Trustee and SIPC wholly ignore – and therefore concede – that customers such as the BLMIS Customers have no duty to investigate their broker at the time of the transfer.  The gist of their argument is that because BLMIS was a Ponzi scheme, somehow a duty of inquiry that did not exist at the time of the transfer should be imposed retroactively.  They also argue that notwithstanding the fact that this is one of the biggest securities frauds and SIPC liquidations in history, this case has little to do with the securities laws.  Those arguments are logically flawed.

Similarly, while the Trustee chides the BLMIS Customers for allegedly trying to rewrite Section 548(c), his proposed negligence standard ignores overwhelming precedent holding that good faith is a subjective determination.  Furthermore, "knowledge" is only part of the "good

faith" inquiry.  Customers have the right to protect themselves; even if circumstances suggest

fraud (as the Trustee has alleged), customers have a right to demand that their debts be paid, and

it is not a lack of "good faith" for them to do so.

Finally, in a desperate attempt to save their incorrect arguments, the Trustee and SIPC

contend that the Court may determine the good faith of a party only after trial because it is an

affirmative defense.  This Court has previously rejected that misguided notion.  *See Picard v.

Grieff*, No. 12 MSR 115 (JSR), 2012 WL 1505349, at *2 (S.D.N.Y. Apr. 30, 2012) ("An

affirmative defense may be raised by a pre-answer motion to dismiss … if the defense appears on

the face of the complaint.").  Here, the Trustee's own pleadings suffice to show "good faith" and

thus constitute cause to dismiss the actions against the BLMIS Customers.

## ARGUMENT

### I.    In Assessing Good Faith, A Customer's Knowledge Should Be Measured By A Willful Blindness Standard

As this Court held in *Katz*, where a customer's knowledge is relevant, the "willful

blindness" standard is the proper way of measuring such knowledge.  That is the only approach

that is consistent with both the subjective standard of honesty that inheres in the words "good

faith," and the law that otherwise governed a customer's dealings with BLMIS.[1]

### A.    "Good Faith" Is A Subjective Standard, Not An Objective One

The plain language of Section 548(c) requires "good faith" by a transferee.  It says

nothing about a "diligent investigation," "reasonable" behavior, facts that "could have been

discovered" by a transferee, "inquiry notice" or what an "objective third party" could have

---

[1]   At times even the Trustee and SIPC describe the relevant standard using words that connote "willful blindness" rather than "negligence" or "duties of inquiry."  *See* SIPC Br. at 20 ("[a] plaintiff cannot close his eyes to an obvious fraud . . . ."); Trustee Br. at 19 (describing good faith as an "honest intention . . . together with an absence of all information or belief of facts which would render the transaction unconscientious . . . ."); Trustee Br. at 20 (arguing that "[s]ophisicated investors cannot avoid liability by remaining ignorant of relevant facts.").

2

deduced or discovered.  In attempting to graft these concepts onto Section 548(c), the Trustee

merely quotes at length from cases that have applied a different test (Trustee Br. at 11-14),

without explaining as a matter of principled statutory construction how an "objective" standard,

or an affirmative "duty of inquiry," could reasonably be derived from the words "good faith."

Arguments about what a transferee "could" have known, or "could" or "should" have

deduced, are arguments grounded in "negligence" standards, as are "objective" tests in general.

"Lack of good faith," on the other hand, expresses that something other than negligence has

occurred.  References to "bad faith" or to "a lack of good faith" by their very nature focus on the

actual knowledge, motives and honesty of a transferee.  The words import culpability, not a lack

of care.  The concepts appear often in the law, and they contemplate conduct that is not justified

for the protection of the transferee's own legitimate interests and through which the transferee,

with ill motives, has taken wrongful advantage of others.  "Bad faith means more than mere

negligence; it involves a dishonest purpose."  *Elm Haven Constr. Ltd. P'ship v. Neri Constr.*

*LLC*, 376 F.3d 96, 102 (2d Cir. 2004).[2]  For this reason, courts historically found "good faith" to

---

[2]    *See also Phillip v. Fairfield Univ.*, 118 F.3d 131, 135 (2d Cir. 1997) (arbitrary action was not
bad faith in the absence of evidence of "an interested or sinister motive"); *Gowan v. The
Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 450 (Bankr. S.D.N.Y. 2011) ("There
must, indeed, be more than negligence.  There must be a conscious turning away from the
subject. . . . [T]he grantee must take the consequences if he 'chooses to remain ignorant of
what the necessities of the case require him to know.'") (quoting 1 Garrard Glenn, *Fraudulent
Conveyances and Preferences* § 304, at 532 (1940)); *Cent. Iowa Power Coop. v. Consumers
Energy Coop.*, No. CE 50485, 2006 WL 6200677 (Iowa Dist. June 7, 2006) (Board's
procedures may have included "mere error[s]," but did not "exhibit the high level of
conscious misconduct that must exist" to find a lack of good faith); *In re Walt Disney Co.
Derivative Litig.*, 906 A.2d 27, 64-65 (Del. 2006) ("[G]ross negligence (including a failure to
inform one's self of available material facts), without more, can[not] constitute bad faith.");
*Brittingham v. Bd. of Adjustment of Rehoboth Beach*, No. Civ.A. 03A-08-002, 2005 WL
1653979, at *2 (Del. Super. Ct. April 26, 2005) (Board did not act in bad faith because it did
not have a "dishonest state of mind. . . . Bad judgment by itself is not equivalent to a sinister
motive or dishonest purpose").

be lacking only where a transferee participated in the transferor's wrongdoing.  *See* Initial Br.[3] at 14; Note, *Good Faith and Fraudulent Conveyances*, 97 Harv. L. Rev. 495, 506-510 (1983) (reviewing case law and concluding that a subjective "participation" in fraud is required in order to show a lack of good faith).[4]

### B.   Customers Have No Duty To Investigate Their Broker-Dealer

"A securities investor has no inherent duty to inquire about his stockbroker, and SIPA creates no such duty."  *Katz*, 462 B.R. at 455 (*citing In re New Times Sec. Servs.,* 371 F.3d 68, 87 (2d Cir. 2004)).  Based on this fundamental principle, this Court held that, in a SIPA case, an investor acted in "good faith" unless she was willfully blind or consciously avoided facts showing a probability of fraud.  *Id.*  The Court further held that, sophisticated or not, "if, simply confronted with suspicious circumstances, he fails to launch an investigation of his broker's internal practices – and how could he do so anyway? – his lack of due diligence cannot be

---

[3]   BLMIS Customers' Consolidated Brief Responding to the Good Faith Issues Raised By Order of the Court Entered on June 25, 2012, dated July 20, 2012 (the "Initial Br.").

[4]   *See also* James F. Minor, Note, *Right of Fraudulent Vendee to Share with Attacking Creditors in Proceeds of Property as to Debt Unconnected with Fraud*, 15 Va. L. Reg. 657, 668 n.17 (1910) ("At common law and in the statutes . . . a prima facie case for setting aside a transfer as fraudulent is not complete unless proof be made by the creditor of the transferee's participation in the fraudulent intent . . ."); Edward A. Weiss, *Connecticut Fraudulent Conveyance Law*, 11 U. Bridgeport L. Rev. 489, 500-505 (1991) (reviewing Connecticut law and UFTA cases and concluding that "there is no doubt that the transferee's participation is required to be proven"); *Gilmer v. Woodson*, 332 F.2d 541, 547 (4th Cir. 1964) (good faith is not lacking unless the transferee "knowingly participated in the debtor-transferor's purpose to defeat other creditors or lacked good faith in valuing the property exchanged"); *Wirtz v. Jensen* (*In re Rasmussen's Estate*), 298 N.W. 172, 175 (Wis. 1941) (need for proof that "the grantee participated in the fraudulent intent," where there is fair consideration); *Farmers' Bank of Concordia v. Worthington*, 46 S.W. 745, 747 (Mo. 1898) ("however clear fraud may be, the conveyances cannot be declared fraudulent unless [the transferee] knew of [the debtor's] intent to defraud his creditors, and participated in it"); *Foster v. Hall*, 29 Mass. 89, 99-100 (1831) (no liability unless the transferee "participated in" the fraud "and by his concurrence promoted it").

4

equated with a lack of good faith, at least so far as section 548(c) is concerned as applied in the context of a SIPA trusteeship."  *Id.*

The Trustee and SIPC essentially ignore both this Court's *Katz* holding and the securities laws underpinning this Court's holdings.  The Trustee dances around *Katz*, questioning whether its holding is correct without offering any substantive or supported argument against it.  Trustee Br. at 31 n. 128.  Yet, neither the Trustee nor SIPC cite to any case, statute or regulation imposing a duty to inquire about a stockbroker.[5]  This Court's decisions stand on a sound foundation.  There is a critical distinction – one wholly ignored by the Trustee and SIPC – between an investor's decision to risk her money in a particular investment and a customer's decision to utilize the services of a registered broker-dealer.  In *New Times*, 371 F.3d at 87, the Second Circuit rejected the argument that the Trustee and SIPC make here:

> We note that SIPC's approach does perhaps promote an arguably laudable policy goal – encouraging investors to research and monitor their investments (and their brokers) with greater care.  This goal of greater investor vigilance, however, is not emphasized in the legislative history of SIPA.  Instead . . . the drafters' emphasis was on promoting investor confidence in the securities markets and protecting broker-dealer customers.

Indeed, not only is a broker-dealer customer *entitled* to presume the honesty and integrity of its broker-dealer without conducting *any* investigation, the modern indirect securities holding system – in which investors do not actually take custody of their own securities – requires it.  As the commentary to the U.C.C. explains, "[r]ather than imposing duties to investigate, the general policy of the commercial law of the securities holding and transfer system has been to eliminate legal rules that might induce participants to conduct investigations of the authority of persons

---

[5]   SEC Rule 10b-10, for example, was designed to "safeguard against fraud" (SIPC Br. at 18), by demanding greater disclosure by brokers – thereby reducing the ease with which fraud could be concealed – and not by demanding greater inquiry by investors.  *See* 43 Fed. Reg. 47,495, 47,496 (1978); 17 C.F.R. § 240.10b-10.  It does not, however, charge investors with the duty to scrutinize their account statements for evidence of potential wrongdoing.

transferring securities on behalf of others for fear that they might be held liable for participating in a wrongful transfer." N.Y.U.C.C. § 8-503 cmt. 3. In *New Times*, the Second Circuit recognized that the federal securities laws – including SIPA – are motivated by the same consideration. 371 F.3d at 86 (recognizing that a customer's interest "depends not on what is actually in the customer's account but on what the customer has been told by the [broker] in written confirmations."). Accordingly, there is no basis for SIPC's suggestion that the requirement that brokers provide each customer with records of its trades shifts, to the customer, the risk of fraud by the broker.

At bottom, the Trustee and SIPC rehash the arguments rejected in *Katz* and *Avellino* that the words "good faith" retroactively impose a "duty of inquiry," no matter what the underlying securities laws otherwise would have required. Trustee Br. at 10-15; SIPC Br. at 10-15. These contentions make no sense. The words "good faith" are not a reference to a self-contained code of conduct that prescribes (after the fact) an inflexible set of rules as to how all transferees should have behaved, regardless of what the governing law otherwise required. Whether a transferee acted in "good faith" is determined by the law that governed the transactions in which the transferee participated. If a transferee abided by her legal duties and acted within her legal rights, she necessarily acted in "good faith."

In this regard, the relevant question is not whether SIPA uses a different definition of "good faith," as the Trustee wrongly suggests. Trustee Br. at 23-27. The question is what "good faith" requires where (as here) the applicable law plainly imposes no duty to inquire or to investigate. There is nothing about the requirement of "good faith" that changes the rules after the fact or that imposes a "duty of inquiry' where none previously existed.

6

The *Katz* decision is law of the case and controls here.  See Initial Br. at 4.  The Trustee and SIPC have failed to present any argument supporting their contention that this Court should revisit or modify the law of this case.[6]

### C.    Creditors Owe No General "Duty Of Diligent Inquiry" To Other Creditors Under The Securities Laws Or Otherwise

Ignoring that an investor, regardless of its level of sophistication, is under no duty to investigate its broker, both the Trustee and SIPC cite to other circumstances in which parties are expected to act diligently in the protection of their own interests, such as ensuring that they file suit prior to the expiration of a statute of limitations.  *See, e.g., Lenz v. Associated Inns & Rest. Co. of America*, 833 F. Supp. 362, 370-77 (S.D.N.Y. 1993) (plaintiff's fraud claim barred by statute of limitations); *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234-26 (2d Cir. 2006) (dismissing plaintiff's damage claims for misrepresentation based on lack of reasonable reliance).  The Trustee and SIPC argue that these decisions create a free-floating "duty of diligent inquiry," applicable to all parties and in all contexts.  These contentions lack merit.

First, the claims before this Court do not raise statute of limitations issues.  Nor do they involve parties who seek consequential damages as compensation for their alleged reliance on a misrepresentation.  These cases involve parties who withdrew funds from their own brokerage

---

[6]    SIPC notes that the law of the case doctrine is discretionary and does not bar a court from reconsidering its own decisions prior to final judgment.  SIPC Br. at 2 n. 2.  However, courts "should be loathe to do so in the absence of extraordinary circumstances, such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988) (*quoting Arizona v. California*, 460 U.S. 605, 618 (1983)).  The only grounds upon which a court may reconsider an issue previously determined are: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or to prevent manifest injustice. *Clarendon Nat. Ins. Co. v Lan*, 152 F. Supp. 2d 506, 524 (S.D.N.Y. 2001).  The Trustee and SIPC do not meet this exacting standard.

accounts, as to which they had no duty of inquiry.[7]  There is no "reasonable reliance" condition

to a customer's right to withdraw assets from a brokerage account.  *See* 17 C.F.R. § 240.15c3-

3(l).  Similarly, there is no "reasonableness" defense or precondition to a customer's legal right

to obtain restitution from BLMIS.  The Trustee and SIPC admit that BLMIS obtained customers'

monies through an intentional fraud, and arguments about customers' "reasonableness" are not a

defense to BLMIS's restitution obligations.[8]

 Second, legal duties do not exist in the abstract.  People owe duties to other people in

particular contexts, and only in particular ways and for particular reasons.  *See Wight v.*

*BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000) (under principles of prudential standing a

party can only "'assert his own legal rights and interests, and cannot rest his claim to relief on the

legal rights or interests of third parties.'" (quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975))).

 The cases cited by the Trustee and SIPC involve situations in which the law expects

parties to take diligent action to protect their own interests.  Here, by contrast, the Trustee and

SIPC have *criticized* customers for taking actions that protected their own rights (getting their

money back from Madoff) without first doing a thorough investigation as to how the withdrawals

---

[7] Many of the decisions cited by the Trustee just hold that broker owes a duty to its clients, rather than that a customer has a duty to investigate the broker.  *See, e.g., SEC v. Milan Cap. Grp., Inc.*, No. 00 Civ. 108 (DLC), 2000 WL 1682761, at *5 (S.D.N.Y. Nov. 9, 2000) (noting that broker owes duty to investigate truth of its representations); *SEC v. Platinum Inv. Corp.*, No 02 Civ. 6093 (JSR), 2006 WL 2707319, *3 (S.D.N.Y. Sept. 20, 2006) (same).

[8] *See United States v. Berman*, 21 F.3d 753, 757 (7th Cir.1994) (Posner, J.) ("[E]ven if the [victim] was negligent, it would be entitled to restitution from a deliberate wrongdoer; contributory negligence is not a defense to fraud."); *Ins. Co. of N. Am. v. Whitlock*, 216 A.D. 78, 86 (N.Y. App. Div. 1st  Dept. 1926) (refusing to permit a defense that the victim had information from which it could have ascertained the fraud, holding that "[a] person who is negligent in reposing confidence in a wrongdoer is not thereby prevented from recovering his property from the latter."); *see also U.S. v. Holland*, 394 F. App'x 766, 767 (2d Cir. 2010) (upholding restitution order despite argument that plaintiff had been negligent, and holding that "an innocent crime victim has no duty to detect a crime being perpetrated against it.")

might affect *other* BLMIS customers.  It is well-established, however, that creditors owe no affirmative duties to other creditors.  *See Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 450 (Bankr. S.D.N.Y. 2011) (in the context of a Ponzi scheme, "Defendants do not appear to have owed a duty to anyone (other than perhaps their own investors) to investigate [debtor's] fraud."); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 52-53 & n.2 (2d Cir. 2005) (finding "no affirmative duty under New York law" to reveal a debtor's fraud to other creditors).

The Trustee and SIPC also argue that if customers had not made withdrawals there would have been more money left for distribution on a *pro rata* basis to all creditors.  *See* Trustee Br. at 24; SIPC Br. at 13.  However, the underlying premise of their argument – that a creditor does not act in "good faith" if she knowingly recovers a higher percentage of her debt than other creditors might recover – is simply false.  "A creditor has the right to secure his debt in good faith, even if he knows his debtor has other creditors, and knows that the effect will be to prevent other creditors from collecting their claims."  *Carson v. Byers*, 25 N.W. 826, 828 (Io. 1885); *see also Davis v. Schwartz*, 155 U.S. 631, 638-41 (1895); *Boston Trading Group Inc. v. Burnazos*, 835 F.2d 1504, 1512 (1st Cir. 1988); *English v. Brown*, 229 F. 34, 40 (3d Cir. 1916); *Ultamar Energy v. Chase Manhattan Bank*, 191 A.D.2d 86, 91 (N.Y. App. Div. 1st Dep't 1993); *Smith v. Whitman*, 189 A.2d 15, 20 (N.J. 1963); *Jackson v. Citizens' Bank & Trust Co.*, 44 So. 516, 522 (1907); *York Cnty. Bank v. Carter*, 38 Pa. 446, 452-3 (Pa. 1861).  As the court held in *Jackson*, 44 So. at 522:

> A person who receives property from an insolvent debtor in payment of an antecedent debt occupies a more favored position than a purchaser for a present consideration. A preferential transfer of property cannot be declared fraudulent as to other creditors, although the debtor in making it intended to defeat their claims, and the creditor had knowledge of such intention, if the preferred creditor did not actually participate in the debtor's fraudulent purpose.  If the only purpose of the creditor is to secure his debt, and the property is not worth materially more than the debt, the transaction is not

9

> fraudulent . . . Such a creditor is protected, even though he knows that the transfer is of all the debtor's property, that there are other creditors, and that the effect of the debtor's action will be to defeat them.

The law distinguishes between positive and negative duties, and legal doctrines sounding in tort "have generally been understood to impose only the latter." *See USM Corp. v. SPS Technologies, Inc.*, 694 F.2d 505, 512-13 (7th Cir. 1982). Creditors have the duty to refrain from engaging in conduct that affirmatively violates the established legal rights of others, but they owe no obligations of care, loyalty, or protection to other creditors. The Trustee's and SIPC's efforts to impose such duties, through their expansive interpretation of "good faith," is not consistent with the governing law.

### D.    The Trustee's And SIPC's Policy Arguments Are Ill-Founded

The Trustee and SIPC argue that imposing a duty of inquiry is consistent with the "purpose" of fraudulent transfer law, because it would allow the Trustee to avoid a greater number of transfers. Trustee Br. at 18-19; SIPC Br. at 12-13. However, the "purpose" of having a good faith defense is to provide protection to transferees. Citing either of those two "purposes" in the abstract does nothing to advance the question of what "good faith" actually means.

Furthermore, these proceedings arise in the context of an insolvency case brought under SIPA, which is governed not by the policies animating title 11 of the United States Code, but by the policies behind title 15. The Second Circuit has recognized that a SIPA proceeding is not an ordinary bankruptcy case, and is, instead, a "hybrid" proceeding. *See In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229, 242 n.10 (2d Cir. 2011) (citing 15 U.S.C. §§ 78fff-1(a), 78fff(b)). The whole point of SIPA (and many other provisions of the securities laws) is to encourage customers to have confidence in the brokers and dealers with whom they do business. The "policies" and "purposes" of SIPA support the use of a willful blindness standard, not the retroactive imposition of a "duty of inquiry."

10

The Trustee also contends that Congress's rejection of a proposed amendment to SIPA evidences Congress' understanding that there should be an objective test for good faith under SIPA.  *See* Trustee Br. at 26-27.  The proposed amendment to SIPA, had it been adopted, would have prevented the Trustee from commencing an action under sections 544, 547, and 549 of the Bankruptcy Code "absent proof that the customer did not have legitimate expectation that the assets in his account belonged to him."  *See Additional Reforms to the Sec. Investor Prot. Act: Hearing Before the Subcomm. on Capital Mkts., Ins., & Gov't Sponsored Enters. of the Comm. on Fin. Servs.*, 111th Cong. 98 (2009) (statement of John C. Coffee, Professor of Law, Columbia University Law School).  It is absurd to suggest, however, that a refusal to amend the statute in 2009 somehow is an indication of the meaning of "good faith," which has appeared in the relevant statutes for many decades.

At bottom, neither the Trustee nor SIPC has cited any authority for the proposition that the good faith defense in an avoidance action brought in a SIPA proceeding is determined by anything other than willful blindness.  Indeed, in the single case directly discussing the standard for determining the good faith of a transferee in avoidance actions in a SIPA proceeding, this Court held that a "willful blindness" standard was appropriate.  *See Katz*, 462 B.R. at 455.  *Katz* reflects the understanding that defendants in a securities case – such as a SIPA proceeding – should not be forced to forfeit funds based on a standard lower than the standard applied in other securities cases.  *Id.* (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 215 (1976)).  Nothing in the Trustee's or SIPC's papers counsels a different result.

## II.   Knowledge Is Not The Only Factor Relevant To "Good Faith."

The Trustee advocates a "one size fits all" approach to "good faith," in which the only thing relevant is what a customer allegedly knew or could have known, and what a customer

11

actually did (and the context in which the customer acted) is irrelevant.  Trustee Br. at 30-37.
That simply makes no sense.

For example, the Trustee argues that a customer lacks "good faith" if she receives a
transfer in the face of facts that suggest a potential "insolvency" or "financial problems" on the
part of the transferor.  Trustee Br. at 11.  There are circumstances in which such facts could be
relevant in assessing a party's good faith.  If (for example) a buyer buys an asset at a bargain
price, with knowledge that the seller is insolvent and is being pursued by his creditors, the
"bargain" has not been obtained in good faith.  However, a suggestion of "insolvency" is not,
itself, a reason why a creditor must refrain from collecting a debt.  In fact, Section 548(a)(2)
explicitly permits a creditor to collect a debt in exactly such a case.  Nor is mere suspicion of
financial difficulty a reason to refrain from taking assets from a brokerage account.

In his brief, the Trustee has merely assembled a litany of factors (solvency, financial
irregularities, financial troubles, etc.) that *could* be relevant in different contexts (Trustee Br. at
11), without any explanation as to why those are factors that should be relevant to the particular
claims that are before this Court.  These cases do not involve purchases of assets, the receipt of
gifts, "bargain" purchases or other types of fraudulent transfers, and factors that may be relevant
in assessing "good faith" in those cases are not necessarily relevant here.

Courts have long recognized that knowledge of financial difficulty or of potential
wrongdoing has different consequences depending on whether a transferee is a "volunteer" to a
transaction or whether the transferee is a creditor who has a right to collect an existing claim.
*See, e.g., Gilmer v. Woodson* (*In re Decker*), 332 F.2d 541, 547 (4th Cir. 1964); *Hersh v.
Levinson Bros., Inc.*, 174 A. 736, 738 (N.J. 1934); *Jackson*, 44 So. 516, 522 (Fla. 1907).  The
language of *English v. Brown*, 229 F. at 40 is instructive:

nydocs1-995287.1

> The reasons that have been assigned for the distinction between one who purchases for a present consideration and one who purchased in satisfaction of a pre-existing debt are sound and unassailable.  The former is in every sense a volunteer . . . Not so with him who takes the property in satisfaction of a pre-existing indebtedness.  He has an interest to serve.  He can keep out of the transaction only at the risk of losing his claim.  The law throws upon him no duty of protecting other creditors.  He has the same right to accept a voluntary preference that he has to obtain a preference by superior diligence.  He may know the fraudulent purpose of the grantor, but the law sees that he has a purpose of his own to serve, and if he goes no further than is necessary to serve that purpose, the law will not charge him with fraud by reason of such knowledge.

There are numerous cases reflecting this common-sense result.  *See, e.g.,* Initial Br. 21-23; *Long v. Dixon*, 93 A.2d 758, 763 (Md. 1953); *Harris v. Flynn*, 171 N.E. 730, 731 (Mass. 1930); *Sly v. Bell*, 108 N.W. 227, 227-28 (Io. 1906); *Dudley v. Danforth*, 61 N.Y. 626, 626 (1874); *Chase, Merritt & Blanchard v. Walters,* 28 Iowa 460, 465 (Io. 1870).

A third party who has no other interest to serve, and who (with knowledge of the transferor's fraudulent intent) elects to engage in a transaction that hinders creditors, has participated in the transferor's fraud.  In such cases, knowledge of fraud or insolvency can be a "red light" that requires a stop to further action.  These cases, however, involve customers of a broker-dealer who recovered debts that were owed to them.  To a creditor, a suggestion of potential dishonesty should be a call to action, not a stop sign.  Indeed, many of those the Trustee now sues are investment funds that owed duties to their own investors – had they discovered BLMIS was engaged in fraud, "good faith" would have required action, not restraint.

The Trustee characterizes this argument (and the many decisions cited in support of it) as "contrived," *see* Trustee Br. at 19, but that is hardly a reasoned response.  "Good faith" can only be judged in context.  The problem with the theory of "good faith" advocated by the Trustee and SIPC (and reflected in most of the decisions on which the Trustee and SIPC rely) is that it borrows from many different contexts and tries to apply a set of inflexible rules as to how all

transferees must behave in all circumstances.  As a result, both the Trustee and SIPC advocate results that defy common sense in the case of a creditor who collects a debt, and are even more absurd in the context of a customer withdrawing funds from its own brokerage account at a registered broker-dealer.  "Knowledge" (or suspicion) that a transferor has a fraudulent purpose cannot reasonably mean that a creditor must freeze in her tracks, or that she has a "good faith" obligation to leave her assets in the hands of the potential wrongdoer.  Creditors (and fraud victims in particular) have rights to protect their own interests, and it cannot be a lack of "good faith" if they do so.

### III.     The Decisions Upon Which The Trustee And SIPC Rely Represent An Improper Departure From Historical Principles

The Trustee argues that the decisions cited at pages 14-15 of the BLMIS Customers' initial brief support the Trustee's interpretation of "good faith."  *See* Trustee Br. at 17 n. 67.  The Trustee's reading of these cases is simply wrong.  *See Dean v. Davis*, 242 U.S. 438, 445 (1917) (finding that transferee lacked good faith because he not only had actual knowledge of fraud but "cooperated in the bankrupt's fraudulent purpose"); *Van Iderstine v. Nat'l Discount Co.*, 227 U.S. 575, 583 (1913) (transfer could not be set aside except upon "proof" that the defendant "knew" that the transferor intended to defraud others); *Gilmer*, 332 F.2d at 546-47 (good faith was not lacking unless the transferee "knowingly participated in the transferor's purpose to defeat other creditors); *Jackson*, 44 So. at 530 (distinguishing between creditors and "volunteers" and holding that payments to creditors cannot be challenged in the absence of proof that the creditor "actually" participated in the debtor's fraudulent purpose).

The Trustee also argues that "inquiry notice" has always been the standard upon which "good faith" has been judged.  However, none of the cited cases involved collections of debts by creditors, much less claims in the SIPA context, and in any event, the decisions do not support

14

the Trustee's suggestion that mere "inquiry notice" and "negligence" are enough to raise questions about a transferee's good faith.  Instead, the cited decisions all speak in terms of what a purchaser of assets actually knew or "must have" realized based on the facts actually known to him, which is consistent with the "willful blindness" standard.  *See, e.g., Lumpkin v. Foley*, 204 F. 372, 381 (5th Cir. 1913) (holding that the evidence showed that a lender who assisted a corporate officer in avoiding a guarantee obligation had "shut his eyes to the situation" and had "acquiesced" in a scheme); *Edward Hines W. Pine Co. v. First Nat'l Bank*, 61 F.2d 503, 509 (7th Cir. 1932) (seller had knowledge of the source of stolen monies used to pay for goods and was "precluded" from "closing its eyes" in the face of such knowledge).[9]

Historically, courts recognized that "good faith" is lacking only if a party participates in a fraud, *see* footnote 3, above, and that creditors have the rights to protect themselves.  So long as they limit themselves to the collection of their debts, they have acted in good faith.

## IV.   The Trustee's Own Pleadings Suffice To Show "Good Faith," And The Trustee's Claims Should Be Dismissed

Where the Trustee's own allegations establish that a BLMIS Customer acted in good faith, Section 548(c) "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6),

---

[9]   *See also Walbrun v. Babbitt*, 83 U.S. 577, 581-2 (1872) (brother-in-law bought assets in a transaction that was out of the ordinary course of business and that the Court viewed as "prima facie" evidence of fraud); *Bentley v. Young*, 210 F. 202, 205 (Bankr. S.D.N.Y. 1914) (evidence showed that a transferee "not only ought to have been, but actually was" suspicious as to whether the seller had good title but nevertheless bought assets at a "wholly inadequate" price); *Hertzmark v. Lynch*, 54 F.2d 38, 40-41 (1st Cir. 1931) (defendant "must have known" of an illicit purpose); *Chorost v. Grand Rapids Factory Showrooms, Inc.*, 77 F. Supp. 276, 280-281 (D. N.J. 1948) (evidence showed that a buyer must have had knowledge of a fraud); *Eisenberg v. Flaten (In re Allied Dev. Corp.)*, 435 F.2d 372, 376 (7th Cir. 1970) (banks were not *bona fide* lienors when they had actual knowledge of facts suggesting problems with the liens at the time they accepted an assignment of them); *see also Shauer v. Alterton*, 151 U.S. 607, 617-18, 621 (1894) (applying a statute that had no explicit "good faith" defense, and approving jury instructions that a transferee "was not bound to act upon mere suspicion as to the intent with which his brother made the sale in question," but lacked good faith if he had actual knowledge of facts suggesting such a fraudulent intent and simply ignored them.).

without resort to summary judgment procedure." *Greiff*, 2012 WL 1505349, at \*2 (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)).

It is true that the Trustee has not *characterized* Defendants' behavior as being in "good faith," as the Trustee points out. *See* Trustee Br. at 9. However, the Trustee has affirmatively alleged that many Defendants did no more than to collect some of the "principal" debts that were owed to them and that they allegedly did so at times when they knew (or should have known) that Madoff was engaged in fraud. Even if the Trustee's allegations were accepted as true, a creditor acts in "good faith" if she collects a debt under such circumstances, and the Trustee's own pleadings therefore suffice to establish "good faith."

First and foremost, the Trustee has pleaded that the defendants were "customers" of a SIPC-member broker-dealer. Status as a "customer" is not a neutral fact, but rather carries with it significant implications. For one, as this Court has already held, a "customer" is not expected to "investigate" its broker but rather is entitled to assume both that the broker is honest and that the information received from the broker is accurate. *See generally* Initial Br. at 6-9. The Trustee's allegation of "customer" status thus forecloses – as a matter of law on the face of his complaints – any theory predicated on the failure of such "customer" to conduct an adequate investigation.[10]

Second, the Trustee does not dispute that he has alleged that the money he seeks to recover constituted withdrawals by BLMIS customers from their brokerage accounts. That allegation is significant because it establishes that, at the time of each withdrawal, each BLMIS

---

[10] The Trustee's allegations establish not just that BLMIS was a broker and that the BLMIS Customers were "customers," but also that BLMIS was a well-known and highly-regulated broker, that customers invested by executing standard account-opening documents, and that they received periodic statements confirming the existence of cash and securities in their accounts. *See* Initial Br. at 24-25.

16

Customer had a legal right to request and receive the payment from BLMIS.  Initial Br. at 21-24.[11]

 Third, the Trustee has alleged that BLMIS was operated as a "Ponzi" scheme.  *See, e.g.,* Trustee Br. at 6 (stating that "the transferor operated a Ponzi scheme and the transferees receive[d] transfers through the Ponzi scheme").  That allegation, too, is consequential.  Because a Ponzi scheme is a peculiar type of fraud (Initial Br. at 30), the inevitable inference from an allegation that such a fraud occurred is that the investor was not aware of the fraud, because "no reasonable investor would invest in a known Ponzi scheme."  *United States v. Marino*, 654 F.3d 310, 322 (2d Cir. 2011).[12]

 Fourth, the Trustee and SIPC argue that "red flags" should have alerted investors to fraud.  However, courts in this Circuit and elsewhere have repeatedly rejected allegations that those same alleged red flags were sufficient to show actual knowledge or willful blindness to fraud.  *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 11-3311-cv, 2012 WL 2754933, at *3 (2d Cir. July 10, 2012) (holding that the existence of "red flags" is insufficient to establish scienter and describing "red flags" as an "archetypical example of impermissible allegations of

---

[11] *See also* 17 C.F.R. § 240.15c3-3(l) (recognizing the "absolute right of a customer of a broker or dealer to receive in the course of normal business" fully-paid securities "following demand made on the broker or dealer."); 17 C.F.R. § 240.15c3-2 (requiring brokers to notify their customers that customer funds are "payable upon demand of the customer.").

[12] As the BLMIS Customers pointed out, in his various cases, the Trustee has also alleged other relevant facts; such as that some withdrew money for reasons wholly unrelated to Madoff (for example, to satisfy redemptions requested by their own investors) and that others hired outside professionals specifically for the purpose of performing due diligence on BLMIS (even in the absence of an obligation to do so).  Initial Br. at 29-32.  The Trustee's allegations that each BLMIS Customer was the *victim* of Madoff's *fraud* likewise establish each's right to the return of at least its principal investment under theories of restitution and rescission.  *See, e.g., In re Lakes States Commodities, Inc.*, 253 B.R. 866, 871 (Bankr. N.D. Ill. 2000) ("Bankruptcy courts have generally allowed Ponzi scheme investors to retain payments up to the amount invested because investors have claims for restitution or rescission against the debtor that operated the scheme.").

fraud by hindsight"); *Stephenson v. Citco Group Ltd.*, 700 F. Supp. 2d 599, 623-24 (S.D.N.Y. 2010) (rejecting "red flags" such as the consistency of Madoff's "reported excellent results" or the fact that "Madoff was both broker and custodian of the accounts" as sufficient to give rise to scienter and finding additional public red flags not to be so obvious as to infer knowledge).[13]

Madoff's scheme was camouflaged and went undetected for years by regulators, auditors and numerous financial institutions.  *See In re Tremont Sec. Law, State Law & Ins. Litig.,* 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010) ("[T]he more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme . . . ") *SEC v. Cohmad Sec. Corp.,* No. 09 Civ. 5680 (LLS), 2010 WL 363844, at *2, 3-6 (S.D.N.Y. Feb. 2, 2010) (holding that the "complaint supports the reasonable inference that Madoff fooled the defendants as he did individual investors, financial institutions and regulators"); *Newman,* 748 F. Supp. 2d at 311 ("For twenty years, Madoff operated [his] fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions.").  Just because the Trustee can reverse-engineer that scheme in hindsight does not mean that the Transferee Defendants, no matter how sophisticated, could have done the same at the time of withdrawals or before Madoff's arrest.[14]

---

[13]  *See also Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 310 (S.D.N.Y. 2010) (red flags were not "so 'extremely obvious' that the [investment adviser] . . . should have recognized them and taken steps to investigate or disclose the risks"); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 71-72, 77 (S.D.N.Y. 2010) (rejecting red flags as "not so obvious" as to infer knowledge on behalf of BLMIS feeder fund and feeder fund's auditor).

[14]  The Trustee's argument based upon what Renaissance Technologies Corp. ("Renaissance") supposedly knew about BLMIS is irrelevant, as that argument sheds no light on the knowledge possessed by any of the BLMIS Customers.  Trustee Br. at 43 (citing Office of Investigations, Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme (the "SEC Report")).  The Trustee's argument also is contradicted by documents he cites, including the SEC Report, which itself evidences that Renaissance did not believe BLMIS was a fraud.  SEC Report, at p. 158.

Fifth, the gist of the Trustee's allegations is that customers who withdrew money either realized or should have realized that BLMIS was not trustworthy.  As explained above, however, those are perfectly good reasons why customers should have asked for their money back.  It is absurd to suggest (as both the Trustee and SIPC do) that a customer who suspects (or should suspect) fraud has a "good faith" obligation to do nothing about her exposure to that fraud.

In each of the foregoing ways, the Trustee's own allegations establish each customer's legal rights and its good faith reasons for acting.  The Trustee's argument that he nevertheless should be allowed to proceed with these lawsuits – and that he should be freed of any burden to allege any facts suggesting that "good faith" is subject to legitimate dispute – is contrary to the policy that SIPA was meant to further, which was to encourage customer protection and confidence in the markets.  Initial Br. at 16-19.  Neither the Trustee nor SIPC disputes that this Court has already recognized the necessity, in this unique context, for the Court to "[d]etermin[e] whether the different *allegations* in each of the Trustee's *complaints* plausibly suggest 'willful blindness.'"  *Avellino*, 469 B.R. at 412 (emphasis added).  Nor do they dispute that this approach – analyzing the plausibility of the plaintiff's allegations – is followed in other contexts where the defendant has the burden of proving a lack of "willful blindness," such as in civil forfeiture cases.  Initial Br. at 27.  The Trustee's and SIPC's failure to answer these arguments speaks for itself.

19

## CONCLUSION

The BLMIS Customers respectfully urge this Court to reject the Trustee's and SIPC's

interpretation of the "good faith" requirement, to dismiss the Trustee's claims to the extent

described above, and that the Court grant such other and further relief as may be proper.

Dated:   New York, New York
         September 14, 2012

**ANDERSON KILL & OLICK, P.C.**


By: __/s/ Todd E. Duffy_____
       Todd E. Duffy
       Dennis J. Nolan
       Beth D. Simon

1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 278-1000

*Attorneys for Alpha Prime Fund Ltd. and*
*Senator Fund S.p.A.*

**CLEARY GOTTLIEB STEEN &**
**HAMILTON LLP**

By:_/s/ Carmine D. Boccuzzi, Jr._____
            Carmine D. Boccuzzi, Jr.
         A Member of the Firm

One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2000

Paul R. St. Lawrence III
2000 Pennsylvania Ave NW
Washington, D.C. 20006
Tel: (202) 974-1789

*Attorneys for Thybo Asset Management*
*Limited and Thybo Stable Fund Ltd.*

**KIRKLAND & ELLIS LLP**


By: __/s/ Joseph Serino, Jr._____
       Jay P. Lefkowitz, P.C.
       Joseph Serino, Jr.
       David S. Flugman

601 Lexington Avenue
New York, New York 10022
Tel:    (212) 446-4800

*Attorneys for Herald Fund SPC*
*and Franco Mugnai*

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**

By:  /s/ Robert S. Loigman_____
       Susheel Kirpalani
       Robert S. Loigman

51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel:  (212) 849-7000

*Counsel to Joint Liquidators of Kingate Global*
*Fund Ltd. and Kingate Euro Fund Ltd.*

**DEBEVOISE & PLIMPTON LLP**

By: _/s/ Michael E. Wiles_
       Michael E. Wiles

919 Third Avenue
New York, New York 10022
Tel.: (212) 909-6000

*Counsel to Defendants Hermes International Fund Limited, Lagoon Investments Limited (for itself and as Trustee of the Lagoon Investment Trust), Thema Fund Limited, Thema Wise Investments Limited, and Thema International Fund plc*

Of Counsel:
FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

William P. Weintraub
Gregory W. Fox
7 Times Square
New York, New York 10036-6516

21