**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | 12 Misc. 00115 (JSR) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| MADOFF SECURITIES | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | 12 Civ. 06733 (JSR) |
| v. | Adv. Pro. No. 12-01778 (BRL) |
| ERIC T. SCHNEIDERMAN, as successor to ANDREW M. CUOMO, Attorney General of the State of New York; BART M. SCHWARTZ, as Receiver for ARIEL FUND, LTD. and GABRIEL CAPITAL, L.P.; DAVID PITOFSKY, as Receiver for ASCOT PARTNERS, L.P. and ASCOT FUND, LTD.; J. EZRA MERKIN; and GABRIEL CAPITAL CORPORATION, | |
| Defendants. | |

**MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN OPPOSITION TO DEFENDANTS' MOTION**
**TO WITHDRAW THE REFERENCE**

*(Counsel Listed Inside)*

SECURITIES INVESTOR PROTECTION CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone:  (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
NATHANAEL KELLEY
Staff Attorney

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

STATEMENT OF THE ISSUE ..................................................................................2

STATEMENT OF FACTS ......................................................................................2

SUMMARY OF THE ARGUMENT ..........................................................................3

ARGUMENT ......................................................................................................4

I.  STANDARDS FOR WITHDRAWAL OF THE REFERENCE ............................4

    A.  Standards Governing Mandatory Withdrawal .....................................4

    B.  Standards Governing Permissive Withdrawal .....................................6

II.  THE STAY APPLICATION TO ENJOIN INTERFERENCE WITH
THE ESTATE'S CLAIMS DOES NOT REQUIRE A PRE-
DETERMINATION  THAT THE MERKIN DEFENDANTS
HOLD PROPERTY OF THE ESTATE ........................................................6

III.  SIPA IS TO BE PROPERLY APPLIED BY THE
BANKRUPTCY COURTS ........................................................................8

    A.  Section 78eee(b)(4) and Removal to the Bankruptcy Court ...............9

    B.  Section 78fff(b) Supplies An Additional Basis for the Exercise
of Jurisdiction .................................................................................12

    C.  SIPA Vests The Trustee with the Same Powers and Title as a
Title 11 Trustee ..............................................................................14

IV.  TWO DOCRINES COMMONLY APPLIED BY BANKRUPTCY
COURTS DO NOT MANDATE WITHDRAWAL .........................................15

    A.  *Grupo Mexicano* Does Not Apply to a Bankruptcy Proceeding ......16

    B.  The *Barton* Doctrine Does Not Prevent a Trustee From Enjoining a
Receiver's Attempts to Interfere with a SIPA Estate .......................18

    C.  Withdrawal of Separate Issues for Common Briefing Does Not Mandate
Withdrawal of the Stay Application ..................................................20

V.      THE MOTION DOES NOT WARRANT PERMISSIVE WITHDRAWAL........21

CONCLUSION.................................................................................................................23

## TABLE OF AUTHORITIES

**CASES:**                                                                                                                **PAGE**

*Adelphia Communications Corp. v. Rigas,* 2003 WL 21297258,
    (S.D.N.Y. June 4, 2003).............................................................................................16

*Barton v. Barbour,* 104 U.S. 126 (1881) ............................................................................ 18-20

*In re Big Springs Realty LLC,* 426 B.R. 860 (Bankr. D. Mont.),
    *reconsideration den.,* 430 B.R. 629 (Bankr. D. Mont. 2010) ...........................................18

*In re BLMIS,* 654 F.3d 229 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012),
    and *cert.den.*, 2012 WL 396489 and 2012 WL 425188 (June 25, 2012)............................8

*In re Bernard L. Madoff Inv. Sec. LLC*, 2011 WL 7981599 (S.D.N.Y. Dec. 5, 2011)...................7

*In re Cont'l Air Lines, Inc.,* 60 B.R. 459 (Bankr. S.D. Tex. 1985) ..................................................5

*In re Cont'l Airlines,* 138 B.R. 442 (D. Del. 1992) ........................................................................5

*In re Dow Corning Corp.,* 255 B.R. 445 (E.D. Mich. 2000),
    *aff'd and remanded,* 280 F.3d 648 (6th Cir. 2002) ...........................................................18

*Exchange National Bank of Chicago v. Wyatt,*
    517 F.2d 453 (2d Cir. 1975)........................................................................9, 10, 11, 13

*Executive Securities Corp. v. Doe,* 702 F.2d 406 (2d Cir. 1983),
    *cert. den.*, 464 U.S. 818 (1983) ........................................................................................14

*In re Extended Stay,* 466 B.R. 188 (S.D.N.Y. 2011) ..................................................................22

*Fisher v. Apostolou,* 155 F.3d 876 (7th Cir. 1998) ......................................................................8

*In re Focus Media Inc.,* 387 F.3d 1077 (9th Cir. 2004),
    *cert. den. subnom., Rubin v. Pringle,* 544 U.S. 923 (2005)...............................................18

*Fox v. Picard (In re Madoff),* 848 F.Supp.2d 469 (S.D.N.Y. 2012)...........................................7-8

*In re Gaston & Snow,* 173 B.R. 302 (S.D.N.Y. 1994).................................................................5

*Gold v. Hyman*, [1974-75 Transfer Binder] Fed. Sec. L. Rep.
    (CCH) ¶95,043 (S.D.N.Y. 1975) ..................................................................................14

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999)........ 15-18

**TABLE OF AUTHORITIES**
(cont.)

**CASES:**                                                                                      **PAGE**

*In re Ionosphere Clubs, Inc.,* 922 F.2d 984 (2d Cir. 1990),
    *cert. den. sub nom.,* Air Line Pilots' Ass'n Intern.,
    *AFL-CIO v. Shugure,* 502 U.S. 806 (1991) .......................................................5

*In re Johns-Manville Corp.,* 63 B.R. 600 (S.D.N.Y.  1986) .......................................4, 5

*Kagan v. St. Vincent's Catholic Med. Ctrs. of N.Y. (In re Saint Vincent's*
    *Catholic Ctrs. of N.Y.),* 449 B.R. 209 (S.D.N.Y. 2011)................................8

*Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.),*
    136 B.R. 59 (S.D.N.Y. 1992)......................................................................22

*In re Lloyd Secs., Inc.,* 75 F.3d 853 (3d Cir. 1996) ......................................................13

*Midlantic Nat'l. Bank v. N.J. Dep't. of Envtl. Prot.,* 474 U.S. 494 (1986)....................21

*Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.),* 270 B.R. 562 (S.D.N.Y. 2001) ....6, 21

*In re Nat. Century Fin. Enterprises, Inc.,* 423 F.3d 567 (6th Cir. 2005).......................21

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Camp*
    *(In re Government Securities Corp.*), 972 F.2d 328 (11th Cir. 1992),
    *cert den.* 507 U.S. 952 (1993)...................................................................13

*New York v. Exxon Corp.,* 932 F.2d 1020 (2d Cir. 1991)................................................5

*O'Connell v. Terranova (In re Adelphi Institute, Inc.),* 112 B.R. 534 (S.D.N.Y. 1990) ................5

*In re Orion Pictures Corp.,* 4 F.3d 1095 (2d Cir. 1993),
    *cert. dismissed*, 511 U. S. 1026 (1994)..............................................6, 21, 22

*In re Owens Corning,* 419 F.3d 195 (3d Cir. 2005), *cert. den.*, 547 U.S. 1123 (2006)........... 17-18

*PFS Investments, Inc. v. Imhoff,* 2012 WL 254125 (E.D. Mich. Jan. 27, 2012) ..........................20

*Picard v. Maxam Absolute Return Fund, L.P.,* 474 B.R. 76 (S.D.N.Y. 2012) ...............................7

*Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC),*
    440 B.R. 243 (Bankr. S.D.N.Y. 2010).......................................................7, 16

*Redington v. Touche Ross & Co.,* 612 F.2d 68 (2d Cir. 1979) ........................................9

*SEC v. Albert & Maguire Sec. Co.,* 378 F. Supp. 906 (E.D. Pa. 1974)...............8, 13

iv

## TABLE OF AUTHORITIES
### (cont.)

**CASES:**                                                                          **PAGE**

*SEC v. Albert & Maguire Sec. Co.*, 560 F.2d 569 (3d Cir. 1977)...................................................14

*SEC v. American Bd. of Trade, Inc.*, 830 F.2d 431 (2d Cir. 1987),
    *cert. den. sub nom., Economou v. SEC*, 485 U.S. 938 (1985) .................................... 10-11

*Secs. Investor Protection Corp. v. Ambassador Church Finance/Development
    Group, Inc.,* 788 F.2d 1208 (6th Cir. 1986), *cert. den. sub nom.,*
    Pine Street Baptist Church v. Secs. Investor Protection Corp.,*
    479 U.S. 850 (1986)........................................................................................................13

*Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC,* 429 B.R. 423
    (Bankr. S.D.N.Y. 2010) .................................................................................................8

*Shugrue v. PBGC (In re Ionosphere Clubs, Inc.)*, 142 B.R. 645 (S.D.N.Y. 1992) ................11, 22

*SIPC v. Christian-Paine & Co.*, 755 F.2d 359 (3d Cir. 1985)........................................................14

*Stern v. Marshall*, 131 S. Ct. 2594 (2011) ....................................................................................6

*The Billing Resource v. FTC (In re The Billing Resource),* 2007 WL 3254835
    (N.D. Cal. Nov. 2, 2007)...........................................................................................19, 20

*The Singer Co. v. Groz-Beckert KG (In re The Singer Co.),* 2002 WL 999273
    (S.D.N.Y. February 20, 2002)..........................................................................................21

*In re VistaCare Group, LLC*, 678 F.3d 218 (3d Cir. 2012) .................................................. 18-19


**STATUTES AND RULES:**

Securities Investor Protection Act (1970), 15 U.S.C. §

78eee(b)(2)...............................................................................................................................9
78fff(c)(1) ................................................................................................................................9
78fff(c)(2) ..............................................................................................................................10

## TABLE OF AUTHORITIES
### (cont.)

**STATUTES AND RULES:**                                                                **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78eee(a)(3) ...........................................................................................................................3
78eee(b)(2)(A) ......................................................................................................................3
78eee(b)(2)(B) ......................................................................................................................1
78eee(b)(4) ................................................................................................................9, 11, 12
78fff(a) .................................................................................................................................13
78fff(a)(4) ............................................................................................................................14
78fff(b) .........................................................................................................................9, 12, 13
78fff-1(a) .......................................................................................................................9, 14
78fff-2(a)(3) .........................................................................................................................14
78fff-2(c)(1) .........................................................................................................................12
78fff-2(c)(3) ...........................................................................................................................7
78fff-3(a) .............................................................................................................................12
78*lll*(2) ...............................................................................................................................12
78*lll*(4) ...............................................................................................................................12

United States Bankruptcy Code, 11 U.S.C. §

105 .......................................................................................................................................16
105(a) .......................................................................................................................3, 8, 13, 18
362(a) ...............................................................................................................1, 3, 13, 14, 21
542 .........................................................................................................................................7
1123(b)(6) ...........................................................................................................................18

28 U.S.C. §

157(b) ...................................................................................................................................4
157(b)(1) .......................................................................................................................12, 13
157(b)(2)(A) ...................................................................................................................13, 21
157(b)(2)(G) ...................................................................................................................13, 21
157(b)(2)(O) ...................................................................................................................13, 21
157(d) .............................................................................................................................2, 4-6
1471(c) .................................................................................................................................11


**OTHER STATUTORY PROVISIONS**:

Pub. L. No. 95-283, 92 Stat. 249 (1978) ........................................................................9, 11

Pub. L. No. 95-598, 92 Stat. 2549 (1978) .......................................................................9, 11

## TABLE OF AUTHORITIES
### (cont.)

**LEGISLATIVE MATERIALS:**                                                                              **PAGE**

H. R. Rep. No. 95-746 (1977) ........................................................................................................11

S. Rep. No. 91-1218 (1970) ...........................................................................................................9

S. Rep. No. 95-763 (1978) .............................................................................................................11

S. Rep. No. 95-989 (1978) .............................................................................................................11

*Hearings on H.R. 8331 Before the Subcomm. on Consumer Protection and
     Finance of the H. Comm. on Interstate and Foreign Commerce*, 95th Cong., (1977) ..........9


**PUBLICATIONS AND TREATISES:**

Anthony Michael Sabino, *The Role of Bankruptcy Courts in
     Stockbrokerage Liquidations*, 16 Sec. Reg. L. J. 227 (Fall 1988) ......................................10

*9 Collier on Bankruptcy* ¶ 5011.01[1][b][ii] ...................................................................................5

The Securities Investor Protection Corporation ("SIPC") submits this memorandum of law in opposition to the joint motion (the "Motion") of defendants Eric T. Schneiderman, as successor to Andrew M. Cuomo, Attorney General of the State of New York (the "NYAG"); Bart M. Schwartz, as Receiver for Ariel Fund, Ltd. and the Gabriel Capital, L.P. (the "Ariel & Gabriel Receiver"); David Pitofsky, as Receiver for Ascot Partners, L.P. and Ascot Fund, Ltd. (the "Ascot Receiver"); and J. Ezra Merkin and Gabriel Capital Corporation (the "Merkin Defendants," and, collectively, the "Movants"), to withdraw the reference of the above-captioned adversary proceeding from the United States Bankruptcy Court for this District ("Bankruptcy Court"). In this proceeding (the "Stay Application"), the trustee (the "Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under the Securities Investor Protection Act, 15 U.S.C. §78aaa *et seq*. ("SIPA"),  and Bernard L. Madoff ("Madoff"), seeks to enjoin the Movants from consummating a settlement agreement in violation of the stay orders issued by this Court (the "Stay Orders") as well as the automatic stay imposed by the Bankruptcy Code, 11 U.S.C. § 362(a), and SIPA. [1]

---

[1] Under SIPA, the filing of a protective decree "*shall* stay . . . any other suit against any . . . trustee of the debtor or its property." SIPA § 78eee(b)(2)(B). Similarly, under Bankruptcy Code section 362(a), the filing of the application under SIPA "operates as a stay, applicable to all entities of . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ." In the Protective Order placing BLMIS into liquidation, the District Court reaffirmed the stays that applied to this case, including "any act to obtain possession of property of the estate or property from the estate." *See SEC v. Bernard L. Madoff*, 08-CV-10791 (LLS), ECF No. 4, at 2 (the "Protective Order"); *see also* Order on Consent Imposing Preliminary Injunction Freezing Assets and Granting Other Relief Against Defendants, Dec. 18, 2008, ECF No. 8 at ¶ IX ("no creditor or claimant against [BLMIS], or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the control, possession or management of the assets subject to the receivership"); Partial Judgment on Consent Imposing Permanent Injunction and Continuing Other Relief, Feb.

## STATEMENT OF THE ISSUE

The Motion presents the following issue:

> Whether under 28 U.S.C. section 157(d), withdrawal of the reference of an adversary proceeding arising in a liquidation proceeding under SIPA is warranted and/or appropriate where the Trustee's requests for injunctive relief present only "core" claims that arise directly under Title 11, and as such, withdrawal of the reference of the proceeding would interfere with the Bankruptcy Court's consideration of matters that Congress has deemed to be within the basic competence of that court, and the SIPA overlay to the Stay Application does nothing to change this basic fact, much less require substantial and material consideration of SIPA.

SIPC respectfully submits that under the facts presented, withdrawal of the reference to the Bankruptcy Court is neither warranted nor appropriate.

## STATEMENT OF FACTS

The Trustee's Stay Application, the underlying adversary proceeding against the Merkin Defendants, and the NYAG's and Receivers' separate actions, all flow from Madoff's infamous Ponzi scheme which defrauded thousands of investors. On May 6, 2009, as part of his on-going efforts to recover property for the benefit of BLMIS customers, the Trustee commenced an adversary proceeding (the "Merkin Action") against the Merkin Defendants; Gabriel Capital, L.P.; Ariel Fund Ltd.; and Ascot Partners, L.P., seeking to avoid and recover more than $500 million in fraudulent transfers and preferences made by Madoff and BLMIS to the Merkin Defendants. The Trustee seeks the recovery of BLMIS customer property under SIPA, the Bankruptcy Code, and applicable provisions of New York state law.

In April 2009, the NYAG commenced a separate action in state court ("NYAG Action") against the Merkin Defendants based upon the Merkin Defendants' fraudulent conduct, including

9, 2009, ECF No. 18 at ¶ IV (incorporating and making the December 18, 2008 stay order permanent).

the fact that Merkin knew or should have known that Madoff ran a Ponzi scheme and that Merkin failed to conduct due diligence before investing in BLMIS.  The NYAG seeks restitution and compensatory damages, attorneys' fees, and other expenses.  On September 16, 2010, the Ariel & Gabriel Receiver also brought an action in New York State Court ("Receiver Action") against the Merkin Defendants, bringing many of the same allegations.  On June 25, 2012, the NYAG, on behalf of himself and the Receivers, announced a $410 million settlement with the Merkin Defendants (the "Settlement Agreement").  While the Ascot Receiver never commenced a formal lawsuit against the Merkin Defendant, he is participating in the Settlement Agreement. Thus, the Settlement Agreement resolves the NYAG Action, and Receiver Action, and any potential claims by the Ascot Receiver.

On August 1, 2012, the Trustee filed a complaint (the "Complaint") and an application to preliminarily enjoin the consummation of the Settlement Agreement (the "Injunction Motion"). As explained in greater detail in the Stay Application, the NYAG Action and Receiver Action seek, on behalf of select investors, the same funds that the Trustee seeks to recover in the Merkin Action on behalf of the BLMIS estate and customers —funds fraudulently transferred by BLMIS to the Merkin Defendants and the funds controlled by Merkin.  Accordingly, the Trustee sought to enjoin the Movants' Settlement Agreement pursuant to Stay Orders issued by this Court, as well as sections 362(a) and 105a of the Bankruptcy Code and SIPA §§ 78eee(a)(3) and 78eee(b)(2)(A) and (B).  On August 31, 2012, the Movants filed the present Motion to withdraw the reference for the Complaint and the Injunction Motion.

## SUMMARY OF THE ARGUMENT

The instant Motion is an unwarranted attempt to remove to this Court matters within the Bankruptcy Court's "core" jurisdiction and competence.  The Stay Application seeks injunctive

relief under the Bankruptcy Code, the Stay Orders, and SIPA, and all of the Trustee's claims constitute "core" matters within the meaning of Section 157(b) of Title 28.  As discussed below, resolution of this adversary proceeding requires the Bankruptcy Court to consider matters squarely within its jurisdiction and expertise.  The Trustee's Stay Application does not require substantial interpretations of SIPA or any non-bankruptcy federal laws which affect interstate commerce.

Through their actions against the Merkin Defendants, the NYAG and the Receivers have attempted an end-run around this Court's Protective Order, the Trustee, SIPA, and the Bankruptcy Code, attempting to benefit a select group of investors, to the detriment of thousands of victims of Madoff's fraud.  The Movants' arguments do not mandate withdrawal, nor should this Court permissively withdraw this Motion from the forum Congress designated for its determination.  The Motion does not provide a basis for bypassing the lower court in favor of an immediate removal to this District Court.

## ARGUMENT

### I.  STANDARDS FOR WITHDRAWAL OF THE REFERENCE

#### A.  Standards Governing Mandatory Withdrawal

28 U.S.C. section 157(d) governs withdrawal of the reference to the bankruptcy court, and provides for both mandatory and discretionary withdrawal.  A district court must withdraw a reference where "[t]he court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  *Id.*  The purpose of this provision is to reserve to the federal district courts those issues that Congress "intended to have decided by a district judge rather than a bankruptcy judge."  *In re Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y. 1986).

Because the language of section 157(d)'s mandatory withdrawal provision, if read literally, would eliminate much of the work of the bankruptcy courts, the district courts are cautioned to construe this sentence "narrowly." *O'Connell v. Terranova (In re Adelphi Institute, Inc.)*, 112 B.R. 534, 536 (S.D.N.Y. 1990) ("*Adelphi*").  In keeping with this narrow construction, section 157(d) "does not include federal common law within the phrase 'laws of the United States,' i.e. 'federal laws.'" *In re Cont'l Airlines*, 138 B.R. 442, 446 (D. Del. 1992); *see also In re Cont'l Air Lines, Inc.*, 60 B.R. 459, 465 (Bankr. S.D. Tex. 1985) ("The Court here interprets the phrase 'federal laws' to mean 'federal statutes'."); 9 *Collier on Bankruptcy* ¶ 5011.01[1][b][ii] (Alan N. Resnick & Henry J Sommer, eds., 16th ed.).

Furthermore, section 157(d) does not mandate withdrawal unless the district court makes an affirmative determination that resolution of the matter in question will require "substantial and material consideration" of non-Title 11 federal statutes. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990), *cert. den. sub nom.*, *Air Line Pilots' Ass'n Intern. AFL-CIO v. Shugrue*, 502 U.S. 808 (1991); *Adelphi*, 112 B.R. at 536; *In re Gaston & Snow*, 173 B.R. 302, 306 (S.D.N.Y. 1994) ("[M]andatory withdrawal is required only when a bankruptcy court would have to engage in 'significant interpretation' of federal non-bankruptcy statutes.") (*citing New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)).  This standard is stringent and is designed to ensure that the mandatory withdrawal provisions of section 157(d) do not become "an escape hatch for matters properly before [the bankruptcy] court." *Adelphi*, 112 B.R. at 536 (*quoting In re Johns-Manville Corp.*, 63 B.R. at 603).  As explained further below, based on this standard, mandatory withdrawal is not warranted here.

**B.  Standards Governing Permissive Withdrawal**

Section 157(d) also permits a district court to withdraw the reference, *inter alia*, "[o]n timely motion of any party, for cause shown."  Courts in this jurisdiction consider a number of factors in determining whether "cause" for a discretionary withdrawal of the reference exists: "(1) whether the claim or proceeding is core or non-core; (2) whether it is legal or equitable; (3) considerations of efficiency; (4) the prevention of forum shopping; and (5) uniformity in the administration of bankruptcy law."  *Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*, 270 B.R. 562, 565 (S.D.N.Y. 2001).  The Second Circuit, however, has emphasized that the threshold question is whether a claim is core or non-core.  *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1100–02 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026 (1994) ("*Orion Pictures Corp.*").[2] In fact, determination of this question has a profound impact on the relevance of many of the factors often considered in connection with a motion for discretionary withdrawal, including, for example, whether judicial efficiency is best served by withdrawal of the reference.  *See, e.g.*, *Orion Pictures Corp.*, 4 F.3d at 1101 (explaining that "questions of efficiency and uniformity will turn" on whether a claim is core or non-core).  As explained further below, because the Stay Application raises core claims affecting the administration of the estate, as well as for other reasons, permissive withdrawal is not warranted here.

## II. THE STAY APPLICATION TO ENJOIN INTERFERENCE WITH THE ESTATE'S CLAIMS DOES NOT REQUIRE A PRE-DETERMINATION THAT THE MERKIN DEFENDANTS HOLD PROPERTY OF THE ESTATE

The Movants' arguments contain a recurring theme: because the Bankruptcy Court has determined that assets held by the Merkin Defendants are not property of the estate, the Trustee

---

[2] While the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), has caused a shift in the analysis of core and non-core matters, it remains an important element in deciding whether a matter should be withdrawn.

must rely upon novel theories under SIPA or non-Code federal law in order to freeze such assets pre-judgment.  (Def. Br. at 1, 7, 12, and 16).  In so arguing, the Movants rely extensively upon the Bankruptcy Court's decision in *Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010).  In *Merkin*, the Bankruptcy Court determined that in order for the Trustee to effect a turnover of property pursuant to Bankruptcy Code Section 542, the Trustee must prove the debtor's ownership of property before recovering said property.  *Id.* at 271–73.  In other words, the Bankruptcy Court held that the Trustee could not use SIPA Section 78fff-2(c)(3), which creates a legal fiction that property sought in an avoidance action under SIPA is deemed property of the estate, in order to expedite the turnover of property under Section 542.  *Id.*

While the *Merkin* decision reaffirmed that, regardless of SIPA, the turnover of property under Section 542 must meet the Bankruptcy Code's requirements, it is a far cry from barring the freezing of such assets from third-party interference pending an avoidance action.  Indeed, pursuant to the Stay Orders, including this Court's Protective Oder, and the Bankruptcy Code's automatic stay, and without relying upon non-Code federal statutes, three different judges in this Court have already enjoined third party actions seeking fraudulently conveyed assets also sought by the Trustee.  See *In re Bernard L. Madoff Inv. Sec. LLC*, 2011 WL 7981599 (S.D.N.Y. Dec. 5, 2011) (Hellerstein, J.); *Fox v. Picard (In re Madoff)*, 848 F.Supp.2d 469 (S.D.N.Y. 2012) (Koeltl, J.); *Picard v. Maxam Absolute Return Fund, L.P.*, 474 B.R. 76 (S.D.N.Y. 2012) (Oetken, J.).

In *Fox*, for example, Judge Koeltl held that "Under Section 105, bankruptcy courts may extend the automatic stay to enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts."  *Fox*, 848 F. Supp. 2d at 486 (quoting

*Kagan v. St. Vincent's Catholic Med. Ctrs. of N.Y. (In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*, 449 B.R. 209, 217 (S.D.N.Y. 2011)).   Judge Koeltl thus approved the Bankruptcy Court's reasoning that the third-party actions "threatened to hamper the Trustee's ability to collect on any judgment he might obtain in the pending New York Action against the [third-party] defendants, because '[b]oth the Trustee and [third-party plaintiffs] target the same limited pool of funds originating with BLMIS.'"   *Id.* (quoting *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 429 B.R. 423, 435 (Bankr. S.D.N.Y. 2010)).   Judge Koeltl concluded,

> [The Bankruptcy Court's] broader powers under § 105(a) could appropriately enjoin the [third-party plaintiffs] from prosecuting the [third-party actions] *even if the claims asserted in those actions were not the property of the estate*, because "the overlap between the claims" asserted in the New York Action and the [third-party actions] is "so closely related that allowing the [third-party plaintiffs] to convert the bankruptcy proceeding into a race to the courthouse would derail the bankruptcy proceedings."

*Id.* at 487 (emphasis added) (quoting *Fisher v. Apostolou*, 155 F.3d 876, 883 (7th Cir. 1998)). The same reasoning applies with equal force here.

### III. <u>SIPA IS TO BE PROPERLY APPLIED BY THE BANKRUPTCY COURTS</u>

Even if the Stay Application did require a complex application of SIPA—which it does not—SIPC disagrees with Movants that SIPA is not a bankruptcy statute which can be applied by the Bankruptcy Court, particularly in the context of an automatic stay.   SIPA is, in fact, a hybrid statute, being both a securities and a bankruptcy law.   *See In re BLMIS*, 654 F.3d 229, 242 n.10 (2d Cir. 2011) ("A SIPA liquidation is a hybrid proceeding."), *cert. dismissed*, 132 S. Ct. 2712 (2012), *and cert.den.*, 2012 WL 396489 *and* 2012 WL 425188 (June 25, 2012).   SIPA is supported "by both the bankruptcy provision in the United States Constitution and also by the commerce clause."   *SEC v. Albert & Maguire Sec. Co.,* 378 F. Supp. 906, 911 (E.D. Pa. 1974). More to the point, the matters in the Stay Application are typically considered by bankruptcy courts, and accordingly, no basis exists for withdrawal.   That this adversary proceeding arises in

the context of a SIPA liquidation does not alter that fact.  As discussed below, at least three sections of SIPA—78eee(b)(4), 78fff(b), and 78fff-1(a)—make it clear that SIPA does not affect a bankruptcy court's power to enforce the automatic stay and issue an injunction.

### A.  Section 78eee(b)(4) and Removal to the Bankruptcy Court

Section 78eee(b)(4) is headed "Removal to Bankruptcy Court" and specifies that upon the issuance of the customer protective decree and appointment of a trustee, the district court "shall forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under title 11."  The relevant case law under, and history of, SIPA illustrate that Congress intended SIPA proceedings to be considered by the bankruptcy courts.  Here, Judge Stanton signed the Protective Order which removed the case to the Bankruptcy Court.  *See* Protective Order, *supra* n.1, at 6.

Although the original version of SIPA did not expressly include a removal or referral provision, the Second Circuit concluded in *Exchange National Bank of Chicago v. Wyatt*, 517 F.2d 453 (2d Cir. 1975) ("*Wyatt*"), that referral of the proceedings to the bankruptcy courts carried out the purposes of SIPA.  In doing so, the court examined:  1) section 5(b)(2) of SIPA, 15 U.S.C. §78eee(b)(2) (1970), giving to the district courts exclusive jurisdiction over the debtor and its property and the powers of a bankruptcy court and of a court in a proceeding under chapter X of the Bankruptcy Act;[3]  2) section 6(c)(1), 15 U.S.C. §78fff(c)(1) (1970), providing

---

[3]  In 1970, while specifying that a debtor under SIPA would not be reorganized, SIPA incorporated provisions of the Bankruptcy Act applicable to reorganization proceedings.  *See* S. Rep. No. 91-1218, at 13 (1970); *Redington v. Touche Ross & Co.*, 612 F.2d 68, 71–72 (2d Cir. 1979).  In 1978, Congress deleted the reference to the reorganization provisions and expressly made the liquidation provisions applicable.  Pub. L. No. 95-283, 92 Stat. 249, 259 (1978), and Pub. L. No. 95-598, 92 Stat. 2549, 2675 (1978).  *See Hearings on H.R. 8331 Before the Subcomm. on Consumer Protection and Finance of the H. Comm. on Interstate and Foreign Commerce*, 95th Cong., 175–76 (1977).

that the SIPA proceeding would be conducted "in accordance with, and as though it were being

conducted under," specified provisions of the Bankruptcy Act; and  3) section 6(c)(2), 15 U.S.C.

§78fff(c)(2) (1970), setting forth provisions that were unique to a SIPA liquidation.  The Second

Circuit observed that since section 22 of the Bankruptcy Act, providing for a general reference of

cases to referees in bankruptcy, was contained in a chapter of the Bankruptcy Act that applied to

a SIPA proceeding, reference of the SIPA proceeding would be proper.  517 F.2d at 456.  The

power of the district court to refer SIPA proceedings to referees in bankruptcy was not only

"consistent with the purposes of SIPA but essential."  *Id.* at 457.  Thus, there was no difference

in the processing of customer claims, at issue in that case, as performed in a SIPA liquidation

and as performed in an ordinary bankruptcy liquidation.   Indeed, the conduct of such

proceedings, for practical reasons, was best left to the bankruptcy courts.  As the Second Circuit

observed:

> The process for the determination of ["customer"] claims [in a SIPA
> proceeding] did not differ in any significant respect from what would have
> been required in a large stockbroker bankruptcy before enactment of SIPA;
> the difference lies in the supersession of §60, sub. e of the Bankruptcy Act by
> the somewhat altered Special Provisions of §6(c)(2) of SIPA and the
> entitlement of "customers" as therein defined to benefit from the SIPC Fund.
> *This is the kind of business for which bankruptcy judges have developed
> special expertness and administrative skills and which Congress did not
> intend to dump on already overburdened district courts without needed
> clerical and other facilities.*

*Id.* at 457–58 (emphasis added).[4]

---

[4] That the bankruptcy court is best-equipped to handle the liquidation of financially failing
securities broker-dealers finds support in *SEC v. American Bd. of Trade, Inc.*, 830 F.2d 431,
436–438 (2d Cir. 1987), *cert. den. sub nom.*, *Economou v. SEC*, 485 U.S. 938 (1985); *see also*
Anthony Michael Sabino, *The Role of Bankruptcy Courts in Stockbrokerage Liquidations*, 16
Sec. Reg. L. J. 227 (Fall 1988).  In *American Board of Trade*, the Second Circuit expressed
misgivings over the use of a district court equity receivership to effect the liquidation of
insolvent entities, stating that the district court had undertaken to oversee routine bankruptcy
matters, "without the aid of either the experience of a bankruptcy judge or the guidance of the

Congress's intent that SIPA matters be heard by bankruptcy courts was made clear twice in 1978, first when it amended SIPA to include section 78eee(b)(4), and second when, several months later, it revised that section to its current form.  The provision initially authorized the district court "at any stage of the [SIPA] proceeding, [to] refer the proceeding to a referee in bankruptcy to hear and determine any or all matters, or to a referee in bankruptcy as special master to hear and report generally or upon specified matters."  Pub. L. No. 95-283, 92 Stat. 249, 257 (1978).  In adding the section, Congress explained that "[a]uthority for the existing practice of referring all or part of a liquidation proceeding to a referee in bankruptcy, thereby in many cases expediting liquidation proceedings, is clarified.  See, e.g., [*Wyatt*]."  S. Rep. No. 95-763, at 10 (1978); *see also* H.R. Rep. No. 95-746, at 27 (1977).

Subsequently, section 308 of Title III of the Bankruptcy Reform Act of 1978 made certain amendments to SIPA to conform it to the Bankruptcy Code.  *See* S. Rep. No. 95-989, at 19 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5805.  Section 78eee(b)(4) was amended to its present form, providing for removal to the "court of the United States in the same judicial district having jurisdiction over cases under title 11."  Pub. L. No. 95-598, 92 Stat. 2549, 2674 (1978).  The intended court was the bankruptcy courts because under 28 U.S.C. §1471(c), Pub. L. No. 95-598, 92 Stat. 2549, 2668 (1978), the bankruptcy courts would exercise all of the jurisdiction of the district courts including jurisdiction over Title 11 cases.[5]

---

bankruptcy code."  830 F.2d at 438.  The Second Circuit admonished that in the future, such receiverships were not to be continued "beyond the point necessary to get the estate into the proper forum for liquidation – the bankruptcy court."  *Id.* at 437.

[5] Ultimately, section 1471(c) did not become effective pursuant to section 402(b) of Pub. L. No. 95-598, as amended.  It is noteworthy that the broader powers conferred upon the bankruptcy courts nevertheless remained unchanged in SIPA section 78eee(b)(4).  Whether the jurisdiction and powers of a bankruptcy court in a SIPA case are broader than in ordinary bankruptcy is not

Although SIPA was thereby brought in line with the broader jurisdiction and powers which the 1978 Bankruptcy Reform Act conferred upon bankruptcy courts, Congress already independently had demonstrated its intent that SIPA liquidation proceedings be considered by the bankruptcy courts.  Thus, in section 78eee(b)(4), as originally enacted, Congress expressly provided for referral of all or part of the proceedings to bankruptcy referees to make clear its intent, because such referrals would "expedite" the liquidations.  When considered with SIPA section 78fff(b) making Title 11 provisions applicable to a SIPA proceeding, the intent of current section 78eee(b)(4) is plain that except for the special protection afforded customers,[6] SIPA liquidation proceedings are to be administered no differently than ordinary Title 11 bankruptcies.

### B.  Section 78fff(b) Supplies An Additional Basis for the Exercise Of Jurisdiction

Under 28 U.S.C. section 157(b)(1), the bankruptcy court exercises the district court's jurisdiction with respect to all cases under Title 11 and all "core" proceedings arising under Title 11, or arising in a case under Title 11, referred by the district courts.  In the context of 28 U.S.C. §157(b)(1), SIPA section 78fff(b) supplies an additional basis for the exercise of jurisdiction by the bankruptcy courts.

There are two operative requirements in the first sentence of section 78fff(b).  To the extent consistent with SIPA, the SIPA liquidation proceeding is to be conducted 1) "in accordance with" and 2) "as though it were being conducted under chapters 1, 3, and 5 and

---

at issue, as the bankruptcy court under the facts of the case at hand would exercise no broader jurisdiction and powers than it would in ordinary bankruptcy.

[6] In a SIPA proceeding, "customers" share on a priority basis and *pro rata* in "customer property," that is, property received, acquired or held for them by the broker.  To the extent such property is insufficient to satisfy a customer claim, the customer is eligible to have his claim satisfied through an advance of funds by SIPC—up to $500,000 of which up to $100,000 (raised to $250,000 in 2010) may be used to satisfy the portion of a claim that is for cash only.  If the customer's claim is still unsatisfied, the customer shares in any general estate, *pro rata*, with unsecured general creditors.  *See* SIPA §§78*lll*(2) and (4); 78fff-2(c)(1); and 78fff-3(a).

subchapters I and II of chapter 7 of title 11." The provisions of Title 11 referred to in section 78fff(b) are the bankruptcy liquidation provisions of the Code, except for the stockbroker and commodity broker provisions. In order for the SIPA liquidation to be conducted "in accordance with" Title 11, the bankruptcy provisions, including sections 105(a) and 362(a), relied upon here, must be held to apply in a SIPA liquidation. *Cf.*, *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Camp (In re Government Securities Corp.*), 972 F.2d 328, 330–331 (11th Cir. 1992.), *cert den.* 507 U.S. 952 (1993). Furthermore, because the SIPA liquidation must be conducted "as though it were being conducted" under the straight bankruptcy provisions of Title 11, the procedures that apply to Title 11 actions also must be deemed to apply to actions in SIPA liquidations.

In the context of an ordinary bankruptcy case, the Stay Application raises "core" matters under 28 U.S.C. section 157(b)(2)(A), (G), and (O), and 105(a), which automatically would be referred to the Bankruptcy Court under an Order filed by this Court on February 1, 2012, and would be heard and considered by the Bankruptcy Court under 28 U.S.C. §157(b)(1). If the second requirement of section 78fff(b) is to be implemented, there can be no different outcome here merely because the adversary proceedings are brought within a SIPA liquidation. Indeed, a SIPA liquidation is simply an outright bankruptcy proceeding for all practical purposes, as has been consistently recognized. *See* SIPA §78fff(a); *see also Wyatt*, 517 F.2d at 457–459; *In re Lloyd Secs., Inc.*, 75 F.3d 853, 857 (3d Cir. 1996); *Secs. Investor Protection Corp. v. Ambassador Church Finance/Development Group, Inc.*, 788 F.2d 1208, 1210 (6th Cir. 1986), *cert. den. sub nom.*, *Pine Street Baptist Church v. Secs. Investor Protection Corp.*, 479 U.S. 850 (1986); *SEC v. Albert & Maguire Sec. Co.*, 378 F. Supp. 906, 909, 911 (E.D. Pa. 1974) (recognizing that SIPA's predecessor was section 60e of the Bankruptcy Act). An adversary

proceeding involving "core" matters brought in the context of a SIPA liquidation therefore should be adjudicated no differently than the same proceeding in a bankruptcy case.

Relatedly, and of particular importance to the Stay Application, Section 362(a) of the Bankruptcy Code specifically applies to SIPA liquidations by its own terms. 28 U.S.C. § 362(a) ("an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, . . ."). Thus, not only is this SIPA liquidation conducted as if it were under Title 11, but Section 362(a) applies to the Movants regardless of SIPA's incorporation of provisions of the Bankruptcy Code.

### C. **SIPA Vests the Trustee with the Same Powers and Title as a Title 11 Trustee**

SIPA section 78fff-1(a) specifies that the SIPA Trustee is "vested with the same powers and title with respect to the debtor and the property of the debtor . . . as a trustee in a case under title 11." A liquidation under SIPA contemplates satisfaction of certain customer claims, the liquidation of the debtor's business, and the satisfaction of claims filed by general creditors. *See* §§78fff(a)(4), 78fff-2(a)(3). To accomplish those ends, the SIPA trustee has the same powers as a chapter 7 bankruptcy trustee, and additional powers that enable him to perform the special functions of a SIPA liquidation. *See* SIPA §78fff-1(a); *see also Executive Securities Corp. v. Doe,* 702 F.2d 406, 407 (2d Cir. 1983), *cert. den.*, 464 U.S. 818 (1983); *SIPC v. Christian-Paine & Co.*, 755 F.2d 359, 361 (3d Cir. 1985); *SEC v. Albert & Maguire Sec. Co.*, 560 F.2d 569, 574 (3d Cir. 1977); *Gold v. Hyman*, [1974–75 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,043 at 97,657–58 (S.D.N.Y. 1975). The SIPA trustee thus has the same duty and power to protect the assets and claims of the estate for the benefit of all creditors.

## IV. TWO DOCTRINES COMMONLY APPLIED BY
## BANKRUPTCY COURTS DO NOT MANDATE WITHDRAWAL

Beyond general invocations of SIPA as a basis for removal, the Movants cite to two doctrines—neither applicable to the present case and both routinely considered by bankruptcy courts—as bases for mandatory withdrawal. First, the Movants argue that the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), which limits the ability of a creditor to obtain a pre-judgment freeze of a debtor's assets, prevents the Trustee from enjoining the Settlement Agreement. (Def. Br. at 11–14.) Second, the Movants assert that the *Barton* Doctrine prevents the Bankruptcy Court from exercising jurisdiction over the Receivers absent the permission of the courts who appointed them. (Def. Br. at 18.) The Movants appear to believe that these considerations should defeat the Stay Application outright, and, at the very least, require the district court to determine their applicability to the Trustee's Stay Application, particularly in light of SIPA. As explained above, Congress has properly referred issues regarding SIPA liquidations to the Bankruptcy Court, and the Bankruptcy Court remains well-equipped to consider any SIPA-related issues raised by the Stay Application. To require withdrawal anytime a SIPA liquidation required an interpretation of SIPA would render meaningless Congress's referral of SIPA liquidations to the bankruptcy courts in the first place, making the "escape hatch" the Second Circuit warned against easily accessible to all.

Regardless, the Movants' purported bases for mandatory withdrawal, *Grupo Mexicano* and the *Barton* Doctrine, present issues routinely analyzed and applied by bankruptcy courts—and deemed inapplicable to the present context—and thus do not require substantial and material consideration warranting withdrawal of the reference. Notwithstanding that neither *Grupo Mexicano* nor the *Barton* Doctrine has any impact on the Stay Application, as explained in

15

greater detail below, neither presents an issue of first impression or in any way necessitates substantial and material consideration requiring withdrawal of the reference.

A. ***Grupo Mexicano* Does Not Apply to a Bankruptcy Proceeding**

In *Grupo Mexicano*, the Supreme Court held that a creditor could not enjoin a debtor's disposition of assets prior to obtaining a judgment against that debtor. 527 U.S. at 333. The Supreme Court so held because equity did not traditionally allow such a remedy and because a creditor's judgment against a debtor gave "the creditor an interest in the property which equity could then act upon." *Id.* at 323. Importantly, however, the Supreme Court noted that the creditor's desired injunction had no statutory basis and essentially amounted to "adding, through judicial fiat, a new and powerful weapon to the creditor's arsenal . . . ." *Id.* at 331. In light of the Bankruptcy Court's determination that the Trustee had to prove that the Merkin Defendants held debtor property prior to obtaining a Section 542 turnover of property, *Merkin*, 440 B.R. at 271–73, and because the Trustee has not obtained a judgment in his Merkin Action, the Movants thus argue that the Trustee may not obtain an injunction against the Settlement Agreement absent some consideration of non-Code federal law.

This Court has plainly stated that an argument in favor of withdrawal on this basis "has no merit." *Adelphia Communications Corp. v. Rigas*, 2003 WL 21297258, at *4 (S.D.N.Y. June 4, 2003). Presented with the same argument that the application of *Grupo Mexicano* required withdrawal of an injunction action, this Court held that "*Grupo Mexicano*'s holding specifically applied to the district courts, [it] therefore is inapplicable in the bankruptcy court context." *Id.* Accordingly, and because "Section 105 of Title 11 provides the bankruptcy courts with a broad range of equitable powers over cases within its jurisdiction." the bankruptcy court could "issue a

pre-judgment order preventing a party from disposing of assets." *Id.*  Plainly, *Grupo Mexicano* cannot serve as the basis for withdrawal.

Nor should it.  Indeed, as the Court in *Adelphia* noted, "even if *Grupo Mexicano* could be applied to the bankruptcy courts, it is still distinguishable. *Grupo Mexicano* involved a claim for money damages, not equitable relief." *Id.*  The Court concluded that, because the plaintiff, like the Trustee here, "has asserted equitable relief in the complaint, *Grupo Mexicano* is inapplicable." *Id.* at *5.  As a further basis for distinguishing *Grupo Mexicano*, the Supreme Court specifically excepted a bankruptcy court's statutory powers in a liquidation: "The law of fraudulent conveyances and bankruptcy was developed to prevent such conduct [of removing or wasting a debtor's assets]; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not." *Grupo Mexicano*, 527 U.S. at 322.  Moreover, the Supreme Court warned that giving creditors the power to freeze a debtor's assets prior to obtaining a judgment would create a "race to the courthouse" as creditors sought to secure as much of a debtor's limited assets for themselves as they could.  *Id.* at 331.  Ironically, by seeking to use *Grupo Mexicano* as an end-run around the Stay Orders, including this Court's Protective Order, and the automatic stay, the NYAG and Receivers have started a race with the Trustee to the courthouse in order to divvy up the Merkin Defendants' limited assets among themselves.

Numerous other courts have held that *Grupo Mexicano* is not applicable in the bankruptcy context.  As stated succinctly by the Third Circuit,

> In short, the Court's opinion in *Grupo Mexicano* acknowledged that bankruptcy courts *do* have the authority to deal with the problems presented by that case. One way to conceptualize this idea is to recognize that, had the company in *Grupo Mexicano* been in bankruptcy, the bankruptcy court would have had the authority to implement the remedy the district court lacked authority to order under general equity power outside the bankruptcy context.

*In re Owens Corning*, 419 F.3d 195, 209, n.14 (3d Cir. 2005), *cert. den.*, 547 U.S. 1123 (2006); *see also In re Focus Media Inc.*, 387 F.3d 1077, 1079, 1084–85 (9th Cir. 2004) ("We also hold that *Grupo Mexicano* . . . does not bar the issuance of a preliminary injunction freezing assets where fraudulent conveyance or equitable causes of action are pleaded in the bankruptcy context."), *cert den. sub nom.*, *Rubin v. Pringle*, 544 U.S. 923 (2005); *In re Big Springs Realty LLC*, 426 B.R. 860, 866 (holding that pending determination of a fraudulent conveyance claim in a bankruptcy proceeding, "[t]he Plaintiff's request for an equitable remedy, namely a preliminary injunction, is appropriate given the claims alleged and is not undermined by *Grupo Mexicano*"), *reconsideration den.*, 430 B.R. 629 (Bankr. D. Mont. 2010).   Other courts have picked up on *Grupo Mexicano*'s emphasis that the lower court lacked statutory authority, noting that, in contrast, "[t]he Bankruptcy Court's power emanates not from the general equitable jurisdiction but from two sections of the Bankruptcy Code, § 1123(b)(6) and § 105(a)."   *In re Dow Corning Corp.*, 255 B.R. 445, 482 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002).

The Movants' only justification for why *Grupo Mexicano* creates a conflict is their belief that the Trustee will have to argue that SIPA overrides *Grupo Mexicano*.   But where *Grupo Mexicano* does not even apply, and the Trustee does not need to rely upon SIPA in order to seek an injunction over the Merkin Defendants' assets, then no conflict exists between non-bankruptcy law and Title 11.   The Movants cannot manufacture a conflict by citing law that has no application in the bankruptcy context.

## B.  The *Barton* Doctrine Does Not Prevent a Trustee From Enjoining a Receiver's Attempts to Interfere with a SIPA Estate

First articulated by the Supreme Court in *Barton v. Barbour*, 104 U.S. 126 (1881), the *Barton* Doctrine states that a party may not sue a receiver or trustee without first obtaining leave of the court that appointed the receiver or trustee.   *See generally In re VistaCare Group, LLC*,

678 F.3d 218 (3d Cir. 2012).  The Movants contend that because the Receivers were appointed by the New York State Court, all other courts lack jurisdiction to hear any sort of claim against them without leave from the New York State Court that appointed them.   The Movants' argument, however, misapprehends the purpose and extent of the *Barton* Doctrine, as Movants incorrectly apply the doctrine to the present case.  The *Barton* Doctrine was developed in order to prevent third parties from interfering with the assets held by the receiver and the appointing court.  As explained by the Supreme Court in *Barton*,

> The evident purpose of a suitor who brings his action against a receiver without leave is to obtain some advantage over the other claimants upon the assets in the receiver's hands. His judgment, if he recovered one, would be against the defendant in his capacity as receiver, and the execution would run against the property in his hands as such.

*Id.* at 128.  Other courts have recognized, however, that this reasoning, and thus the *Barton* Doctrine, does not apply when a party attempts only to enjoin the receiver or trustee from taking certain action rather than attempting to obtain assets controlled by the estate.

In *The Billing Resource v. FTC (In re The Billing Resource)*, 2007 WL 3254835 (N.D. Cal. Nov. 2, 2007), the debtor filed a motion in the Northern District of California to enjoin the receiver appointed by the Southern District of Florida from enforcing an omnibus order which ordered the debtor to turn over commingled funds to the receiver.  While it ultimately dismissed without prejudice the motion for an injunction, the California court rejected the notion that the *Barton* Doctrine prevented it from issuing the stay.  *Id.* at *22.  The California court held that once the debtor had filed for bankruptcy, it "obtained exclusive *in rem* jurisdiction over the property in Debtor's bankruptcy estate, and particularly over any legal and equitable interest Debtor held in the Commingled Funds as of the commencement of the case."  *Id.* at *19. Accordingly, the court stated, "It is this exclusive grant of *in rem* jurisdiction that precludes the application of the *Barton* doctrine in this particular set of circumstances."  *Id.* at *22.

19

Furthermore, the California court noted that the Florida court was not equipped to determine the relative priority of competing claims to the debtor's property. *Id.* at *24.

Likewise, in *PFS Investments, Inc. v. Imhoff*, 2012 WL 254125 (E.D. Mich. Jan. 27, 2012), the district court declined to employ the *Barton* Doctrine to preclude a motion to enjoin a bankruptcy trustee from conducting discovery or otherwise engaging in litigation against the petitioners outside of discovery. *Id.* at *2–3 ("This reasoning [used in *Barton*] simply does not apply to Petitioners' claim, as they are not attempting to obtain money or any other estate property from the trustee through the proposed injunction.").

Here, the Trustee is not attempting to gain control over assets held in the Receivers' control. Instead, the Trustee is attempting to enforce the Bankruptcy Court's control over the BLMIS estate—control originally in the hands of this Court when Judge Stanton signed the Protective Order and appointed the Trustee. *See* Protective Order, *supra* n.1, at 2. Additionally, only the Bankruptcy Court is properly equipped to deal with competing claims to fraudulently conveyed property.[7] The Movants point to no case which has used the *Barton* Doctrine to prevent an injunction against a receiver as in this situation. *Cf. PFS Investments*, 2012 WL 254125, at *3 ("The Court is unaware of any decisions applying *Barton* to a claim that was not seeking specific property or money damages . . . ."). Because the *Barton* Doctrine simply does not apply to the Stay Application, withdrawal is not mandated.

### C. Withdrawal of Separate Issues for Common Briefing Does Not Mandate Withdrawal of the Stay Application

In their last argument for mandatory withdrawal, the Movants assert that, because this

---

[7] In another action involving a similar intervention by another state attorney general, the California Attorney General, *Picard v. Estate of Chais*, Adv. Pro. No. 09-01172 (BRL) (Bankr. S.D.N.Y.) and *Picard v. Hall, et al.*, Adv. Pro. No. 12-01001 (BRL) (Bankr. S.D.N.Y.), the Bankruptcy Court has ordered the dispute to mediation. Order, *Picard v. Hall, et al.*, ECF No. 129 (Aug. 7, 2012).

Court has withdrawn certain issues for common briefing, and because these issues may have some effect on the Trustee's underlying Merkin Action, the reference should be withdrawn as to the Stay Application.  This Court has declined to withdraw entire matters simply because of the common briefing issues, and it need not do so here—especially when, as Movants concede, "substantive arguments on these points will be addressed in forthcoming proceedings . . . ." (Def. Br. at 19.)   Indeed, this Court has previously recognized that prior withdrawals of proceedings do not necessitate the withdrawal of a subsequent related proceeding.  *See Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*, 270 B.R. 562, 566 (S.D.N.Y. 2001) (denying a motion to withdraw even though the district court had previously withdrawn the reference of three related adversary proceedings).

## V. <u>THE MOTION DOES NOT WARRANT PERMISSIVE WITHDRAWAL</u>

Permissive withdrawal is not appropriate here.  *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1100–02 (2d Cir. 1993).  First, the Stay Application plainly presents "core" claims as identified in 28 U.S.C. section 157.  *See* 28 U.S.C. § 157(b)(2)(A), (G), and (O).  Indeed, the automatic stay under Section 362(a) is "one of the fundamental debtor protections provided by the bankruptcy law." *Midlantic Nat'l. Bank v. N.J. Dep't. of Envtl. Prot.,* 474 U.S. 494, 503 (1986).  As such, the Trustee's claims are clearly within the jurisdiction of the Bankruptcy Court. *See In re Nat. Century Fin. Enterprises, Inc.*, 423 F.3d 567, 573 (6th Cir. 2005) (citing 28 U.S.C. § 157(b)(2)(A), (G), and (O) and holding that "[t]he bankruptcy court had jurisdiction to enforce the stay, because NCFE's motion to enforce constituted a core proceeding"); *The Singer Co. v. Groz-Beckert KG (In re The Singer Co.)*, 2002 WL 999273, at *3 (S.D.N.Y. February 20, 2002) ("Allegations concerning stay violations are claims arising under the Bankruptcy Code and give rise to core proceedings.")

Furthermore, judicial efficiency is best served by leaving the reference with the Bankruptcy Court.  Often, judicial efficiency is better served when the bankruptcy court retains jurisdiction until final judgment, particularly when the bankruptcy court is intimately familiar with the details of a case.  *See, e.g., Shugrue v. PBGC (In re Ionosphere Clubs*, *Inc.)*, 142 B.R. 645, 649 (S.D.N.Y. 1992) (remanding to bankruptcy court for proposed findings of fact and conclusions of law because "Chief Judge Lifland's familiarity with the Eastern bankruptcy, developed over considerable time, creates a judicial ambiance in which remand would be productive").  Here, Judge Lifland is intimately familiar with the facts of this case and the applicable bankruptcy law.  Moreover, even if, as Movants argue, certain issues cannot be finally determined by the Bankruptcy Court, nothing prevents the Bankruptcy Court from acting as a magistrate judge and presiding over pretrial matters.  *In re Extended Stay,* 466 B.R. 188, 208 (S.D.N.Y. 2011) ("In the event that the bankruptcy court does not have constitutional authority to enter a final judgment on certain claims, it may submit proposed findings of fact and conclusions of law to this Court.").  *See also* Amended Standing Order of Reference issued by this Court on February 1, 2012; *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101–02 (2d Cir. 1993); *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992).  Thus, even permissive withdrawal is not warranted at this time.

## <u>CONCLUSION</u>

For all of the aforementioned reasons, the Motion should be denied, and the Trustee's Complaint and Injunction Motion should remain before the Bankruptcy Court.


Dated: Washington, D.C.
      October 3, 2012                Respectfully submitted,

                                       JOSEPHINE WANG
                                       General Counsel

                                       /s/Kevin H. Bell
                                       KEVIN H. BELL
                                       Senior Associate General Counsel for
                                        Dispute Resolution

                                       NATHANAEL KELLEY
                                       Staff Attorney

                                       SECURITIES INVESTOR
                                         PROTECTION CORPORATION
                                       805 15th Street, N.W., Suite 800
                                       Washington, D.C. 20005
                                       Telephone: (202) 371-8300
                                       E-mail: jwang@sipc.org
                                       E-mail: kbell@sipc.org
                                       E-mail: nkelley@sipc.org