**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>                 Plaintiff, <br><br>      v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>                 Defendant. | 12-MC-00115 (JSR) |
| In re: <br><br> MADOFF SECURITIES | **(Relates to consolidated proceedings on Section 546(e) issues)** |

**CONSOLIDATED REPLY MEMORANDUM OF LAW ON BEHALF OF FINANCIAL INSTITUTION DEFENDANTS WITH RESPECT TO ISSUES RAISED BY ORDER OF THE COURT DATED MAY 15, 2012**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Thomas J. Moloney
Lawrence B. Friedman
Carmine D. Boccuzzi, Jr.
Breon S. Peace
David Y. Livshiz
Justin L. Ormand
One Liberty Plaza
New York, New York 10006

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Marco E. Schnabl
Susan L. Saltzstein
Jeremy A. Berman
Stephanie R. Feld
Four Times Square
New York, New York 10035

SULLIVAN & WORCESTER LLP
Franklin B. Velie
Jonathan G. Kortmansky
Mitchell C. Stein
1633 Broadway
New York, New York 10019

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................. 2

I.     SECTION 546(e) APPLIES TO ALL CLAIMS EXCEPT THOSE BROUGHT
UNDER SECTION 548(a)(1)(A); THERE IS NO OTHER EXCEPTION
AND THIS COURT SHOULD NOT CREATE ONE ......................................... 2

II.    SECTION 546(e) PROTECTS BOTH INITIAL AND
SUBSEQUENT TRANSFEREES .......................................................... 7

     A.    The Trustee Cannot Recover A Transfer From A Subsequent Transferee
That He Cannot Avoid Against An Initial Transferee ............................... 7

     B.    The Financial Institution Defendants Have A Constitutional Right To
Invoke Section 546(e) ................................................................... 9

III.    THE TRANSFERS ALLEGED HERE WERE MADE
"BY, TO, OR FOR THE BENEFIT OF" "FINANCIAL INSTITUTIONS" OR
"FINANCIAL PARTICIPANTS" ........................................................... 10

IV.    THE ACCOUNT OPENING DOCUMENTS ARE NOT SUBJECT TO ANY
"ILLEGAL CONDUCT EXCEPTION" AND ARE NOT VOID AGAINST
PUBLIC POLICY OR OTHERWISE ILLEGAL ................................................ 12

V.    TRANSACTIONS IN FUND SHARES SUPPLY AN ALTERNATIVE REASON
WHY THE TRANSFERS HERE FALL WITHIN THE SECTION 546(e) SAFE
HARBOR ....................................................................................... 16

CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

17 C.F.R. § 240.10b-5 .......................................................................... 13

11 U.S.C. § 101(22A) .......................................................................... 10

11 U.S.C. § 544 .......................................................................... 8

11 U.S.C. § 546(e) .......................................................................... <u>passim</u>

11 U.S.C. § 547 .......................................................................... 8

11 U.S.C. § 548 .......................................................................... 8

11 U.S.C. § 548(a)(1)(A) .......................................................................... 1, 3, 6

11 U.S.C. § 550 .......................................................................... 7, 8

11 U.S.C. § 550(a) .......................................................................... 8

11 U.S.C. § 550(a)(1) .......................................................................... 11

15 U.S.C. § 78j(b) .......................................................................... 13

15 U.S.C. § 78u-2(e) .......................................................................... 5

15 U.S.C. § 80b-6(1) .......................................................................... 13

N.Y. Gen. Bus. L. § 352-c(1)(a) .......................................................................... 13

**Cases**

Bankers Trust Co. v. Litton Sys. Inc.,
599 F.2d 488 (2d Cir. 1979) .......................................................................... 14, 15

Barron v. Igolnikov,
No. 09 Civ. 441 (TPG), 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010) .............................. 17

Bayou Superfund LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp. LLC),
362 B.R. 624 (Bankr. S.D.N.Y. 2007) .......................................................................... 18

**Page(s)**

Berry v. Demers,
No. 93 Civ. 2166 (KMW), 1995 WL 406091 (S.D.N.Y. July 10, 1995)............................ 13

Blossom Farm Prods. Co. v. Kasson Cheese Co.,
395 N.W.2d 619 (Wis. 1986)............................................................................ 15

Brunjes v. Hoyt (In re Carter-Wallace, Inc. Sec. Litig.),
150 F.3d 153 (2d Cir. 1998)............................................................................ 17

Craig v. Bosworth, Inc. (In re Am. Sec. & Loan, Inc.)
1988 WL 1568184 (Bankr. S.D. Iowa Sept. 30, 1988)............................................ 8

Corley v. United States,
556 U.S. 303 (2009)...................................................................................... 8

Decker v. Tramiel (In re JTS Corp.),
617 F.3d 1102 (9th Cir. 2010) ........................................................................ 12

Dye v. Sachs (In re Falshcom, Inc.),
361 B.R. 519 (Bankr. C.D. Cal. 2007)................................................................ 9

Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,
651 F.3d 329 (2d Cir. 2011)...................................................................... passim

Grayson Consulting, Inc. v. Wachovia Sec., LLC (In re Derivium Capital, LLC),
437 B.R. 798 (Bankr. D.S.C. 2010) .................................................................. 6

Hartman v. Harris,
810 F. Supp. 82 (S.D.N.Y. 1992) .................................................................... 14

Hoskins v. Citigroup Inc. (In re Viola),
469 B.R. 1 (B.A.P. 9th Cir. 2012)................................................................ 6, 11

Hutson v. E.I. du Pont de Nemours & Co. (In re Nat'l Gas Distribs., LLC),
556 F.3d 247 (4th Cir. 2009) ..................................................................... 11-12

IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.),
408 F.3d 689 (11th Cir. 2005) ........................................................................ 8

Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.),
263 B.R. 406 (S.D.N.Y. 2001)........................................................................ 4

Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros.
Holdings Inc.),
469 B.R. 415 (Bankr. S.D.N.Y. 2012) ............................................................. 17

iii

**Pages**

McConnell v. Commonwealth Pictures Corp.,
7 N.Y.2d 465 (1960) ............................................................................ 14

Meridian Horizon Fund, LP v. KPMG (Cayman),
Nos. 11-3311-cv, 11-3725-cv, 2012 WL 2754933 (2d Cir. July 10, 2012) ....................... 5-6

Merrill v. Abbott (In re Indep. Clearing House Co.),
77 B.R. 843 (D. Utah 1987) .................................................................. 15

Miller v. CSFB (In re Refco Sec. Litig.),
No. 07 MDL 1902 (GEL), 2009 WL 7242548 (S.D.N.Y. Nov. 13, 2009) ....................... 6

Mills v. Elec. Auto-Lite Co.,
396 U.S. 375 (1970) ............................................................................ 14

Nameh v. Muratex Corp.,
34 F. App'x 808 (2d Cir. 2002) .............................................................. 14

Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail
Fin. Grp. (In re Hechinger Inv. Co. of Del.),
274 B.R. 71 (D. Del. 2002) .................................................................... 6

Official Comm. of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. JPMorgan Chase
Bank, N.A. (In re M. Fabrikant & Sons, Inc.),
394 B.R. 721 (S.D.N.Y. 2008) ............................................................... 8, 9

Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge
Co.),
344 B.R. 340 (W.D. Pa. 2006) ............................................................... 3, 6

Official Committee of Unsecured Creditors of Quebecor World (USA) Inc. v. Am.
United Life Ins. Co. (In re Quebecor World (USA) Inc.),
No. 11 Civ 7530 (JMF), 2012 WL 4477247 (S.D.N.Y. Sept. 28, 2012) ...................... 16-17

Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Investors L.P.),
467 B.R. 643 (N.D. Ill. 2012) ................................................................ 4, 17

Picard v. Flinn Investments, LLC,
463 B.R. 280 (S.D.N.Y. 2011) ............................................................... 17

Picard v. Katz,
462 B.R. 477 (S.D.N.Y. 2011) ("Katz I") ................................................... 6

Picard v. Katz,
466 B.R 208 (S.D.N.Y. 2012) ("Katz II") ................................................... 6, 7, 8

**Page(s)**

S. Pac. R.R. Co. v. United States,
168 U.S. 1 (1897)........................................................................................ 12-13

Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.),
337 B.R. 791 (Bankr. S.D.N.Y. 2005)......................................................... 18

Silverman v. E.R.V. Realty Corp. (In re Allou Distribs., Inc.),
379 B.R. 5 (Bankr. E.D.N.Y. 2007)............................................................. 8

SIPC v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff Inv. Sec. LLC),
424 B.R. 122 (Bankr. S.D.N.Y. 2010)......................................................... 4

SIPC v. Bernard L. Madoff Inv. Sec. LLC,
476 B.R. 715 (S.D.N.Y. 2012) ("Greiff").................................................... passim

Telectronics Proprietary, Ltd. v. Medtronic, Inc.,
687 F. Supp. 832 (S.D.N.Y. 1988) .............................................................. 15

Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,
444 U.S. 11 (1979)...................................................................................... 14

U.S. Bank Nat'l Assoc. v. Verizon Commc'ns, Inc.,
No. 3:10-CV-1842-G, 2012 WL 4050088 (N.D. Tex. Sept. 14, 2012) ............ 3

Walters v. Fullwood,
675 F. Supp. 155 (S.D.N.Y. 1987) .............................................................. 14

Woods & Erickson, LLP v. Leonard (In re AVI, Inc.),
389 B.R. 721 (B.A.P. 9th Cir. 2008)........................................................... 8

The Financial Institution Defendants respectfully submit this consolidated reply memorandum of law, pursuant to the 546(e) Briefing Order, in support of their motion to dismiss statutory avoidance claims asserted by the Trustee except those brought pursuant to Section 548(a)(1)(A).[1]

## PRELIMINARY STATEMENT

None of the panoply of arguments advanced by the Trustee and SIPC for why Section 546(e) does not apply in these cases or for why the Financial Institution Defendants should not be able to claim the benefit of that provision has any merit. First, the Trustee and SIPC invite the Court to engraft a new, intensely fact-driven "bad faith" and/or fraud exception onto Section 546(e)'s safe harbor to prevent its alleged misuse as a shield for wrongdoing. The Court should decline this inappropriate request to rewrite the statute. This is especially true because, among other reasons, this supposed "fix" would undermine the efficacy of the safe harbor by injecting uncertainty as to when it would apply. It is also unnecessary to redress the more egregious conduct the Trustee postulates.

Second, the Trustee argues that the Financial Institution Defendants are not protected by Section 546(e) and that he can somehow recover transfers from subsequent transferees that he cannot avoid against the initial transferees. This argument is not only inconsistent with the relevant statutory provisions and case law; it defies common sense.

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Financial Institution Defendants' opening brief ("Opening Br."), filed on July 27, 2012 (ECF No. 257), or in the Trustee's and SIPC's oppositions thereto ("Tr. Br." and "SIPC Br."), filed September 28, 2012 (ECF Nos. 360, 370). In addition, the Financial Institution Defendants incorporate and adopt the arguments contained in the Reply Memorandum of Law in Further Support of the Consolidated Motion to Dismiss the Trustee's Claims Against BLMIS Customers and Others that Are Precluded By Section 546(e) of the Bankruptcy Code, dated October 19, 2012.

Moreover, as even the Trustee has admitted, subsequent transferees have the right to raise any defense that would have been available to an initial transferee.

Finally, the Trustee offers a veritable kitchen sink of reasons why this Court should reconsider its holdings in Greiff and Katz.  All of the arguments advanced, however, either have already been considered and rejected by this Court or could have been asserted in the prior litigation and should not be considered now.  The Trustee's new arguments are, in any event, misguided and, as explained herein, largely premised on a misapplication of irrelevant contractual principles or a misreading of the case law.  This Court's holding that the transfers made by BLMIS were "in connection with securities contracts" and "settlement payments" is not only correct but it is further buttressed by consideration of the involvement of the Financial Institution Defendants in these transfers.  While in Greiff and Katz the Court properly identified the Account Opening Documents as securities contracts, looking at these transactions through a wider lens reveals that the Subsequent Transferee Documents also qualify as securities contracts and that the subsequent transfers also qualify as settlement payments.  These additional unmistakably real securities transactions provide even greater justification for this Court's holdings.

## ARGUMENT

**I.   SECTION 546(e) APPLIES TO ALL CLAIMS EXCEPT THOSE BROUGHT UNDER SECTION 548(a)(1)(A); THERE IS NO OTHER EXCEPTION AND THIS COURT SHOULD NOT CREATE ONE**

Both SIPC and the Trustee make much of allegations in some of the Trustee's complaints that certain defendants were complicit in or consciously disregarded Madoff's fraud, and invite this Court to create an exception to Section 546(e)'s safe harbor in cases involving a debtor that collapsed as a result of fraud.  The Court should decline this invitation for multiple reasons.

First, Section 546(e) already contains an exception for transfers made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]"  Section 548(a)(1)(A).  That is the only statutory carve out, and to the extent the Trustee argues that there should be others, that is an argument for Congress, not this Court.  See SIPC v. Bernard L. Madoff Inv. Sec. LLC, 476 B.R. 715, 721-22 (S.D.N.Y. 2012) ("Greiff").  See also U.S. Bank Nat'l Assoc. v. Verizon Commc'ns, Inc., No. 3:10-CV-1842-G, 2012 WL 4050088, at *10 (N.D. Tex. Sept. 14, 2012) ("The fact that Congress did expressly exclude Section 548(a)(1)(A) implies that it did not want to exclude state 'actual intent' fraudulent transfer claims."); Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.), 344 B.R. 340, 370 (W.D. Pa. 2006) (same) (citation omitted).

Second, creating the intensely fact-driven exception the Trustee seeks would undermine the effectiveness of the Section 546(e) safe harbor by introducing uncertainty as to its application.  As the SEC argued in its brief to the Second Circuit in Enron:

> Beyond establishing that there was a transfer of funds or securities, there is no need to consider any other circumstances of the transaction in which the payment is made.  Indeed, it would defeat the very purpose of the safe harbor if there must be discovery and resolution of factual disputes about the circumstances of a securities transaction before there can be a decision about whether a particular payment qualifies as a "settlement payment."  The certainty of the statutory safe harbor would be frustrated by the prospect of protracted litigation.  The district court correctly rejected this approach and adopted a broad interpretation of the term "settlement payment" that considers only whether a transfer involved the delivery and receipt of funds and securities and concludes or consummates a securities transaction.

Brief of the SEC as Amicus Curiae in Support of Appellees at 12-13, Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V., 651 F.3d 329 (2d Cir. 2011) (No. 09-5122-bk(L)) (internal

quotation marks and citation omitted).  The Second Circuit accepted this argument and applied

Section 546(e) to Enron's redemption of commercial paper in the months leading up to its

collapse despite a dispute over whether transferees acted in bad faith by seeking to "recover on

their investments amidst rumors of Enron's imminent implosion[.]"  Enron, 651 F.3d at 331-32,

339, 346.  See also Greiff, 476 B.R. at 722 ("Nothing in the express language of § 546(e)

suggests that it is not designed to protect the legitimate expectations of customers, as well as the

securities market in general, even when the stockbroker is engaged in fraud."); Peterson v.

Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Investors L.P.), 467 B.R. 643, 653

(N.D. Ill. 2012) (applying Section 546(e) in the context of a Ponzi scheme for the same reasons).

 The Trustee attempts to distinguish Enron and other cases cited by defendants by

arguing that those cases involved "real trades," and that because Madoff never actually traded

any securities,[2] transfers from BLMIS fall within a so-called "illegal conduct exception" to

Section 546(e).  Tr. Br. at 17, 19-20 & n.77.  But this Court has already observed that the illegal

conduct exception "cannot survive the broad and literal interpretation given § 546(e) in Enron[,]"

Greiff, 476 B.R. at 721, and the exception the Trustee seeks in cases not involving "real trades"

would not apply here in any event, because there were real, quantifiable transfers made pursuant

to securities contracts in these cases.[3]  Enron, like BLMIS, was exposed as a massive fraud upon

its demise, but that fact apparently did not give the Second Circuit any pause in applying Section

---

[2] Notably, BLMIS did conduct legitimate trades through its market making and proprietary trading units.  See SIPC v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff Inv. Sec. LLC), 424 B.R. 122, 127 (Bankr. S.D.N.Y. 2010), aff'd, 654 F.3d 229 (2d Cir. 2011), cert. denied sub nom Velvel v. Picard, No. 11-986, 2012 WL 425188 (U.S. June 25, 2012).

[3] As previously noted, these transfers distinguish these cases from Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.), 263 B.R. 406, 479-80 (S.D.N.Y. 2001).  See Opening Br. at 25 (observing that Adler, Coleman did not, as in these cases, involve any actual transfers but was simply a fraudulent attempt to create SIPC claims on the eve of bankruptcy by placing fictitious transactions in a broker dealer's books).

546(e) to prevent recovery of transfers made prior to Enron's bankruptcy.  The Trustee gives no reason why the application of Section 546(e) should hinge on whether the fraud that led to the debtor's collapse involved "real trades," because none exists.

Third, to the extent there are any parties that were criminally complicit with Madoff as the Trustee's brief postulates, there are other federal remedies (although unavailable to the Trustee) not precluded by Section 546(e).  For example, the estate of Jeffrey Picower agreed to forfeit $7.2 billion to the Department of Justice ("DOJ") for the benefit of BLMIS's victims to settle civil forfeiture claims brought by the DOJ.[4]  There are also disgorgement remedies available to the SEC.  See 15 U.S.C. § 78u-2(e).

Finally, the suggestion that the Trustee has alleged that "Movants either knew or consciously avoided knowledge of Madoff's Ponzi Fraud[,]" SIPC Br. at 6, simply is not true.  In the vast majority of cases—including at least three of the complaints selected by the Trustee as "illustrative"—the Trustee's allegations amount to no more than an assertion that hundreds of defendants in dozens of adversary proceedings could have discovered that Madoff was a fraud if they had put all of the puzzle pieces together,[5] a feat the SEC, IRS, and numerous large financial institutions and auditors were unable to accomplish.  See Meridian Horizon Fund, LP v. KPMG (Cayman), Nos. 11-3311-cv, 11-3725-cv, 2012 WL 2754933, at *3 (2d Cir. July 10, 2012)

---

[4] See Stipulation and Order of Settlement, United States v. $7.2 Billion, No. 10 Civ. 9398 (TPG) (S.D.N.Y. filed Dec. 17, 2010), ECF No. 2.  This civil forfeiture obtained by the DOJ is the largest recovery to date for the benefit of Madoff's victims.

[5] See, e.g., HSBC Compl. ¶¶ 11, 19 (alleging that defendants were "aware of the indicia of fraud surrounding BLMIS" and "observed all these red flags of fraud and others, but ignored them"); Legacy Compl. ¶¶ 5, 109 (alleging that defendants "were or should have been aware of significant red flags and empirical evidence that indicated that BLMIS was likely a fraud" and were therefore "on inquiry notice of fraud at BLMIS"); Merrill Lynch Compl. ¶¶ 3, 4 (alleging that the Merrill Lynch defendants had "serious concerns about Madoff" and were "armed with both public and considerable non-public information, which raised numerous red flags of possible fraudulent activities at BLMIS").

(summary order) ("the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals") (internal quotation marks and citation omitted).  The sparse allegations of bad faith in these cases therefore merit a result no different from that obtained in <u>Katz</u>, where the Trustee's extensive allegations of bad faith were insufficient to overcome the application of Section 546(e).  <u>See</u> <u>Picard v. Katz</u>, 462 B.R. 477, 452-55 (S.D.N.Y. 2011) ("<u>Katz I</u>").

Accordingly, contrary to the Trustee's protestations, Tr. Br. at 12-13, this Court need not resolve any factual issues in connection with this motion presenting pure questions of law, because even assuming the Trustee's allegations of suspicion, negligence, and even bad faith are true, Section 546(e) still applies to bar all of the Trustee's avoidance and recovery claims except actual fraud claims brought under Section 548(a)(1)(A).  <u>Katz</u>, 462 B.R. at 452. This straightforward result is supported by the vast weight of authority, including this Court's own Madoff-related decisions, as well as other cases.[6]  Simply put—and as the Trustee himself previously argued before the bankruptcy court—"section 546(e) does not differentiate between good faith and bad faith investors."  Trustee's Supp. Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 13, <u>Picard v. Thybo Asset Mgmt. Ltd.</u>, Adv. Pro. No. 09-1365 (BRL) (Bankr. S.D.N.Y. filed Dec. 2, 2011), ECF No. 43.  With the exception of transfers subject to avoidance under Section 548(a)(1)(A), the Trustee cannot, as a matter of law, seek to recover transfers allegedly received by the Financial Institution Defendants.

---

[6] <u>See</u> <u>Greiff</u>, 476 B.R. at 722; <u>Picard v. Katz</u>, 466 B.R 208, 212 (S.D.N.Y. 2012) ("<u>Katz II</u>"); <u>Katz I</u>, 462 B.R. at 453.  <u>See also</u> <u>Hoskins v. Citigroup Inc. (In re Viola)</u>, 469 B.R. 1, 10 (B.A.P. 9th Cir. 2012); <u>In re Lancelot</u>, 467 B.R. at 653; <u>Grayson Consulting, Inc. v. Wachovia Sec., LLC (In re Derivium Capital, LLC)</u>, 437 B.R. 798, 802, 812 (Bankr. D.S.C. 2010); <u>Miller v. CSFB (In re Refco Sec. Litig.)</u>, No. 07 MDL 1902 (GEL), 2009 WL 7242548, at *5 (S.D.N.Y. Nov. 13, 2009), <u>report adopted</u>, 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010); <u>In re Nat'l Forge Co.</u>, 344 B.R. at 370; <u>Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)</u>, 274 B.R. 71, 98 (D. Del. 2002).

## II.    SECTION 546(e) PROTECTS BOTH INITIAL AND SUBSEQUENT TRANSFEREES

### A.    The Trustee Cannot Recover A Transfer From A Subsequent Transferee That He Cannot Avoid Against An Initial Transferee

In response to the Financial Institution Defendants' arguments that the Trustee cannot recover from a subsequent transferee an initial transfer that he cannot avoid, the Trustee and SIPC again revert to the contention that Section 546(e) precludes avoidance of a transfer from an initial transferee but does not preclude recovery of that same unavoidable transfer from a subsequent transferee. See Tr. Br. at 31-35; SIPC Br. at 14. This argument ignores the plain language of the Bankruptcy Code, lacks any support in the relevant case law, and should once again be rejected by this Court.

The Trustee correctly observes that "the Bankruptcy Code treats avoidance and recovery separately[,] Tr. Br. at 34 & n.13, but he is plainly incorrect when he says that "Section 546(e) does not provide a safe harbor for recovery actions under Section 550," id. at 32. Not only does the language of Section 550 plainly refute the Trustee's position ("to the extent that a transfer is avoided . . . the trustee may recover"), but all recovery actions, including actions against even the initial transferee, are governed by Section 550. If the Trustee's position were correct, and it obviously is not, no parties would be protected by Section 546(e) whatsoever.

Unsurprisingly, the Second Circuit has rejected the Trustee's position, and has observed that the Bankruptcy Code's safe harbor provisions, including Section 546(e), operate to "restrict[] a bankruptcy trustee's power to recover payments that are otherwise avoidable." Enron, 651 F.3d at 334 (emphasis added). This Court has already held that if the Trustee cannot avoid a transfer, he cannot recover it, see Order at 4 n.2, SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.), No. 12-mc-00115 (JSR) (S.D.N.Y. May 15, 2012); Katz II, 466 B.R. at 214, and the Trustee's suggestion that this Court has concluded otherwise, Tr. Br. at 34-35, is

7

flatly wrong.  As this Court has observed, Section 550(a) permits a trustee to recover a transfer from a subsequent transferee only to the extent the transfer is avoided under other specified provisions of the Bankruptcy Code, including Sections 544, 547 and 548.  Katz II, 466 B.R. at 214.  The obvious import of this limitation on recovery under Section 550(a) is that if Section 546(e) prohibits avoidance under Sections 544, 547 and 548, then Section 546(e) also prohibits recovery under Section 550(a).  The Trustee offers no reason why Congress predicated recovery under Section 550 on avoidance under other provisions of the Bankruptcy Code if it did not wish to prevent recovery of transfers that cannot be avoided.

Indeed, none of the cases cited by the Trustee supports his position.[7]  Ultimately, the best argument the Trustee can muster boils down to the contention that Section 546(e) does not apply to claims brought under Section 550(a) because Section 546(e) does not explicitly reference Section 550(a).  See Tr. Br. at 35.  Not only has this very argument been rejected, see Greiff, 476 B.R. at 722-23; Craig v. Bosworth, Inc. (In re Am. Sec. & Loan, Inc.), Adv. No. 87-0288 (LMJ), 1988 WL 1568184, at *4 (Bankr. S.D. Iowa Sept. 30, 1988), it also ignores the fundamental principle that statutes should be read as a whole, see Corley v. United States, 556 U.S. 303, 314 (2009).  When that is done, the inescapable conclusion is that transfers that cannot be avoided pursuant to Section 546(e) cannot be recovered under Section 550(a).

---

[7] See, e.g., Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 734 (B.A.P. 9th Cir. 2008) ("avoidance is a necessary precondition to any recovery under § 550"); IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.), 408 F.3d 689, 706-07 (11th Cir. 2005) (noting that plaintiff may bring "avoidance actions down the line of transfers" but that "liability is not imposed on a transferee to the extent . . . [he] . . . is protected" by one of the defenses provided under the Bankruptcy Code); Official Comm. of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. JPMorgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.), 394 B.R. 721, 743-46 (S.D.N.Y. 2008) (holding that initial transferees are not a "required party" under Rule 19 of the Federal Rules of Civil Procedure in order to commence a suit against subsequent transferees); Silverman v. E.R.V. Realty Corp. (In re Allou Distribs., Inc.), 379 B.R. 5, 19 (Bankr. E.D.N.Y. 2007) ("the plain language of Section 550(a) requires that the transfer first be avoided . . . prior to actual recovery from any transferee") (internal quotation marks and citation omitted).

**B. The Financial Institution Defendants Have A Constitutional Right To Invoke Section 546(e)**

Although the Trustee and SIPC both contend that subsequent transferees cannot invoke the protections of Section 546(e), "[f]undamental principles of due process require that transferees who claim an interest in [property] . . . have a full and fair opportunity to contest claims of fraudulent transfer."  In re M. Fabrikant & Sons, 394 B.R. at 744 (internal quotation marks and citation omitted).  See also Dye v. Sachs (In re Falshcom, Inc.), 361 B.R. 519, 525 (Bankr. C.D. Cal. 2007) (same).  A subsequent transferee therefore has a fundamental right to assert all defenses available to an initial transferee, regardless of outcome of litigation (if any) between a trustee and an initial transferee.  The Trustee has conceded this point with respect to another of Section 546's safe harbors, see Trustee's Mem. of Law in Opp'n to Citigroup Global Markets Limited's Mot. to Dismiss Pursuant to Section 546(g) of the Bankruptcy Code at 2, Picard v. Citibank N.A., No. 11 Civ. 7825 (JSR) (S.D.N.Y. filed Aug. 24, 2012), ECF No. 31 ("[o]f course, were the safe harbor defense available to the initial transferee to preclude avoidance of the initial fraudulent transfer, then the same defense would preclude the Trustee's action to recover any portion of that initial transfer subsequently transferred"), so it is puzzling, to say the least, that he would adopt a different position with respect to Section 546(e).  Nevertheless, as shown above, Section 546(e) applies with the same force to the Trustee's claims against subsequent transferees as it does to his claims against initial transferees, and bars the Trustee from recovering any transfers from subsequent transferees other than those avoided under Section 548(a)(1)(A).

III.   **THE TRANSFERS ALLEGED HERE WERE MADE "BY, TO, OR FOR THE BENEFIT OF" "FINANCIAL INSTITUTIONS" OR "FINANCIAL PARTICIPANTS"**

   The transfers at issue here were clearly "by or to" "financial institutions" or "financial participants" because they were made by BLMIS, which this Court has already found to be a "stockbroker" within the meaning of Section 546(e), Greiff, 476 B.R. at 719-20, and because customers to whom the transfers were made themselves independently qualified as "financial institutions," "financial participants," or other enumerated entities under Section 546(e) and therefore qualify for the safe harbor based on their securities contracts with BLMIS. See, e.g., Am. Compl. ¶ 33, Picard v. Fairfield Sentry Limited, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. filed July 20, 2010), ECF No. 23 (alleging Fairfield Sentry had "billions" invested with BLMIS pursuant to securities contracts and therefore satisfying, as a matter of law, Section 101(22A)'s definition of "financial participant," which includes any entity that "within 15 months of the bankruptcy" has, among other things, securities contracts "of a gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding").

   In addition, consideration of the Financial Institution Defendants' involvement in these transactions again only further buttresses the argument that this element of Section 546(e)'s test has been satisfied.  Neither the Trustee nor SIPC offers any substantive argument against the Financial Institution Defendants' position that many of the Financial Institution Defendants qualify as "financial institutions" and/or "financial participants" within the meaning of Section 546(e).[8]  Instead, they contend that transfers made by BLMIS were not "made by, to, or for the

---

[8] The Trustee takes issue with the Financial Institution Defendants' "selective[]" use of three complaints which establish, based on the Trustee's own allegations, that certain defendants named therein qualify as "financial institutions" and/or "financial participants" within the meaning of Section 546(e). Tr. Br. at 37-38.  The Trustee suggests that in many of his complaints there may be insufficient facts alleged to make such a determination, and contends that this Court therefore cannot address this issue in connection with this motion.  Id. at 38.  But

benefit" of the Financial Institution Defendants, Tr. Br. at 35-37; SIPC Br. at 14-15, because those defendants had no direct agreement with BLMIS.

In support of their position, the Trustee and SIPC rely on how the phrase "for whose benefit" has been construed by courts interpreting the reach of the Section 550(a)(1) recovery provision and argue that the scope of the phrase "for the benefit of" in Section 546(e) should be interpreted equivalently.  The Financial Institution Defendants have no quarrel, and in fact agree, with the Trustee's and SIPC's reading of the scope of Section 550(a)(1), and do not contend that they were initial transferees.  For the avoidance of doubt, the Financial Institution Defendants agree with the Trustee's position that they were not the entities "for whose benefit" or to which the transfers at issue were made within the meaning of Section 550(a)(1).

The Financial Institution Defendants do quarrel, however, with the Trustee's argument that the transfers were not made "to" or "for the benefit of" a financial institution for purposes of Section 546(e) unless that same financial institution would qualify as an "initial transferee" under Section 550(a)(1).  Both the language and purpose of Section 550 differ from that of Section 546(e) and "there is nothing in the Bankruptcy Code or subsequent case law to suggest that the . . . test to determine a transferee under § 550(a) should be applied as a limitation to the safe harbor provisions of § 546(e).  The two sections do not cross-reference, and they explain different subjects."  In re Viola, 469 B.R. at 9-10.  Also cf. Hutson v. E.I. du Pont de Nemours & Co. (In re Nat'l Gas Distribs., LLC), 556 F.3d 247, 259 (4th Cir. 2009) ("[T]he policies informing these provisions of the Bankruptcy Code are often in tension.  Even though an overarching policy of the Bankruptcy Code is to provide equal distribution among creditors, in enacting . . . 546(g) . . ., Congress intended to serve a countervailing policy of protecting

---

that certainly is not the case with the defendants in the three complaints used as examples, which unequivocally allege that defendants were "financial institutions" and/or "financial participants."

financial markets and therefore favoring an entire class of instruments and participants.").

Compare Decker v. Tramiel (In re JTS Corp.), 617 F.3d 1102, 1111 (9th Cir. 2010) ("the purpose

of § 550 is to restore the estate to the financial condition it would have enjoyed if the transfer had

not occurred") (internal quotation marks and citation omitted), with Enron, 651 F.3d at 334

(observing that Section 546(e)'s safe harbor "restrict[s] a bankruptcy trustee's power to recover

payments that are otherwise avoidable").  The very fact that Section 546(e) covers transfers to a

"securities clearing agency" makes clear that the exclusion applies even if the party "to" which a

transfer was made was not the beneficial owner of the security or of the transferred payment.

   Accordingly, for purposes of interpreting the scope of the Section 546(e) safe

harbor, to further Congress's unambiguous intent to protect the stability of the securities markets,

Enron, 651 F.3d at 334, the reference of a transfer made "to" a financial institution should be

read literally, as picking up all payments that flow through such entities.

## IV. THE ACCOUNT OPENING DOCUMENTS ARE NOT SUBJECT TO ANY "ILLEGAL CONDUCT EXCEPTION" AND ARE NOT VOID AGAINST PUBLIC POLICY OR OTHERWISE ILLEGAL

   Even if transfers from BLMIS were not made in connection with the Subsequent

Transferee Documents—and as shown below, they were—they would still qualify for the

Section 546(e) safe harbor because they were made in connection with the Account Opening

Agreements, which this Court has already held are "securities contracts" within the meaning of

the Bankruptcy Code.  The Trustee now offers a panoply of reasons why this Court's prior

holding is incorrect, apparently hoping that, if he throws enough mud at the wall, something will

stick.[9]

---

[9]  In this connection, the Trustee should be collaterally estopped from litigating issues relating to whether the Account Opening Documents are securities contracts.  It has long been established that "a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between

First, the Trustee claims that the Account Opening Documents do not qualify as "securities contracts" because defendants knew or should have known that the trades made pursuant to them were not "real," an argument that is irrelevant for the reasons stated in Point I above, and that has been rejected by this Court, see Greiff, 476 B.R. at 721 (observing that the purported "illegal conduct exception" to section 546(e) "cannot survive the broad and literal interpretation given § 546(e) in Enron").

Second, the Trustee tries to sidestep Section 546(e) by alleging that the Account Opening Documents are illegal under various statutory provisions and against public policy, and therefore void. Setting aside the fact that no one is attempting to enforce the Account Opening Documents here, the Trustee rests this proposition on case law that does not fit the facts alleged against the Financial Institution Defendants, and then impermissibly attempts to recast these facts to meet the standard he needs. Both attempts should be rejected by this Court.[10]

None of the Account Opening Documents violates the statutory provisions the Trustee cites. The Trustee has not, and cannot, point to any terms of the Account Opening Documents themselves that "operate as a fraud or deceit" (SEC Rule 10b-5), as a "manipulative or deceptive device or contrivance" (Section 10(b) of the 1934 Act), as a "fraud, deception, [or] concealment" (Section 352-c(1)(a) of the New York Martin Act), or as a "device, scheme, or artifice to defraud" (Section 206(1) of the Investment Advisers Act). At most, and as confirmed by the cases the Trustee cites, these statutory provisions confer a right to rescind the contract

---

the same parties or their privies. . . ." S. Pac. R.R. Co. v. United States, 168 U.S. 1, 48 (1897). All of the arguments the Trustee is making now were available to him when he litigated Katz and Greiff. The fact that he did not make them then is irrelevant to the collateral estoppel analysis. See Berry v. Demers, No. 93 Civ. 2166 (KMW), 1995 WL 406091, at *7 (S.D.N.Y. July 10, 1995).

[10] It should be noted that the Financial Institution Defendants are subsequent transferees, and therefore not party to the Account Opening Documents.

upon the non-violating party.  See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444

U.S. 11, 19 (1979) ("when Congress declared in § 215 that certain contracts are void, it intended

that the customary legal incidents of voidness would follow, including the availability of a suit

for rescission"); Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 387 (1970) (holding that the

language of Section 29(b) "establishes that the guilty party is precluded from enforcing the

contract against an unwilling innocent party, but it does not compel the conclusion that the

contract is a nullity, creating no enforceable rights even in a party innocent of the violation").

   The Trustee's argument that the Account Opening Documents are void as against

public policy fails for the same reason.  The cases cited by the Trustee are inapplicable to the

facts alleged by the Trustee here because they either involve (a) contracts that both parties

knowingly entered into for an illegal purpose known by both parties; or (b) contracts for which

the party seeking enforcement had acted illegally in his performance.  See, e.g., Nameh v.

Muratex Corp., 34 F. App'x 808 (2d Cir. 2002) (contract for the mutual benefit of customs

evasion); Hartman v. Harris, 810 F. Supp. 82 (S.D.N.Y. 1992) (contract for sale of art that both

parties knew was stolen); Walters v. Fullwood, 675 F. Supp. 155 (S.D.N.Y. 1987) (sports agency

contract that evaded league timing rules when parties collaborated to postdate it); McConnell v.

Commonwealth Pictures Corp., 7 N.Y.2d 465 (1960) (plaintiff performed contract through

bribery); Bankers Trust Co. v. Litton Sys. Inc., 599 F.2d 488 (2d Cir. 1979) (same).  And the

cases cited by the Trustee involving Ponzi schemes, see Tr. Br. at 35 n.102, do not involve

Section 546(e) or the fiduciary relationship between a broker and its customer that underpins all

the BLMIS transactions.  See Merrill v. Abbott (In re Indep. Clearing House Co.), 77 B.R. 843,

858 (D. Utah 1987).[11]

            Indeed, the cases cited by the Trustee set forth a singular message:  A party who

does not knowingly participate in a contract's fraudulent purpose will not be prejudiced by the

other parties' fraudulent conduct.  See, e.g., Bankers Trust, 599 F.2d at 492-93 ("[T]he [public]

policy argument is inapplicable [when] the plaintiff has done no wrong for which it should be

penalized."); Blossom Farm Prods. Co. v. Kasson Cheese Co., 395 N.W.2d 619, 622 (Wis. 1986)

(concluding that enforcement of defendant's promise to pay "would not be precluded on grounds

of public policy without knowledgeable involvement by [plaintiff]").  Even the Trustee concedes

these limits when he requests this Court to "refuse to validate the [contracts] . . . where

Defendants were complicit in BLMIS's fraud and/or knew that no real securities transactions

took place."  Tr. Br. at 26 (emphasis added).  Allegations that defendants "should've, would've,

could've" discovered the fraud do not suffice, and the Trustee cannot now seek to amplify the

knowledge allegations in his complaints through invective in a brief.  See, e.g., Telectronics

Proprietary, Ltd. v. Medtronic, Inc., 687 F. Supp. 832, 836 (S.D.N.Y. 1988) ("A claim for relief

may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation

marks omitted).

---

[11] In fact, Merrill flies in the face of the Trustee's own oft-repeated argument that the Court
should ignore the statutory scheme here and create a new exception to Section 546(e) in cases
involving fraud.  In Merrill, a trustee urged the court to look outside the statutory scheme for
transfer avoidance and recovery and permit him to "avoid all transfers to undertakers in a Ponzi
scheme."  77 B.R. at 855.  But the court, motivated by the same reasons that prompted Congress
to enact Section 546(e), refused to do so:  "[T]o undo all of these transactions would cause
incalculable harm to hundreds of people, at a staggering cost, for which no commensurate benefit
would lie.  But the trustee's [] theory must fail for an even more basic reason:  The bankruptcy
law does not sanction the relief sought."  Id. (internal quotation marks and citation omitted).

**V.   TRANSACTIONS IN FUND SHARES SUPPLY AN ALTERNATIVE REASON WHY THE TRANSFERS HERE FALL WITHIN THE SECTION 546(e) SAFE HARBOR**

This Court has previously held that transfers from BLMIS to its customers were both settlement payments and transfers made in connection with securities contracts that fall within the safe harbor of Section 546(e).  See Greiff, 476 B.R. at 719-23; Katz I, 462 B.R. at 451-53.  But as the Financial Institution Defendants demonstrated in their opening brief, there are securities contracts other than the Account Opening Documents that are relevant to the Section 546(e) analysis and that further bolster this Court's holdings.  Opening Br. at 10-12.  The Trustee argues that these additional securities contracts—subscription agreements between investors and investment funds, margin loans and total return swaps—are irrelevant and ignores that there were actual securities traded pursuant to such contracts.  The Trustee provides no legal justification why the Court should ignore these contracts and transactions that clearly fall within the definitions of "securities contract" and "settlement payment" in determining whether the Section 546(e) safe harbor applies here.

The Trustee does not argue, nor can he, that these additional agreements—which he dubs "Subsequent Transferee Documents"—are not securities contracts.  Rather, he contends that these securities contracts are "irrelevant," because they are not agreements between BLMIS and an initial transferee and because BLMIS did not have the intent to make the transfers in connection with such securities contracts.  Tr. Br. at 39 & n.159.  Nothing in the Bankruptcy Code, however, states that a securities contract must be between the debtor and an initial transferee in order for a transfer in connection with that securities contract to qualify for Section 546(e) protection.  See Enron, 651 F.3d at 334-35 (refusing to read limitations into safe harbor, and noting other circuits have held its scope to be "extremely broad"); Official Committee of Unsecured Creditors of Quebecor World (USA) Inc. v. Am. United Life Ins. Co. (In re Quebecor

16

World (USA) Inc.), No. 11 Civ. 7530 (JMF), 2012 WL 4477247, at *7 (S.D.N.Y. Sept. 28, 2012)

("nothing in [Section 546(e)] suggests that application of the safe harbor turns" on the limitations

the plaintiff urged the court to adopt); In re Lancelot, 467 B.R. at 656 (rejecting the argument

that Section 546's safe harbors require that the protected "transactions be structured or tailored to

include the debtor as a party").  Numerous courts have found that the "in connection with"

requirement is satisfied where, as here, the transfers are simply "related to" a securities

agreement.  See Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman

Bros. Holdings Inc.), 469 B.R. 415, 442 (Bankr. S.D.N.Y. 2012) (collecting cases).  The

securities laws, which inform the meaning of "in connection with" here, see Picard v. Flinn Invs.,

LLC, 463 B.R. 280, 285-86 (S.D.N.Y. 2011), require that the phrase be "broadly construed,"

Brunjes v. Hoyt (In re Carter-Wallace, Inc. Sec. Litig.), 150 F.3d 153, 156 (2d Cir. 1998).  See

also Barron v. Igolnikov, No. 09 Civ. 441 (TPG), 2010 WL 882890, at *5 (S.D.N.Y. Mar. 10,

2010) (rejecting the argument, similar to the one made by the Trustee here, that the "in

connection with" requirement was not satisfied where an alleged misrepresentation occurred

several levels away from BLMIS's purported purchase and sale of securities).

   Indeed, the object of these safe harbors, as was already shown, is the protection of

market integrity in general.  See Enron, 651 F.3d at 334.  The entire edifice of payments which

are to be protected by these safe harbors cannot remain at the mercy of the characterization of the

initial transfer, especially in view of the fact that often, as here, settlement of securities

transactions requires the transfer of funds through the hands of numerous financial institutions.

Reading a limitation into Section 546(e) such that "in connection with" requires privity with the

debtor, as the Trustee urges, would drastically curtail the stabilizing effect of the Section 546

safe harbors and leave exposed the vast majority of the financial market beyond the initial transfer to unacceptable uncertainty.

Likewise, nothing in Section 546(e) indicates that the debtor's intent is in any way relevant to the question of whether a transfer was made in connection with a particular securities contract.  The cases cited by the Trustee stand only for the proposition that the debtor's intent is relevant in determining whether a transfer was <u>fraudulent</u>, not in determining whether it was made in connection with a securities contract and thus protected by a particular safe harbor.  <u>See</u> Tr. Br. at 39 n.159 (citing <u>Bayou Superfund LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)</u>, 362 B.R. 624, 631 (Bankr. S.D.N.Y. 2007); <u>Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)</u>, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005)).

Finally, neither the Trustee nor SIPC responds to the Financial Institution Defendants' argument that transfers from BLMIS that are alleged to have been received by the Financial Institution Defendants were settlement payments because they completed securities transactions in addition to the investment with BLMIS.  <u>See</u> Opening Br. at 14-16.  Instead, they both repeat the argument—already rejected by this Court—that transfers from BLMIS were not settlement payments "because no securities were ever purchased, sold or delivered, and, therefore, no securities transactions were ever completed."  Tr. Br. at 56.  The Trustee and SIPC miss the point.  Investors purchased actual shares in foreign investment funds, and when they redeemed these shares, the transfer of cash that they are alleged to have received from BLMIS completed securities transactions.  <u>See</u> Opening Br. at 15-16.  <u>See also</u> HSBC Compl. ¶¶ 258, 261, 271, 317-51, 357-75 (alleging that BLMIS transferred money through financial intermediaries to the relevant investment funds, which in turn transferred the same funds through additional financial intermediaries to the Financial Institution Defendants to complete the

redemption of the shares of the investment fund); Citi Compl. ¶¶ 18-20 (same).  Under Enron, this chain of payments also completes the "securities transaction" and therefore falls within the broad definition of "settlement payment," 651 F.3d at 334, and the Trustee is prohibited from avoiding them.

The Trustee argues that Enron "does not support collapsing the distinct transactions here, nor does it hold that a court should disregard the difference between initial and subsequent transferees when applying the section 546(e) safe harbor."  Tr. Br. at 40.  But the Financial Institution Defendants are not relying on Enron to support a collapsing theory.  Rather, the point is that in Enron, there were two distinct transfers: one transfer of commercial paper from the redeeming noteholders to broker-dealers in exchange for payment, and a second transfer of the commercial paper from the broker-dealers to Enron in exchange for payment.  See Enron 651 F.3d at 331.  Despite there being two distinct transactions, the Second Circuit held that the series of transfers, from Enron to the noteholders, constituted a settlement payment.  Here, as in Enron, there was a series of transactions, through financial intermediaries, that completed a securities transaction and therefore constitutes a settlement payment.

Even if the Trustee were correct that the only relevant transactions here are those between BLMIS and initial transferees—and for the reasons stated above he is not—Section 546(e)'s safe harbor for settlement payments would still apply to prevent avoidance of those initial transfers and thus preclude recovery of the subsequent transfers allegedly received by the Financial Institution Defendants.  In this connection, it does not matter that BLMIS itself never purchased or sold any actual securities.  What matters is that, "from the defendants' perspective, . . . withdrawals from their Madoff Securities accounts completed the securities transactions." Greiff, 476 B.R. at 721.  This, of course, is entirely consistent with Enron, in which an issuer's

retirement of debt was held to be a settlement payment even though no securities were actually purchased or sold.  See Enron, 651 F.3d at 336-37.  The whole point of Section 546(e) is to avoid situations where, "[i]f a firm is required to repay amounts received in settled securities transactions, it could have insufficient capital or liquidity to meet its current securities trading obligations, placing other market participants and the securities markets themselves at risk."  Id. at 334.  Neither the Trustee nor SIPC offers any reason why this concern falls away simply because the real transfers made by BLMIS in these cases were ultimately not backed up by the securities positions Madoff claimed to be holding on behalf of his investment advisory clients. At bottom, the Trustee and SIPC urge this Court to adopt the position of the dissent in Enron and graft a "purchase or sale" requirement onto the Bankruptcy Code's extremely broad definition of "settlement payment."  See id. at 340 (Koeltl, J., dissenting).  That simply is not the law.

## CONCLUSION

For the foregoing reasons, the Financial Institution Defendants respectfully request that the Court enter an order dismissing with prejudice all claims against them except for those predicated on Section 548(a)(1)(A) relating to transfers from BLMIS within the two years preceding its bankruptcy.

Dated: October 19, 2012
     New York, New York

| CLEARY GOTTLIEB STEEN & HAMILTON LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
|---|---|
| By: /s/ Thomas J. Moloney | By: /s/ Marco E. Schnabl |
| Thomas J. Moloney (tmoloney@cgsh.com) Lawrence B. Friedman (lfriedman@cgsh.com) Carmine D. Boccuzzi, Jr. (cboccuzzi@cgsh.com) | Marco E. Schnabl (Marco.Schnabl@Skadden.com) Susan L. Saltzstein (Susan.Saltzstein@Skadden.com) Stephanie R. Feld (Stephanie.Feld@Skadden.com) |

Breon S. Peace
  (bpeace@cgsh.com)
David Y. Livshiz
  (dlivshiz@cgsh.com)
Justin L. Ormand
  (jormand@cgsh.com)
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Jeremy A. Berman
  (Jeremy.Berman@Skadden.com)
Four Times Square
New York, New York 10035
(212) 735-3000

SULLIVAN & WORCESTER LLP

By: /s/ Franklin B. Velie

Franklin B. Velie
  (fvelie@sandw.com)
Jonathan G. Kortmansky
  (jkortmansky@sandw.com)
Mitchell C. Stein
  (mstein@sandw.com)
1633 Broadway
New York, New York 10019
(212) 660-3000

21