**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | 12-mc-00115 (JSR) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | (Relates to consolidated proceedings on Section 546(e) issues) |
| MADOFF SECURITIES | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
CONSOLIDATED MOTION TO DISMISS THE TRUSTEE'S CLAIMS
AGAINST BLMIS CUSTOMERS AND OTHERS THAT ARE PRECLUDED
BY SECTION 546(e) OF THE BANKRUPTCY CODE**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 3

I.  ALLEGATIONS OF A DEFENDANT'S "LACK OF GOOD FAITH" DO
    NOT PRECLUDE THE APPLICATION OF SECTION 546(e). ........................ 3

    A.  The Plain Statutory Language Of The Bankruptcy Code Confirms
        That There Is No Good Faith Requirement To Invoking Section
        546(e). ............................................................................................... 3

    B.  Commissions Are Also Entitled To The Protections Of Section
        546(e). ............................................................................................... 6

    C.  The Trustee's Proposed 546(e) "General Fraud" Exclusion Is
        Inapplicable To The Remaining 546(e) Parties And Should Be
        Rejected. ............................................................................................ 8

II.  THE ENFORCEABILITY OF THE BLMIS ACCOUNT DOCUMENTS
     IS IRRELEVANT. .................................................................................... 9

III. THE COURT ALREADY HAS REJECTED THE TRUSTEE'S
     ARGUMENT THAT SECTION 546(e) IS INAPPLICABLE IN THESE
     BLMIS CASES. ...................................................................................... 12

    A.  Collateral Estoppel Precludes The Trustee From Re-Arguing The
        Applicability Of Section 546(e) To These Cases. ................................. 13

    B.  The Law Of The Case Doctrine Bars The Trustee From Re-
        Arguing The Applicability Of Section 546(e). ...................................... 15

CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Artra Group, Inc. v. Salomon Bros. Holding Co.*,
No. 95 C 5233, 1996 WL 637595 (N.D. Ill. Oct. 31, 1996).................................................... 15

*BFP v. Resolution Trust Corp.*,
511 U.S. 531 (1994)................................................................................................................ 4

*Cary Oil Co. v. MG Refining & Mktg., Inc.*,
230 F. Supp. 2d 439 (S.D.N.Y. 2002) .................................................................................... 11

*Foundation Ventures LLC v. F2G Ltd.*,
08 CIV. 10066 PKL, 2010 WL 3187294 (S.D.N.Y. Aug 11, 2010) ....................................... 11

*Ganett Co., Inc. v. Register Pub. Co.*,
428 F. Supp. 818 (D. Conn. 1977)......................................................................................... 11

*In re Adler Coleman*,
263 B.R. 406 (S.D.N.Y. 2001)................................................................................................ 9

*In re Enron Creditors Recovery Corp.*,
651 F.3d 329 (2d Cir. 2011) ............................................................................................... 9, 11

*In re Grimes*,
147 B.R. 307 (Bankr. E.D.N.Y. 1992).................................................................................... 9

*In re Lancelot Investors Fund, L.P.*,
467 B.R. 643 (Bankr. N.D. Ill. 2012) ..................................................................................... 5

*In re Manhattan Inv. Find Ltd.*,
310 B.R. 500 (Bankr. S.D.N.Y. 2002)..................................................................................... 6

*In re Montagne*,
08-10916, 2010 WL 271347 (Bankr. D. Vt. Jan. 22, 2010) ................................................... 15

*In re PCH Assocs.*,
949 F.2d 585 (2d Cir. 1991) .................................................................................................. 15

*In re Pilgrim's Pride Corp.*,
442 B.R. 522 (Bankr. N.D. Tex. 2010)................................................................................... 15

*In re Quebecor World (USA) Inc.*,
No. 11 Civ. 7530 JMF, 2012 WL 4477247 (S.D.N.Y. Sept. 28, 2012).................................... 7

## TABLE OF AUTHORITIES
## (CONTINUED)

**Pages**

*Kidder Peabody & Co. v. Unigestion Int'l Ltd.,*
  903 F. Supp. 479 (S.D.N.Y. 1995) ............................................................. 12

*Kremer v. Chem. Constr. Corp.,*
  456 U.S. 461 (1982) ................................................................................. 14

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
  547 U.S. 71 (2006) ................................................................................... 10

*Picard v. HSBC Bank PLC,*
  454 B.R. 25 (S.D.N.Y. 2011)...................................................................... 9

*Picard v. Katz,*
  462 B.R. 447 (S.D.N.Y. 2011),
  *motion to certify appeal denied,* 466 B.R. 208 (S.D.N.Y. 2012).................... passim

*Rameau v. N.Y. State Dep't of Health,*
  741 F. Supp. 68 (S.D.N.Y. 1990) .............................................................. 14

*SEC v. Cohmad Sec. Corp.,*
  No. 09 Civ. 5680 (LLS), 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) ...................... 7

*SEC v. Zandford,*
  535 U.S. 813 (2002)................................................................................. 10

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
  476 B.R. 715 (S.D.N.Y. 2012), supplemented (May 15, 2012) .................... 4, 13, 14

*Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.,*
  263 F.3d 26 (2d Cir. 2001) ....................................................................... 11

*Tri-Med Fin. Co. v. Nat'l Century Fin. Enterprises, Inc.,*
  208 F.3d 215, 2000 WL 282445 (6th Cir. Mar. 6, 2000) .............................. 14

**Statutes**

11 U.S.C. § 29(b) ....................................................................................... 11, 12

11 U.S.C. § 546(e) ..................................................................................... passim

11 U.S.C. § 547 ............................................................................................... 16

11 U.S.C. § 548(a)(1)(A) .......................................................................... 4, 5, 6, 9

11 U.S.C. § 548(a)(1)(B) ................................................................................. 16

**TABLE OF AUTHORITIES
(CONTINUED)**

**Pages**

11 U.S.C. § 548(c) ........................................................................................ 2, 4, 9

11 U.S.C. § 741(7) ............................................................................................ 14

Martin Act, N.Y. Gen. Bus. L. § 352-353 (McKinney 1996) ....................... 11

 **Other Authorities**

15 Arthur L. Corbin, Corbin on Contracts § 89.2 (2012) ............................ 12

9 Am. Jur. 2d Bankruptcy § 87 ...................................................................... 15

The Remaining 546(e) Parties,[1] by their undersigned counsel, respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss.

### INTRODUCTION

A basic comparison of the Trustee's opposition brief with SIPC's opposition brief confirms that the Trustee knows he is fighting a losing battle with respect to the application of Section 546(e) to these cases.  Plainly unable to answer the question posed by the Court's Section 546(e) Order, the Trustee attempts to reframe the issue in an extreme light that has nothing to do with the facts of these cases but which he believes is more favorable to his position.  As such, the Trustee states that the question here is: "[c]an a defendant who knew that Madoff was not trading securities, but nonetheless set out to profit from Madoff's fraud, avail himself of the safe harbor merely because he signed an account opening agreement."  (*See* Tr. Opp'n at 2.)  According to SIPC, however, the question is "whether the good faith of an initial transferee is a predicate to the application of Section 546(e)."  (SIPC Opp'n at 2.)  The Court's briefing order on this motion makes clear that SIPC's interpretation is closer than the Trustee's: the question at issue here is solely whether or not Section 546(e) incorporates a "good faith" component.  (*See* Section 546(e) Order.)[2]  The answer to that question is clearly no.

***First***, the best evidence that Section 546(e) does not incorporate a good faith obligation is the plain language of the statute itself, which contains no mention of the phrase "good faith" or anything similar.  This conclusion is buttressed by other sections of the Bankruptcy Code, like

[1] Undefined capitalized terms used herein shall have the same meaning ascribed to them as set forth in the Memorandum Of Law In Support Of Consolidated Motion To Dismiss The Trustee's Claims Against BLMIS Customers And Others That Are Precluded By Section 546(e) Of The Bankruptcy Code located at No. 12-mc-115 (JSR), Dkt. No. 260 (S.D.N.Y. July 27, 2012).

[2] The Section 546(e) Order is located at No. 12-mc-115 (JSR), Dkt. No. 119 (S.D.N.Y. May 16, 2012).

Section 548(c), that expressly incorporate a "good faith" requirement.  This proves that when the drafters of the Bankruptcy Code intended to incorporate the concept of good faith into a particular section, they plainly knew how to do so.  Thus, their failure to incorporate "good faith" in Section 546(e) speaks volumes and reconfirms this Court's prior implicit rulings that Section 546(e) applies irrespective of a transferee's good or allegedly bad faith.  (*See infra* at Section I.A.)

*Second*, the Trustee's argument that there is a general "fraudulent scheme" exception to the applicability of Section 546(e)'s safe harbor, notwithstanding the absence of any such exception in the statutory text, proves too much and is wholly without merit.  Even if the Trustee is correct that individuals who actually knew of or participated in the debtor's fraud could not avail themselves of Section 546(e), that would not create a new exception to Section 546(e); rather it would simply render Section 546(e) inapplicable for failure to meet that section's basic statutory elements.  In any case, the allegations against the Remaining 546(e) Parties come nowhere close to approaching this level.  Indeed, the Court already has applied Section 546(e) at the motion to dismiss stage in the *Katz* case, where the allegations of those defendants' bad faith were more particular and far exceeded the allegations levied against the Remaining 546(e) Parties.  (*See infra* at Section I.C.)

*Third*, the Trustee's attempt to avoid application of the Section 546(e) safe harbor by questioning the enforceability of the underlying account opening documents that this Court already has found constitute securities contracts is unavailing.  (*See* Tr. Opp'n at 20.)  The Trustee, standing in the shoes of BLMIS, cannot cite Madoff's fraud as the reason why these prepetition agreements are invalid.  And even if he could, the enforceability of these documents

is wholly irrelevant to the question of whether Section 546(e) applies here.  (*See infra* at Section II.)

*Finally*, SIPC's and the Trustee's attempts to relitigate questions that they already have litigated and this Court already has decided—specifically whether Section 546(e) incorporates a "good faith" component, whether the account agreements are "securities contracts," and whether the transfers made by BLMIS to its customers were "settlement payments"—have no currency, as neither the Trustee nor SIPC has given this Court any cause to revisit or reverse those prior decisions.

## ARGUMENT

I. **ALLEGATIONS OF A DEFENDANT'S "LACK OF GOOD FAITH" DO NOT PRECLUDE THE APPLICATION OF SECTION 546(e).**

Though the Trustee apparently concedes, as he must, that there is no "good faith" predicate to Section 546(e), he nevertheless attempts to impose a good faith requirement upon the Remaining 546(e) Parties by arguing that they "knew or should have known of Madoff's fraud" and therefore "cannot now shield themselves from liability with section 546(e)." (*Compare* Tr. Opp'n at 13 with Tr. Opp'n at 43 ("[T]he Trustee does not claim that a defendant's good faith is a component of a section 546(e) defense.").)  SIPC, meanwhile, continues to insist that parties alleged to have acted with "less than good faith" may not avail themselves of the Section 546(e) safe harbor.  (*See* SIPC Opp'n at 3.)  Neither the Trustee nor SIPC can escape the lack of any support for their position in the clear language of Section 546(e), nor can they offer any basis for superimposing a novel overarching good faith requirement onto Section 546(e).

A. **The Plain Statutory Language Of The Bankruptcy Code Confirms That There Is No Good Faith Requirement To Invoking Section 546(e).**

As a threshold matter, there is absolutely nothing in the statutory text of Section 546(e) that supports the Trustee's argument that Section 546(e) "should not be available to those who

knew *or should have known* of Madoff's fraudulent activity." (*See, e.g.*, Tr. Opp'n at 3 (emphasis added).) Indeed, the Trustee and SIPC never once point to any statutory language suggesting that Section 546(e)'s safe harbor is unavailable to a party who allegedly "should have known" about fraudulent activity. This failure is unsurprising, as there is no such language to be found in Section 546(e) (or anywhere else in the Bankruptcy Code). Rather, as this Court has noted, "actual fraud" claims asserted under Section 548(a)(1)(A) are the *only* fraud claims excluded from Section 546(e)'s scope.[3] *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 722 (S.D.N.Y. 2012), supplemented (May 15, 2012) ("*Greiff*") ("Section 546(e), by its plain terms, already contains an exception for certain kinds of fraud . . . [it] permits the Trustee to avoid actually fraudulent transfers under Section 548(a)(1)(A)."). The explicit exemption of Section 548(a)(1)(A) actual fraud claims from the scope of Section 546(e) confirms that other types of fraud or bad faith claims, including constructive fraudulent transfer claims and state law fraudulent transfer claims, are not excluded from Section 546(e). Indeed, if Congress wished to exclude other fraud or bad faith claims from Section 546(e), or impose a good faith requirement upon that section (like Congress did with respect to Section 548), it easily could have done so. *See BFP v. Resolution Trust Corp.*, 511

---

[3] Indeed, the Trustee's proposed requirement for good faith under Section 546(e)—that the safe harbors "should not be available to those who knew or should have known" or could have discovered Madoff's fraud—is the *exact same* good faith inquiry that the Trustee already has argued is applicable under a different section of the Bankruptcy Code, Section 548(c). (*See* Case No. 12-mc-115 (JSR), Dkt. No. 324, p. 10 (S.D.N.Y. Aug. 31, 2012) ("[T]o determine whether a transferee acted in good faith under section 548(c), a court must undertake a two-step inquiry: (1) whether what the transferee knew or should have known triggered a duty to investigate further; and (2) whether diligent inquiry would have uncovered fraudulent activity.").) But unlike Section 546(e), Section 548(c) explicitly looks to a transferee's good faith. Apparently, the Trustee is now insisting that the *same* good faith inquiry should apply regardless of whether or not a particular section of the Bankruptcy Code expressly considers a transferee's good faith. Such a result would not only be illogical, but would run contrary to Congress's clear intent to incorporate "good faith" only under certain provisions of the Code and not others.

U.S. 531, 537 (1994) (explaining that "it is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another").  Its decision not to should constitute definitive proof of the absence of any such requirement in Section 546(e).

Confronted by the lack of textual support for his proposed exclusion of ***all*** "fraudulent schemes" from Section 546(e)'s safe harbor, the Trustee repeatedly insists that it would be inequitable for defendants who "knew that Madoff was not trading securities," "were complicit in Madoff's fraud," or "knew that BLMIS was not engaged in the purchase or sale of actual securities" to avail themselves of the Section 546(e) safe harbors. (*See* Tr. Opp'n at 2, 14, 16.) But the Trustee evidently fails to realize that allegations of actually fraudulent transfers are precisely the types of transfers for which he has a remedy notwithstanding Section 546(e):  he is free to bring an actual fraudulent transfer claim against such defendants under Section 548(a)(1)(A).  Indeed, the Trustee has brought actual fraudulent transfer claims under that section against most, if not all, of the Remaining 546(e) Parties.  As such, it is apparent that the Trustee's true gripe is that he is limited to only two years' worth of transfers under Section 548(a)(1)(A) rather than the six years' worth that he would be entitled to recover under New York fraudulent transfer law incorporated into the Bankruptcy Code by Section 544.  But Congress clearly gave thought to which claims should be carved out of the scope of Section 546(e) and elected not to do so for fraudulent transfers under state law; instead, it did so only with respect to actual fraudulent transfers under the Bankruptcy Code.  While the Trustee may not be pleased with the results of the statutory scheme here, there is no basis for his request to rewrite Section 546(e), ignore its plain text, or expand the Section 548(a)(1)(A) exemption to suit the Trustee's misconceived view of the equities of this case. *See In re Lancelot Investors Fund,*

*L.P.*, 467 B.R. 643, 653 (Bankr. N.D. Ill. 2012) ("The court realizes that Section 546(e)'s safe harbor does not cover claims for actual fraud.  Congress has excepted fraud from protection to some extent, but not to the extent that the Trustee prefers. . . . Reading Section 546(e) as the Trustee suggests renders the Section 548(a)(1)(A) actual fraud exception superfluous.").

Finally, while the Court need not consult the legislative history because the statutory language is clear on its face, that history nevertheless confirms that Congress clearly did not intend that there be a good faith component to Section 546(e).[4]  (*See* Remaining 546(e) Parties' Mot. to Dismiss at 16-21.)  As reflected therein, the goal of Section 546(e) is to instill confidence in and minimize displacement in the securities markets.  *See Picard v. Katz*, 462 B.R. 447, 452 (S.D.N.Y. 2011), *motion to certify appeal denied*, 466 B.R. 208 (S.D.N.Y. 2012) ("*Katz*") (explaining that the purpose of Section 546(e) is to "minimize the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries") (quoting *In re Manhattan Inv. Find Ltd.*, 310 B.R. 500, 513 (Bankr. S.D.N.Y. 2002)).

### B.    Commissions Are Also Entitled To The Protections Of Section 546(e).

The Trustee argues that certain Remaining 546(e) Parties are not entitled to Section 546(e)'s safe harbor provisions with respect to commissions they were paid (the "Commissions Transfers") because they "should have known" of Madoff's fraud.  But the Trustee ignores the Remaining 546(e) Parties' contention here that the Commission Transfers were made "in connection with" a securities contract and are thus fully protected by Section 546(e).  Rather than rebutting the substance of the point made by the Remaining 546(e) Parties, the Trustee engages

---

[4] The Remaining 546(e) Parties do not dispute that Congress meant to exclude instances of actual fraud under Section 548(a)(1)(A) from the scope of Section 546(e)'s safe harbors, as is clear from a plain reading of the statute.

in semantics by trying to distinguish between "finder's fees" and "commissions." So what. Whether those payments are characterized as fees or commissions, the Trustee still loses because he does not cite a single case that holds that either fees or commissions made "in connection with" a securities contract are not protected by the safe harbor provisions of Section 546(e). Indeed, the Trustee does not even address, much less rebut, the crucial point that the Commissions Transfers were made "in connection with" securities contracts because they (i) compensated certain Remaining 546(e) Parties for referring to BLMIS persons who ultimately entered into securities contracts with BLMIS (the "BLMIS Customer Agreements") and (ii) were based on the amount of money that a referred customer deposited in an account at BLMIS pursuant to the BLMIS Customer Agreements. Nor does he dispute that the phrase "in connection with" in Section 546(e) should be construed broadly. *See In re Quebecor World (USA) Inc.,* No. 11 Civ. 7530 JMF, 2012 WL 4477247, n.8 (S.D.N.Y. Sept. 28, 2012) ("Section 546(e) . . . does not require that the transfer be made in connection with the purchase or sale itself."). That leaves the Trustee solely with the argument that Section 546(e) should not apply because of his novel "general fraud" exemption. As discussed next, however, there is no such exemption.[5]

---

[5] The Trustee has failed to allege actual knowledge on the part of the Cohmad Defendants in the first instance. Indeed, in an action brought by the SEC against the Cohmad Defendants predicated largely on the same allegations as this action, Judge Stanton of this Court held that the SEC had failed to plead facts showing that the Cohmad Defendants knew or should have known of Madoff's fraud. *See SEC v. Cohmad Sec. Corp.*, No. 09 Civ. 5680 (LLS), 2010 WL 363844, at *6 (S.D.N.Y. Feb. 2, 2010). While Judge Lifland did hold that the Trustee's allegations concerning the Cohmad Defendants' knowledge were sufficient to survive a motion to dismiss, the Cohmad Defendants' appeal of this ruling is pending in this Court. *See Cohmad Secs. Corp., et al. v. Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Secs.*, 11-mc-00337-TPG.

**C.    The Trustee's Proposed 546(e) "General Fraud" Exclusion Is Inapplicable To The Remaining 546(e) Parties And Should Be Rejected.**

Even if the Trustee was correct that Section 546(e) might not apply where there is incontrovertible evidence of a transferee's actual knowledge of or participation in the debtor's fraud, that has nothing to do with any "good faith" component to Section 546(e), which, as demonstrated above, does not exist.[6]   Rather, Section 546(e) would not apply in that circumstance because its express elements, like the existence of a "securities contract" and "settlement payments," cannot be met where a transferee conspires with a debtor to manufacture knowingly a bogus "securities contract" or "settlement payment" solely with the intent to insulate the transfer within the safe harbor.  (*See, e.g.*, Transcript of Oral Argument at 12-13, *Picard v. Avellino*, No. 11 Civ. 03882 (S.D.N.Y. Oct. 18, 2011) (agreeing with counsel for SIPC that if **both** sides have actual knowledge of the fraud Section 546(e) does not apply).)

But that extraordinary circumstance bears no resemblance to the facts alleged in these cases, where the Trustee relies entirely on vague and conclusory assertions that the Remaining 546(e) Parties "should have known" or "were on notice" of Madoff's fraud.  As this Court's decision in *Katz* makes clear, such allegations, even if accepted as true, are insufficient to deprive a defendant transferee of the application of Section 546(e).  *See, e.g.*, *Katz*, 462 B.R. at 452.[7]  Indeed, in *Katz*, the allegations of the defendants' knowledge and bad faith—including, for

---

[6] Indeed, the transferee's lack of actual knowledge of or participation in the debtor's fraud must be presumed, and cannot be overcome by the Trustee's complaints that allege actual knowledge only in the most vague and conclusory terms.

[7] By way of example, the Trustee has pled that various of the Remaining 546(e) Parties should have been attuned to rumors that Madoff was "front-running"—that is, interposing securities purchases of his customers in front of those originating at other institutions in securities for which he was a market-maker.  But even knowledge of front-running would not be sufficient to preclude invoking Section 546(e) on the basis that these parties knew that Madoff was not trading securities because, by definition, such a scheme would have involved the settlement of actual securities transactions.

example, allegations that a witness had specifically warned Fred Wilpon of fraud—were far more compelling and particular than the allegations against these Remaining 546(e) Parties. Nonetheless, while this Court found that the Trustee's allegations in *Katz* were sufficient to constitute a triable question of fact as to whether the *Katz* defendants could invoke Section 548(c)'s good faith defense to fraudulent transfers, it also found that those same allegations were ***not*** sufficient to deny the *Katz* defendants the application of Section 546(e)'s safe harbor.  *See Katz*, 462 B.R. at 452.  On that basis, this Court applied Section 546(e) to dismiss all of the Trustee's preference and fraudulent transfer claims against the *Katz* defendants, except for those brought pursuant to Section 548(a)(1)(A).  This Court should do the same here.[8]

## II.   THE ENFORCEABILITY OF THE BLMIS ACCOUNT DOCUMENTS IS IRRELEVANT.

The Trustee argues in several places that "[d]efendants cannot rely upon void, unenforceable agreements with BLMIS or upon Madoff's fake trades to support their section 546(e) affirmative defense."  (Tr. Opp'n at 21.)  The Trustee's argument fails for several independent reasons.

***First***, and as an initial matter, because the contracts at issue arose prepetition and because "the trustee stands in the shoes of the debtor," *Picard v. HSBC Bank PLC*, 454 B.R. 25, 29 (S.D.N.Y. 2011), he cannot rely on the BLMIS fraud to argue that BLMIS's contracts are "null

---

[8] The Trustee's reliance on *In re Adler Coleman*, 263 B.R. 406, 479-80 (S.D.N.Y. 2001)—where the court held that Section 546(e) did not apply because the transferee knowingly and consciously labeled an otherwise fraudulent transaction as a "settlement payment"—is misguided.  In addition to the fact that the reasoning of *Adler* may no longer apply in light of the Second Circuit's intervening decision in *In re Enron Creditors Recovery Corp.*, 651 F.3d 329 (2d Cir. 2011), the allegations against the Remaining 546(e) Parties are very different from the allegations the court was forced to address in *Adler*.  Indeed, not only was the debtor in *Adler* innocent of any fraud (unlike Madoff), but it was established that the customers in *Adler* actually knew that their SIPC net equity claims were based on trades they had never authorized.  There are no such allegations here.

and void." *See In re Grimes*, 147 B.R. 307, 315 (Bankr. E.D.N.Y. 1992) ("No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity.") (internal citation and quotation omitted).  While the Trustee confuses the issue by suggesting that allowing the Remaining 546(e) Parties to enforce "BLMIS's illegal agreements" would somehow result in "a party profiting from its own wrongdoing," (*see* Tr. Opp'n at 25), the wrongdoing here is BLMIS's wrongdoing.  Inequity therefore follows not from recognizing the Account Agreements as securities contracts under Section 546(e), but rather from permitting the Trustee—standing in the debtor's shoes—to invoke Madoff's own fraud as a basis for invalidating his prepetition agreements with the victims of that fraud.

     *Second*, Section 546(e) does not require that the transferee be able to make out a claim under the "securities contract" in question in order for Section 546(e) to apply.  In fact, Section 546(e) does not even require that the payments at issue be made "pursuant to" a securities contract, or even that the contract in question be between the parties.  All that is required is that the payments have been made "in connection with" a securities contract.  *See* 11 U.S.C. § 546(e).  When construing identical language in Section 10(b) of the Exchange Act, the Supreme Court held that fraud may be said to be "in connection with" the "purchase or sale" of a security even where no such "purchase or sale" occurs.  *SEC v. Zandford*, 535 U.S. 813, 819-20 (2002) (holding reasonable the SEC's interpretation that "a broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds" nevertheless violates Rule 10(b)); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (construing the "in connection with" requirement under Rule 10(b) to be met whenever the fraud alleged "coincide[s]" with a securities transaction).  The

present case is no different from this established precedent:  whether or not BLMIS's Account

Agreements are enforceable is irrelevant.  Even were the BLMIS estate entitled to interpose

defenses to enforcement of a given "securities contract," that would not alter the fact that the

payments in question were made "in connection" with that contract.  *See also In re Enron*

*Creditors Recovery Corp.*, 651 F.3d at 336-38 (holding that a "settlement payment" under

Section 546(e) does not require a purchase or sale).  Indeed, the language of Section 546(e)

requires only the existence of a "securities contract," not that the transferee be entitled to prevail

in an action to enforce it.

    ***Third***, the Trustee mistakenly relies on a host of investor protection statutes—including

Section 10(b) of the Exchange Act and the Martin Act—for the illogical argument that Madoff's

violations of those statutes precludes investors who are the ***victims*** of fraud from relying on the

contracts that were the instruments of the fraud ***against*** them.   (*See* Tr. Opp'n at 22-23.)

According to the Trustee, the BLMIS Account Agreements are "void" or "outside the scope" of

Section 546(e) because they violate the anti-fraud provisions of federal and state law.[9]  (*See id.* at

20-24.)  The Trustee is wrong.  In actuality, "an agreement induced by fraud in violation of the

securities acts is not ipso facto void . . . such contract may be either affirmed or avoided by the

innocent party."  *Ganett Co., Inc. v. Register Pub. Co.*, 428 F. Supp. 818, 831 (D. Conn. 1977)

(construing Section 29(b) of the Exchange Act); *see also Sphere Drake Ins. Ltd. v. Clarendon*

*Nat. Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001) ("[A]n allegation of fraud in the inducement is a

defense that render contracts voidable, but not void.");  *Foundation Ventures LLC v. F2G Ltd.*, 08

CIV. 10066 PKL, 2010 WL 3187294, at *6 (S.D.N.Y. Aug 11, 2010) ("Contracts made in

---

[9] Notably, the Trustee has not actually pled or established that BLMIS's Account Agreements
(which provided nothing more than that BLMIS would trade securities and options on its clients'
behalves) were in fact "illegal" except in the sense that those agreements were used as a
mechanism to defraud the Remaining 546(e) Parties themselves.

violation of section 29(b) are not void *per se*; rather, they are voidable at the option of the innocent party."); *Cary Oil Co. v. MG Refining & Mktg., Inc.*, 230 F. Supp. 2d 439, 452-53 (S.D.N.Y. 2002) ("Even contracts made in violation of the securities laws, and thus subject to Section 29(b) of the Securities Exchange Act of 1934, which states that such contracts are 'void,' are merely voidable at the option of the innocent party.") (internal citation and quotation omitted); *Kidder Peabody & Co. v. Unigestion Int'l Ltd.*, 903 F. Supp. 479, 498 (S.D.N.Y. 1995) ("Courts have construed Section 29(b) to render any contract made in violation of the Exchange Act 'voidable' at the option of the wronged party.").

*Fourth*, the Trustee cannot prevail on his argument that the Remaining 546(e) Parties may not invoke Section 546(e) because "sophisticated investors should be held accountable for their infractions," (Tr. Opp'n at 26), and that in order to "maintain an action on [a] contract, 'the innocent party must forbear to render such aid and must remain an innocent party.'"  (Tr. Opp'n at 27 (quoting 15 Arthur L. Corbin, Corbin on Contracts 89.2 (2012)).)  But the Remaining 546(e) Parties are not seeking to "maintain an action on [a] contract."  Moreover, the Trustee strains credulity to suggest that the Remaining 546(e) Parties' alleged failure—like the failure of the SEC and other securities regulators—to discover that they were being victimized is sufficient to charge them as full participants in Madoff's Ponzi scheme.

## III.   THE COURT ALREADY HAS REJECTED THE TRUSTEE'S ARGUMENT THAT SECTION 546(e) IS INAPPLICABLE IN THESE BLMIS CASES.

Finally, the Court can, and should, reject the Trustee's attempt to relitigate the applicability of Section 546(e) in these BLMIS cases for two reasons.  *First*, the Trustee is collaterally estopped from relitigating whether (a) Section 546(e) imposes a "good faith" requirement, (b) the account agreements here are "securities contracts," and (c) the payments made here are "settlement payments" under Section 546(e).  *Second*, it is the law of the case in

these adversary proceedings brought within the BLMIS SIPA liquidation that Section 546(e) provides a safe harbor for all of the Trustee's preference, constructive fraudulent transfer, and state law fraudulent transfer claims.

      **A.    Collateral Estoppel Precludes The Trustee From Re-Arguing The Applicability Of Section 546(e) To These Cases.**

In both *Katz* and *Greiff*, this Court correctly held that Section 546(e) applies in these cases notwithstanding the Trustee's allegations of a party's lack of good faith, that the BLMIS account opening documents constitute "securities contracts," and that the transfers at issue here constitute "settlement payments" as defined in the Bankruptcy Code.  *See Katz*, 462 B.R. 447; *Greiff*, 476 B.R. 715.[10]  The Trustee is barred by collateral estoppel from relitigating these issues against the Remaining 546(e) Parties, all of whom are, for collateral estoppel purposes, identically situated to the defendants in *Katz*.

The Trustee tries to avoid collateral estoppel by claiming that the question here is not identical to the question raised in *Katz* or *Greiff*.  To do so, the Trustee conveniently frames the issue in *Katz* and *Greiff* as narrowly as possible, arguing that the sole issue was whether, as a matter of law, Section 546(e) bars the Trustee from avoiding fraudulent transfers.  (*See* Tr. Opp'n at 42.)  But in *Katz*, the Court held that the defendants could avail themselves of Section 546(e)'s safe harbor, and did so notwithstanding the many allegations of bad faith brought by the Trustee against those defendants (on which the *Katz* defendants were forced to proceed to trial).  *See Katz*, 462 B.R. at 452-53.  Indeed, were the Court now to hold that the Remaining 546(e) Parties could not invoke Section 546(e), the Court would create an inconsistent holding that

---

[10] SIPC argues that *Katz* and *Greiff* do not constitute final orders.  (*See* SIPC Opp'n at 15-16.) But as explained in the Remaining 546(e) Parties' opening brief, the resolution of the Section 546(e) issue in *Katz* was necessary to support the Court's September 27, 2011 order that became final no later than June 6, 2012.  (*See* Remaining 546(e) Parties Mot. to Dismiss at 11, n. 7.)

allowed parties who allegedly acted with bad faith to shield themselves under safe harbors while parties who are merely alleged to have "lacked good faith" could not.[11]

The Trustee also claims that the applicability of "good faith" to Section 546(e) was "neither briefed nor considered" in *Katz*, but he ignores the fact that at the *Katz* oral argument the Court explicitly raised the issue of whether a transferee's bad faith could impact the applicability of Section 546(e). (*See* Tr. Opp'n at 43.) The Trustee further ignores that, in the briefing that led to the Court's decision in *Greiff*, he himself adopted the view that intent was irrelevant to the application of Section 546(e), (*see* Tr. Opp'n to Blumenthal's Mot. to Dismiss at 24, *Picard v. Blumenthal,* 11 Civ. 4293 (JSR) (S.D.N.Y. Dec. 2, 2011)), a position consistent with the Trustee's previous argument to the bankruptcy court that Section 546(e) "does not differentiate between good faith and bad faith investors." (*See* Remaining 546(e) Parties Mot. to Dismiss at 17-18.)

Finally, the Trustee and SIPC offer no reason whatsoever why the Court should revisit its prior rulings that: (1) BLMIS qualified as a "stockbroker;" (2) JPMorgan Chase qualifies as a "financial institution;" (3) the Remaining 546(e) Parties' Account Agreements constitute "securities contracts" under Section 741(7); and (4) the definition of "settlement payment" under

---

[11] To the extent that the Trustee now claims that he did not have "an opportunity to brief whether account agreements are master agreements or security agreements" in *Greiff*, he is mistaken. All that is required to satisfy the "opportunity to litigate" prong of the collateral estoppel analysis are procedures that "meet the minimum demands of procedural due process." *Rameau v. N.Y. State Dep't of Health*, 741 F. Supp. 68, 71 n.3 (S.D.N.Y. 1990) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483–84 (1982)). Indeed, courts have applied collateral estoppel even where a party chooses not to brief an issue at all. *See Tri-Med Fin. Co. v. Nat'l Century Fin. Enterprises, Inc.*, 208 F.3d 215, 2000 WL 282445, at *10 (6th Cir. Mar. 6, 2000) ("That Tri-Med did not brief the issue of trade secrets in the *Prudential* matter, but chose to stand on the allegations of its complaint alone was, of course, a strategic decision, and one that does not prevent us from concluding that Tri-Med 'had a full and fair opportunity to litigate the issue in the prior proceeding.'").

the Bankruptcy Code captures all payments made by BLMIS to its customers.  *See Katz*, 462 B.R. at 452; *Greiff*, 476 B.R. 719-21.

### B.   The Law Of The Case Doctrine Bars The Trustee From Re-Arguing The Applicability Of Section 546(e).

The Trustee contends that a lack of identity between the parties in this case and those in *Katz* and *Greiff* bars application of the law of the case doctrine.  (*See* Tr. Opp'n at 44-45.)  But the Trustee ignores recent precedent that all adversary proceedings are part of the larger bankruptcy proceeding.  *See, e.g.*, *In re Montagne*, 08-10916, 2010 WL 271347, at *5-6 (Bankr. D. Vt. Jan. 22, 2010); *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 534-35 (Bankr. N.D. Tex. 2010); *Artra Group, Inc. v. Salomon Bros. Holding Co.*, No. 95 C 5233, 1996 WL 637595, at *5 (N.D. Ill. Oct. 31, 1996); 9 Am. Jur. 2d Bankruptcy § 87 (2011) (noting all adversary proceedings are "subactions" raised within a case).  Accordingly, the "Second Circuit rule" that this doctrine is "ordinarily applied in later stages of the same lawsuit" is fully applicable here against the Trustee, who should not be permitted to relitigate this issue.  *See In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991).

The Remaining 546(e) Parties do not dispute that application of law of the case is discretionary.  Its application here, however, is entirely appropriate because the very purpose of the Bankruptcy Code is to ensure that creditors in a single bankrupt estate are treated uniformly. The law of the case doctrine promotes this policy by preventing the inconsistent administration of justice that would result if inconsistent rulings are applied to similarly situated transferees who received transfers from the same debtor.  *See Pilgrim's Pride Corp.*, 442 B.R. at 530-31 ("There are few things that would frustrate the purpose of the Bankruptcy Code and the certainty of bankruptcy proceedings more than if a court arrived at different results in a given case respecting the allowance and disallowance of claims based on identical or substantially similar facts and

identical legal theories.").  Thus, for example, because this Court already has applied Section 546(e) to the *Katz* defendants, notwithstanding their alleged bad faith, the policies behind the law of the case doctrine in these SIPA-related bankruptcy proceedings militates in favor of this Court reaching the same conclusion here with respect to the Remaining 546(e) Parties.

## CONCLUSION

For all the foregoing reasons, the Trustee's claims to avoid and recover transfers from the Remaining 546(e) Parties on theories of preference (Section 547), constructive fraud (Section 548(a)(1)(B)), and state law (Section 544) should be dismissed pursuant to 11 U.S.C. § 546(e).

Dated:      October 19, 2012
            New York, New York

**KIRKLAND & ELLIS LLP**

By:  /s Joseph Serino, Jr.
        Jay P. Lefkowitz, P.C.
        Joseph Serino, Jr.
        David S. Flugman

601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
jay.lefkowitz@kirkland.com
joseph.serino@kirkland.com
david.flugman@kirkland.com

*Attorneys for Herald Fund SPC and*
*Franco Mugnai*

**CLEARY GOTTLIEB STEEN &**
**HAMILTON LLP**

By:     /s Carmine D. Boccuzzi, Jr.
        Lewis J. Liman
        Jeffrey A. Rosenthal
        Carmine D. Boccuzzi, Jr.
        Members of the Firm

One Liberty Plaza
New York, New York 10006
Telephone:      (212) 225-2000
Facsimile:      (212) 225-3999
lliman@cgsh.com
jrosenthal@cgsh.com
cboccuzzi@cgsh.com

Paul R. St. Lawrence III
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:      (202) 974-1789
Facsimile:      (202) 974-1999

*Attorneys for Ivy Asset Management LLC and*
*certain affiliated entities and individuals,*
*Thybo Asset Management Limited and Thybo*
*Stable Fund Ltd.*

**FRIEDMAN KAPLAN SEILER &**
**ADELMAN LLP**

By:     /s William P. Weintraub
        William P. Weintraub
        Gregory W. Fox

Seven Times Square
New York, New York 10036-6515
Telephone:      (212) 833-1109
Facsimile:      (212) 373-7909
wweintraub@fklaw.com
gfox@fklaw.com

*Attorneys for the defendants in Picard v.*
*Edward Blumenfeld, et al.*

**QUINN EMANUEL URQUHART &**
**SULLIVAN LLP**

By:     /s Robert S. Loigman
        Susheel Kirpalani
        Robert S. Loigman

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:      (212) 849-7000

*Counsel to the Joint Liquidators of Kingate*
*Global Fund Ltd. and Kingate Euro Fund Ltd.*

17