UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
SECURITIES INVESTOR PROTECTION
CORPORATION,                           :

                                       :
             Plaintiff,                :
                                       :          12 MC 115 (JSR)
             -v-                       :
                                       :          OPINION & ORDER
BERNARD L. MADOFF INVESTMENT           :
SECURITIES LLC,                        :
                                       :
             Defendant.                :
------------------------------------ x
                                       :
In re:                                 :
                                       :
MADOFF SECURITIES                      :
                                       :
------------------------------------ x



PERTAINS TO CASES LISTED IN EXHIBITS
A & C OF ITEM FOUR ON THE DOCKET OF
THIS CASE

JED S. RAKOFF, U.S.D.J.

Irving Picard (the "Trustee"), the trustee appointed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa et seq., to administer the estate of Bernard L. Madoff Investment Securities LLC ("Madoff Securities"), has filed hundreds of actions that seek to avoid transfers made by Madoff Securities on the ground that the transfers were fraudulent or preferential. Defendants in more than three hundred actions have moved based on Stern v. Marshall, 131 S. Ct. 2594 (2011), to withdraw the reference of their cases to the Bankruptcy Court. They argue that the Bankruptcy Court lacks both constitutional and statutory authority to adjudicate the Trustee's claims. On April 13, 2012, the Court consolidated the motions to withdraw that relied on Stern for the purpose of resolving three

issues: (1) whether the Bankruptcy Court may exercise the judicial power necessary to finally decide the Trustee's avoidance actions; (2) whether, even if the Bankruptcy Court may not enter final judgment, it has authority to recommend proposed findings of fact and conclusions of law; and (3) whether the Court, in light of Stern, should withdraw the reference "for cause shown." See Order dated April 13, 2012, No. 12 Misc. 115.

The parties extensively briefed these issues, and the Court heard oral argument on June 18, 2012. While these proceedings occurred, a number of judges in this District, including the undersigned, published opinions that considered the same issues in the context of other bankruptcy proceedings. See, e.g., In re Arbco Capital Mgmt., LLP, 479 B.R. 254 (S.D.N.Y. 2012); Kirschner v. Agoglia, 476 B.R. 75 (S.D.N.Y. 2012); In re Lyondell Chem. Co., 467 B.R. 712 (S.D.N.Y. 2012). These opinions display an emerging consensus. Each concludes that, although the Bankruptcy Court may not ordinarily enter final judgment on avoidance claims, it may nonetheless hear the case in the first instance and recommend proposed findings of fact and conclusions of law. E.g., Arbco, 479 B.R. at 263-67; Kirschner, 476 B.R. at 82-83; Lyondell, 467 B.R. at 724-25. Each case further holds that, because the Bankruptcy Court may issue proposed findings of fact and conclusions of law, the district court need not withdraw "for cause shown" a case referred to the Bankruptcy Court before the Bankruptcy Court has made its report and recommendation. E.g., Arbco, 479 B.R. at 263-68; Kirschner, 476 B.R. at 83; Lyondell, 467 B.R. at 725.

2

Consistent with that conclusion, the Board of Judges of this District has also amended its standing order of referral of cases to the Bankruptcy Court to provide that "[i]f a bankruptcy judge or a district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution[,] . . . the bankruptcy judge shall . . . submit proposed findings of fact and conclusions of law to the district court." See Amended Standing Order of Reference, No. 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012). Having now fully considered the parties' briefs and arguments, the Court adheres to the District's emerging consensus, adapting it, as described below, to the unique legal and factual considerations presented here.

The Court turns first to the question of whether the Bankruptcy Court may exercise the judicial power necessary to resolve avoidance claims. Article III of the United States Constitution reserves the "judicial Power" of the United States to federal judges who are selected according to specific procedures, "hold their Offices during good Behaviour," and receive compensation in an amount the other branches of the government may not diminish. U.S. Const. art. II, § 2, cl. 2; U.S. Const. art. III, § 1. These requirements protect litigants' rights by ensuring the judiciary's independence. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 58 (1982). In accordance with Article III, and in furtherance of judicial independence, courts have "have long recognized that, in general, Congress may not 'withdraw from judicial cognizance any matter which,

3

from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" Stern v. Marshall, 131 S. Ct. 2594, 2609 (2011) (quoting Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272, 284 (1856)). Bankruptcy judges neither have life tenure nor are appointed according to the procedures required by Article III. See generally 28 U.S.C. § 152. Thus, whether Congress may empower the Bankruptcy Court to finally resolve a claim, thereby withdrawing that claim from the "cognizance" of an Article III judge, depends on the type of claim at issue.

Specifically, Congress may empower administrative agencies or legislative courts (so called "Article I" courts) -- including the Bankruptcy Court -- to resolve matters involving public rights, but not matters involving private rights. N. Pipeline, 458 U.S. at 69-70. Public rights relate to the "performance of the constitutional functions of the executive or legislative departments," N. Pipeline, 458 U.S. at 68 (quoting Crowell v. Benson, 285 U.S. 22, 50 (1932)), and are "closely integrated into a public regulatory scheme." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 54 (1989) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 594 (1985)). Congress can commit such matters entirely to the executive's discretion, and thus it also has the lesser power of providing for their resolution by an Article I court. See N. Pipeline, 458 U.S. at 68 ("The understanding of these cases is that the Framers expected that Congress would be free to commit such matters completely to nonjudicial executive determination, and that as a result there can be

4

no constitutional objection to Congress' employing the less drastic expedient of committing their determination to a legislative court or an administrative agency."). In contrast, Congress cannot empower Article I courts to finally adjudicate matters "of private right, that is, of the liability of one individual to another under the law as defined." Stern, 131 S. Ct. at 2612 (quoting Crowell, 285 U.S. at 50-51).

In Granfinanciera, the Supreme Court, considering whether a defendant had a Seventh Amendment right to a jury trial, held that a Trustee's right to recover a fraudulent transfer is "more accurately characterized as a private rather than a public right" because suits to avoid transfers "are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." 492 U.S. at 55-56.[1] In Stern, the Court applied the same analysis to the determination of whether Congress could empower a non-Article III tribunal to finally decide a claim. 131 S. Ct. at 2614.

---

[1] Although Granfinanciera considered whether a defendant in an avoidance action had a Seventh Amendment right to a jury trial, the Supreme Court analyzed that question under the framework it had previously developed for determining whether a non-Article III tribunal could finally decide a claim. See 492 U.S. at 49 ("Unless Congress may and has permissibly withdrawn jurisdiction over that action by courts of law and assigned it exclusively to non-Article III tribunals sitting without juries, the Seventh Amendment guarantees petitioners a jury trial upon request."). Because the same framework applies to both issues, the Court cannot distinguish Granfinanciera on the ground that it did not consider whether the Bankruptcy Court may finally decide avoidance actions. Moreover, the fact that, as described below, Stern relied on Granfinanciera when considering whether the Bankruptcy Court could finally decide certain claims further demonstrates that the same framework applies to both issues.

Specifically, the Court held that the state-law counterclaim at issue, "like the fraudulent conveyance claim at issue in Granfinanciera[, did] not fall within any of the varied formulations of the public rights exception in this Court's cases." Id. Thus, the Court concluded that Congress had improperly vested judicial power in a non-Article III judge when it allowed bankruptcy courts "to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." Id. at 2620. It reached this conclusion even though the counterclaim was a "core" bankruptcy proceeding. Id. at 2604.[2]

It is true, as the Court in Stern noted, that in certain circumstances, the Supreme Court has permitted bankruptcy courts to finally resolve avoidance actions. In Katchen v. Landy, the Supreme Court held that, when a creditor had filed a claim to the bankruptcy estate, and the bankruptcy trustee had sought both to disallow that claim and to avoid a preference, the Bankruptcy Court could decide the

---

[2] The Trustee notes that the Supreme Court characterized its holding as a "narrow" one that would not "meaningfully change[] the division of labor" between bankruptcy and district courts. Stern, 131 S. Ct. at 2620. But such dictum cannot trump the Court's holding that the state-law counterclaim at issue, "like the fraudulent conveyance claim at issue in Granfinanciera[, did] not fall within any of the varied formulations of the public rights exception in this Court's cases." Id. at 2614 (emphasis added). Where the Supreme Court's dicta arguably conflicts with the logic of its holding, lower courts are bound to follow its logic. Kirschner, 476 B.R. at 81 ("[C]autionary dicta and past practice do not overcome the logic of the Supreme Court's holding in Stern.") Other courts in this District have reached the same conclusion. See Arbco, 479 B.R. at 264 ("[T]he Trustee's argument ignores Stern's conclusion that the bankruptcy court can enter final judgment only on those claims that fall within the public rights exception . . . ."); Lyondell, 467 B.R. at 721 ("This argument runs directly contrary to the clear language of Stern.").

avoidance action. 382 U.S. 323, 336-38 (1966). In so doing, the Court first noted that the Bankruptcy Court had jurisdiction over whether to disallow the creditor's claim to the estate. Id. at 336. It also observed that, under the statute that then governed the disallowance of claims, "a bankruptcy court must necessarily determine the amount of preference, if any, so as to ascertain whether the claimant, should he return the preference, has satisfied the condition imposed by [the statute] on allowance of the claim." Id. at 334. Because the Bankruptcy Court had jurisdiction to decide issues that would completely resolve the trustee's preference claim, the Supreme Court reasoned that the Bankruptcy Court necessarily also had the power to decide that preference claim. Id. at 336-37.[3] Langenkamp v. Culp, decided after Granfinanciera, reached an identical result. See 498 U.S. 42, 44 (1990) ("[T]he creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction."). In Stern, however, the Court distinguished Katchen and Langenkamp on the ground that the Bankruptcy Court did not need to

---

[3] Nonetheless, the Supreme Court "intimate[d] no opinion concerning whether the referee has summary jurisdiction to adjudicate a demand by the trustee for affirmative relief, all of the substantial factual and legal bases for which have not been disposed of in passing on objections to the claim." Katchen, 382 U.S. at 332 n.9. In Stern, the Supreme Court distinguished the claim at issue on the ground that there was "never reason to believe that the process of ruling on Pierce's proof of claim would necessarily result in the resolution of Vickie's counterclaim," suggesting that a disallowance claim must totally subsume an avoidance action for a Bankruptcy Court to have authority to issue a final decision in that action under Katchen. 131 S. Ct. at 2617-18.

resolve the debtor's counterclaim for defamation in order to decide the creditor's claim to the estate. 131 S. Ct. at 2616-17.

Here, the Trustee brings his avoidance actions under SIPA, rather than the Bankruptcy Code. See 15 U.S.C. § 78fff-2(c)(3) ("[T]he trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11."). The Court has no difficulty concluding that avoidance actions under SIPA, like those under the Bankruptcy Code, assert private rights. See Granfinanciera, 492 U.S. at 56 ("There can be little doubt that fraudulent conveyance actions by bankruptcy trustees . . . are quintessentially suits at common law."). This conclusion applies equally to actions that seek to avoid transfers as fraudulent and actions that seek to avoid transfers as preferential. See Schoenthal v. Irving Trust Co., 287 U.S. 92, 94 (1932) ("In England, long prior to the enactment of our first Judiciary Act, common-law actions of trover and money had and received were resorted to for the recovery of preferential payments by bankrupts."). Since the Supreme Court looks at the historical nature of a claim to determine whether it asserts a private or a public right, it would appear that whether an avoidance action arises under the Bankruptcy Code or under SIPA matters little. As in Stern, an avoidance action  -- whether brought under SIPA or under the Bankruptcy Code -- "is not a matter that can be pursued only by grace of the other branches, . . . or one that historically could have been determined exclusively by those

8

branches." 131 S. Ct. at 2614 (citations and internal quotation marks omitted). Resolution of an avoidance action brought under SIPA would thus require an exercise of the judicial power reserved for Article III courts.

In an effort to avoid this conclusion, the Trustee, joined by the Securities Investor Protection Corporation ("SIPC"), argues that avoidance actions brought under SIPA assert public rather than private rights. The Trustee argues that Congress, by referring claims to an agency with "obvious expertise" at administering the relevant statutes and regulations, can bring claims within the public rights exception in order to make "effective a specific and limited federal regulatory scheme". CFTC v. Schor, 478 U.S. 833, 855-56 (1986). According to the Trustee, his claims here, unlike avoidance actions under the Bankruptcy Code, "derive[] from a federal regulatory scheme," namely, SIPA. Noting that a liquidation proceeding under SIPA differs from one under the Bankruptcy Code -- for example, SIPA prioritizes "customers" over other creditors and provides that they "share ratably . . . to the extent of their respective net equities," 15 U.S.C. § 78fff-2(c)(1)(B) -- the Trustee and SIPC argue that, because avoidance actions permit the Trustee to recover funds in order to pay priority claims, see 15 U.S.C. § 78fff-2(c)(3), these actions form an integral part of SIPA's statutory scheme, and thus assert a public right.

Although the Supreme Court concededly has not always given an "entirely consistent" definition of the public right exception, making its contours "the subject of some debate," avoidance actions lack

9

several of the characteristics shared by claims that assert public rights. Stern, 131 S. Ct. at 2611. In Stern, the Supreme Court defined the public rights exception to include only "cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority." Id. at 2613. Not every statutory scheme qualifies as "a federal regulatory scheme." If Congress could transform a private right into a public right merely by incorporating that right into a statutory scheme, then Article III would offer litigants little protection. See id. at 2615. Instead, whenever the Supreme Court has held that "a federal regulatory scheme" creates a public right, a regulatory agency has administered that scheme. See, e.g., Schor, 478 U.S. at 855-56; Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 590 (1985). In Schor, the relevant agency possessed an "obvious expertise" that facilitated decision-making, and the agency's assertion of jurisdiction over a seemingly private right was "necessary to make the [larger scheme] workable." 478 U.S. at 855-56. Similarly, in Thomas, Congress could have authorized the relevant agency to make the decision in question, and thus it had the lesser power of referring that decision to arbitrators. 473 U.S. at 589-90. Finally, in both cases, the adjudicative scheme was partly consensual. Schor, 478 U.S. at 855; Thomas, 473 U.S. at 589.

Here, Congress has referred avoidance actions under SIPA not to a regulatory agency, but instead to the Bankruptcy Court. While the

10

Bankruptcy Court has relevant expertise, the Trustee and SIPC do not contend -- nor could they -- that Congress could empower an executive agency to decide avoidance actions without recourse to adjudicative proceedings. Moreover, the Trustee and SIPC have not explained why permitting the Bankruptcy Court to finally decide avoidance actions under SIPA is "necessary to make" SIPA's statutory scheme "workable." Although avoidance actions may serve different purposes under SIPA than they do under the Bankruptcy Code, the fact that proceedings under the Bankruptcy Code do not empower the Bankruptcy Court to finally decide avoidance actions strongly suggests that proceedings under SIPA do not do so either. See 15 U.S.C. § 78fff(b) ("[A] liquidation proceeding shall be conducted in accordance with, and as though it were be conducted under . . . Title 11."). Finally, many parties to avoidance actions under SIPA, including the defendants here, do not consent to adjudication of their cases by the Bankruptcy Court. Thus, "[w]hat is plain here is that this case involves the most prototypical exercise of judicial power: the entry of a final, binding judgment by a court with broad substantive jurisdiction, . . . when the action neither derives from nor depends upon any agency regulatory regime." Stern, 131 S. Ct. at 2615.

Even though the Trustee's avoidance actions assert a private rather than a public right, the Bankruptcy Court may nonetheless have the authority to finally resolve those actions to the extent that, under Katchen, it must decide a claim that raises the same issues as the avoidance action. Under Katchen, where the Bankruptcy Court has

11

independent authority to decide whether to disallow a defendant's claim to the estate, and a decision on that issue would bind the parties under normal principles of res judicata in a separate avoidance action, the Bankruptcy Court may resolve the avoidance action to the extent necessary to effectuate its independent authority. 382 U.S. at 334-35; see also Stern 131 S. Ct. at 2617 ("[T]here was never any reason to believe that the process of adjudicating Pierce's proof of claim would necessarily resolve Vickie's counterclaim."). This approach prevents the existence of identical issues from eroding the Bankruptcy Court's jurisdiction over claims that Congress has appropriately empowered it to resolve. Moreover, it avoids the risk of inconsistent decisions that exists whenever two different courts must resolve identical issues.

Because SIPA governs the liquidation of Madoff Securities' estate, different types of claims are implicated than in an ordinary liquidation under Title 11. In a SIPA proceeding, customers of the debtor can file claims to recover their "net equit[ies]," i.e., "the sum which would have been owed by the debtor to such customer if the debtor had liquidated, . . . on the filing date[,] . . . all securities positions of such customer." 15 U.S.C. §§ 78fff-2(b), 78lll(11). Determining the amounts of customers' net equity claims does not require the Bankruptcy Court to conclusively resolve any of the issues that arise in an avoidance action, much less the action in its entirety. See generally 11 U.S.C. §§ 547, 548. In this liquidation proceeding, the Bankruptcy Court has rejected many customer claims

12

simply because the customer, according to the Trustee's calculations, had no net equity. The Second Circuit has affirmed the Bankruptcy Court's decision and approved the Trustee's method for determining net equity claims. See generally In re Bernard L. Madoff Inv. Sec. LLC, 654 F.2d 229 (2d Cir. 2011). Nonetheless, these decisions have not resolved important issues that avoidance actions raise, and thus they have not bound the parties as res judicata. Accordingly, the fact that certain defendants have filed net equity claims, standing alone, does not empower the Bankruptcy Court to finally decide the Trustee's avoidance actions. As in Stern, the Court has no "reason to believe that the process of adjudicating" net equity claims "would necessarily resolve" the Trustee's avoidance actions. 131 S. Ct. at 2617.[4]

It may be noted in passing that in only one circumstance could the Bankruptcy Court conceivably resolve an avoidance action in the process of deciding a claim over which it has jurisdiction. Under 11 U.S.C. § 502(d), the Bankruptcy Court "shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 547 [or] 548 . . . of this title, unless such entity has paid the amount . . . for which such entity or transferee is liable." Evidently, where the Trustee has sought to disallow a claim under § 502(d), the Bankruptcy Court will have to determine whether the claimant has received "a transfer avoidable under section . . . 547 [or] 548." Indeed, Katchen involved the statutory predecessor of

---

[4] This conclusion applies with equal force to subsequent transferees whose claims to Madoff Securities' estate have been rejected because the subsequent transferees fail to qualify as "customers" of Madoff Securities.

§ 502(d), which forbade the allowance of a claim when the creditor had "received or acquired preferences . . . void or voidable under this title." 382 U.S. at 330. Thus, under Katchen, whenever the Bankruptcy Court must resolve a § 502(d) claim brought by the Trustee, it may also finally decide avoidance actions to the extent that those actions raise the same issues as the § 502(d) claim and thus would "necessarily" be resolved by it.

The defendants argue that, even if the Bankruptcy Court has the authority to decide avoidance actions in the process of resolving claims under § 502(d), it still cannot resolve any of the avoidance actions under consideration because § 502(d) does not apply in SIPA proceedings. The defendants rely principally on Picard v. Katz, which dismissed a § 502(d) claim on the ground that it conflicted with 15 U.S.C. § 78fff-2(c)(3), see 462 B.R. 447, 456 (S.D.N.Y. 2011), and on In re Ames Dep't Stores, Inc., which held that § 502(d) does not apply to claims for administrative expenses under § 503(b) of the Bankruptcy Code, see 582 F.3d 422, 432 (2d Cir. 2009). However, the Court need not determine in this Opinion whether SIPA alters the normal application of § 502(d) because it has received separate consolidated briefing on that issue in all of the adversarial proceedings in this liquidation that have identified the issue as a basis for withdrawal of the reference. See Order dated June 1, 2012, No. 12 Misc. 115. If, after consideration of that more extensive briefing, the Court concludes that § 502(d) does not apply in SIPA proceedings, the

See In re Aozora Bank Ltd., 480 B.R. 117, 120 (S.D.N.Y. 2012).

Bankruptcy Court will have no occasion to decide avoidance actions in the process of resolving claims under § 502(d).

Having concluded that the Bankruptcy Court may not finally decide avoidance actions except conceivably in the process of resolving identical claims under § 502(d), the Court must now consider whether the Bankruptcy Court may nonetheless hear the case in the first instance and recommend proposed findings of fact and conclusions of law, which the district court would then review de novo. "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). "Section 157 [of Title 28] classifies matters as either 'core proceedings,' which the bankruptcy court may 'hear and determine' and on which the court 'may enter appropriate orders and judgments,' § 157(b)(1), or 'non-core proceedings,' which the bankruptcy court may hear, but for which the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for de novo review, § 157(c)(1)." In re Orion Pictures Corp., 4 F.3d 1095, 1100-01 (2d Cir. 1993). "Core proceedings include" actions to avoid or recover both "preferences" and "fraudulent conveyances." 28 U.S.C. § 157(b)(2)(F) & (H). The classification of avoidance actions as core raises the following issue: as a result of the subsequent decision in Stern, it is now clear that Article III prohibits the Bankruptcy Court from exercising in many instances the power that § 157 explicitly confers. Thus, the Court must therefore determine whether the Bankruptcy Court

may "submit proposed findings of fact and conclusions of law" with respect to avoidance actions even though § 157 does not explicitly empower it to do so.

Where a constitutional infirmity disrupts the operation of a statutory scheme, courts must "seek to determine what Congress would have intended in light of the Court's constitutional holding." Nat'l Fed. of Bus. v. Sebelius, 132 S. Ct. 2566, 2607 (2012) (quoting United States v. Booker, 543 U.S. 220, 246 (2005)). Nonetheless, courts are not "free to rewrite the statutory scheme in order to approximate what we think Congress might have wanted had it known that [a particular provision] was beyond its authority." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 76 (1996). Here, the Court need not attempt to "approximate" Congress's intent because, as numerous courts have previously noted, the history and structure of § 157 indicate that Congress "clearly 'wanted Bankruptcy Judges to finally adjudicate bankruptcy-related matters whenever Article III permitted them to do so, and to issue recommended findings subject to de novo review in the District Court whenever it did not.'" Kirschner, 476 B.R. at 82 (quoting In re Coudert Bros. LLP, 2011 WL 5593147, at *13 (S.D.N.Y. Sept. 23, 2011)). Neither does the Court rewrite the statutory scheme by permitting the Bankruptcy Court to recommend proposed findings of fact and conclusions of law. Congress attempted to empower the Bankruptcy Court to "hear and determine" avoidance actions. This grant of broad power necessarily conferred on bankruptcy courts the lesser power of issuing proposed findings of fact and conclusions of law. Cf.

United States v. Crosby, 397 F.3d 103, 117 (2d Cir. 2005), abrogated in part on other grounds by United States v. Fagans, 406 F.3d 138, 142 (2d Cir. 2005). While the Constitution prohibits Congress from giving the Bankruptcy Court the broad power it intended, that prohibition does not extend to the lesser, included power that Congress also conferred.[5] Accordingly, the Court determines that, had Congress known that it could not empower bankruptcy courts to "hear and determine" avoidance actions, it would have wanted those courts to exercise the lesser power it implicitly conferred on them to propose findings of fact and conclusions of law.[6]

The defendants argue that Stern rejected the interpretation of § 157 that the Court now claims is clear. Of course, because the Bankruptcy Court had already entered final judgment in Stern, 131 S. Ct. at 2601, the Supreme Court had no occasion to consider whether the

---

[5] The larger statutory scheme supports this conclusion. Under 28 U.S.C. § 1334, the district courts have original jurisdiction over cases arising under Title 11. Section 157 of Title 28 permits the district courts to refer "any or all cases" under Title 11 to the Bankruptcy Court. Because the district courts need not refer any cases to the Bankruptcy Court, it follows that they may refer even core cases to the Bankruptcy Court while reserving the power to enter final judgment.

[6] As this Court has previously noted, even if Congress had not clearly intended this outcome, the District likely could unilaterally empower the Bankruptcy Court to issue proposed findings of fact and conclusions of law. Kirschner, 476 B.R. at 82. If the Constitution completely invalidated the relevant provisions of § 157, no statute would explicitly govern the issue under consideration. Under Fed. R. Bankr. P. 8018(b), whenever "there is no controlling law," district courts may "regulate practice in any manner consistent with federal law." Thus, district courts have more latitude to prescribe procedures in this context than they do in others. Indeed, when questions last arose concerning the Bankruptcy Court's jurisdiction, this District adopted a rule that permitted bankruptcy courts to issue proposed findings of fact and conclusions of law, and the Second Circuit upheld that rule. In re Kaiser, 722 F.2d 1574, 1580 (2d Cir. 1983). As noted above, this District has recently issued a similar order. See Amended Standing Order of

Bankruptcy Court could have issued proposed findings of fact and conclusions of law. Instead, the Supreme Court considered the defendant's argument that it need not decide whether § 157 conflicted with Article III because § 157 did not permit the Bankruptcy Court to finally determine the claim at issue. The defendant based that argument on the proposition that § 157, rather than identifying all "counterclaims by the estate" as core proceedings, see 28 U.S.C. § 157(b)(2)(C), instead designated as core only those counterclaims that arise in a Title 11 case or arise under Title 11. 131 S. Ct. at 2604. The Supreme Court rejected that proposition, concluding that the detailed provisions of § 157 foreclose any interpretation that would create a large class of claims for which "the statute provides no guidance." Id. at 2605. In other words, the Supreme Court concluded that Congress had classified all counterclaims as core proceedings.

This conclusion in Stern in no way conflicts with this Court's holding that Bankruptcy Courts are still free to issue proposed findings of fact and conclusions of law with respect to the initial avoidance actions. The Court has accepted that Congress categorized all avoidance actions as "core" proceedings, asking instead what Congress would have intended had it known that it could not empower the Bankruptcy Court to finally decide such actions. This approach comports with the Supreme Court's prior cases. See Sebelius, 132 S. Ct. at 2607 (concluding that Congress had unconstitutionally attempted to "penalize States . . . by taking away their existing Medicaid

Reference, Case No. 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012).

funding," but then asking "what Congress would have intended in light of the Court's constitutional holding" (quoting Booker, 543 U.S at 246)); see also Booker, 543 U.S. at 245-46. Simply put, the conclusion that Congress unavoidably exceeded its powers under the Constitution does not relieve the Court of its obligation to consider what Congress would have intended had it known of the relevant constitutional limitations. Moreover, as noted above, the Court's interpretation of § 157 does not "rewrite" the statute. Unlike the defendant's interpretation of § 157 in Stern, the Court's interpretation does not create a large class of cases for which "the statute provides no guidance," but instead only recognizes Congress's intent to empower the Bankruptcy Court to issue proposed findings of fact and conclusions of law with respect to an avoidance action whenever it cannot enter final judgment.

Having determined that the Bankruptcy Court may issue proposed findings of fact and conclusions of law, the Court turns finally to the question of whether, in light of Stern, it should withdraw the reference "for cause shown" before the Bankruptcy Court has issued its report and recommendations.[7] Prior to Stern, courts determining whether to withdraw for cause considered several factors: "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy

---

[7] Certain of the issues here consolidated seek withdrawal on other grounds, and nothing in this Opinion should be taken as ruling on those independent grounds for withdrawal, which will be dealt with separately in accordance

administration, (5) what will prevent forum shopping, and (6) other related factors." In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996). Following Stern, a number of courts applying this test have concluded that, because the classification of a claim as core or non-core no longer definitively determines whether the Bankruptcy Court may enter final judgment, courts should instead look "at whether, under Stern, the Bankruptcy Court has the final power to adjudicate [the claim at issue]." Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, 462 B.R. 457, 467 (S.D.N.Y. 2011).

Multiple courts in this District have already concluded that, although Stern prevents the Bankruptcy Court from entering final judgment on avoidance claims, considerations of efficiency and uniformity counsel in favor of permitting the Bankruptcy Court to issue proposed findings of fact and conclusions of law. Arbco, 479 B.R. at 267-68; Kirschner, 476 B.R. at 83; Lyondell, 467 B.R. at 725. Indeed, prior to Stern, courts in this District did not withdraw the reference for cause at the outset of proceedings merely because the claim at issue was "non-core." See In re Kenai Corp., 136 B.R. 59, 61-62 (S.D.N.Y. 1992). The Court follows the approach adopted in Arbco, Kirschner, and Lyondell. As the Court noted in Kirschner, "experience strongly suggests that having the benefit of the report and recommendation will save the district court and the parties an immense amount of time." 476 B.R. at 83.

with prior orders of this Court.

The defendants make two arguments in favor of withdrawal at this stage of proceedings. First, they argue that declining to withdraw the reference may require the Court to conduct duplicative proceedings. Cf. Cullen v. United States, 194 F.3d 401, 407 (2d Cir. 1999). The hypothetical possibility of duplicative proceedings, however, cannot outweigh the efficiency of receiving the recommendation of a court that possesses both intimate familiarity with the underlying liquidation and substantial expertise in the bankruptcy law that applies to these avoidance actions. Second, the defendants argue that, because the Court has previously withdrawn the reference in these and similar cases to resolve many issues that require substantial and material consideration of non-bankruptcy law, withdrawal of these cases in their entireties will promote uniform interpretation of the relevant non-bankruptcy law. What this argument ignores, however, is that this Court may resolve the issues of non-bankruptcy law and then remand for further proceedings in the Bankruptcy Court, thereby obtaining the benefits of its expertise. Indeed, the Court has adopted a method of proceeding that allows it to resolve individual issues of non-bankruptcy law once for all of the cases that present them. See, e.g., Order dated April 19, 2012, No. 12 Misc. 115. Once the Court has uniformly resolved issues of non-bankruptcy law, the Bankruptcy Court should have the opportunity to apply its expertise to the complicated project of uniformly administering Madoff Securities' estate.[8]

---

[8] The defendants also argue that, if a higher court ultimately determines that the Bankruptcy Court lacks power to issue proposed findings of fact and conclusions of law, then it may vacate any decision that adopts one of the

21

In sum, the Court follows other courts in this District, as well as its own prior precedent, in concluding that, although <u>Stern</u> precludes the Bankruptcy Court from finally deciding avoidance actions (unless, possibly, the Trustee has sought to disallow a claim to the estate under § 502(d)), the Bankruptcy Court nonetheless has the power to hear the matter in the first instance and recommend proposed findings of fact and conclusions of law. The Court further declines to withdraw the reference of these cases to the Bankruptcy Court "for cause shown" before the Bankruptcy Court has issued appropriate findings of fact and conclusions of law. Except to the extent provided in other orders, the Court directs that what remains of the adversary proceedings listed in Exhibits A and C of item number four on the docket of 12 Misc. 115 be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        January 4, 2013

---

Bankruptcy Court's reports and recommendations. Such an outcome would hypothetically require relitigation of each case in its entirety. Higher courts, however, seem exceedingly unlikely to adopt the approach the defendants fear. Because the district courts unquestionably have jurisdiction over these cases, higher courts likely will not vacate their decisions merely because they adopt conclusions that, having conducted <u>de novo</u> review, they necessarily reached after independent consideration.