UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff,<br><br>                v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>    MADOFF SECURITIES | 12 Misc. 00115 (JSR) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                Plaintiff,<br><br>                v.<br><br>ERIC T. SCHNEIDERMAN, as successor to ANDREW M. CUOMO, Attorney General of the State of New York; BART M. SCHWARTZ, as Receiver for ARIEL FUND, LTD. and GABRIEL CAPITAL, L.P.; DAVID PITOFSKY, as Receiver for ASCOT PARTNERS, L.P. and ASCOT FUND, LTD.; J. EZRA MERKIN; and GABRIEL CAPITAL CORPORATION,<br><br>                Defendants. | 12 Civ. 06733 (JSR)<br><br>Adv. Pro. No. 12-01778 (BRL) |

**REPLY MEMORANDUM OF LAW OF THE
SECURITIES INVESTOR PROTECTION CORPORATION
IN SUPPORT OF THE TRUSTEE'S APPLICATION FOR ENFORCEMENT OF
<u>AUTOMATIC STAY AND ISSUANCE OF PRELIMINARY INJUNCTION</u>**

*(Counsel Listed Inside)*

SECURITIES INVESTOR PROTECTION CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone:  (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
NATHANAEL KELLEY
Staff Attorney

## **TABLE OF CONTENTS**

**PAGE**

STATEMENT OF THE FACTS ..................................................................................................2

ARGUMENT...................................................................................................................................4

      I.      THE TRUSTEE'S STAY APPLICATION FURTHERS SIPA'S STATUTORY PRIORITIES ..................................................................................4

      II.     THE DISTRICT COURT ORDERS AND THE BANKRUPTCY CODE PROTECT THE BLMIS ESTATE'S PROPERTY INTERESTS FOR THE BENEFIT OF BLMIS CUSTOMERS ..................................................................7

      III.    AN INJUNCTION IS NECESSARY TO PREVENT THE DISSIPATION OF CUSTOMER PROPERTY SOUGHT BY THE TRUSTEE ....................................8

CONCLUSION..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES:** **PAGE**

*Adelphia Commc'ns Corp. v. Rigas*, 2003 WL 21297258
(S.D.N.Y. June 4, 2003)..................................................................................................8

*Adelphia Commc'ns Corp. v. The America Channel, LLC (In re Adelphia Commc'ns Corp.)*
2006 WL 1529357 (Bankr. S.D.N.Y. June 5, 2006)....................................................... 7-8

*In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010),
*aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012),
and *cert. den.*, 133 S.Ct. 24 and 133 S.Ct. 25 (2012) ............................................................5

*In re Bernard L. Madoff Inv. Sec. LLC,* 654 F.3d 229 (2d Cir. 2011) ............................................5

*Exch. Nat'l Bank v. Wyatt*, 517 F.2d 453 (2d Cir. 1975) ................................................................7

*Fox v. Picard (In re Madoff)*, 848 F.Supp.2d 469 (S.D.N.Y. 2012)................................................9

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999)................1

*Johns–Manville Corp. v. Asbestos Litig. Grp. (In re Johns–Manville Corp.)*,
26 B.R. 420 (Bankr. S.D.N.Y. 1983) *aff'd in part*, 40 B.R. 219 (S.D.N.Y.1984),
*Rev'd in part on other grounds*, 41 B.R. 926 (S.D.N.Y.1984)................................................8

*Johns-Mansville Corp. v. Colo. Ins. Guar. Ass'n (In re Johns-Manville Corp.)*,
91 B.R. 225 (Bankr. S.D.N.Y. 1988).................................................................................9

*Kagan v. St. Vincent's Catholic Med. Ctrs. of N.Y. (In re Saint Vincent's Catholic
Med. Ctrs. of N.Y.)*, 449 B.R. 209 (S.D.N.Y. 2011) ...........................................................9

*In re Lehman Bros. Inc.,* 462 B.R. 53 (Bankr. S.D.N.Y. 2011)........................................................1

*In re Lloyd Secs., Inc.,* 75 F.3d 853 (3d Cir. 1996) ........................................................................7

*MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir.),
*cert. den.*, 488 U.S. 868 (1988)..........................................................................................8

*Sec. Investor Prot. Corp. v. Barbour,* 421 U.S. 412 (1975) ...........................................................7

*Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs., Inc.)*,
750 F.2d 464 (5th Cir. 1985) ........................................................................................ 4-5

*The Lautenberg Found. v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*,
2013 WL 616269 (2d Cir. Feb. 20, 2013).............................................................. 4, 7, 8-9

## TABLE OF AUTHORITIES
## cont.

**STATUTES AND RULES:**  **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

| | |
|---|---|
| 78eee(a)(3) | 3 |
| 78eee(a)(4)(A) | 2 |
| 78eee(b)(2) | 7 |
| 78eee(b)(2)(A) | 3 |
| 78eee(b)(2)(B) | 3, 7 |
| 78eee(b)(2)(B)(i) | 2 |
| 78eee(b)(4) | 2 |
| 78eee(d) | 1 |
| 78fff(a) | 7 |
| 78fff(b) | 7 |
| 78fff-2(b) | 5 |
| 78fff-2(c)(1) | 5 |
| 78fff-2(c)(3) | 6 |
| 78*lll*(4) | 5, 6 |
| 78*lll*(4)(E) | 6 |

United States Bankruptcy Code, as amended, 11 U.S.C. §

| | |
|---|---|
| 105 | 8, 9 |
| 105(a) | 3, 4, 7, 8 |
| 362 | 2, 7, 8 |
| 362(a) | 1, 2, 3, 7 |
| 362(a)(3) | 2, 7 |

**LEGISLATIVE MATERIALS:**

| | |
|---|---|
| H. R. Rep. No. 95-595 (1977) | 4 |

In this proceeding, the trustee (the "Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the estate of Bernard L. Madoff ("Madoff"), seeks to enjoin the Defendants[2] from consummating a settlement agreement in violation of SIPA, the stay orders issued by the District Court (the "Stay Orders"), and the automatic stay imposed under section 362(a) of the Bankruptcy Code ("Code"), 11 U.S.C. § 362(a). The Securities Investor Protection Corporation ("SIPC") submits this reply memorandum of law in support of the Trustee's stay application and request for a preliminary injunction (the "Stay Application").[3] SIPC specifically addresses herein the necessity of an injunction to stay third-party claims that conflict with and undermine the protections given to a debtor's customers under SIPA.[4] Put simply, where such an injunction would be warranted under the Bankruptcy Code standing alone, it is absolutely required here to carry out Congress's intentions.

---

[1] References hereinafter to provisions of SIPA shall be to the United States Code and, for convenience, shall omit "15 U.S.C."

[2] The Defendants consist of Eric T. Schneiderman, as successor to Andrew M. Cuomo, Attorney General of the State of New York (the "NYAG"); Bart M. Schwartz, as Receiver for Ariel Fund, Ltd. and the Gabriel Capital, L.P. (the "Ariel & Gabriel Receiver"); David Pitofsky, as Receiver for Ascot Partners, L.P. and Ascot Fund, Ltd. (the "Ascot Receiver"); and J. Ezra Merkin and Gabriel Capital Corporation (the "Merkin Defendants"). Ariel Fund, Ltd.; Gabriel Capital, L.P.; and Ascot Partners, L.P. are referred to as the "Funds."

[3] SIPC's participation in this matter is pursuant to SIPA section 78eee(d). *See In re Lehman Bros. Inc.*, 462 B.R. 53, 56 n.1 (Bankr. S.D.N.Y. 2011).

[4] To the extent consistent with this Memorandum, SIPC adopts the arguments contained in the Trustee's Reply Memorandum, including specifically the Trustee's refutation of the applicability of *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), and the *Barton* Doctrine.

## STATEMENT OF THE FACTS

On December 15, 2008, upon an application by SIPC, the District Court entered an order (the "Protective Order") which, among other things, placed BLMIS in liquidation under SIPA, appointed the Trustee and, consistent with SIPA section 78eee(b)(4), removed the liquidation proceeding to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). In the Protective Order, the District Court also reaffirmed the stays that applied to this case, notifying "all persons and entities" that the automatic stay provisions of Bankruptcy Code section 362(a), among other things, operate as a stay of "any act to obtain possession of property of the estate or property from the estate," and "that pursuant to 15 U.S.C. § 78eee(b)(2)(B)(i), . . . any other suit against any . . . trustee of the Defendant or its property, is stayed." *Id.*[5] Under Code section 362, which by its terms applies to a SIPA case, "any act to . . . exercise control over property of the estate" also is stayed. *See* 11 U.S.C. § 362(a)(3).

On May 6, 2009, as part of his on-going efforts to recover property for the benefit of BLMIS customers, the Trustee commenced an adversary proceeding (the "Merkin Action") against the Merkin Defendants and the Funds, seeking to avoid and recover more than $500 million in fraudulent transfers and preferences made by Madoff and BLMIS to the Merkin Defendants and the Funds. The proceeds that the Trustee seeks to recover are comprised of other

---

[5] SIPC's application for a customer protective decree as to BLMIS was combined with a suit brought by the Securities and Exchange Commission ("SEC") against the firm. *See* SIPA §78eee(a)(4)(A). Upon the granting of the application, the SIPA proceeding was removed to the Bankruptcy Court. The SEC action remained before the District Court, which entered orders similarly restricting interference with assets. *See* Order on Consent Imposing Preliminary Injunction, Freezing Assets and Granting Other Relief Against Defendants, Dec. 18, 2008, Docket No. 8 at ¶ IX ("no creditor or claimant against [BLMIS], or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the control, possession or management of the assets subject to the receivership"); Partial Judgment on Consent Imposing Permanent Injunction and Continuing Other Relief, Feb. 9, 2009, Docket No. 18 at ¶ IV (incorporating and making the December 18, 2008 stay order permanent).

customers' money withdrawn from accounts at BLMIS. The Trustee seeks the recovery of the aforementioned BLMIS customer property under SIPA, the Bankruptcy Code, and applicable provisions of New York state law.

In April 2009, the NYAG placed himself in competition with the Trustee when he commenced a separate action in state court ("NYAG Action") against the Merkin Defendants, asserting claims based upon the Merkin Defendants' fraudulent conduct and misrepresentations related to Madoff's Ponzi scheme. On September 16, 2010, the Ariel & Gabriel Receiver also brought an action in New York State Court ("Receiver Action") against the Merkin Defendants, asserting many of the same allegations. These complaints alleged claims arising from the same operative facts as those presented in the Trustee's Merkin Action. Furthermore, the NYAG Action and Receiver Action seek, on behalf of select investors, the same limited funds that the Trustee seeks to recover in the Merkin Action on behalf of all the BLMIS customers—funds fraudulently transferred by BLMIS to the Merkin Defendants.

On June 25, 2012, the NYAG, on behalf of himself and the Receivers, announced a $410 million settlement with the Merkin Defendants (the "Settlement Agreement").[6] The Trustee contends that the payment under the Settlement Agreement could substantially, if not entirely, deplete the funds that the Trustee seeks to recover for the benefit of BLMIS's customers. Accordingly, the Trustee filed the Stay Application pursuant to sections 362(a) and 105(a) of the Code and SIPA sections 78eee(a)(3) and 78eee(b)(2)(A) and (B), seeking to enjoin the Settlement and protect the customer property sought by the Trustee.

---

[6] While the Ascot Receiver never commenced a formal lawsuit against the Merkin Defendants, he is participating in the Settlement Agreement. Thus, the Settlement Agreement resolves the NYAG Action, and Receiver Action, and any potential claims by the Ascot Receiver.

## ARGUMENT

Under SIPA, the right to recover fraudulently conveyed property from the Merkin Defendants belongs uniquely to the Trustee. In the case at hand, the NYAG and Receivers seek the same funds simultaneously sought by the Trustee—customer property converted by BLMIS and fraudulently transferred to initial transferees and then to subsequent transferees. By structuring a settlement drawing from the Merkin Defendants' limited resources, the Defendants interfere with and hinder the Trustee's claims, thereby threatening to render them futile by preventing any recovery. Because the Defendants' actions conflict with SIPA's important goal of channeling estate property and claims through the bankruptcy court for the benefit of customers, as well as the Court's protection and preservation of such property through SIPA, the Stay Orders, and automatic stay, they should be enjoined under Code section 105(a). *See The Lautenberg Found. v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, 2013 WL 616269, at *1 (2d Cir. Feb. 20, 2013) (summary order) ("*Lautenberg*").

### I. THE TRUSTEE'S STAY APPLICATION FURTHERS SIPA'S STATUTORY PRIORITIES

Stays made applicable to a SIPA case are imposed for customer and other creditor protection. Without them, "certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of their claims in preference to and to the detriment of other creditors." H.R. Rep. No. 95-595, at 340 (1977). The stays ensure that property is available to be distributed to customers and general creditors in accordance with SIPA, thus furthering Congress's intent to establish "an orderly liquidation procedure under which all creditors are treated equally." *Id.*

SIPA establishes "a comprehensive statutory scheme governing the rights of creditors and brokers," *Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs., Inc.)*, 750 F.2d 464, 468

4

(5th Cir. 1985). As the Second Circuit has noted, "SIPA serves dual purposes: to protect investors, and to protect the securities market as a whole." *See e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 235 (2d Cir. 2011). Thus, SIPA creates a special class of claimants—"customers"—and accords to members of that class relief not available to other claimants or under the Bankruptcy Code. *See*, *e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 133 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), and *cert. den.*, 133 S.Ct. 24 and 133 S.Ct. 25 (2012). The "customer" protection provisions of SIPA lie at the heart of the statute and are the principal expression of Congress's intent to create in SIPA a unique liquidation scheme applicable exclusively to securities broker-dealers. SIPA's efficacy depends critically on the presiding court's power to marshal "customer property" and to return it to customers—not only for the sake of the customers but also in order to maintain confidence in the securities markets.

In particular, in a SIPA liquidation, "customers" have priority in the distribution of "customer property," a fund of assets generally consisting of the cash and securities "received, acquired or held" by the debtor for its "customers" in the ordinary course of its business, along with the proceeds of any such property transferred by the debtor. *See* SIPA §§ 78fff-2(b) and (c)(1); 78*lll*(4). Customers generally share ratably in this fund to the extent of their "net equity" on a priority basis, to the exclusion of general creditors. *See* SIPA §§ 78fff-2(b) and (c)(1).

Furthermore, and consistent with Congress's emphasis in SIPA on the priority treatment of customers, Congress defined "customer property" expansively, including in SIPA several provisions designed to maximize the fund of customer property available for distribution to customers. Of particular significance here, SIPA defines customer property, in pertinent part, as

> cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the

5

> proceeds of any such property transferred by the debtor, *including property unlawfully converted.*

SIPA § 78*lll*(4) (emphasis added).  Furthermore, "customer property" includes any property of the debtor "which, upon compliance with applicable laws, rules, and regulations, would have been set aside or held for the benefit of customers," regardless of whether such property was, in fact, set aside and so held.  *See* SIPA § 78*lll*(4)(E).

With this expansive concept of customer property in mind, Congress significantly enhanced the power of a SIPA trustee to use the avoidance provisions of the Bankruptcy Code to recover customer property.  SIPA provides that where customer property is insufficient to pay certain statutorily-defined claims, "the trustee may recover any property transferred by the debtor which, except for such transfer, *would have been customer property* . . . [and] the property so transferred *shall be deemed* to have been the property of the debtor."  SIPA § 78fff-2(c)(3) (emphasis added).  The language of this provision indicates that, whether or not property sought by a SIPA trustee in an avoidance or recovery action actually qualifies as property of the debtor's estate, Congress intended that such property be treated as such for purposes of the action.

Here, Madoff perpetrated a Ponzi scheme which paid earlier investors with money taken from later investors in order to create the illusion of profitability.  Pursuant to SIPA section 78*lll*(4), the customer assets received by BLMIS that were converted by BLMIS and Madoff and transferred are "customer property" which the Trustee is entitled to pursue and recover.  The Trustee's fraudulent conveyance action seeks just that—to protect and recover customer property for distribution to customers, in accordance with SIPA and the Bankruptcy Code.

## II. THE DISTRICT COURT ORDERS AND THE BANKRUPTCY CODE PROTECT THE BLMIS ESTATE'S PROPERTY INTERESTS FOR THE BENEFIT OF BLMIS CUSTOMERS

When SIPC files an application for a customer protective decree, the Bankruptcy Code puts into effect automatic stays that protect the debtor and its property, including the property that the debtor holds for customers. 11 U.S.C. § 362. Moreover, under SIPA, the filing of a protective decree "shall stay . . . any other suit against any . . . trustee of the debtor or its property." SIPA § 78eee(b)(2)(B). As recognized by the Supreme Court, "[t]he mere filing of an SIPC application gives the court in which it is filed exclusive jurisdiction over the member and its property, wherever located, and requires the court to stay '. . . any other suit against any . . . trustee of the [member] or its property . . . .'" *Sec. Investor Prot. Corp. v. Barbour,* 421 U.S. 412, 416 (1975) (quoting SIPA § 78eee(b)(2)).

In a SIPA proceeding, regular protection of estate property under SIPA and the Bankruptcy Code is enhanced to carry out SIPA's unique policy goals. A SIPA liquidation is an outright bankruptcy proceeding for many practical purposes, as has been consistently recognized. *See* SIPA § 78fff(a); *see also Exch. Nat'l Bank v. Wyatt*, 517 F.2d 453, 457–59 (2d Cir. 1975); *In re Lloyd Secs., Inc.*, 75 F.3d 853, 857 (3d Cir. 1996). In order for the SIPA liquidation to be conducted "in accordance with" Title 11 as required by SIPA section 78fff(b), provisions of Title 11 such as sections 105(a) and 362(a), relied upon here, must be given their full effect in a SIPA liquidation. *See Lautenberg*, 2013 WL 616269, at *1.

Thus, under Bankruptcy Code section 362(a), the filing of the application under SIPA, "operates as a stay, applicable to all entities of," *inter alia*, "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ." Section 362(a)(3) is designed to prevent the dismemberment of the bankruptcy estate through direct or indirect interference with the trustee's control over estate property. *See*

7

*Adelphia Commc'ns Corp. v. The America Channel, LLC (In re Adelphia Commc'ns Corp.)*, 2006 WL 1529357, at *3 (Bankr. S.D.N.Y. June 5, 2006).

Furthermore, courts have held that Bankruptcy Code section 105, also applicable to SIPA liquidations, may be used to extend Section 362's automatic stay to non-parties. *See, e.g.*, *Johns–Manville Corp. v. Asbestos Litig. Grp. (In re Johns–Manville Corp.)*, 26 B.R. 420, 427 (Bankr. S.D.N.Y. 1983) ("[B]ankruptcy courts have extended the Section 362 automatic stay pursuant to Section 105 to enjoin acts against nondebtors which would frustrate the statutory scheme or impact adversely on a debtor's ability to formulate a plan or on the debtor's property."), *aff'd in part*, 40 B.R. 219 (S.D.N.Y.1984), *rev'd in part on other grounds*, 41 B.R. 926 (S.D.N.Y.1984). Indeed, "Section 105(a) is to be 'construed liberally to enjoin suits that might impede'" the process of a SIPA liquidation. *Lautenberg*, 2013 WL 616269, at *2 (quoting *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir.), *cert. den.*, 488 U.S. 868 (1988)). As this District Court has held, "Section 105 of Title 11 provides the bankruptcy courts with a broad range of equitable powers over cases within its jurisdiction," including "issu[ing] a pre-judgment order preventing a party from disposing of assets." *Adelphia Commc'ns Corp. v. Rigas*, 2003 WL 21297258, at *4 (S.D.N.Y. June 4, 2003).

### III. AN INJUNCTION IS NECESSARY TO PREVENT THE DISSIPATION OF CUSTOMER PROPERTY SOUGHT BY THE TRUSTEE

SIPA and the Bankruptcy Code thus work in tandem in order to protect a debtor's assets—and in particular the customer property entrusted to the debtor—so that securities customers are assured that the custody of their property is sound, thereby bolstering confidence in brokers and the securities markets. Recognizing as much, the Second Circuit recently held that, under section 105(a) of the Code, the Bankruptcy Court may preliminarily enjoin third-

party claims against assets that the Trustee seeks to recover in a fraudulent conveyance action.

*Lautenberg*, 2013 WL 616269, at *2. The Second Circuit's reasoning bears repeating:

> Appellants pursue the Third-Party Actions against defendants whose every asset (or the vast majority thereof) is claimed by the Trustee as a fraudulent transfer from BLMIS. Under these circumstances, we conclude that the Preliminary Injunction serves the legitimate purpose of "preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court." Were it not for the Preliminary Injunction, there would ensue a chaotic rush to the courthouse—or rather, multiple courthouses—of those seeking assets that the trustee claims are properly part of the BLMIS estate. This would run counter to SIPA's objective of furthering "the prompt and orderly liquidation of SIPC members." Moreover, the Third-Party Actions would have an "immediate adverse economic consequence for the debtor's estate" if allowed to proceed, inasmuch as, if successful, they would draw down assets almost all of which could otherwise be expected to return to the BLMIS estate as a consequence of the Trustee's fraudulent transfer action. Injunctive relief was therefore properly granted to avoid impeding the SIPA liquidation.

*Id.* (internal citations omitted); *see also Fox v. Picard (In re Madoff)*, 848 F.Supp.2d 469, 486 (S.D.N.Y. 2012) ("Under Section 105, bankruptcy courts may extend the automatic stay to enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts." (quoting *Kagan v. St. Vincent's Catholic Med. Ctrs. of N.Y. (In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*, 449 B.R. 209, 217 (S.D.N.Y. 2011)).

Importantly, the Second Circuit's reasoning applies regardless of whether the assets held by the Merkin Defendants have been adjudicated property of the estate, and regardless of whether the NYAG's and Ariel & Gabriel Receiver's causes of action are independent of the Trustee's claims against the Merkin Defendants. Where third-party actions seek assets simultaneously claimed by a SIPA Trustee in a fraudulent conveyance action, those third-party actions must be enjoined pending determination of the Trustee's claims in the SIPA liquidation. *Johns-Mansville Corp. v. Colo. Ins. Guar. Ass'n (In re Johns-Manville Corp.)*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1988) ("[T]he bankruptcy court may enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case

9

before it." (internal quotation marks omitted)).  Because the third-party actions here interfere with the Trustee's action in just this manner, these actions must be enjoined.

## CONCLUSION

For these reasons, this Court should grant the Trustee's application for enforcement of the automatic stay and Stay Orders and issuance of a preliminary injunction.

Dated: Washington, D.C.
      February 21, 2013                   Respectfully submitted,

                                             JOSEPHINE WANG
                                             General Counsel

                                             /s/Kevin H. Bell
                                             KEVIN H. BELL
                                             Senior Associate General Counsel for
                                              Dispute Resolution

                                             NATHANAEL S. KELLEY
                                             Staff Attorney

                                             SECURITIES INVESTOR
                                               PROTECTION CORPORATION
                                             805 15th Street, N.W., Suite 800
                                             Washington, D.C. 20005
                                             Telephone: (202) 371-8300
                                             E-mail: jwang@sipc.org
                                             E-mail: kbell@sipc.org
                                             E-mail: nkelley@sipc.org