```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
SECURITIES INVESTOR PROTECTION          :
CORPORATION,                            :
                                        :
     Plaintiff,                         :
                                        :      12 MC 115 (JSR)
          -v-                           :
                                        :      MEMORANDUM
BERNARD L. MADOFF INVESTMENT            :
SECURITIES LLC,                         :
                                        :
     Defendant.                         :
----------------------------------------x
In re:                                  :
                                        :
MADOFF SECURITIES                       :
----------------------------------------x
PERTAINS TO THE FOLLOWING CASE:         :
----------------------------------------x
IRVING H. PICARD,                       :
                                        :
     Plaintiff,                         :
                                        :
          -v-                           :      12 Civ. 6733 (JSR)
                                        :
ERIC T. SCHNEIDERMAN, as successor      :
to ANDREW M. CUOMO, Attorney General    :
of the State of New York; BART M.       :
SCHWARTZ, as Receiver for ARIEL FUND    :
LTD. and GABRIEL CAPITAL, L.P.;         :
DAVID PITOFSKY, as Receiver for         :
ASCOT PARTNERS, L.P. and ASCOT FUND,    :
LTD.; J. EZRA MERKIN; and GABRIEL       :
CAPITAL CORPORATION,                    :
                                        :
     Defendants.                        :
----------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

On August 1, 2012, Irving H. Picard ("the Trustee"), the trustee appointed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa et seq., to administer the bankruptcy estate of Bernard L. Madoff Investment Securities LLC ("Madoff

1

Securities"), commenced this action seeking to enjoin the defendants from consummating a $410 million settlement of claims brought by the New York Attorney General ("NYAG") against various other defendants and to stay the underlying lawsuits that produced the settlement. On September 5, 2012, the defendants moved to withdraw the reference of this action to the Bankruptcy Court and to have it heard for all purposes in the District Court. After receiving written briefing, the Court heard oral argument on the motion to withdraw on November 19, 2012, and by a "bottom-line" Order dated December 27, 2012, this Court granted the motion and withdrew the reference to the Bankruptcy Court, with opinion to follow. See Order, No. 12 Civ. 6733, ECF No. 14 (S.D.N.Y. filed Dec. 28, 2012). In accord with that promise, this Memorandum explains the reasons for the withdrawal.[1]

By way of background, on April 6, 2009, the NYAG brought suit in New York State Supreme Court against J. Ezra Merkin and Gabriel Capital Corp. (together, the "Merkin defendants"), in their role as managers of several private investment partnerships that invested in Madoff Securities, including defendants Ascot Partners, L.P. and Ascot Fund, Ltd. (together, "Ascot"), Ariel Fund Ltd., and Gabriel Capital, L.P. ("Gabriel Fund," and, collectively with the other funds, the "Merkin Funds"). The suit charged the defendants with

---

[1] By Opinion and Order dated April 15, 2013, the Court dismissed the action in its entirety. See Opinion and Order, No. 12 Civ. 6733, ECF No. 53 (S.D.N.Y. Apr. 15, 2013). Although that dismissal has now been appealed, it is appropriate for the Court to elucidate its reasons for the earlier withdrawal Order. See United States v. Nichols, 56 F.3d 403, 411 (2d Cir. 1995).

violations of New York's Martin Act, its Executive Law, and its Not-for-Profit Corporation Law, based on allegations that the Merkin defendants had disguised from their investors, inter alia, Merkin's role in managing the Merkin Funds' investments and Merkin's intention to turn over substantially all of the funds to Madoff and other investment managers. The NYAG also named the Merkin Funds as relief defendants. See People v. Merkin, No. 450879/2009 (N.Y. Sup. Ct. filed Apr. 6, 2009). On September 16, 2010, Bart Schwartz (the "Ariel and Gabriel Receiver"), who had been appointed receiver for the Ariel and Gabriel Funds, also filed suit in New York State Supreme Court, alleging on behalf of the Ariel and Gabriel Funds and their investors that, inter alia, the Merkin defendants violated their fiduciary duties of candor and disclosure, fraudulently concealed and misrepresented the involvement of various investment managers, and collected exorbitant fees. See Schwartz v. Merkin, No. 651516/2010 (N.Y. Sup. Ct. filed Sept. 16, 2010).

    Meanwhile, on May 6, 2009, the Trustee commenced in the Bankruptcy Court an adversary proceeding against the Merkin defendants and the Merkin funds, seeking, inter alia, return of transfers to those defendants of alleged Madoff Securities customer funds, on the ground that they were actual and constructive fraudulent conveyances under the Bankruptcy Code and New York Debtor-Creditor Law. See Picard v. Merkin, Adv. Pro. No. 09-1182, ECF No. 1 (Bankr. S.D.N.Y. filed May 6, 2009). In total, the Trustee

3

sought from the Merkin defendants and the Funds approximately $500 million.

On June 13, 2012, after considerable litigation, the NYAG, the Ariel and Gabriel Receiver, and the Merkin defendants reached a $410 million settlement of the NYAG's and Receiver's actions, most of which was to be distributed to the Merkin Funds' investors. David Pitofsky (the "Ascot Receiver"), who had been appointed receiver for Ascot, also participated in the settlement and agreed to release any claims that Ascot might have against the Merkin defendants.

On August 1, 2012, several weeks after the public announcement of the settlement, the Trustee filed the instant action (the "stay action") against the NYAG, the Ariel and Gabriel Receiver, the Ascot Receiver, and the Merkin defendants, claiming that the NYAG's and Receiver's actions and settlement violated the Bankruptcy Code's "automatic stay" and the various stay orders entered in the Madoff Securities SIPA proceeding. See 11 U.S.C. § 362; 15 U.S.C. § 78eee(b)(2)(B) (applying the stay to SIPA proceedings); SEC v. Bernard L. Madoff, No. 08 Civ. 10791, ECF No. 4 (S.D.N.Y. Dec. 15, 2008) ("[A]ll persons and entities are stayed, enjoined and restrained from directly or indirectly . . . interfering with any assets or property owned, controlled or in the possession of [Madoff Securities]."); Order on Consent Imposing Preliminary Injunction Freezing Assets and Granting Other Relief Against Defendants at 9, No. 08 Civ. 10791, ECF No. 8 (S.D.N.Y. Dec. 18, 2008) (enjoining interference with "the assets subject to the receivership"); Partial

Judgment on Consent Imposing Permanent Injunction and Continuing Other Relief at 4, No. 08 Civ. 10791, ECF No. 18 (S.D.N.Y. Feb. 9, 2009) (incorporating and making permanent the December 18, 2008 order). In essence, the Trustee claimed that the funds intended to be used to pay the settlement were the same funds that the Trustee sought to recover through his fraudulent transfer action in the Bankruptcy Court and therefore were properly subject to the automatic stay and the Bankruptcy Court's jurisdiction. Accordingly, the Trustee sought to have the NYAG's and Receiver's actions (and the resulting settlement) stayed and declared void ab initio under Section 362(a) of the Bankruptcy Code, and to have consummation of the settlement agreement preliminarily enjoined under Section 105(a) of the Bankruptcy Code pending resolution of the stay action. As noted, the defendants then moved to withdraw the stay action from the Bankruptcy Court to the District Court, and their motion was granted on December 27, 2012 for the following reasons:

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), a district court may refer actions within its bankruptcy jurisdiction to the bankruptcy judges of the district. The Southern District of New York has a standing order that provides for automatic reference. See Am. Standing Order of Reference, No. 12 MC 32 (S.D.N.Y. Feb. 1, 2012).

5

Notwithstanding the automatic reference, a district court may on its own motion or that of a party withdraw the reference in whole or in part in appropriate circumstances. Withdrawal is mandatory "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). The Second Circuit has ruled, however, that mandatory withdrawal "is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990).

In their withdrawal motion, the defendants identified four separate issues requiring "substantial and material consideration" of non-bankruptcy federal laws, and, at oral argument on November 19, 2012, the Court raised an additional such issue implicit in the defendants' arguments. Although, ultimately, it did not prove necessary for the Court to reach all of these issues, the test, of course, is whether, at the time of withdrawal, it appears that consideration of such issues will be required. Cf. Picard v. JPMorgan Chase & Co., 454 B.R. 307, 312 (S.D.N.Y. 2011) ("[I]n determining whether withdrawal of the reference is mandatory, this Court need not evaluate the merits of the parties' claims; rather, it is sufficient for the Court to determine that the proceeding will involve consideration of federal non-bankruptcy law.").

6

First, defendants argued that determining whether the automatic stay applies to bar the settlement of the NYAG's and Receiver's lawsuit requires substantial and material consideration of SIPA, a statute that has both bankruptcy and non-bankruptcy aspects and purposes. See In re Bernard L. Madoff Inv. Sec., 654 F.3d 229, 235 (2d Cir. 2011) ("SIPA serves dual purposes: to protect investors, and to protect the securities market as a whole."); Picard v. HSBC Bank PLC, 450 B.R. 406, 410 (S.D.N.Y. 2011) (finding that, because SIPA is part of the securities laws, "[a] substantial issue under SIPA is therefore, almost by definition, an issue 'the resolution of [which] requires consideration of both title 11 and other laws of the United States'").

Under ordinary bankruptcy law principles, the automatic stay applies only if the action to be stayed involves property of the estate, i.e., if the third party attempts to assert claims belonging to the estate or if the action will affect the assets of the debtor. See 11 U.S.C. § 362(a) (listing categories of actions stayed by the filing of a bankruptcy petition). Here, the defendants argued, the Trustee had no basis under the Bankruptcy Code to claim either that the claims asserted by the NYAG and the Ariel and Gabriel Receiver belong to the Trustee or that the Merkin defendants' assets to be used to fund the settlement were property of the estate. Although the Trustee claimed that the NYAG's action and the funds at issue in the settlement fit within the definition of property under the Bankruptcy Code, see 11 U.S.C. § 541, the defendants argued that the

7

Trustee actually sought to expand the definition of "property of the estate" under SIPA beyond the limits of the Bankruptcy Code. Because, at the time it granted the motion to withdraw, it appeared likely that the Court would be required to engage in substantial and material consideration of the definition of "property of the estate" under SIPA in order to determine whether the NYAG's and Receiver's actions were subject to the automatic stay, the Court found that mandatory withdrawal of the reference on this issue was appropriate.

Second, defendants argued that the Trustee's motion for a preliminary injunction violated the rule established by the Supreme Court in Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 333 (1999), that a mid-litigation injunction against a transfer of assets cannot be entered in a lawsuit for money damages unless the movant has an equitable interest in the assets sought to be restrained. In essence, what the Trustee sought in bringing this stay action was an injunction freezing the Merkin defendants' assets so that the Trustee would have first priority to those assets to collect on any fraudulent transfer judgment he might obtain. Because, defendants claimed, the Trustee's fraudulent conveyance actions against the Merkin defendants were "quintessentially common-law suits" under Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 35 (1989), and because the Trustee had no equitable interest in Merkin's assets, see Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC), 440 B.R. 243, 271 (Bankr. S.D.N.Y. 2010), aff'd, 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011)

(finding that Merkin's assets are not property of the estate for purposes of 11 U.S.C. § 542), such an injunction would be impermissible under Grupo Mexicano. Although ultimately the Court was able to side-step this difficult issue, at the time of withdrawal it appeared likely that the Court would be required to address the material non-bankruptcy federal law issue of whether Grupo Mexicano applied to fraudulent transfer actions, especially in the context of a SIPA liquidation, and accordingly, the Court found that this issue also warranted mandatory withdrawal of the reference.[2]

Third, defendants claimed that the federal common law rule articulated in Barton v. Barbour, 104 U.S. 126 (1881), that federal courts are deprived of subject matter jurisdiction over suits against a state-appointed receiver if the plaintiff has not obtained leave to sue from the court that appointed the receiver, warranted mandatory withdrawal of the reference. Here, the defendants claimed that the Trustee's failure to obtain leave of the New York State Supreme Court before bringing suit against the Ascot Receiver and the Ariel and Gabriel Receiver (appointed by that court) necessitated dismissal for lack of subject matter jurisdiction. Although the Trustee correctly noted that bankruptcy

---

[2] While this issue had occasionally been addressed previously, see, e.g., In re Dow Corning Corp., 280 F.3d 648, 657 (6th Cir. 2002) (holding that Grupo Mexicano does not apply to injunctions issued under Section 105), the law was far from settled, and it is well established that withdrawal need not involve "an issue of first impression." In re McCrory Corp., 160 B.R. 502, 505 (S.D.N.Y. 1993).

courts have often considered the Barton doctrine, the issue here was the opposite of that normally considered by bankruptcy courts: i.e., whereas bankruptcy courts normally decided whether to allow suits against receivers they appointed, see, e.g., In re VistaCare Group, LLC, 678 F.3d 218, 225 (3d Cir. 2012), here, the issue to be determined in this action was whether the Bankruptcy Code or SIPA created an exception to this federal common law rule. Although, again, the Court was ultimately able to avoid this issue, at the time of withdrawal it appeared almost inevitable that the Court would have to determine this substantial and material issue of non-bankruptcy federal law, and accordingly the Court found that mandatory withdrawal of the reference was also necessary on this issue.

Fourth, defendants argued that because the stay action was accompanied by a demand for a preliminary injunction, the Court would have to consider the likelihood that the Trustee would succeed on the merits of its underlying avoidance action against the Merkin defendants and the funds, which would in turn require consideration of a number of issues on which this Court had previously withdrawn the reference. See, e.g., Order Regarding the "Good Faith" Standard, No. 12 MC 115, ECF No. 197 (S.D.N.Y. June 25, 2012); Order Regarding 11 U.S.C. § 546(e), No. 12 MC 115, ECF No. 119 (S.D.N.Y. May 16, 2012); Order Regarding Antecedent Debt Issues, No. 12 MC 115, ECF No. 107 (S.D.N.Y. May 16, 2012). In the course of briefing and at oral argument, it became clear that the Trustee contested the

10

standard to be applied to a motion for a preliminary injunction brought under Section 105(a) of the Bankruptcy Code. However, regardless of which standard applied, the Court would likely be required to consider the underlying likelihood of success on the Trustee's fraudulent transfer action against the Merkin defendants, thus requiring consideration of these substantial and material issues of non-bankruptcy federal law and necessitating mandatory withdrawal.

Finally, it became apparent at oral argument that the question of whether the equitable doctrine of laches would bar the granting of an injunction was, if anything, an even weightier issue justifying withdrawal of the reference. It is undisputed that the doctrine of laches is a matter of federal non-bankruptcy common law. Although the legal standard for laches is well established as a general matter, see Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 132 (2d Cir. 2003) (per curiam), it became apparent at oral argument that the issue of the application of that non-bankruptcy law to the bankruptcy-based considerations on which the Trustee sought to justify his delay raised material and unusual issues regarding the contours of the doctrine of laches, and thus, the Court found that mandatory withdrawal of the reference was appropriate as to this issue as well.

Having found that mandatory withdrawal of the reference was required as to all of these issues, the Court, in its bottom-line

Order, withdrew the reference as to the entire action. See 11 U.S.C. § 157(d) (allowing for withdrawal of cases "in whole or in part").[3]

Last, the Court notes one other factor that was appropriately considered in the decision to withdraw the reference, namely, the broad issues of federalism and comity raised by the Trustee's attempt to void the culmination of a long-running, highly public suit by a state law enforcement agency. Novel issues of that nature, it may be suggested, should first be heard and decided by an Article III court. Thus, the Court would have been well within its rights to withdraw the reference sua sponte had the defendants not so moved. See 11 U.S.C. § 157(d).

Dated: New York, NY
May 6, 2013

JED S. RAKOFF, U.S.D.J.

---

[3] Although it is unnecessary to elaborate further, it should be noted that the Court was also persuaded by the defendants' arguments that, even if mandatory withdrawal was not required, permissive withdrawal of the entire action under 11 U.S.C. § 157(d) was warranted in light of efficiency and other related factors generated thereby.

12