UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
SECURITIES INVESTOR PROTECTION          :
CORPORATION,                            :
                                        :
        Plaintiff,                      :
                                        :      12 MC 115 (JSR)
        -v-                             :
                                        :      MEMORANDUM ORDER
BERNARD L. MADOFF INVESTMENT            :
SECURITIES LLC,                         :
                                        :
        Defendant.                      :
-------------------------------------x
In re:                                  :
                                        :
MADOFF SECURITIES                       :
-------------------------------------x
PERTAINS TO THE FOLLOWING CASE:         :
-------------------------------------x
IRVING H. PICARD,                       :
                                        :
        Plaintiff,                      :
                                        :
        -v-                             :      12 Civ. 5597 (JSR)
                                        :
ACCESS MANAGEMENT LUXEMBOURG, S.A.      :
(f/k/a ACCESS INTERNATIONAL ADVISORS    :
(LUXEMBOURG) S.A.), as represented      :
by its Liquidator, FERNAND              :
ENTRINGER, PIERRE DELANDMETER, and      :
PATRICK LITTAYE,                        :
                                        :
        Defendants.                     :
-------------------------------------x

JED S. RAKOFF, U.S.D.J.

        On April 19, 2012, Irving H. Picard ("the Trustee"), the

trustee appointed under the Securities Investor Protection Act

("SIPA"), 15 U.S.C. § 78aaa et seq., to administer the bankruptcy

estate of Bernard L. Madoff Investment Securities LLC ("Madoff

Securities"), commenced this action seeking an injunction

                                1

prohibiting defendants Access Management Luxembourg, S.A. ("Access Management"), as represented by its liquidator Fernand Entringer; Patrick Littaye; and Pierre Delandmeter from naming the Trustee as a third-party defendant in a suit commenced against the defendants in Luxembourg, as well as a declaration that the third-party writ is void ab initio under U.S. bankruptcy law.

On July 20, 2012, defendants moved to withdraw the reference of this action to the Bankruptcy Court with respect to the following issues: (1) whether the Trustee's theories of personal jurisdiction violate due process, and (2) whether the Second Circuit's test for the issuance of an anti-foreign suit injunction as laid out in China Trade & Development Corp. V. M.V. Choong Yong, 837 F.2d 33 (2d Cir. 1987), applies to the Trustee's request for a permanent injunction, and, if so, whether the China Trade test is satisfied here. After receiving written briefing, the Court heard oral argument on the motion to withdraw the reference on September 14, 2012, and by a "bottom-line" Order dated September 27, 2012, the Court granted the motion in part and denied it in part, withdrawing the reference to the Bankruptcy Court with respect to the latter issue only, with opinion to follow. See Order, No. 12 MC 115, ECF No. 359 (S.D.N.Y. Sept. 27, 2012). In accord with that promise, this Memorandum explains the reasons for the withdrawal.[1]

---

[1] On August 24, 2012, before the Court had determined whether and to what extent withdrawal of the reference was appropriate, defendants filed a motion to dismiss the Trustee's complaint addressing both of the issues outlined above. On March 14, 2013, the Court denied

By way of background, Luxalpha SICAV ("Luxalpha"), a feeder fund to Madoff Securities incorporated and domiciled in Luxembourg, and defendant Access Management Luxembourg, S.A. ("Access Management"), a société anonyme formed under the laws of and domiciled in Luxembourg that served as Luxalpha's portfolio advisor in 2004 and portfolio manager in 2008-2009, went into involuntary liquidation in Luxembourg in April 2009. Defendants Patrick Littaye, a French citizen residing in Belgium, and Pierre Delandmeter, a Belgian citizen residing in Luxembourg, served at times on the boards of directors of both Luxalpha and Access Management.

On December 18, 2009, the Luxalpha liquidators filed an action on behalf of the fund against, among others, Access Management and the directors of Luxalpha, including Littaye and Delandmeter, for damages caused to Luxalpha by those defendants' failure to properly perform their respective duties in relation to Luxalpha's Madoff-related assets. As part of this action, the defendants, in May 2010, impleaded as a third-party defendant, among others, the Trustee as representative of the Madoff Securities estate, asserting that Madoff Securities' presence as a party to those proceedings was necessary because, under the law of Luxembourg, a court could not consider Madoff Securities' misconduct in its determination of the defendants' wrongdoing unless Madoff Securities was named as a

---

defendants' motion to dismiss without prejudice to renewal on the China Trade issue if the Bankruptcy Court resolves the personal jurisdiction issue in favor of exercising jurisdiction. See Order, No. 12 Civ. 5597, ECF No. 21 (S.D.N.Y. Mar. 14, 2013).

3

third-party defendant. The Trustee, contesting this characterization of Luxembourg law, has taken the position that he cannot be sued in Luxembourg and therefore has not appeared in the Luxembourg action; he is currently in default in that action.

On April 19, 2012, the Trustee filed the instant action[2] in the Bankruptcy Court against Access Management, Littaye, and Delandmeter, claiming that the third-party writ filed against the Trustee in the Luxalpha action violated the Bankruptcy Code's "automatic stay" and the various stay orders entered in the Madoff Securities SIPA proceeding. See 11 U.S.C. § 362; 15 U.S.C. § 78eee(b)(2)(B) (applying the stay to SIPA proceedings); SEC v. Bernard L. Madoff, No. 08 Civ. 10791, ECF No. 4 (S.D.N.Y. Dec. 15, 2008) ("[A]ll persons and entities are stayed, enjoined and restrained from directly or indirectly . . . interfering with any assets or property owned, controlled or in the possession of [Madoff Securities].") ; Order on Consent Imposing Preliminary Injunction Freezing Assets and Granting Other Relief Against Defendants at 9, No. 08 Civ. 10791, ECF No. 8 (S.D.N.Y. Dec. 18, 2008) (enjoining interference with "the assets subject to the receivership"); Partial Judgment on Consent Imposing Permanent Injunction and Continuing Other Relief at 4, No. 08 Civ. 10791, ECF No. 18 (S.D.N.Y. Feb. 9,

---

[2] In a separate action, on November 23, 2010, the Trustee filed a complaint against, inter alia, Luxalpha, Access Management, Littaye, and Delandmeter, asserting various common law theories as well as avoidance and recovery claims based on alleged fraudulent transfers. The common law claims were dismissed in Picard v. UBS AG, 460 B.R. 84 (S.D.N.Y. 2011), and the remaining avoidance and recovery claims were returned to the Bankruptcy Court.

2009) (incorporating and making permanent the December 18, 2008
order). Accordingly, the Trustee sought to have the third-party writ
declared void ab initio under Section 362(a) of the Bankruptcy Code,
and to have Access Management's, Littaye's and Delandmeter's third-
party claims enjoined under Section 105(a) of the Bankruptcy Code.
As noted, defendants then moved to withdraw certain issues in this
action from the Bankruptcy Court to the District Court, and their
motion was granted in part and denied in part by the Court's
September 27, 2012 Order for the following reasons:

District courts have original jurisdiction over bankruptcy
cases and all civil proceedings "arising under title 11, or arising
in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant
to 28 U.S.C. § 157(a), a district court may refer actions within its
bankruptcy jurisdiction to the bankruptcy judges of the district.
The Southern District of New York has a standing order that provides
for automatic reference. See Am. Standing Order of Reference, No. 12
MC 32 (S.D.N.Y. Feb. 1, 2012).

Notwithstanding the automatic reference, a district court may
on its own motion or that of a party withdraw the reference in whole
or in part in appropriate circumstances. Withdrawal is mandatory "if
the court determines that resolution of the proceeding requires
consideration of both title 11 and other laws of the United States
regulating organizations or activities affecting interstate
commerce." 28 U.S.C. § 157(d). The Second Circuit has ruled, however,
that mandatory withdrawal "is reserved for cases where substantial

5

and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990).

As mentioned above, defendants in their withdrawal motion identified two issues that they believe require "substantial and material consideration" of non-bankruptcy federal laws. First, defendants assert that the issue of personal jurisdiction will require substantial and material consideration of non-bankruptcy federal law.

It is well established that a court may not grant an "injunction over a party over whom it does not have personal jurisdiction." Hyundai Mipo Dockyard Co. v. AEP/Borden Indus., 261 F.3d 264, 270 (2d Cir. 2001). Rule 7004(f) of the Federal Rules of Bankruptcy Procedure allows a bankruptcy court to exercise personal jurisdiction to the extent "consistent with the Constitution and laws of the United States." Thus, here, the Trustee must establish that the assertion of personal jurisdiction over each defendant passes the constitutional threshold for personal jurisdiction: that each defendant has purposefully established minimum contacts with the United States, and that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853 (2011). In this regard, defendants argue that the Trustee has urged novel and expansive theories of personal jurisdiction that

6

will require the court to engage in substantial and material
consideration of the Due Process Clause.

However, since personal jurisdiction is fundamental to a
court's power to adjudicate a case, bankruptcy courts must, and do,
determine the appropriateness of asserting personal jurisdiction
over a given defendant as a routine matter.  Moreover, even if, as
the defendants claim, consideration of the court's ability to
exercise personal jurisdiction over the defendants would require
either this Court or the Bankruptcy Court to reach the "outer
boundaries" of the Due Process Clause, the general contours of such
an analysis have been substantially defined by courts at all levels,
including in recent cases before the Supreme Court.  See, e.g., J.
McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780 (2011). Here,
the relevant factual allegations appear relatively straightforward,
see generally Decl. of Joshua B. Katz dated July 19, 2012, Ex. 3,
and thus a jurisdictional analysis is merely a question of applying
the law to the facts at hand. Thus, the Court finds that determining
personal jurisdiction over the defendants here is well within the
ken of the Bankruptcy Court, and therefore denies defendants' motion
to withdraw the reference with respect to this issue.

Second, defendants argue that the Court should withdraw the
reference to the Bankruptcy Court with respect to the question of
whether the Trustee may enjoin in a U.S. court the third-party writ
issued against him in the Luxalpha action in Luxembourg. As stated
by the Court of Appeals for the Second Circuit in China Trade & Dev.

Corp. v. M.V. Choong Yong, 837 F.2d 33 (2d Cir. 1987), because an injunction "effectively restricts the jurisdiction of the court of a foreign sovereign," such an order "should be used sparingly and should be granted only with care and great restraint." Id. at 35-36. Therefore, in China Trade the Second Circuit set forth a multi-factor test to guide courts' consideration of whether such an injunction is permissible. Specifically, courts may impose a foreign anti-suit injunction

> only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined. Once past this threshold, courts are directed to consider a number of additional factors, including whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum.

Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Technologies, Inc., 369 F.3d 645, 652 (2d Cir. 2004) (citing China Trade, 837 F.2d at 35-36)). In the action, the Trustee argues that the Bankruptcy Court can properly issue such an injunction because, he claims, the China Trade test does not apply in the bankruptcy context, or, alternatively, because the China Trade test is satisfied here.

As an initial matter, although the Trustee argues that the Court's withdrawal authority is limited to non-bankruptcy federal statutes and does not extend to non-bankruptcy federal common law issues like the China Trade test, the Court has implicitly rejected this argument on numerous occasions. See, e.g., Picard v. HSBC Bank PLC, 450 B.R. 406, 410-11 (S.D.N.Y. 2011) (withdrawing the reference

8

to consider whether the defense of in pari delicto deprived the Trustee of prudential standing because such standing determinations are "a matter of federal law"); Picard v. Flinn Investments, LLC, 463 B.R. 280, 286-88 (S.D.N.Y. 2011) (withdrawing the reference to consider issues raised under Stern v. Marshall, 131 S. Ct. 63 (2010), because "[r]esolution of this argument requires 'significant interpretation' of both Article III and the Supreme Court precedent analyzing it"). Moreover, Section 157(d) speaks in terms of "other laws of the United States," not other statutes, see 28 U.S.C. § 157(d), and drawing an arbitrary line between statutes and the other laws of the United States - including not only common law questions but also those doctrines that derive from the Constitution and treaties - would make little sense. Nor did the cases that the Trustee cites for the contrary proposition explicitly endorse such a distinction. See, e.g., Ionosphere, 922 F.2d at 995 (addressing withdrawal of the reference only with respect an issue arising under the Railway Labor Act).

Determining whether the China Trade test - a non-bankruptcy, federal common law doctrine that has important implications for issues of international comity - applies in the context of a bankruptcy proceeding undoubtedly will require substantial and material consideration of non-bankruptcy federal law. Although the Bankruptcy Court has already addressed this issue in a different Madoff Securities-related action, finding that the China Trade test does not apply when the foreign suit violates U.S. bankruptcy law,

see Picard v. Maxam Absolute Return Fund L.P., 460 B.R. 106, 122
(Bankr. S.D.N.Y. 2011), this is not dispositive for purposes of this
Court's analysis as to whether withdrawal of the reference here is
appropriate. Indeed, on appeal, the district court reviewing the
Bankruptcy Court's decision upheld the Bankruptcy Court's ultimate
decision only on the alternative ground that the injunction at issue
there satisfied the China Trade test, without addressing the
question of whether China Trade applies in the bankruptcy context.
See Picard v. Maxam Absolute Return Fund L.P., 474 B.R. 76, 86-87
(S.D.N.Y. 2012). Thus, the Trustee's claim to a broad-based
bankruptcy exemption from the China Trade analysis remains a largely
novel legal issue, and, in any case, it is well established that the
appropriateness of withdrawal of the reference is not dependent on
the presence of "an issue of first impression." In re McCrory Corp.,
160 B.R. 502, 505 (S.D.N.Y. 1993).

Finally, even if, in the end, the Court need only reach the
question of whether the Trustee can satisfy China Trade's various
factors, as occurred in Maxam, the application of this test in the
circumstances presented here, which features, effectively,
insolvency proceedings in both the United States and Luxembourg,
would itself present a novel application of non-bankruptcy federal
law, mandating withdrawal. See Picard v. JPMorgan Chase & Co., 454
B.R. 307, 312 (S.D.N.Y. 2011) ("[I]n determining whether withdrawal
of the reference is mandatory, this Court need not evaluate the
merits of the parties' claims; rather, it is sufficient for the

Court to determine that the proceeding will involve consideration of federal non-bankruptcy law."); cf. Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240, 246 (2d Cir. 1999) (commenting that the Second Circuit has "repeatedly noted the importance of extending comity to foreign bankruptcy proceedings").

Having found that mandatory withdrawal of the reference is required only as to the question of the application of the China Trade analysis to the Trustee's request for a foreign anti-suit injunction, the Court, in its Order of September 27, 2012, withdrew the reference as to that issue alone.[3] See 28 U.S.C. § 157(d) (allowing for withdrawal of cases "in whole or in part"). However, as noted in the Court's Order, briefing on the China Trade issue is deferred pending adjudication of the question of personal jurisdiction in the Bankruptcy Court. Thus, the parties are directed to jointly call Chambers within 48 hours of the Bankruptcy Court's determination on this issue to inform the Court of the Bankruptcy Court's decision and, if needed, to schedule further proceedings in this Court.

---

[3] Briefly, the Court notes that, although the defendants also moved to withdraw the reference to the Bankruptcy Court as to both issues under Section 157(d)'s permissive withdrawal authority, see 28 U.S.C. § 157(d) (allowing withdrawal "for cause shown"), the Court denies the motion to that extent. As reflected in the Court's decision, the more prudent course is to first allow the Bankruptcy Court to determine whether it may properly exercise personal jurisdiction over the defendants in this action; if the Bankruptcy Court were to find such an assertion of jurisdiction to be unconstitutional, then the Court would never have to reach the novel and difficult issue of the applicability of the China Trade analysis to this case.

SO ORDERED.

Dated: New York, NY
August  1 , 2013

JED S. RAKOFF  U.S.D.J.