**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff,<br><br>         v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | 12-mc-0115 (JSR) |
| In re:<br><br>MADOFF SECURITIES | |

**ANTECEDENT DEBT DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO AMEND OCTOBER 15, 2013 OPINION AND ORDER**
**REGARDING ANTECEDENT DEBT ISSUES TO ADD 28 U.S.C. §1292(b)**
**CERTIFICATION FOR INTERLOCUTORY APPEAL**

*Filed by*

Richard A. Kirby
K&L GATES LLP
1601 K Street
Washington D.C. 20006
(202) 778-9000 (Telephone)
(202) 778-9100 (Facsimile)

*on behalf of all counsel listed below*

I.    **INTRODUCTION AND RELIEF REQUESTED**

Defendants, former Madoff Securities customers ("Customers"), face hundreds of avoidance actions in which the Trustee seeks to recover allegedly fraudulent transfers Madoff Securities made to Customers in response to their requests for withdrawals from brokerage accounts.   The Trustee seeks to avoid and recover all transfers to Customers during the applicable reach-back period for amounts in excess of the sum of their respective principal deposits into Madoff Securities accounts, based on his "net investment" approach to calculating the amount of a customer's net equity claim.   The Court withdrew the reference[1] and ordered common briefing on questions concerning the Customers' value defenses to the avoidance actions, asserted under Section 548(c) of the Bankruptcy Code (11 U.S.C. § 548(c)).   On October 15, 2013, the Court issued its Opinion and Order on the merits and scope of those defenses (the "Order").   Customers respectfully submit this memorandum in support of their motion requesting that the Court amend the Order to include a certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

II.    **STANDARDS FOR CERTIFICATION**

The Court of Appeals may, in its discretion, entertain an appeal from an interlocutory order where the district court certifies that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."   28 U.S.C. § 1292(b).   If the district court issues an order on the merits that does not contain the requisite certification under Section 1292(b) in the first instance, it may amend the order either *sua sponte* or at the

---

[1]    *See* Order, *In re Madoff Secs.*, No. 12-mc-0115 (S.D.N.Y. May 16, 2012), ECF No. 107 (the "Antecedent Debt Order").   A copy of the Antecedent Debt Order was also submitted as Exhibit A to the Declaration of Richard A. Kirby in Support of Consolidated Motion to Dismiss.

request of a party.  Fed. R. App. P. 5(a)(3); *Marisol A. by Forbes v. Giuliani*, 104 F.3d 524, 526-27 (2d Cir. 1997); *County of Westchester, N.Y. v. Commissioner of Transp.*, 986 F.2d 624, 626 (2d Cir. 1993); *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 52 (S.D.N.Y. 1998) (requests for amendment to add certification).[2]

The Order involves controlling questions of law as to which there is substantial ground for difference of opinion.  Because an immediate appeal will materially advance the ultimate termination of the litigation, Customers respectfully request that the Court amend the Order and allow them to seek appellate review.

## III.   THE ISSUES ADDRESSED BY THE COURT ARE MATTERS OF FIRST IMPRESSION OR THE SUBJECT OF CONFLICTING AUTHORITY.

The Order ruled on issues of statutory interpretation.  Because the Court addressed these issues as a matter of law and on the pleadings, they are classic controlling questions.  *See Bilello v. JPMorgan Chase Ret. Plan*, 603 F. Supp. 2d 590, 593 (S.D.N.Y. 2009) (finding controlling question of law when interpretation of statute was required); *In re Contemporary Indus. Corp.*, 312 B.R. 898, 901 (D. Neb. 2004) (issues regarding "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" are controlling for purposes of Section 1292(b)).  Further, the Order addresses controlling legal questions because it analyzes the availability of affirmative defenses that limit the scope of the Trustee's claims in the

---

[2]     Rule 9023 of the Federal Rules of Bankruptcy Procedure governs the timing for motions to amend a judgment in bankruptcy proceedings and generally mirrors Federal Rule of Civil Procedure 59.  Whereas Civil Rule 59(e) allows 28 days to file a motion to amend a judgment, Bankruptcy Rule 9023 provides that in cases under the Bankruptcy Code a party must file a motion to amend the judgment within 14 days of the entry of judgment.  Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023; *see also* Fed. R. Bankr. P. 1001 (Bankruptcy Rules govern procedure in Title 11 cases).

SR 1:12-mc-00115-JSR   Document 491   Filed 10/29/13   Page 4 of 20

avoidance actions, which -- for many avoidance defendants -- would be dispositive.[3]  *See South v. Saab Cars USA, Inc.,* 28 F.3d 9 (2d Cir. 1994) (interlocutory appeal concerning availability of affirmative defense); *United Paperworkers Int'l Union and Its Local 340 v. Specialty Paperboard, Inc.,* 999 F.2d 51 (2d Cir. 1993) (same); *American Geophysical Union v. Texaco, Inc.,* 802 F. Supp. 1, 29 (S.D.N.Y. 1992) (availability of defense was controlling question of law); *see also* 19 J. W. Moore, MOORE'S FEDERAL PRACTICE § 203.31[2] (3d ed. 2013) (availability of dispositive defense is controlling question).

Thus, the central question presented here is whether there are substantial grounds for a difference of opinion regarding the merits of the controlling legal issues addressed in the Order. "The requirement that there be substantial ground for difference of opinion as to the legal issue presented for certification may be satisfied when: (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit."  *In re Lloyd's American Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997).  As detailed in the common briefing before the Court, many of the issues presented were matters of first impression.  Those that were not are the subject of significant conflicting authority.  Customers identify below seven discrete issues regarding Section 548(c) on which there is conflicting authority or that present difficult issues that have not been addressed by the Second Circuit, and on which the parties would greatly benefit from appellate guidance.

---

[3]      For example, many Customers would have a complete defense to avoidance if the obligations created by their state law rights to securities entitlements based on Madoff Securities' account statements and confirmations were recognized as antecedent debts.  *See* Issues Two and Three, *infra*.  Other antecedent debts, such as federal and state remedies for fraud (*see* Issue Two), are also dispositive for a significant number of Customers.

A.     **Application of the Value Defense Concerns Issues of First Impression.**

Bankruptcy Code § 548(c) provides an affirmative defense to the avoidance of fraudulent transfers where a defendant took such transfers for "value and in good faith."  Value, under the Code, includes "satisfaction . . . of a present or antecedent *debt* of the debtor."  11 U.S.C. § 548(d)(2)(A) (emphasis added).  Debt, in turn, is defined as "liability on a claim," and a claim is a "right to payment."  *See* 11 U.S.C. §§ 101(5)(A), (12).  As relevant here, Section 548(c) provides that Customers may retain all transfer amounts that provided value to the debtor in exchange for the transfer -- including those transfers that satisfied in whole or part existing antecedent debts.  The legal issues concerning the scope of the value defense for which there are substantial grounds for differing opinions include:

*          *          *

**ISSUE ONE:  Whether the existence of an antecedent debt grounded on legal claims under non-bankruptcy law (satisfaction of which debt provides value in exchange for the transfer) is determined based on the transferee's legal claims against the debtor at the time of the transfer.**

Although other circuits have held that the existence and effect of an antecedent debt based on a transferee's legal claims against the debtor are determined as of the time of the transfer, the Second Circuit appears not to have decided this issue for purposes of Section 548(c).  *See In re Hannover*, 310 F.3d 796, 801-02 (5th Cir. 2002) (value under Section 548(c) is determined at the time of the transfer, even if the property thereafter becomes worthless); *cf. Armstrong v. Collins,* No. 01 Civ. 2437 (PAC), 2010 WL 1141158, at *20 (S.D.N.Y. Mar. 24, 2010) ("The critical time to determine whether a debtor received reasonably equivalent value is the time of the transfer.").  The Court's conclusion that "value" depends on the *present* status of a defendant's claim -- *i.e.*, whether the legal claim would qualify as a priority customer net

4

equity claim after commencement of the SIPA liquidation -- is fundamentally at odds with the express provisions of the Bankruptcy Code and the law of other circuits.

*       *       *

**ISSUE TWO: Whether antecedent debts arising from legal claims against the debtor include state and federal claims for relief, specifically:  (1) New York state law claims for (a) rescission and statutory interest from the date of the fraudulent inducement; (b) damages for breach of fiduciary duty; and/or (c) payment of a contractual right to securities entitlements under Article 8 of the New York Uniform Commercial Code; and/or (2) federal securities claims for rescission and interest from the date of the fraudulent inducement under either (a) Section 10(b) of the 1934 Act and SEC Rule 10b-5; or (b) Section 29(b) of the 1934 Act.**

The question of what types of claims at law against a debtor may be invoked as antecedent debts within the value defense in Section 548(c) is one of first impression in the Second Circuit and an issue on which there is significant authority that directly conflicts with the Court's ruling.  The Bankruptcy Code expressly provides that value includes a "present or antecedent debt" and "liability on a claim" as determined by non-bankruptcy state and federal law.  *See, e.g., Butner v. United States*, 440 U.S. 48, 55-56 (1979) ("undefined considerations of equity provide no basis" for federal courts to reject state law); *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 452 (2007) (rejecting judicially-created exclusion of state remedies, where no "provision of the Bankruptcy Code . . . provid[ed] support for the new rule") (internal citation omitted).  There is no explicit statutory exception to this rule.

SIPA is part of the Securities Act of 1934 ("1934 Act") and expressly incorporates its provisions, including those that explicitly preserve Customers' substantive state and federal rights and remedies.  *See* 15 U.S.C. § 78bbb; 15 U.S.C. § 78bb(a)(2) ("[T]he rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity.").  Nothing in SIPA abrogates those non-bankruptcy rights and protections.  The statute does not preclude a customer from asserting valid state or federal law

5

claims as antecedent debts for avoidance purposes, allowing the customer to retain amounts in excess of their alleged principal deposits.

The rationale of the Ninth Circuit in *Donnell v. Kowell*, 533 F.3d 762 (9th Cir. 2008), upon which the Court relied to find that Customers' legal claims against Madoff Securities could not be asserted as antecedent debts, has been seriously limited, and perhaps overruled, by recent Ninth Circuit authority. *Official Committee v. Hancock Park Capital II, L.P. (In re Fitness Holdings)*, 714 F.3d 1141, 1147 (9th Cir. 2013).  In *Donell*, the Ninth Circuit found that investors in a Ponzi case are limited to return of invested principal, notwithstanding clear substantive non-bankruptcy law to the contrary.  533 F.3d at 778.  Just a few months ago, the Ninth Circuit emphatically held that where a transfer is alleged to have been made in repayment of an antecedent debt, "the court must determine whether the purported 'debt' constituted a right to payment under state law."  *Fitness Holdings*, 714 F.3d at 1147 (relying on *Travelers* and *Butner)*.  Likewise, while the Second Circuit has not ruled on whether federal securities claims existing from the time of a broker's fraudulent inducement may form the basis of valid antecedent debts whose satisfaction constitutes value under Section 548(c), the Ninth Circuit, in *Fitness Holdings*, expressly confirmed that antecedent debts include "claims that have their source in substantive federal law."  *Id.* at 1146, n.7.

The Court neither addressed *Fitness Holdings* nor otherwise attempted to reconcile the conflict between the Ninth Circuit authorities on the proper rule of law.  The question of whether SIPA prevents avoidance defendants from asserting valid state and federal claims as antecedent debts, and therefore as value for which the transfer was received, is a novel one on which there is no Second Circuit precedent.

*      *      *

**ISSUE THREE:  Whether the only obligations of Madoff Securities that can be disregarded as "value" for purposes of Section 548(c) are those obligations that the Trustee actually avoids.**

It is black letter law that a trustee must avoid a transfer before it becomes part of the bankruptcy estate.  *See FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992) (fraudulently transferred property is not part of the bankruptcy estate until it is recovered); *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137 (S.D.N.Y. 2005) ("[P]roperty that has been fraudulently or preferentially transferred does not become property of the estate until it has been recovered"); *Notinger v. Migliaccio (In re Fin. Res. Mortg., Inc.)*, 454 B.R. 6, 15 (D.N.H. 2011) (property transferred prior to petition date is not part of bankruptcy estate until the transfers are successfully avoided).

Whether the principles set forth in *Hirsch* and its progeny extend to the avoidance of debtor obligations is an issue of first impression in the Second Circuit and one on which neither the Court nor the parties have cited any direct authority.  If the same principles equally apply to the avoidance of debtor obligations, and -- absent avoidance -- a transferee is entitled to treat a payment received on account of the debtor's obligation as satisfaction of an antecedent debt, then most Customers have a complete defense to the Trustee's avoidance claims.

Likewise, where the reach-back period for avoidance of such obligations has expired, the question of whether there is any alternative legal basis on which the Trustee may disregard the obligation (and the value the transferee provides to the debtor in the form of satisfaction of an antecedent debt based on such obligations) is one of first impression.  These issues merit appellate consideration.

\*     \*     \*

**ISSUE FOUR**:  **Where a transferee held valid claims against the debtor under non-bankruptcy law at the time of transfer, whether the transferee is required to reduce such legal claims to judgment pre-petition in order to assert them as antecedent debts for the value defense, notwithstanding the contrary language of the definitions of "claim" and "value" in Sections 101(5) and 548(d)(2), respectively.**

The Bankruptcy Code expressly recognizes that the term "claims" includes "rights to payment" that have not been adjudicated or reduced to judgment.  11 U.S.C. §§ 101(5), (12); 11 U.S.C. § 548(d)(2).  Thus, the Code contemplates that the value defense measures the rights and entitlements of a transferee *at the time of the transfer* -- a point in time prior to the bankruptcy -- and that the transferee may retain those amounts that satisfied valid debts *as of that time*.  The lower court holding in *In re Bayou Grp., LLC*, 439 B.R. 284, 337-38 (S.D.N.Y. 2010), followed by this Court, that a customer must first obtain a judgment before invoking such claims defensively under Section 548(c) is novel, without substantive precedent, and flies in the face of the specific language of the Bankruptcy Code.  This issue is one on which there is no Second Circuit precedent.

\*     \*     \*

**ISSUE FIVE:  Whether Bankruptcy Code § 105(a) or SIPA permits a court to depart from the statutory definition of "claim" for purposes of applying the value defense in the context of a SIPA case in which a broker is alleged to have orchestrated a Ponzi scheme.**

There is significant contrary authority on the question of whether the allegations of a Ponzi scheme, and the notions of equity that SIPA customer property distributions involve, justify a wholesale departure from the statutory language of the Bankruptcy Code.  *See, e.g.,* *Butner*, 440 U.S. at 55-56 ("undefined considerations of equity provide no basis" for federal courts to reject state law in the absence of "congressional command" or "identifiable federal

interest"); *Travelers Cas. & Sur. Co.*, 549 U.S. at 453 ("where Congress has intended to provide
. . . exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly").

Whether a trustee's allegations of the existence of Ponzi scheme permit a trial court in a
SIPA liquidation to disregard valid antecedent debts created by non-bankruptcy law is an issue of
first impression in the Second Circuit.  The Sixth Circuit has held that a customer in similar
circumstances holds a cognizable claim against his broker for the amount reflected in his
brokerage account statement at the time of the broker's commission of the fraud on the customer.
*Visconsi v. Lehman Bros., Inc.*, 244 F. App'x 708, 713–14 (6th Cir.2007); *see also B.E.L.T., Inc.
v. Wachovia Corp.*, 403 F.3d 474, 477 (7th Cir. 2005) ("Someone who sells a car at the market
price to Charles Ponzi is entitled to keep the money without becoming liable to Ponzi's victims
for the loss created by his scheme.").  The cases -- including *Donnell* -- upon which the Court
relies involved equity investments in an enterprise or investments in pooled investment funds,
not claims arising from the special relationship between a broker-dealer and customers.
*Compare Charles Hughes & Co. v. SEC*, 139 F.2d 434, 437 (2d Cir. 1943) *and SEC v. Hasho*,
784 F.Supp. 1059, 1107, 1110-1112 (S.D.N.Y. 1992) (discussing fiduciary broker relationship
and duties to customer), *with In re Bayou Grp., LLC*, 439 B.R. at 291 *and In re Hedged-Inv.
Assocs., Inc.*, 84 F.3d 1286, 1287 (10th Cir. 1996).

The cases, such as *Bayou* and *Hedged-Investments*, that involve equity investments in an
enterprise are conceptually different because there investors placed their funds at risk in a
business, rather than entrusting them to a fiduciary such as a broker or investment adviser for
investment in the market.  Except for *Visconsi*, the parties cite no case where a broker was
responsible for involving its customers in a Ponzi scheme – and *Visconsi* recognized the validity
of all of the customer's common law claims.  Whatever the merits of limiting the antecedent debt

defense in the equity investment context, whether to extend those limitations to cases involving fiduciaries is a question of first impression in the Second Circuit.

*      *      *

**B.      <u>The Avoidance Calculation Involves Issues of First Impression</u>.**

The Trustee's avoidance powers are limited to transfers made within the applicable two-year reach-back period under Section 548(a)(1).  *SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.),* 476 B.R. 715 (S.D.N.Y. 2012), *appeal pending*, No. 12-2557(L) (2d Cir.); *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011).   The legal issues addressed in the Order concerning the application of the reach-back period to the Trustee's calculation of avoidance amounts are issues of first impression for which there is substantial ground for differing opinions.

**ISSUE SIX:   Whether a SIPA trustee may, as a matter of law, avoid inter-account transfers made to a customer before the statutory reach-back period by treating these unavoidable customer transfers as fiction.   Likewise, whether a SIPA trustee may, as a matter of law, compute avoidance amounts by including in the calculation unavoidable older transfers while setting off any new value provided by the transferee to the debtor during the reach-back period.**

There appears to be no federal appellate authority on these calculation issues in SIPA avoidance proceedings in the Second Circuit or otherwise.   Section 548 on its face contemplates avoidance of transfers "made" within the reach-back period.   The Trustee computes alleged avoidance exposure by reaching back many more years, even decades, disregarding transactions on which Customers relied that cannot be directly avoided because of the statutory limits of the reach-back period.   Just as the appropriate method for calculating a customer's net equity claim merited interlocutory appellate review, the proper application of the reach back period to the Trustee's avoidance calculations is a difficult issue of first impression and one on which the parties would greatly benefit from the finality of Second Circuit review.

10

\*       \*       \*

**C.      No Other Court Has Found That SIPA Abrogates The Bankruptcy Code's Avoidance Defenses If There Is A Shortfall In Customer Property.**

**ISSUE SEVEN:  SIPA expressly grants a SIPA trustee the power to avoid a liquidating broker-debtor's transfers only "to the extent that such transfer would have been customer property" and only "if and to the extent that such transfer is voidable or void under the provisions of [the Bankruptcy Code]."  Where that SIPA provision contains no other qualification or limitation on the bankruptcy avoidance scheme, does SIPA modify the Bankruptcy Code avoidance defenses to change the operation or application of Section 548(c) in cases where there is a shortfall in customer property?**

The question of whether the SIPA distribution scheme for customer property supplants or limits an avoidance defendant's affirmative value defenses under Section 548(c) beyond retention of principal is one of first impression.  The Order concludes that SIPA's priority for distribution of customer net equity claims prevents those customers defending avoidance actions from asserting antecedent debts as value defenses, because such claims -- if brought against the estate -- would be general creditor claims rather than priority customer claims.  Order at 11-15.  This novel interpretation of SIPA -- that a SIPA trustee's avoidance powers are not constrained by defenses conferred by the very same statute -- is subject to significant differences of opinion.

Both SIPA and the Bankruptcy Code separate the distribution of property of the estate from questions of avoidance and recovery.  *Compare* SIPA § 8(c)(1), 15 U.S.C. § 78fff-2(c)(1) *with* Bankruptcy Code § 726, 11 U.S.C. § 726.[4]  The question of whether SIPA requires that a

---

[4]      Like its bankruptcy analog, Section 726, SIPA § 8(c)(1) contains a priority scheme for distributions.  A transfer avoided under Section 548 and recovered under Section 550 becomes the property of the estate available for distribution to general creditors.  *See* 11 U.S.C. §§ 541(a)(3), 550(a).  Similarly, under SIPA, once a transfer is avoided and recovered it becomes part of the fund of customer property and is eligible for priority distribution to customers pursuant to Section 8(c)(1).  Customer net equity claims have the highest priority, and if funds remain after satisfying these priority claims and reimbursing SIPC, they are available for distribution to unsecured creditors.  This is comparable to the Bankruptcy Code, which provides for payment of priority claims and costs of administration before payment of unsecured claims.  *See* 11 U.S.C. § 507.

legitimate antecedent debt (existing as of the time of the pre-bankruptcy transfer) must also qualify as a net equity claim (a right arising from, and measured as of, the commencement of the SIPA case) in order to constitute value under Section 548(c) is one of first impression.  In the bankruptcy context, the position is equivalent to holding that where it is likely that only priority creditors will receive distributions from the estate, only priority claims or administrative (post-petition) claims can constitute value under Section 548(c).  The customers are not aware of any authority supporting that proposition.

The Second Circuit has not held that it is appropriate to conflate recovery and priority in an avoidance case, nor, for that matter, has any other circuit.  *See In re Sharp Int'l Corp.*, 403 F.3d 43, 54 (2d Cir. 2005) (under analogous state law, a conveyance that satisfies an antecedent debt is not fraudulent "even if its effect is to prefer one creditor over another") (quotation omitted); *Boston Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504, 1509 (1st Cir. 1987) ("The basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors; it normally does not try to choose among them.") (emphasis in original).[5]  As Order notes, the Second Circuit's prior decision on the appropriate calculation of customer net equity claims, *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712, *and cert. denied*, 133 S. Ct. 24 & 25 (2012), does not purport to address this issue.  Order at 23.

*        *        *

---

[5]    To the extent the Order suggests that the Customers are left to raise their antecedent debts only as damage claims against Madoff Securities' general estate, Order at 11, n.6, this analysis improperly inverts the burdens of initiating and prosecuting avoidance claims from the Trustee (to avoid a pre-bankruptcy transfer) to the customer (to prove a net equity claim against the estate as of the commencement of the bankruptcy).

These legal issues are complex, and arise at the intersection of multiple developing areas of law.  As this Court found, their consideration merited withdrawal of the reference from bankruptcy court for early determination.  Antecedent Debt Order at 4, ¶ 1.  The passage of more than a year between the hearing on the Customers' motion and the issuance of the Order brought no further clarity to the state of the law in this developing area, nor did it clarify the nuances presented by these cases.  There can be no real question that the extent and effect of the value defense here presents controlling issues on which there are significant grounds for conflicting opinion.

## IV.   THESE LEGAL ISSUES AFFECT HUNDREDS OF CASES AND THEIR RESOLUTION WILL MATERIALLY ADVANCE THE LITIGATION.

Immediate appellate review of these issues will materially advance the litigation because of the strictly legal nature of the issues presented. "The requirement that an appeal [under 28 U.S.C. § 1292(b)] may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 176 (S.D.N.Y. 1987) (citing 16 C. Wright, A. Miller, E. Cooper & E. Gressman, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3930 (1977 & Supp. 1986)).  Certification is appropriate where "the underlying motion raises a purely legal question about which there are no triable issues of fact." *In re Air Crash off Long Island, N.Y.*, 27 F. Supp. 2d 431, 435 (S.D.N.Y. 1998).  Likewise, "[a]n immediate appeal may materially advance the ultimate termination of the litigation when reversal could result in dismissal of the action." *Lloyd's Am. Trust Fund Litig.*, 1997 WL 458739 at *7. Because, for many defending parties, the antecedent debt defenses are dispositive of the actions against them, certification would materially advance the resolution of these actions.

13

Appellate resolution of the scope and application of the value defense will also materially advance the litigation because of the consolidated nature of these proceedings.  While an issue "need not affect a wide range of pending cases" to be considered a "controlling question of law" within the meaning of Section 1292(b), *see Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990), it is undisputed that the issues here affect hundreds of pending lawsuits involving thousands of Customers.  "Because the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases." *Air Crash off Long Island, N.Y.*, 27 F. Supp. at 436 (quoting *Lloyd's Am. Trust Fund Litig.*, 1997 WL 458739 at *3); *Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir. 1961) (*en banc*) (explaining that interlocutory appeal was granted in part because "such a determination was likely to have precedential value for a large number of other suits . . . now pending in the Southern District [of New York]"); *Romea v. Heiberger & Assocs.*, 988 F. Supp. 715, 717 (S.D.N.Y. 1998) (concluding that interlocutory review was appropriate where questions presented were of "broad applicability" to significant volume of litigation in New York).

While this Court previously denied certification of its ruling on another statutory defense in *Picard v. Katz,* 466 B.R. 208 (S.D.N.Y. 2012), the circumstances were quite different.  There, the Court opted to retain the litigation instead of returning it to the Bankruptcy Court and set comprehensive schedules for pretrial deadlines leading up to an imminent trial date.  Thus, an immediate appeal would have fostered delay rather than advancing the litigation:

> [W]ith the trial of [*Katz*] firmly set to begin just two months from now, the main effect of granting the Trustee's motion would be to materially delay, rather than materially advance, the ultimate termination of the litigation. . . .  When the full trial of this proceeding is completed and final judgment entered, just a few months from now, an appellate court will be able to review, on a full record, not just the three rulings of which the Trustee now complains, but all relevant rulings in this complicated and important proceeding.

14

*Id.* at 210.  Unlike *Katz,* the Avoidance Actions are nowhere near trial-ready, with virtually no pretrial proceedings having occurred.  *See id.* ("Although the Trustee makes much of the supposed impact of the Decision on other adversary proceedings he has brought, none of those proceedings is remotely as far advanced as this one.").

Where "an appeal would facilitate the expeditious resolution of the case," applications for leave to appeal "should be liberally granted."  *In re Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *7 (S.D.N.Y. Oct. 16, 2009)(citing *In re Manville Forest Prod. Corp.,* 31 B.R. 991, 995 n.5 (S.D.N.Y. 1983)) (discussing appeals of bankruptcy court rulings to district court).  Certification of the Order is warranted here because, until the appellate courts provide finality, the value defense is likely to be the subject of continued dispute in hundreds of affected avoidance actions.  Even where an immediate appeal will not necessarily "advance the time for trial or shorten the time required for trial," *In re Oxford*, 182 F.R. at 53, providing "certainty as to [the claims] will help streamline the litigation for trial and on appeal."  *Consolidated Edison, Inc. v. Northeast Utils.*, 318 F. Supp. 2d 181, 196 (S.D.N.Y. 2004).  Here, an immediate appeal will provide needed certainty to the parties, avoid unnecessary litigation, and expedite the ultimate resolution of these cases. *See In re Fosamax Prod. Liab. Litig.*, No. 06 MD 01789 (JFK), 2011 WL 2566074, at *10 (S.D.N.Y. June 29, 2011) (holding that interlocutory appellate review was appropriate to prevent additional trials and materially advance progress of more than 100 related lawsuits).  Immediate review will also reduce the likelihood of post-trial appeals in the hundreds of cases affected by these issues, and reduce the potential for relitigation and retrial.

As with other consolidated issues of significant impact in this case, interlocutory appeal of these issues is appropriate.[6]

## V.  **CONCLUSION**

For the foregoing reasons, Customers request that the Court amend the Order to provide the requisite certification required by Section 1292(b) to permit the Customers to seek immediate interlocutory review by the Court of Appeals of the issues relating to the value defense under Section 548(c) of the Bankruptcy Code in these SIPA Avoidance Actions.

Dated:       New York, New York
             October 29, 2013

                              Respectfully submitted,

                              **K&L GATES LLP**


                              By: /s/ Richard A. Kirby
                                   Richard A. Kirby
                                   Laura L. Clinton
                                   Martha Rodriguez-Lopez
                              1601 K Street NW
                              Washington, DC 20006-1600

---

[6]       Three overarching legal issues materially affect the avoidance actions against good-faith defendants, such as the Customers.  The first, application of Section 546(e) to the Trustee's avoidance claims, is currently on appeal to the Second Circuit after the entry of Rule 54(b) judgments by this Court.  The second, whether customer net equity should be adjusted for inflation in the context of SIPA customer claims, is the subject of a recent Bankruptcy Court decision.  The Bankruptcy Court, *sua sponte*, suggested that the decision be certified pursuant to 28 U.S.C. §158(d) as involving a controlling question of law with no controlling decision from the court of appeals and that an immediate appeal would materially advance the case.  On October 24, 2013, the parties filed a joint petition for direct review by the Second Circuit.  The third is the matter presented here:  the scope of the antecedent debt defense.  It, too, should be certified for prompt review, to expedite the overall resolution of the numerous adversary proceedings arising from the Madoff Securities liquidation.

**BECKER & POLIAKOFF LLP**


By: /s/ Helen Davis Chaitman
    Helen Davis Chaitman
45 Broadway
New York, NY 10006


**KLEINBERG, KAPLAN, WOLFF &
COHEN, P.C.**


By: /s/ Matthew J. Gold
    David Parker
    Matthew J. Gold
551 Fifth Avenue
New York, New York 10176


**KRAMER LEVIN NAFTALIS & FRANKEL
LLP**


By: /s/ Elise S. Frejka
    Philip Bentley
    Elise S. Frejka
    Jason Rappaport
1177 Avenue of the Americas
New York, New York 10036


**KUDMAN TRACHTEN ALOE LLP**


By: /s/ Paul H. Aloe
    Paul H. Aloe
    Evan S. Cowit
The Empire State Building
350 Fifth Avenue, Suite 4400
New York, New York 10118

17

**LOEB & LOEB LLP**


By: /s/ P. Gregory Schwed
     Walter H. Curchack
     P. Gregory Schwed
     Daniel B. Besikof
345 Park Avenue
New York, New York  10154


**STUTMAN, TREISTER & GLATT, PC**


By: /s/ William P. Weintraub
     William P. Weintraub
     Gregory W. Fox
     Kizzy L. Jarashow
675 Third Avenue, Suite 2216
New York, New York 10017
(212) 235-0800


*Of Counsel:*


**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**

Marc E. Kasowitz
Daniel J. Fetterman
David J. Mark
1633 Broadway
New York, New York 10019


**PRYOR CASHMAN LLP**

Richard Levy, Jr.
7 Times Square
New York, New York 10036-6569

**SCHULTE ROTH & ZABEL LLP**

Marcy Ressler Harris
Jennifer M. Opheim
Mark D. Richardson
919 Third Avenue
New York, New York  10022


**SNR DENTON US LLP**

Carole Neville, Esq.
1221 Avenue of the Americas
New York, NY 10020