**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | 12-MC-0115 (JSR) |
| In re: <br><br> MADOFF SECURITIES | |

**ANTECEDENT DEBT DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF MOTION TO AMEND ORDER REGARDING ANTECEDENT DEBT**
**ISSUES TO ADD 28 U.S.C. §1292(b) CERTIFICATION**
**FOR INTERLOCUTORY APPEAL**

*Filed by*

Richard A. Kirby
K&L GATES LLP
1601 K Street
Washington D.C. 20006
(202) 778-9000 (Telephone)
(202) 778-9100 (Facsimile)

*on behalf of all counsel listed below*

I.      **INTRODUCTION**

The Order holds that, where a SIPA trustee brings avoidance actions to claw back withdrawals from customers' brokerage accounts, those customers have no value defenses under Section 548(c) for amounts in excess of their principal deposits.  This holding relies on the premise that SIPA's priority distribution scheme alters the statutory bankruptcy defenses to avoidance.  This unprecedented ruling raises statutory interpretation issues of first impression.

In withdrawing the reference and ordering common briefing on antecedent debt, this Court recognized the judicial economy to be served in obtaining legal rulings on the application of this core legal defense.  There is no real dispute that the Order addresses controlling legal issues that govern defenses asserted by thousands of parties involving millions of dollars.  Nothing has altered the need for a definitive ruling on these issues following the Court's Order.  To the contrary, certification and immediate appellate review of the Order will permit final resolution on a consolidated basis, rather than through piecemeal litigation, which will save vast amounts of resources.  Because the antecedent debt defense materially impacts the vast majority of avoidance actions (and would be dispositive of many of the Trustee's claims), immediate review would materially advance the litigation.

Contrary to the Trustee's assertions, there are substantial grounds for differing opinion on the application of the avoidance defense here.  The Order's conflation of the Trustee's avoidance powers with the SIPA customer claims process, without regard to their different statutory sources and limitations, is a significant shift from prior interpretations of SIPA.  Likewise, allowing the Trustee to treat transfers as "customer property" subject to SIPA's priority distribution *before* the transfers are formally avoided turns the statutory scheme on its head and ignores SIPA's own language.  Finally, treating customers of a registered broker-dealer as if they were direct equity investors in a Ponzi scheme -- rather than equivalent to trust beneficiaries -- will have wide-

1

ranging market impacts.  There are substantial grounds for disagreement on all of these issues, as set out below.

## II.   THE CONFLATION OF AVOIDANCE DEFENSES WITH CLAIMS AGAINST THE SIPA ESTATE PRESENTS AN ISSUE WARRANTING CERTIFICATION.

The Bankruptcy Code provides an affirmative defense to the avoidance of transfers if the defendant took such transfers for "value and in good faith."  11 U.S.C. § 548(c).  There is no statutory exception to this rule based on the estate's potential recovery or the status of other creditors.  The determination that the ordinary bankruptcy avoidance defense of value does not apply in a SIPA case where there is a shortfall in the pool of customer property, because the state law claims giving rise to such value would not be entitled to SIPA priority, is not supported by the statute or existing case-law.  The avoidance defendants are not raising SIPA customer claims in the avoidance actions; rather, they have invoked the express statutory defense established by Congress in the very statute that allows the Trustee to bring the actions.  The Order's contrary interpretation warrants interlocutory review.

### A.   There are substantial grounds for disagreement as to whether a value defense may be disallowed because the underlying claim is not a SIPA priority claim.

SIPA does not provide its trustees with avoidance powers greater than those in the Bankruptcy Code.  The Bankruptcy Code does not confer power on SIPA trustees to override the value defense codified in Sections 548(c) and (d)(2)(A).  No provision in SIPA grants such power, either.  To the contrary, SIPA only borrows the avoidance provisions, as is and subject to statutory limitations on their exercise, from the Code.  SIPA Section 8(c)(3) is explicit:  a trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property *if and to the extent that such transfer is voidable or void under the provisions of title 11*.  15 U.S.C. § 78fff-2(c)(3).

Many other Code provisions expressly defer to SIPA. *E.g.*, 11 U.S.C. §§ 555, 559 (excepting from scope of any stay order liquidation rights of stockbrokers and repo participants unless "such order is authorized under the provisions of [SIPA]"); 11 U.S.C. § 1501(c)(3) (excluding from cross-border bankruptcy jurisdiction any "entity subject to a proceeding under [SIPA]"). The avoidance provisions of Section 548 contain no such qualifications. Congress plainly knows how to make Bankruptcy Code provisions subservient to SIPA, but it repeatedly declined to do so in Sections 548(c) and (d)(2)(A).[1]

The Trustee's authorities emphasize the separate customer property estate created by SIPA, but do not expand what a SIPA trustee can recover through the exercise of his avoidance powers. For example, the Second Circuit recently explained the operation of SIPA:

> To protect customers of failed brokerages, their claims are satisfied from a customer property estate, which is separate from the general estate used to satisfy the claims of general unsecured creditors. To effectuate its purposes, SIPA accords "those claimants in a SIPA liquidation proceeding who qualify as 'customers' of the debtor priority over the distribution of 'customer property.'"

*Rosenman Family, LLC v. Picard*, 395 F. App'x 766, 768 (2d Cir. 2010), *discussing In re Adler Coleman Clearing Corp.*, 195 B.R. 266, 270 (Bankr. S.D.N.Y. 1996) *and In re New Times Secs. Servs., Inc.*, 463 F.3d 125, 127 (2d Cir. 2006). Contrary to the Trustee's assertions, *Rosenman*, *Adler Coleman,* and *New Times* say nothing about SIPA altering the Bankruptcy Code avoidance

---

[1] If a SIPA trustee can abrogate standard avoidance value defenses in order to claw back transfers and redistribute losses among all customers of a failed broker, there is no principled reason why other avoidance defenses, such Section 546(e), would limit a SIPA trustee's avoidance power. As this Court has previously held, however, such defenses are available in an action brought by a SIPA Trustee, notwithstanding the contention that they limit the Trustee's ability to redistribute losses among customers.

powers or overriding its defenses.[2]   The concept of "customer property" allows for priorities

among SIPA claimants,[3] but there is no case applying claim priorities to avoidance defenses.

**B.      There are substantial grounds for disagreement regarding whether the Trustee is obligated to avoid transfers before he can treat them as part of the customer property pool.**

By conflating avoidance defenses with claims against the estate, the Order treats funds

previously transferred out of the estate as if they are customer property.   Yet, absent avoidance,

funds allegedly transferred by a debtor-broker are not customer property, nor can they be treated

as such.   *See, e.g., In re Saunders*, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989) (funds that may be

the target of a fraudulent conveyance suit are not estate property until recovered and thus are not

affected by a §362(a) stay).   This conclusion follows from the well-established rule that assets

alleged to have been fraudulently conveyed do not become property of the estate "unless and

until they are recovered through a successful avoidance action."   *In re Bernard L. Madoff Inv.*

*Secs., LLC*, 440 B.R. 243, 271 (Bankr. S.D.N.Y. 2010).   *See In re Colonial Realty Co.*, 980 F.2d

125, 131 (2d Cir. 1992) (fraudulently conveyed property that has not yet been recovered is not

property of the estate for purposes of §362(a) automatic stay); *Rosenman,* 401 B.R. at 636

---

[2]  Indeed, these cases do not involve avoidance actions at all.

[3] In a garden-variety bankruptcy, creditor claims are also statutorily accorded different priorities. *See, e.g.,* 11 U.S.C. §507(a) (ranking, in payment priority order, ten different types of claims, such as claims for taxes, domestic support obligations, etc.).   A creditor holding one of these claims could be sued by a bankruptcy trustee, but that creditor could undeniably assert as a defense the amount of its legitimate prepetition claim, whether for unpaid domestic support obligations (a first priority claim) or a claim for a refund for the purchase of a household item (a seventh priority claim).   *Id. at* (a)(1)(A), (7).   Even the holder of a general unsecured claim entitled to no priority at all could assert the satisfaction of that claim as antecedent debt for purposes of establishing value.   Each of these claims has identical priority under state law at the time of the transfer – the relevant time for measuring value – because the relative priorities are pure creations of the Bankruptcy Code.   Similarly, the SIPA two estate structure is purely a creation of SIPA.   At the time of the transfers, Madoff Securities owed Customers money under state law, and the transfers satisfied those obligations.

(contents of Madoff Securities' accounts were customer property).[4]   Because none of the property at issue is customer property, the priority of the antecedent debt underlying a customer's defense to avoidance is of no consequence.

This is consistent with the language of SIPA.  SIPA generally defines customer property as "cash and securities … at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."  15 U.S.C. §78lll(4).  Under SIPA, "customer property" includes property that is *actually recovered* by a SIPA trustee, not merely transfers of property that are the targets of recovery or that are potentially recoverable. 15 U.S.C. § 78fff-2(c)(3) (trustee may recover any property transferred by the debtor which, "*except for such transfer, would have been customer property* if and to the extent that such transfer is voidable or void under the provisions of Title 11.  *Such recovered property shall be treated as customer property.*") (italics added).  This is fully consistent with similar provisions in the Bankruptcy Code.  *See e.g.,* 11 U.S.C. § 541(a)(3) (property of the estate includes "[a]ny interest in property that the trustee recovers under section . . . 550 . . . of this title").

Contrary to the Trustee's suggestion, property transferred by a broker-debtor is not customer property; absent a successful avoidance action, only the "proceeds" of the transfer in the hands of the debtor are customer property.  Thus, if the broker converted customer property to buy a yacht, a SIPA trustee may treat the yacht (or its value) held by the estate as customer property.  This statutory scheme, however, cannot be read to require the good faith yacht seller to

---

[4]  The Trustee's peculiar contention that this is a new argument is wrong; the avoidance of obligations and transfers was explicitly raised in the motion papers.  Memorandum of Law in Support of Motion to Dismiss Regarding Antecedent Debt Issues at 23-25, ECF No. 199; Reply Memorandum of Law in Support of Motion to Dismiss Regarding Antecedent Debt Issues at 16, 23, ECF No. 273.

surrender the transfer from the debtor (or its value) back to the estate.  Likewise, the value of the yacht is measured at the time of the transfer, not years later when the yacht may have appreciated or depreciated in value, or where the market for used yachts may have failed.[5]  The effect of the Trustee's position is that all prior transfers by the debtor are subject to a constructive trust and available to the estate upon demand for redistribution through the customer claims process. There is no statutory basis for this position.  To the contrary, SIPA §78fff-2(c)(3) states that, in connection with an avoidance action, "the property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer for his benefit, such customer shall be deemed to have been a creditor …".  By deeming the customer who is an avoidance defendant to be a creditor, SIPA itself manifests congressional intent to allow customers the same avoidance defenses as creditors.

The Trustee and the Court rest on 15 U.S.C. § 78fff(b), a general provision which provides that "[t]o the extent consistent with" SIPA, "a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under [the Bankruptcy Code].".  Tr Mem. at 18.  That clause does not override the more specific, express provisions of SIPA that define and limit "customer property" to assets held by the debtor.  *Lopes v. Dep't of Soc. Servs.*, 696 F.3d 180, 186 (2d Cir. 2012) ("the operative principle of statutory construction is that a specific provision takes precedence over a more general provision.") *citing United States v. Torres-Echavarria*, 129 F.3d 692, 699 n. 3 (2d Cir. 1997).  Rather, SIPA specifically

---

[5] This is because the avoidance defense of value is measured at time of transfer, whereas a claim against the estate is evaluated at the time of the petition.  *Compare* Section 548(c) ("to the extent that such transferee … gave value to the debtor *in exchange for* such transfer.")  *with Cooper v. Ashley Communications, Inc. (In re Morris Communications, Inc.),* 914 F.2d 458, 466 (4th Cir. 1990) (measuring reasonable equivalence of value at time of the transfer in avoidance action under Section 548).

acknowledges – and the prior case law universally recognized -- that assets transferred by the debtor are no longer "customer property", and only become "customer property" once reincorporated into the estate through the Bankruptcy Code's avoidance procedures.

> C. **The Net Equity decision approving the Trustee's method for calculating net equity claims does not address antecedent debt defenses and does not resolve the issues addressed in the Order.**

The *Net Equity* Decision does not address (much less govern) the treatment of antecedent debt defenses under Section 548(c). That decision focused solely on the separate question of what type of claims asserted by customers for recovery *from the estate* the trustee must honor for purposes of calculating a customer's net equity against the SIPA estate. *In re Bernard L. Madoff Inv. Secs., LLC*, 654 F.3d 229, 231, 239 (2d Cir. 2011) (narrowly framing holding concerning calculation of net equity under SIPA in this case).

There is a meaningful difference between asserting the value of a claim against the debtor as an avoidance defense, versus actually asserting a claim for damages against the estate. The Court acknowledged this position at hearing:

> So your point is that I really, in that little monologue I gave about having all these statutes work together, should have accused myself of creating a red herring because, at least as you read it, the SIPC trustee, while he is free to sue anyone that a trustee can sue, his special powers, if you will, relate to the distribution.

Transcript of August 10, 2012 Oral Argument at 50-51. Regardless of the Court's ultimate resolution of the issues, they are not a simple matter of applying the statutes, and there is substantial ground for difference of opinion on the correct result.

## III.   WHETHER CUSTOMERS OF A BROKER-DEALER SHOULD BE TREATED AS EQUITY INVESTORS IN THE BROKER'S BUSINESS FOR ANTECEDENT DEBT PURPOSES IS AN ISSUE WARRANTING CERTIFICATION.

Unlike the Ponzi scheme cases on which the Court relied, Customers here did not invest in a business enterprise that turned out to be fraudulent. Instead, they entrusted their funds to a

registered securities fiduciary who was supposed to trade for them in the stock market. Whatever the merits of cases addressing Ponzi equity investors, there is no basis to treat customers of a broker similarly; they have an entirely different relationship with the debtor.

Customers who entrust funds with a broker for investment in securities in the stock market enjoy long-standing federal and state statutory protections, including SIPA. The Court's order rejects those rights by relying on the judicially-created presumption that Ponzi investors are only entitled to recover the cash value of their actual investment, and that they may be subject to avoidance claims for recovery of "net profits" earned from their investments *in the scheme*. But none of the cases relied upon by the Court involved any consideration of the different position of customers who entrusted their money to a registered broker.[6]

The Court and the Trustee attempt to distinguish *Visconsi v. Lehman Bros.*, 244 Fed. App'x 708 (6th Cir. 2007). But *Visconsi* provides the type of conflict that makes interlocutory review appropriate. The Sixth Circuit upheld an arbitration award in favor of a customer whose broker perpetrated a Ponzi scheme, and awarded the customer amounts substantially greater than the customer's principal. The customer in *Visconsi* was situated in an identical position to Customers, who also seek to retain amounts received from their Madoff Securities accounts based on the value defense permitted by Section 548(c) *measured at the time of the transfer*. There is no meaningful distinction between the circumstances of these two customer cases. There can be no question that the broker defendant is liable to the customer for state and federal

---

[6]  The Court previously acknowledged the long-standing distinction between equity investors and creditors, and acknowledged that "a general rule that prevented creditors from retaining payments from a fraud would create great uncertainty." *Greiff*, 476 B.R. at 726-27. In an attempt to distinguish among legitimate creditors of the broker, the Court has created an exception to this rule that denies creditor status to a brokerage customer. This is an issue of first impression for the Second Circuit.

claims arising by reason of the broker's fraud.  The question is whether the existence of a SIPA proceeding alters the claims that an avoidance defendant can assert as a defense.

The Court provides no basis for limiting or disallowing the claims asserted defensively by good faith Customers under Section 548(c) of the Bankruptcy Code. The logical extension of the Court's position is that any person who engages in business with an entity that turns out to be a Ponzi scheme is at risk of an avoidance action to recover the "profits" earned, or the value realized from the debtor, if the transfer somehow was connected to the scheme.  This completely abrogates the value defense:  In the same way that a business that sold a photocopy machine to a debtor is entitled to retain that full payment received, including a component of profit, even if the copier was purchased in order to further a Ponzi scheme, so should a retail securities customer be treats similarly to that vendor for avoidance purposes.  Section 548(c) so provides, and SIPA enunciates no exception to the incorporated avoidance remedy.

IV.     **UNLESS THE ORDER IS CERTIFIED FOR INTERLOCUTORY APPEAL, THE JUDICIAL ECONOMY AND BENEFITS CONFERRED BY THIS COURT'S WITHDRAWAL OF THE REFERENCE WOULD BE LOST.**

The Trustee's opposition to certification is not well-founded.  This Court withdrew the reference on antecedent debt issues and ordered common briefing, recognizing both the judicial economy served by a consolidated legal ruling and the complexity and impact of the legal issues involved.  Unlike cases such as *Koehler* and *Huron Consultin*g, discovery is not necessary for the final review of the issues here.  *See Koehler* (final resolution of jurisdictional question required factual record; appellate review of whether plaintiff had pled sufficient facts to make prima facia case for jurisdiction was waste of resources); *Huron Consulting* (refusing to certify ruling on motion to dismiss where legal questions would be better defined on a fuller factual record; anticipating motion for summary judgment); *see also Quinn* (jurisdictional issues required factual development before final resolution) (all cited in Tr. Mem. at 3-4).  To the

contrary, this Court ruled on the issues addressed in the Order as a matter of law; the issues are ready for appellate review on the record as it stands now.[7]

Likewise, there is no basis for the Trustee's suggestion that Customers are attempting to delay the proceedings.  In the *Buspirone Patent Litigation* case (cited in Tr. Mem. at 3), a party belatedly sought certification of a prior ruling only once it was facing disputes that could force the waiver of privilege and potential discovery of protected material.  *See In re Buspirone Patent Litig.*, at 49 (citing party's three month delay in seeking certification as evidence that it was attempting to delay underlying proceedings).  Here, Customers promptly moved for certification and would expeditiously pursue appellate review.  With other legal issues arising in these cases already pending before the Second Circuit, there is no material additional delay that would follow from interlocutory review.

## V.      CONCLUSION

For the foregoing reasons and those in the opening memorandum, the Court should certify the antecedent debt issues for immediate interlocutory appeal.

Dated:          New York, New York
                November 26, 2013

                                        Respectfully submitted,
                                        **K&L GATES LLP**


                                        By: /s/ Richard A. Kirby
                                             Richard A. Kirby
                                             Laura L. Clinton
                                             Martha Rodriguez-Lopez
                                        1601 K Street NW
                                        Washington, DC 20006-1600

---

[7] The fact that avoidance defendants may raise other defenses does not diminish the impact and importance of the antecedent debt and value defenses to these proceedings.  The Trustee's one-off examples of potential fact disputes or allegations of asset depletion are red herrings.

**BECKER & POLIAKOFF LLP**


By: /s/ Helen Davis Chaitman
    Helen Davis Chaitman
45 Broadway
New York, NY 10006


**KLEINBERG, KAPLAN, WOLFF &
COHEN, P.C.**


By: /s/ Matthew J. Gold
    David Parker
    Matthew J. Gold
551 Fifth Avenue
New York, New York 10176


**KRAMER LEVIN NAFTALIS & FRANKEL
LLP**


By: /s/ Elise S. Frejka
    Philip Bentley
    Elise S. Frejka
    Jason Rappaport
1177 Avenue of the Americas
New York, New York 10036


**KUDMAN TRACHTEN ALOE LLP**


By: /s/ Paul H. Aloe
    Paul H. Aloe
    Evan S. Cowit
The Empire State Building
350 Fifth Avenue, Suite 4400
New York, New York 10118

**LOEB & LOEB LLP**


By:  /s/ P. Gregory Schwed
     Walter H. Curchack
     P. Gregory Schwed
     Daniel B. Besikof
345 Park Avenue
New York, New York  10154


**STUTMAN, TREISTER & GLATT, PC**


By: /s/ William P. Weintraub
     William P. Weintraub
     Gregory W. Fox
     Kizzy L. Jarashow
675 Third Avenue, Suite 2216
New York, New York 10017
(212) 235-0800




*Of Counsel:*


**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**

Marc E. Kasowitz
Daniel J. Fetterman
David J. Mark
1633 Broadway
New York, New York 10019


**PRYOR CASHMAN LLP**

Richard Levy, Jr.
7 Times Square
New York, New York 10036-6569

**SCHULTE ROTH & ZABEL LLP**

Marcy Ressler Harris
Jennifer M. Opheim
Mark D. Richardson
919 Third Avenue
New York, New York  10022

**SNR DENTON US LLP**

Carole Neville, Esq.
1221 Avenue of the Americas
New York, NY 10020