UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>Civil Action No. 12-mc-0115 (JSR) |
| In re:<br><br>MADOFF SECURITIES | |

**REPLY MEMORANDUM OF THE SECURITIES INVESTOR PROTECTION CORPORATION IN SUPPORT OF TRUSTEE'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

SECURITIES INVESTOR PROTECTION CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
CHRISTOPHER H. LAROSA
Senior Associate General Counsel - Litigation

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

    I.      Interlocutory Review Would Advance Termination of the
           Affected Litigations ...............................................................................................1

    II.     There is Substantial Ground for Difference of Opinion Regarding the
           Correctness of the Order .......................................................................................5

    III.    The Court Should Not Exercise Its Discretion to Deny Certification .....................8

CONCLUSION..................................................................................................................9

# **TABLE OF AUTHORITIES**

**CASES:**                                                                                                                          **PAGE**

*In re Bayou Group., LLC*, 439 B.R. 284 (S.D.N.Y. 2010) ............................................................7, 8

*In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229 (2d Cir. 2011),
    *reh'g and reh'g en banc den.* (2d Cir. Nov. 08, 2011), *cert. dismissed*,
    132 S. Ct. 2712 (2012) *and cert. den.*, 133 S. Ct. 24 *and* 133 S. Ct. 25 (2012) ..................6

*Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996) ..................................................................................7

*Hoover v. Ronwin*, 466 U.S. 558 (1984) ..........................................................................................2

*Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21 (2d Cir. 1990) ....................................................2

*Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863 (2d Cir. 1996) .....................................................1

*In re Lloyd's American Trust Fund Litig.*, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ...............5

*Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*,
    740 F.3d 81 (2d Cir. 2014) ...................................................................................................7

*Pereira v. Grecogas Ltd. (In re Saba Enterprises, Inc.)*, 421 B.R. 626 (S.D.N.Y. 2009) ...............8

*Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011) ................................................................................7

*Picard v. Katz*, 466 B.R. 208 (S.D.N.Y. 2012) ................................................................................3

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    2013 WL 6301085 (Dec. 5, 2013 S.D.N.Y.) .......................................................................4

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    2014 WL 465360 (Jan. 14, 2014 S.D.N.Y.) .......................................................................4

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014) .....................................................................1

*In re September 11 Property Damage and Business Loss Litigation*,
    481 F. Supp. 2d 253 (S.D.N.Y. 2007) .................................................................................7

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005) ...................................................................................................7

*Weber v. United States*, 484 F.3d 154 (2d Cir. 2007) ..............................................................1, 2

## TABLE OF AUTHORITIES
(cont.)

**STATUTES AND RULES:** **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78fff(b) ............................................................................................................................. 6
78fff-2(c) .......................................................................................................................... 6

United States Bankruptcy Code, 11 U.S.C. §

548(c) ............................................................................................................................... 7
548(a)(1)(A) ..................................................................................................................... 8
741-746 ............................................................................................................................ 6
749(a) ............................................................................................................................... 6

28 U.S.C. §

1292(b) ..................................................................................................................... 1, 2, 4

**LEGISLATIVE MATERIALS:**

*Hearings on H.R. 6238 and H.R. 7260 Before Subcomm. No. 3 of the House Comm.
on the Judiciary*, 85th Cong. (1958) ................................................................................ 2

*Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*,
88 Harv. L. Rev. 607 (1975) ........................................................................................ 1-2

5 *Collier on Bankruptcy* ¶ 548.09[2][b] (16th ed. 2014) .................................................... 7

Pursuant to Section 78eee(d) of the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), the Securities Investor Protection Corporation ("SIPC") submits this reply memorandum in support of the motion ("Motion") of Irving H. Picard ("Trustee"), trustee for the consolidated liquidation of Bernard L. Madoff Investment Secs. LLC ("BLMIS") and Bernard L. Madoff, for entry of an order pursuant to 28 U.S.C. § 1292(b) ("Section 1292(b)") certifying this Court's Opinion and Order of April 27, 2014 ("Order"), *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014), for interlocutory review.

Defendants do not dispute that the Order involves a "controlling question of law," and instead oppose the Motion on the grounds that interlocutory review would not materially advance the termination of the approximately 150 suits underlying this action and that there is no substantial ground for a difference of opinion as to the propriety of the Court's Order.  In the alternative, Defendants urge the Court to exercise its discretion to decline certification even if it finds that the criteria for certification have been met.  In fact, as explained more fully below, those criteria have been met and a discretionary decision against certification would be incompatible with the Congressional purposes underlying SIPA and Section 1292(b).

## I.     Interlocutory Review Would Advance Termination of the Affected Litigations

As the Second Circuit has recognized, Congress enacted Section 1292(b) as an exception to the final judgment rule in order to provide for interlocutory appeals that promise to conserve judicial and party resources by shortening the time between the commencement of action and its ultimate termination.  *See, e.g., Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007); *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 864-65 (2d Cir. 1996) (Congress passed Section 1292(b) in order to "avoid protracted litigation").  *See also*, Note, *Interlocutory Appeals in the*

*Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv. L. Rev. 607, 610-11 (1975); *Hearings on H.R. 6238 and H.R. 7260 Before Subcomm. No. 3 of the House Comm. on the Judiciary*, 85th Cong. 14 (1958).  More specifically, Congress contemplated that the courts would use Section 1292(b) in order to promptly resolve "knotty legal problems" that might unnecessarily protract ongoing litigation if not addressed on appeal until after entry of a final judgment.  *See*, *e.g.*, *Weber*, 484 F.3d at 159; *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (Section 1292(b) certification appropriate resolution of the subject issue would ease docket congestion).

That is exactly what the Trustee proposes through the Motion.  Immediate application of the Court's Order will require the Trustee to amend the complaints in substantially all 150 of the affected suits to add allegations that the Defendants were "willfully blind" to the BLMIS fraud.  Defendants then will have to respond to the amended complaints.  Inevitably, some of those responses will take the form of motions to dismiss, which the Bankruptcy Court then will have to resolve by measuring the Trustee's allegations against the "willful blindness" standard adopted by this Court.  It is certain that the considerable time and expense necessary to complete this process could be saved through an immediate appeal of the Court's Order.

Moreover, it is highly probable that an immediate appeal would result in additional savings of judicial and party time and resources.  Given the stringency of the motion to dismiss standard, and the care with which the Trustee is likely to replead his complaints, it is not likely that any of the amended complaints will be dismissed.  *See Hoover v. Ronwin*, 466 U.S. 558, 587 (1984) (complaint may be dismissed only if, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, "it appears beyond doubt…that the plaintiff can prove no set of facts which would entitle him to relief").  The

Second Circuit may not be in a position to consider the propriety of the Court's Order until after pretrial discovery has been completed or even until after some or all of the cases have been tried. Satisfying the heightened proof requirement imposed by the Court's "willful blindness" standard – a far more stringent standard than then "inquiry notice" standard otherwise applicable under the Bankruptcy Code - could force the Trustee to seek more extensive discovery and to introduce a much greater quantum of evidence of at trial, unduly protracting both processes.

Further, while, even under the "willful blindness" standard, the Trustee is likely to prevail at trial in many, maybe most, of his suits, he may lose one or more of those trials. In any such case, if the Trustee appeals a final judgment entered against him, and the Second Circuit ultimately reverses the judgment on the ground that the lower courts applied wrong good faith standard, a new trial will be required. Even a few such retrials will result in a substantial, and entirely avoidable, waste of judicial and party time and resources.

Beyond providing a misleading, and inaccurate, description of the potential sequence of events that may occur if this Court declines to certify its Order for interlocutory review, Defendants spend a large portion of their memorandum invoking this Court's prior decision in *Picard v. Katz*, 466 B.R. 208 (S.D.N.Y. 2012). As the Trustee pointed out in his opening memorandum, however, *Katz* involved only a single case, whereas the Court's Order will affect the litigation of approximately 150 cases. (*See* ECF No. 545 at 14.) Accordingly, the potential savings – or waste – of judicial and party time and resources is something like 150 times greater here than in *Katz*.

Moreover, while *Katz* was decided on a motion to dismiss, the decision came late in the proceedings, at a time when discovery had nearly been concluded and the case had been set for trial. The potential savings in streamlined and targeted discovery that would have resulted from

early resolution of the parties' dispute regarding the proper "good faith" standard were significantly smaller than in the current suits, where discovery is ongoing but far from complete in some cases and has not yet begun in others.

In response to these distinctions, Defendants assert that, like the Order in question, the "other orders issued on consolidated briefing as to which the Court has denied interlocutory review" also affected many of the Trustee's avoidance suits. (*See* ECF No. 550 at 8.) In several of those cases, however, the Court rightly found no substantial ground for a difference of opinion as to the propriety of the underlying order, and thus had no basis to issue a certification for interlocutory review. *See*, *e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 465360, at * 1 (S.D.N.Y. Jan. 14, 2014) (Rakoff, J.) (denying request for certification with respect to order denying motions to dismiss of "subsequent transferee defendants"); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 6301085, at *1 (S.D.N.Y. Dec. 5, 2013) (same regarding certification request based upon order denying motions to dismiss brought by "antecedent debt defendants"). For the reasons discussed below, and in the opening memoranda filed by the Trustee and SIPC, the correctness of the current Order is far less clear, and more than sufficiently dubious to warrant interlocutory review.

Defendants close by raising the specter of piecemeal appeals, again pointing to the *Katz* decision and the other earlier requests for interlocutory review that were rejected by the Court. But Defendants' rhetoric does not match the reality. Defendants, not the Trustee, sought interlocutory appeal as to two of the three issues mentioned by them, and the Court properly rejected both of Defendants' motions on the ground that the applicable law is settled. In contrast, the Trustee has resorted here to Section 1292(b) only because the Court's Order rests on novel and uncertain foundations and because immediate review of that Order promises a massive

saving in judicial and party time and resources. Moreover, the Trustee has not sought to challenge every decision of this Court through interlocutory appeal, and has instead confined his challenge to the "good faith" issues decided through the Order. For the reasons stated, early resolution of those issues would significantly simplify and streamline the many litigations affected by the Order.

## II. There is Substantial Ground for Difference of Opinion Regarding the Correctness of the Order

Defendants' efforts to defend the substance of the Court's Order are equally hollow. A court need not find that a challenged order is incorrect in order to certify it for interlocutory review. Instead, the court only need find that there is substantial ground for difference of opinion as to the correctness of its order - a far lower threshold. Such doubt exists if the issue is difficult and of first impression, or if there is conflicting authority on the issue. *See*, *e.g.*, *In re Lloyd's American Trust Fund Litig.*, 1997 WL 458739, at ** 4-5 (S.D.N.Y. Aug. 12, 1997).

That standard unquestionably is met here. As SIPC noted in its opening memorandum, prior to the *Katz* decision, no court had ever even considered whether, in a SIPA liquidation, "good faith" is governed by a "willful blindness" standard. On appeal, the Court's decision thus will create an issue of first impression for the Second Circuit.

Further, the question whether the "willful blindness" or "inquiry notice" standard should govern assertions of "good faith" in a SIPA liquidation clearly is a difficult one. According to the Court, the securities-law based "willful blindness" standard must displace the otherwise applicable Bankruptcy Code-based "inquiry notice" standard in a SIPA liquidation because SIPA arises under the securities laws and has the "twin goals of maintaining marketplace stability and encouraging investor confidence." S*ee* Order, 2014 WL 1651952, at * 5. That rationale is simply not reflected in the structure of SIPA or related statutes.

As the Second Circuit has noted, SIPA does not arise exclusively under Title 15. Rather, "[a] SIPA liquidation is a hybrid proceeding" that arises under both Titles 11 and 15. *See In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229, 242 n. 10 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 8, 2011), *cert. dismissed*, 132. S.Ct. 2712 (2012) *and cert. den.*, 133 S.Ct. 24 *and* 133 S.Ct. 25. In accord with this hybrid nature, SIPA makes applicable in a SIPA liquidation the Bankruptcy Code's avoidance provisions, to the extent consistent with SIPA. *See* SIPA § 78fff(b). As SIPC pointed out in its opening memorandum, Congress took care to include in SIPA a provision *expanding* a SIPA trustee's avoidance power to facilitate the recovery by the trustee of missing customer property (*see* SIPA § 78fff-2(c)), but included nothing in SIPA modifying the Code's "good faith" standard. Moreover, that Code standard unequivocally applies to "stockbroker" liquidations under Subchapter III of Chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. §§ 741-46. Those provisions govern the liquidation of securities broker-dealers where SIPA is not applicable, and thus implicate the securities laws in the same way and context as SIPA. *See id.* Accordingly, if the Court's view of Congress's intent were correct, Congress would have taken care to provide for a more stringent "good faith" standard in stockbroker liquidations. Instead, as in SIPA, Congress was silent. In fact, as in SIPA, Congress expanded the trustee's avoidance powers in stockbroker liquidations under the Code to facilitate the recovery of customer property (*see* 11 U.S.C. § 749(a)), suggesting that Congress viewed maximum recovery of customer property by the trustee – not protection of the recipients of fraudulent property transfers - as the best way to protect investor confidence.

Defendants essentially ignore this statutory context in their response, and instead merely reiterate that SIPA is part of the securities laws. (*See* ECF No. 550 at 13.) They also point to ancient case law, long pre-dating the 1978 enactment of the Bankruptcy Code, purportedly

6

supporting the proposition that good faith "has long been interpreted in a subjective manner."[1] (*See id.* at 12-13.)  Defendants ignore much recently-decided case law, including decisions from this Court, holding the contrary.  *See* 5 *Collier on Bankruptcy* ¶ 548.09[2][b] n. 27-29 (16th ed. 2014) (summarizing cases).  *See also*, *e.g.*, *In re Bayou Group, LLC*, 439 B.R. 284, 308-14 (S.D.N.Y. 2010).  At the very least, that contrary case law creates a substantial ground for difference of opinion as to the correctness of the Court's Order.

Defendants effectively dismiss as dictum the Second Circuit's endorsement of the "inquiry notice" standard in *Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81, 90 n. 11 (2d Cir. 2014).  While the question of which "good faith" standard is the proper one was not before the Second Circuit in *Marshall*, that court's unqualified description of "inquiry notice" as the governing standard in a SIPA liquidation certainly creates serious doubt as to whether the Second Circuit would affirm this Court's Order on appeal.

The correctness of the Court's decision to require the Trustee to plead the absence of "good faith" on the part of Defendants is also questionable.  It is black letter law that a plaintiff need not allege in its complaint facts sufficient to demonstrate the absence of an affirmative defense.  *See*, *e.g.*, *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996); *In re September 11 Property Damage and Business Loss Litigation*, 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007).  And this Court has repeatedly and correctly held that "good faith" under Bankruptcy Code Section 548(c) is an affirmative defense.  *See Picard v. Katz*, 462 B.R. 447, 456 n. 9 (S.D.N.Y. 2011); Order, *Picard v. Katz*, 11-cv-3605 (S.D.N.Y. Mar. 14, 2012).  Defendants themselves do not challenge those rulings.

---

[1] The one case cited by Defendants that was decided after the enactment of the Bankruptcy Code – *In re Sharp Int'l Corp.*, 403 F.3d 43, 54 (2d Cir. 2005) – was decided under New York law, not the federal Bankruptcy Code.

Notwithstanding this law, however, the Court, through its Order, required the Trustee to plead "particularized allegations that the defendants…knew of Madoff Securities' fraud or willfully blinded themselves to it." Order, 2014 WL 1651952, at * 5. According to the Court, without such allegations, "the Trustee's complaints…cannot make out a plausible claim that he is entitled to recover the monies defendants received from their securities accounts." *Id.* But the Bankruptcy Code's applicable fraudulent transfer provision requires only that the plaintiff plead and prove the fraudulent intent of the transferor, not the transferee, of a challenged transfer, as this Court and others have long acknowledged. *See*, *e.g.*, *Bayou Group*, 439 B.R. at 304 ("Actual fraudulent conveyance claims under [S]ection 548(a)(1)(A) turn on the intent of the debtor in making the transfer; the state of mind of the transferee is irrelevant"); *Pereira v. Grecogas Ltd. (In re Saba Enterprises, Inc.)*, 421 B.R. 626, 642 n. 14 (S.D.N.Y. 2009) ("Case law requires the plaintiff to plead the transferor's intent only under Section 548(a)(1)(A) of the Code").

Nothing in SIPA, either explicitly or by implication, supports a different conclusion. On the contrary, as explained above, SIPA's text and structure, and those of related statutes like the Bankruptcy Code's "stockbroker" liquidation provisions, indicate that Congress did not intend to restrict a SIPA trustee's avoidance powers, but instead intended to expand them. At the very least, the issue is difficult and far from settled, and thus appropriate for review on interlocutory appeal.

### III. The Court Should Not Exercise Its Discretion to Deny Certification

As a final point, Defendants assert that the Court should exercise its discretion to deny certification because the Trustee has an obligation to satisfy customer net equity claims as promptly as possible and the Trustee's Motion allegedly represents an effort to delay or avoid

that obligation.  (*See* ECF No. 550 at 17-18.)  Defendants have the matter exactly backwards, however.  For the reasons discussed above, interlocutory review of the Court's Order promises substantial savings in both judicial and party time and resources, and should expedite recoveries by the Trustee of missing customer property.  The faster the Trustee makes those recoveries, the faster he can distribute the recovered property to customers in satisfaction of their allowed net equity claims.  "SIPA's twin goals of maintaining marketplace stability and encouraging investor confidence" thus militate strongly in favor of the certification sought by the Trustee.

## CONCLUSION

For the reasons stated, the Court should grant the Trustee's Motion.

Dated: July 15, 2014
Washington, D.C.

> Respectfully submitted,
>
> JOSEPHINE WANG
> General Counsel
>
> KEVIN H. BELL
> Senior Associate General Counsel for
>  Dispute Resolution
>
>
> /s/ Christopher H. LaRosa
> CHRISTOPHER H. LAROSA
> Senior Associate General Counsel – Litigation
>
> SECURITIES INVESTOR PROTECTION
>  CORPORATION
> 805 15th Street, N.W., Suite 800
> Washington, D.C. 20005
> Telephone: (202) 371-8300
> Facsimile: (202) 371-6728
> E-mail: jwang@sipc.org
> E-mail: kbell@sipc.org
> E-mail: clarosa@sipc.org